**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| DAVID GRANATA, | |
| Plaintiff, | Case No. 3:21-cv-01657-SVN |
| v. | February 1, 2022 |
| PRATT & WHITNEY, A DIVISION OF RAYTHEON TECHNOLOGIES CORPORATION; et al., | |
| Defendants. | |

**APPLICATION OF KELLER LENKNER LLC TO SERVE AS INTERIM CLASS
COUNSEL IN RESPONSE TO THE COURT'S JANUARY 18, 2022 CONSOLIDATION
ORDER**

Oral argument requested.

1

**TABLE OF CONTENTS**

TABLE OF AUTHORTIES ................................................................................................ ii

1.   Introduction ............................................................................................................... 1

2.   The Court's selection and structure of class counsel. ............................................... 5

    2.1   KL respectfully submits that this Court should follow the lead of "most courts" and eschew proposed slates while exercising its own judgment regarding the leadership team that will best advance the interests of the proposed class. .................................................... 5

    2.2   KL proposes that the Court select two lead counsel and an executive committee consisting of three to five firms. ............................................................................................ 8

3.   KL is a clear choice for class counsel (or for an executive committee position should the Court create such a committee). ............................................................................................ 9

    3.1   The four Rule 23(g) factors. .......................................................................... 10

        3.1.1   Rule 23(g) Factor One: The work counsel has done in identifying or investigating potential claims in the action. ........................................................................... 10

            3.1.1.1   KL has done more than any other applicant to develop the potential claims in this action. ..................................................................................................... 11

            3.1.1.2   The Court should not give any credit to any firm for being the first to file a complaint that merely copies the allegations in the Criminal Documents. ...................... 12

            3.1.1.3   KL has worked cooperatively with other applicants for class counsel during this early stage of the litigation. .......................................................................... 12

        3.1.2   Rule 23(g) Factor Two: Counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action. ...................................... 13

            3.1.2.1   Zina Bash ......................................................................................... 16

            3.1.2.2   Jason A. Zweig ................................................................................. 17

            3.1.2.3   Brooke Smith .................................................................................... 18

            3.1.2.4   Ellyn Gendler ................................................................................... 19

        3.1.3   Factor 3: Counsel's knowledge of applicable law. ................................ 19

        3.1.4   Rule 23(g) Factor 4: The resources that counsel will commit to representing the class. ............................................................................................................... 20

        3.1.5   The Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." ........................................................ 20

4.   Oral argument ........................................................................................................ 21

5.   Conclusion ............................................................................................................. 21

## TABLE OF AUTHORTIES

**Cases**                                                                        **Page(s)**

*3M Combat Arms Earplug Products Liability Litig.*
MDL No. 2885 (N.D. FL.)...................................................................................1

*In re Aggrenox Antitrust Litig.*,
94 F. Supp. 3d 224 (D. Conn. 2015)....................................................................9

*Bentley v. United of Omaha Life Ins. Co.*,
371 F. Supp. 3d 723 (C.D. Cal. 2019) ...............................................................15

*City of Providence, Rhode Island v. Abbvie, Inc.*,
No. 20-cv-5538 (LJL), 2020 WL 6049139 (Oct. 13, 2020 S.D.N.Y.)..............10, 12

*Cydylo v. Agilis Engineering, Inc., et al.*,
No. 21-01730 (D. Conn) .....................................................................................1

*De Coster et al. v. Amazon.com, Inc.*,
2022 WL 168405 (W.D. Wash)............................................................2, 14, 16, 20

*Fishon et al. v. Peloton*,
1:19-cv-11711-LJL, 2020 WL 6564755 (S.D.N.Y. Nov. 9, 2020)........................15

*Gilbert et al. v AFTRA Retirement Fund, et al.*,
1:20-cv-10834, 2020 WL 7764893 (S.D.N.Y.) ..................................................15

*In re Google Digital Advertising Antitrust Litig.*,
21-MD-3010, 2021 WL 4848758 (S.D.N.Y.)(PKC) ...........................................2

*In re High Fructose Corn Syrup Antitrust Litig.*
156 F. Supp. 2d 1017 (C.D. Ill. 2001), rev'd, 295 F.3d 651 (7th Cir. 2002) ...........17

*In re Hydrogen Peroxide Antitrust Litig.*
240 F.R.D 163 (E.D. Pa. 2007), vacated and remanded, 552 F.3d 305 (3d Cir.
2008), as amended (Jan 16, 2009) .......................................................................17

*Ivaldi v. Agilis Engineering, Inc., et al.*,
No. 22-00097 (D. Conn) .................................................................................1, 11

*John Doe et al., v. Raytheon Technologies Corporation, et al.*,
No. 21-01657 (D. Conn.) .....................................................................................4

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
No. 11 MD 2262 NRB, 2011 WL 5980198 (S.D.N.Y. Nov. 29, 2011) ............10, 14

*In re: Linens Antitrust Litig.*,
    No. 1:03-CV-7823 (S.D.N.Y.) ................................................................17

*In re National Prescription Opiate Litigation*,
    No. 1:17-MD-2804, 2021 WL 3917174 (N.D. Ohio) ..............................17

*In re NBR Antitrust Litig.*,
    No. 2:03-CV-1898, 2005 WL 2176831 (W.D. Pa) ..................................17

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
    No. 1:14-MD-1720, 2014 WL 4966072 (E.D.N.Y.) ...............................18

*Plastics Additives Antitrust Litig.*,
    No. 2:03-CV-2038, 2005 WL 1241137 (E.D. Pa) ...................................17

*State of Texas, et al. v. Google LLC*,
    No. 21-6841 (S.D.N.Y.)(PKC) ...................................................2, 13, 20

*State of Texas et al. v. Google LLC*,
    No. 4:20-cv-957-SDJ, WL 2043184 (E.D. Tex.) ....................................16

*United States of Am. Exp. Co.*,
    21 F. Supp. 3d 187 (E.D.N.Y) ..................................................................21

*United States et al. v. Deutsche Telekom AG et al.*,
    No. 1:19–cv-02232 (TJK), 2020 WL 1873555 (D.D.C.) .........................17

*In re: Volkswagen Clean Diesel Litigation: Texas Clean Air Act Enforcement Cases*,
    No. 03-16-00718-CV, 2017 WL 160919 (Tex. App. Jan. 11, 2017) ........17

*In re Zantac (Ranitidine) Products Liability Litig.*,
    20-MD-2924 (S.D. FL.) ...............................................................................1

**Statutes**

Antitrust Criminal Penalty Enhancement Reform Act., Pub. L. No. 108-237, §
    213, 118 Stat. 665 (2004) ...........................................................................13

Sherman Act: Section 2 ..........................................................................................14

**Other Authorities**

Fed. R. Civ. P. 23(g) .................................................................................. *passim*

Fed. R. Civ. P. 23(g)(1)(A) ..............................................................................10, 20

Fed. R. Civ. P. 23(g)(1)(B) ................................................................................3, 20

Fed. R. Civ. P. 23(g)(2).....................................................................................10

Bolch Judicial Institute, Guidelines and Best Practices for Large and Mass-Tort
MDLs (Second Edition) (2018) ................................................................ *passim*

Duke Law School, Center for Judicial Studies, MDL Standards and Best Practices
(2014).......................................................................................................... *passim*

James F. Humphreys Complex Litgation Center, George Washington Law School,
Inclusivity and Excellence: Guidelines and Best Practices for Judges
Appointing Lawyers to Leadership Positions in MDL and Class-Action
Litigation, (2021) ............................................................................................6

Jo Desha Lucas, Moore's Federal Practice (Matthew Bender, 1969). ........................11

Manual for Complex Litigation, (4th ed. 2004)...........................................5, 7, 10, 13

Michael Corkery, *Amazon Ends Use of Arbitration for Customer Disputes*, New
York Times, July 22, 2021............................................................................3

Michael Corkey and Jessica Silver-Greenberg, *Scared to Death by Arbitration:
Companies Drowning in Their Own System"* New York Times, Apr 6, 2020..................2

National Association of Women Judges, *Resolution on Diversity in Trial Courts
Appointments*, Oct 8, 2016...........................................................................3

1.      **Introduction**

Since being formed only four years ago by veterans of the defense bar, Keller Lenkner

LLC[1] (KL) has quickly become one of the leading complex litigation firms for plaintiffs. The

firm—comprising a highly experienced, accomplished, diverse, and innovative team of attorneys

and staff—serves hundreds of thousands of clients in litigation and arbitration matters and acts as

plaintiffs' counsel in high-stakes class and public-enforcement actions. More than two-thirds of

KL's lawyers are former federal law clerks, including four KL lawyers who served as clerks on

the U.S. Supreme Court. And over three-fourths of KL's lawyers joined the firm after having

sharpened their skills at AmLaw 25 firms and elite trial boutiques.

Recognizing the strength of the team that KL has assembled, courts throughout the

United States have appointed the firm or its individual lawyers to plaintiff leadership positions in

some of the largest ongoing multidistrict litigations, such as *In re Zantac (Ranitidine) Products*

*Liability Litig.*, 20-MD-2924 (S.D. FL.) and *3M Combat Arms Earplug Products Liability Litig.*,

MDL No. 2885 (N.D. FL.). During the course of its short existence, KL or its individual

attorneys have also secured court-appointed leadership positions in numerous large class actions

involving a range of subjects, including antitrust, consumer fraud, and data breaches. Beyond

these appointments, KL's team includes experienced lawyers who, prior to joining KL, have

acted as lead counsel in dozens of other class actions, including antitrust class actions (*see* pp. 16-

17 below).

---

[1]      In this litigation, KL represents two plaintiffs: Matthew Cydylo (plaintiff in *Cydylo v.
Agilis Engineering, Inc., et al.*, 3:21-cv-01730 (D. Conn)) and Joshua Ivaldi (plaintiff in *Ivaldi v.
Agilis Engineering, Inc., et al.*, 2:22-cv-00097 (D. Conn)). Both of those cases have been
consolidated into this case. *See* ECF Nos. 44 & 52 (Cydylo) and ECF No. 62 (Ivaldi).

KL's success in court-appointed leadership roles reflects its deep knowledge and experience, including in antitrust law; its innovative approach to solving litigation challenges for its clients; its commitment to diversity; and its reputation among peers and opposing counsel.

Specifically, first, KL has quickly risen to prominence as a firm that litigates major civil antitrust cases. Seven State Attorneys General have tapped KL as outside counsel to represent them in pivotal antitrust litigation, which is currently one of the largest antitrust cases in the country: *State of Texas, et al. v. Google LLC*, 21-CV-6841 (S.D.N.Y.)(PKC)(part of *In re Google Digital Advertising Antitrust Litig.*, 21-MD-3010 (S.D.N.Y.)(PKC)). Numerous large corporations such as FedEx have also retained KL to represent them in major, ongoing antitrust litigation. And KL has been appointed as co-lead counsel in significant antitrust litigation against Amazon: *De Coster et al. v. Amazon.com, Inc.*, 21-cv-693 (W.D. Wa.).

Second, KL's creativity has garnered significant national acclaim. For years, corporations have forced consumers into individual arbitrations to shield themselves from liability. This has left most consumers without redress when a corporation has wronged them, because most plaintiff firms refused to represent them given the hurdles inherent in arbitration clauses. Where other firms saw insurmountable obstacles and avoided them, KL devised a solution. KL developed a ground-breaking practice of representing tens of thousands (or in some cases hundreds of thousands) of clients in mass individual arbitrations against corporate wrongdoers. The strategy, as reported by the *New York Times*, has left corporations "scared to death."[2] As a direct result of KL's efforts in this area, one corporate behemoth, Amazon, against whom KL

---

[2]     *See* Michael Corkery and Jessica Silver-Greenberg, "'Scared to Death' by Arbitration: Companies Drowning in Their Own System", *The New York Times* (Apr. 6, 2020), available at: https://www.nytimes.com/2020/04/06/business/arbitration-overload.html?searchResultPosition=1.

had filed tens of thousands of arbitrations, recently abandoned its arbitration clause and class-action waiver altogether.[3] Because of this groundbreaking work, KL was awarded the National Law Journal 2021 Law Firm of the Year in Trial Strategy Innovation.[4] The firm's arbitration solution exemplifies not only its ingenuity in service of its clients but also its managerial abilities.[5] Representing hundreds of thousands of consumers in individual arbitrations requires honed management skills and a meticulous attention to detail—qualities that are critical to serving effectively as lead counsel.

KL lawyers generally, and the KL lawyers involved in this matter specifically, also represent the diversity of the legal profession. Courts have increasingly recognized the importance of diverse representation in MDL proceedings and class-action litigation.[6] KL believes that its lawyers' diverse backgrounds, experiences, and perspectives enhance KL's "ability to fairly and adequately represent the interests of the class" under Fed. R. Civ. P. 23(g)(1)(B).

In selecting class counsel, courts apply the four factors in Federal Rule of Civil Procedure 23(g). When evaluating the class counsel applications here through the lens of Rule 23(g), many firms may appear competitive along some of the rule's metrics. KL works regularly and

---

[3]     Michael Corkery, *Amazon Ends Use of Arbitration for Customer Disputes*, New York Times, July 22, 2021 (available at https://www.nytimes.com/2021/07/22/business/amazon-arbitration-customer-disputes.html (last visited January 28, 2021).

[4]     *See* https://www.kellerlenkner.com/keller-lenkner-named-trial-strategy-innovation-law-firm-of-the-year-by-national-law-journal-and-american-lawyer-media-at-2021-elite-trial-lawyers-awards/.

[5]     *See, e.g.*, Duke Report 2014, at p. 40 ("Best Practice 4B: The [judge] should appoint lead counsel who have excellent management skills.").

[6]     *See* October 8, 2016 Resolution on Diversity in Trial Court Appointments by the National Association of Women Judges, attached as exhibit 2. It is also available at https://www.nawj.org/uploads/files/resolutions/resolution-diversity_in_trial_court_appointments_2016.pdf (last visited January 31, 2022).

cooperatively with several of the firms and knows their strengths well (and KL would be pleased to work with them here). With respect to one 23(g) factor, however, KL stands alone: the first factor, "the work counsel has done in identifying or investigating potential claims in the action." KL is the *only* firm whose complaints demonstrate that it has already committed firm resources to investigating the illegality here, separate and apart from the illegality described in the Department of Justice's criminal pleadings; all other complaints simply incorporate the DOJ's allegations with nothing more. Specifically, through KL's investigations, including interviews of numerous witnesses, KL uncovered the participation of an additional conspirator in the underlying anticompetitive scheme. This resulted in the addition of a defendant—Raytheon Technologies' Collins Aerospace division—to the complaints filed by KL. At the time, this was the only original information contained in any of the complaints before the Court. (Since then, one other complaint has been amended to add largely the same allegations as those in KLs' complaints.[7])

For these reasons and others described herein, KL submits this "proposal to serve as interim class counsel" pursuant to the Court's January 18, 2022 consolidation order (Consolidation Order).[8] KL has worked with almost all of the firms applying for a lead counsel position and would be pleased to work with any of them in leading these cases.[9]

---

[7]    *See* January 28, 2022 amended class action complaint captioned *John Doe et al., v. Raytheon Technologies Corporation, et al.*, 3:21-cv-01657 (D. Conn.), ECF No. 101.

[8]    ECF No. 44, at p. 5.

[9]    KL assumes that the Court is familiar with the underlying factual and legal allegations at issue in this case, and therefore, it won't spill any ink reciting them in this lead counsel proposal.

**2.     The Court's selection and structure of class counsel.**

"Determining the appropriate leadership structure and selecting the right lawyers to fill the positions is one of the first and most important case management tasks."[10] The various leadership proposals before the Court present two threshold questions: First, should the Court adopt in full a single proposed slate of firms, or, should it assemble a leadership team from among several firms representing plaintiffs in this case that, in the Court's own judgment, will best represent the interests of the proposed class? Second, how many firms should the Court select as class counsel, and what leadership structure should the Court adopt?

> *2.1     KL respectfully submits that this Court should follow the lead of "most courts" and eschew proposed slates while exercising its own judgment regarding the leadership team that will best advance the interests of the proposed class.*

In class actions like this, there tend to be two general methods for the selection of class counsel: 1) private ordering, in which the lawyers agree on whom should serve as lead class counsel, often proposing a slate of lawyers or law firms, and the Court approves the selection; or 2) the Court's construction of a slate from among competing individual applications.[11] In this case, a number of firms have self-ordered into slates and ask that the Court appoint the entire slate to represent the proposed class. Other firms, including KL, believe that the class would be best served if the Court were to exercise its independent judgment to determine the firms or individual lawyers best suited to represent the class.

---

[10]     Duke Report 2014, at p. 25.
[11]     MANUAL FOR COMPLEX LITIGATION (Fourth), § 21.272, at pp. 279-280.

Although judicial adoption of private slates has long been a practice in federal courts, there is increasing consensus that courts should reject proposed slates and, instead, select class counsel (along with any committee appointments) from among individual applications.[12]

Over at least the last decade, there has been considerable research and scholarship on the selection of lead counsel in class actions and MDLs, including on ways to improve the diversity of lead counsel; historically, leadership slates often included repeat players and lacked diversity. A significant amount of that research and scholarship has emanated from conferences that included leading plaintiff and defense-side practitioners, judges, and law professors, such as those held in connection with Duke Law School's Bolch Judicial Institute (and now the James F. Humphreys Complex Litigation Center at George Washington Law School). Their work has been compiled in two editions of GUIDELINES AND BEST PRACTICES FOR LARGE AND MASS-TORT MDLS in 2014[13] and 2018.[14]

The extensive research and scholarship have revealed inherent defects in the private ordering approach whereby slates of firms are proposed to act as lead counsel. With respect to private ordering and leadership groups, the Duke Report 2014 observed:

---

[12] *See* GUIDELINES AND BEST PRACTICES FOR LARGE AND MASS-TORT MDLS, Bolch Judicial Institute, Duke Law School (Second Edition), at p. 37 ("But most courts now insist on a competitive process and require individual applications.")(available at https://scholarship.law.duke.edu/bolch/5/ (last visited January 25, 2022)(hereafter *Duke Report 2018*).

[13] MDL Standards and Best Practices, September 11, 2014 (found at: https://judicialstudies.duke.edu/sites/default/files/centers/judicialstudies/MDL_Standards_and_Best_Practices_2014-REVISED.pdf (last visited *Duke Report 2014*).

[14] Those Guidelines and Best Practices were further built upon by the James F. Humphreys Complex Litigation Center at George Washington Law School, which took over the project from Duke in 2020. In 2021, the James F. Humphreys Complex Litigation Center published INCLUSIVITY AND EXCELLENCE: GUIDELINES AND BEST PRACTICES FOR JUDGES APPOINTING LAWYERS TO LEADERSHIP POSITIONS IN MDL AND CLASS-ACTION LITIGATION, March 15, 2021 (available at https://www.law.gwu.edu/sites/g/files/zaxdzs2351/f/downloads/3-Page_Summary_Report_and_Signatories_List_3.16.21.pdf (last visited January 25, 2021).

Although private ordering among counsel can streamline the selection process, it may be susceptible to abuse. For example, a proposed leadership group may include members who are not fully committed to the litigation but are included because their resumés make the group's application more appealing. Counsel may have also entered into improper arrangements to secure a leadership position. The proposed leadership team may exclude lawyers who would bring useful skills or new perspectives to the litigation.[15]

Amplifying the concern that leadership slates may include certain firms or lawyers that make the slate's application more appealing—without regard to the firms' commitment to the case—the Duke Report 2014 cautions that "lawyers with a history of impressive positions may have spent more time seeking appointments than doing the actual work in the case."[16] Many judges have also complained that "as leadership appointments have increasingly become the path to substantial [compensation], the monetary stakes of appointment have generated substantial dysfunction in the incentives of counsel, leading to competitive behaviors that may not result in the appointment of the best possible counsel."[17] Finally, private ordering often results in the "repeat player" dynamic in which the same firms repeatedly seek to be selected lead counsel, which "reduces fresh outlooks and innovative ideas, and increases pressure to go along with the group and conform, all of which may negatively impact the plaintiffs whose cases are being pursued . . . ."[18]

---

[15]     Duke Report 2014, at p. 38. *See also* MANUAL FOR COMPLEX LITIGATION (FOURTH), § 10.224, page 27 ("Deferring to proposals by counsel without independent examination, even those that seem to have the concurrence of a majority of those affected, invites problems down the road if designated counsel turn out to be unwilling or unable to discharge their responsibilities satisfactorily or if they incur excessive costs.").

[16]     Duke Report 2014, at p. 39.

[17]     Duke Report 2018, at p. 37.

[18]     Duke Report 2018, at p. 37. *See also* JUDGING MULTIDISTRICT LITIGATION, Elizabeth Chamblee Burch, NYU Law Review, 90-1, at p. 93 ("Relying on self-selection methods can encourage undisclosed fee-sharing arrangements that may adversely affect settlement incentives, tit for tat reciprocity among repeat players . . . .")

The Duke Reports also contain a number of "Best Practices" to aid courts in their selection of lead counsel. There are 14 Best Practices in the Duke Report 2014 which apply to the selection of lead counsel.[19] Two warrant mention here:

> **Best Practice 3C:** The judge's primary responsibility in the selection process is to ensure that the lawyers appointed to leadership positions are capable and experienced and that they will responsibly and fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds.[20]

> **Best Practice 4E:** The transferee judge should take into account whether the leadership team adequately reflects the diversity of legal talent available and the requirements of the case.[21]

Given the shortcomings associated with private ordering and the Best Practices contained in the Duke Report concerning the selection of lead counsel, "most courts now insist on a competitive process *and require individual applications*."[22] Choosing from among individual firms avoids the pitfalls associated with private ordering. It also standardizes the selection process, which makes the Court's job easier, and is eminently fair to the applicants, whom will all be assessed in the same way.

In light of the foregoing, KL respectfully requests that the Court disregard proposed slates and instead create its own slate from among individual applicants, including from among the firms listed in proposed slates.

2.2  *KL proposes that the Court select two lead counsel and an executive committee consisting of three to five firms.*

KL submits that given the likely number of lead counsel applicants and the number of defendants, the Court assemble a two-tiered leadership group consisting of two lead counsel and

---

[19]     In the Duke Report 2014 those Best Practices are embodied in MDL Standard 3 at pages 32-39; and in the Duke Report 2018, those standards can be found at Guideline 3 at pages 34-42.
[20]     Duke Report 2014, at p. 34.
[21]     Duke Report 2014, at p. 44.
[22]     Duke Report 2018, at p. 37 (Emphasis added).

an executive committee consisting of three to five firms. This group would be small enough to keep it from becoming unwieldy and inefficient, but large enough to be inclusive and to ensure that adequate resources are devoted to pursuing the cases. Moreover, as the Duke Report 2014 explained, "[i]n many cases, a committee will be necessary to support lead counsel in prosecuting the case,"[23] and "[a]ppointing a committee to support lead counsel is usually more effective than staffing the litigation with numerous co-lead counsel, which can lead to delays in decision making and unnecessary duplication of effort."[24] Committee members can perform many functions, all of which are authorized and directed by lead counsel. For example, they can consult with lead counsel on activities ranging from "overall case strategy to developing and implementing a litigation plan, managing discovery, preparing briefs, and presenting argument to the court."[25]

**3.    KL is a clear choice for class counsel (or for an executive committee position should the Court create such a committee).**

The Rule 23(g) factors favor KL's appointment as lead counsel. As set forth below, KL is singular in having already demonstrated its commitment to this case and the class: It is the only firm to have developed facts and allegations—and named a defendant—separate and apart from those alleged (and named) in the public, criminal DOJ documents on which all other complaints are exclusively based. KL also possesses a unique pool of talented attorneys who have extensive experience in litigating antitrust cases and class actions, and who possess second-to-none managerial skills. Adding to its strengths, KL has assembled a diverse group of lawyers and

---

[23]    Duke Report 2014, at p. 30.
[24]    Duke Report 2014, at p. 29.
[25]    Duke Report 2018, at p. 33. An example of a case in this district where an executive committee was appointed was in *In re Aggrenox*, 14-MD-2516 (D. Conn.)[ECF No. 86 and 94] before Judge Underhill, in which he appointed one lead counsel and three executive committee members.

staff, as reflected by the team it has dedicated to these cases. Finally, although the firm is only four years old, KL has already developed a reputation for working collegially with co-counsel, adversaries, and courts.[26]

### 3.1   The four Rule 23(g) factors.

Federal Rule of Civil Procedure 23(g) sets forth four factors that Courts are required to apply when selecting class counsel at the class-certification stage. In relevant part, Rule 23(g) provides, "[i]n appointing class counsel the Court (A) must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." When appointing interim class counsel, courts look to these very same factors.[27] And, when there are competing applications, courts "must appoint the applicant best able to represent the interests of the class."[28] No single Rule 23(g) factor or other consideration is dispositive in the selection of lead counsel.[29]

Here, although there are many qualified applicants, when viewed through the prism of the Rule 23(g) factors, KL is best able to represent the interests of the class.

### 3.1.1   Rule 23(g) Factor One: The work counsel has done in identifying or investigating potential claims in the action.

---

[26]     Attached as exhibit one is a copy of KL's firm resume, including biographies of its lawyers responsible for this case.

[27]     *City of Providence, Rhode Island v. Abbvie, Inc.*, 2020 WL 6049139, *3 (Oct. 13, 2020 S.D.N.Y.); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2011 WL 5980198, at *2 (S.D.N.Y. Nov. 29, 2011) ("The considerations set out in Rule 23(g)(1)(A), which govern the appointment of class counsel once a class is certified, are widely accepted to apply to the designation of interim class counsel before certification as well.").

[28]     Rule 23(g)(2).

[29]     MANUAL FOR COMPLEX LITIGATION (FOURTH), § 10.221, p. 24 ("No single factor is dispositive in evaluating prospective class counsel.")

*3.1.1.1 KL has done more than any other applicant to develop the
potential claims in this action.*

The first—and perhaps most important—Rule 23(g) factor points decisively in KL's

favor.[30] All of the filed complaints, including those filed by KL, are based on the December 9,

2021 unsealing of a federal affidavit and the December 2021 indictment of several of defendants'

executives (collectively the Criminal Documents). KL's complaints, however, go beyond the

Criminal Documents and demonstrate an independent investigation, which resulted in more

extensive allegations and the naming of an additional defendant. At the time KL filed its

complaints, no other originally sourced material had been provided in any of the complaints.

More specifically, KL developed new facts through its own gumshoeing, including

interviewing dozens of witnesses and conducting additional research to build upon the

information contained in the Criminal Documents. As a result of that effort, it was able to

identify a new conspirator that had not previously been disclosed in the Criminal Documents or

anywhere else: Raytheon Technologies Corporation's Collins Aerospace unit.[31] Other firms have

since followed KL's lead and filed suit against Collins Aerospace. This exemplifies the level of

diligence and tenacity that KL deploys in every case and would continue to deploy for the class

if appointed as class counsel.

In complex class actions such as these, courts "have expressed the view that they now see

appointment of counsel as selecting a fiduciary for the class, which will substantially impact the

---

[30]     *See* Moore's Fed. Prac. § 23.120(3)(a) (3d. Ed. 2007)("In a case with a plaintiff class, the
process of drafting the complaint requires some investigatory and analytical effort, tasks that
strangers to the action most likely will not have undertaken. All other things being equal, when
an attorney has performed these or other investigative and analytical tasks before making the
application for appointment, he or she is in a better position to represent the class fairly and
adequately than attorneys who did not undertake those tasks.")
[31]     *See generally* January 19, 2022 complaint captioned *Ivaldi v. Agilis Engineering, Inc., et
al.*, 2:22-cv-00097 (D. Conn.).

course of the litigation."[32] As a fiduciary for the class, the Court is in a position somewhat akin to a private litigant who is looking to hire private counsel. And, that private litigant would want counsel who is not only experienced and qualified, but also devoted to the case and committed to aggressively pursuing it to conclusion. KL is the firm that best fits this description.

Other firms may purport to have been investigating this no-poach conspiracy since before the unsealing of the Criminal Documents. Even if true, it is clear that any such investigation was not productive, given that no complaint aside from KL's included any information beyond that included in the Criminal Documents.

> ### 3.1.1.2 The Court should not give any credit to any firm for being the first to file a complaint that merely copies the allegations in the Criminal Documents.

Other firms may also argue that because they filed the first, or one of the first cases—even if only by a few days—they have done more than other firms in identifying or investigating the potential claims in the action and should therefore be appointed class counsel. But, filing first is not a Rule 23(g) factor. "[T]he ribbon does not always go to the fleetest of foot."[33] Rewarding counsel for filing first is particularly inappropriate here, where all of the initial complaints simply lifted their allegations from the Criminal Documents.

> ### 3.1.1.3 KL has worked cooperatively with other applicants for class counsel during this early stage of the litigation.

The Manual for Complex Litigation teaches that one important characteristic of lead counsel is "the attorneys' ability to command the respect of their colleagues and work

---

[32]     Guidelines and Best Practices for Large and Mass-Tort MDLs, Bolch Judicial Institute, Duke Law School (Second Edition),  At p. 37 ("But most courts now insist on a competitive process and require individual applications.")(available at https://scholarship.law.duke.edu/bolch/5/ (last visited January 25, 2022).

[33]     *City of Providence, Rhode Island v. Abbvie, Inc.*, 2020 WL 6049139, *4 (Oct. 13, 2020 S.D.N.Y.).

cooperatively with opposing counsel and the court . . . ."[34]  Here, as in all matters KL is involved in, KL has worked cooperatively with other counsel and served as a leader in coordinating certain efforts. For example, almost immediately after filing its complaint, KL prepared letters to each defendant seeking to determine whether it was in the Department of Justice's leniency program, and whether it wished to cooperate with plaintiffs' counsel under the Antitrust Criminal Penalty Enhancement Reform Act.[35] KL circulated drafts of those letters to all plaintiffs' counsel inviting them to join, and all but a few accepted the invitation. KL has also actively participated in numerous calls with other counsel, it has aimed to reach agreement in various contexts, and it has sought to align the answer dates of its complaints with the complaints of other plaintiffs. KL's ability to work cooperatively and professionally with other counsel (as well as with defense counsel) is not only part of KL's ethos, it is another factor favoring its appointment as class counsel.

### 3.1.2   *Rule 23(g) Factor Two: Counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action.*

Like other applicants, KL possesses significant experience in the representation of plaintiffs in complex litigation such as this, including representing individuals, classes, State Attorneys General, and corporations. Unlike many of other applicants, however, KL possesses unique litigation experience that sets KL apart.

The firm is outside counsel to the States of Texas, Idaho, Indiana, Mississippi, North Dakota, South Carolina, and South Dakota in their multi-state antitrust case against Google, *The State of Texas, et al v. Google*, *LLC*, 21-CV-6841 (S.D.N.Y.)(PKC). The case alleges that

---

[34]     MANUAL FOR COMPLEX LITIGATION (FOURTH), § 10.224, at p. 27.
[35]     Pub. L. No. 108-237, § 213, 118 Stat. 665 (2004), amended by Pub. L. No. 111-190, § 3, 124 Stat. 1275 (2010), amended by Pub. L. No. 116-159, § 4303, 134 Stat. 709 (2020).

Google violated Section 2 of the Sherman Act in connection with its monopolization of various markets related to online and in-app display advertising. The case also alleges that Google and Facebook engaged in an illegal conspiracy in violation of Section 1 of the Act. This case is currently one of the largest ongoing antitrust cases in the country.

Additionally, KL has the distinctive experience of managing tens of thousands of cases simultaneously. The firm pioneered the strategy of pursuing individual arbitrations for thousands (or hundreds of thousands) of employees and consumers at the same time, winning numerous precedent-setting victories requiring defendants to comply with their obligation to arbitrate disputes individually. That experience highlights KL's skill in managing the complexities of sprawling class-action litigation such that presented by the cases here. As the Duke Report 2014 states, "Some lawyers are high-profile litigators or experienced trial attorneys but ineffective leaders. It is critical to appoint individuals who have the proven ability to perform the administrative tasks necessary to effectively manage all of the moving parts of the case."[36] KL has the high-profile litigators and experienced attorneys, as well as the demonstrated managerial skills necessary to serve as effective lead counsel.

KL's litigation acumen has also been recognized by courts, which have appointed KL lead counsel in numerous class actions. For example:

- One of KL's lawyers, Zina Bash, is co-lead counsel for a class in an antitrust litigation against Amazon. *See De Coster et al. v. Amazon.com, Inc.*, 21-cv-693 (W.D. Wa.).

- KL is co-lead counsel in *In re LIBOR-Based Financial Instruments Antitrust Litig.,* 11-MD-2262 (S.D.N.Y.)(the Green Pond class), an antitrust class action against the world's

---

[36]   Duke Report 2014, at p. 40.

largest banks, who have been alleged to engage in an illegal conspiracy to manipulate the U.S. Dollar London Interbank Offered Rate.

- KL is co-lead counsel in a class action against a life insurer who improperly terminated the class's term life insurance policies. *See Bentley v. United of Omaha Life Insurance Co.*, 15-CV-7870 (C.D. Cal.).

- KL is co-lead counsel in *Gilbert et al. v AFTRA Retirement Fund, et al.*, 1:20-cv-10834 (S.D.N.Y.), a large data breach matter.

In addition to being appointed lead counsel in various cases, KL is acting as lead counsel in numerous other matters such as *Fishon et al. v. Peloton*, 1:19-cv-11711-LJL (S.D.N.Y.), a consumer-fraud class action against fitness equipment manufacturer Peloton.

KL has also built a formidable products-liability practice, representing thousands of clients in a dozen consolidated actions throughout the country. Federal courts across the nation have recognized KL's creativity and skill by appointing KL's lawyers to take on law and briefing responsibilities in four MDLs. KL is also called upon by plaintiff-bar colleagues in cases in which KL is not otherwise involved to brief and argue complicated legal issues on appeal.

KL's achievements, and those of its individual lawyers, have not gone unnoticed. Numerous partners and associates are recognized by their peers and have been named to several prestigious exclusive legal directories, such as the National Trial Lawyers Top 100, Super Lawyers, LawDragon's 500 Leading Lawyers in America, 500 Leading Plaintiff Consumer Lawyers, and Leading Financial Lawyers.

The attorneys primarily responsible for KL's participation in this case will be partners Zina Bash and Jason Zweig, and associates Brooke Smith and Ellyn Gendler.[37]

### 3.1.2.1 Zina Bash

Zina Bash is a partner at Keller Lenkner, where she founded the firm's Texas office and leads the Public Institutions Practice Group. Before joining the firm, she served as senior counsel to the Attorney General of Texas and as an advisor to several state attorneys general. In her role as senior counsel, she coordinated major multi-state cases with attorneys general across the country, including matters involving constitutional issues and federal statutory questions, and she advised the Attorney General on significant litigation and antitrust matters. Ms. Bash also served as liaison between her office and the U.S. Department of Justice for purposes of investigations and litigation. Previously, she practiced as a litigator at the Washington, D.C., office of Gibson Dunn and was counsel to the Senate Judiciary Committee, where her docket included antitrust and bankruptcy issues. She also served as a law clerk at the U.S. Supreme Court and the U.S. Court of Appeals for the D.C. Circuit. Ms. Bash was born in Monterrey, Mexico and grew up in the Rio Grande Valley in South Texas.

Ms. Bash's representative experiences include serving as court-appointed co-lead counsel for a putative class in an antitrust case against Amazon, *De Coster et al. v. Amazon.com, Inc.*, 21-cv-693 (W.D. Wa.); counsel for the States of Texas, Idaho, Indiana, Mississippi, North Dakota, South Dakota, and South Carolina in multi-state antitrust litigation against Google for its monopolization of, and anti-competitive conduct in, ad-tech markets, *State of Texas et al. v.*

---

[37] Some courts prefer to appoint individual lawyers to leadership positions as opposed to the firm. *See* Duke Report 2014, at p. 29. To the extent that the Court wishes to appoint individual lawyers and not firms, and should the Court wish to appoint an individual lawyer from KL to a leadership position, KL respectfully requests that the Court appoint Ms. Bash.

*Google LLC*, 4:20-cv-957-SDJ (E.D. Tex.); advisor to the Texas Attorney General on the antitrust litigation arising out of the Sprint / T-Mobile merger, *United States et al. v. Deutsche Telekom AG et al.*, No. 1:19–cv-02232 (D.D.C.); counsel or advisor for public-entity plaintiffs in numerous high-profile and complex matters including *In re National Prescription Opiate Litigation*, No. 1:17-MD-2804 (N.D. Ohio), *In re: Volkswagen Clean Diesel Litigation: Texas Clean Air Act Enforcement Cases*, Nos. 03-16-00718-CV and 03-17-00478-CV (Tex. App. – Austin), and *Pandemic-Related Enforcement Actions* (Texas courts); counsel for roughly 50,000 Amazon consumers who pursued arbitration after being harmed by Amazon's anticompetitive "most favored nation" policies, which resulted in anticompetitive overcharges for the products the consumers bought.

### 3.1.2.2 Jason A. Zweig

Mr. Zweig is a Partner at KL has nearly 19 years of antitrust experience, and 23 years of complex litigation experience. Mr. Zweig was a member of the trial team in the antitrust class-action *High Fructose Corn Syrup Antitrust Litig.*, MDL No. 1087 (C.D. Ill.), a case which ultimately settled for over $500 million. Mr. Zweig also played significant roles in the following antitrust class-action litigations, among others: *Hydrogen Peroxide Antitrust Litig.*, MDL No. 1682 (E.D. Pa.); *Plastics Additives Antitrust Litig.*, No. 2:03-CV-2038 (E.D. Pa.); *NBR Antitrust Litig.*, No. 2:03-CV-1898 (W.D. Pa.); and *In re: Linens Antitrust Litig.*, No. 1:03-CV-7823 (S.D.N.Y.).

Before joining KL, Mr. Zweig was the managing partner of the Chicago office of Hagens Berman Sobol Shapiro LLP, a national class-action and complex litigation firm, and prior to that, founded its New York City office. In addition to being extensively involved in over 30 antitrust class actions throughout his career, Mr. Zweig has also represented large corporations in antitrust

litigation. While at Hagens Berman, Mr. Zweig headed that firm's representation of several large

merchants, including American Airlines, Southwest Airlines, Alaska Airlines, FedEx, and the

Minnesota Twins, among others, with respect to their claims in *In re Payment Card Interchange*

*Fee and Merchant Discount Antitrust Litig.*, 1:14-MD-1720 (E.D.N.Y.). Mr. Zweig has

continued to represent large corporations in antitrust litigation, as he is currently representing

FedEx Corporation, Alaska Airlines, American Electric Power, Big Lots Stores, BNSF Railway,

and McLane Companies in the *Blue Cross Blue Shield Antitrust Litig.*, Master File No. 2:13-cv-

20000 (N.D. Al.). And, like Ms. Bash, Mr. Zweig is also representing the States of Texas, Idaho,

Indiana, Mississippi, North Dakota, South Carolina, and South Dakota in the multi-state antitrust

litigation against Google mentioned above.

Prior to joining Hagens Berman, Mr. Zweig was a partner at Kaplan Fox & Kilsheimer in

New York, and an associate at Proskauer Rose in New York. During law school, Mr. Zweig was

a judicial intern to the Honorable Jed. S. Rakoff, U.S. District Court Judge for the Southern

District of New York.

Mr. Zweig is a frequent speaker on class-action and antitrust issues, and was most

recently the chair of the Class Action Committee of the Chicago Bar Association. Throughout

his career, Mr. Zweig has also received numerous awards and recognitions. For example, in 2021

and 2022, Mr. Zweig was named an Illinois SuperLawyer, LawDragon Leading Plaintiff

Financial Lawyer, and the National Trial Lawyers top 100 Trial Lawyers. In addition to his law

practice, Mr. Zweig is committed to his family, community and various philanthropic endeavors.

### 3.1.2.3 Brooke Smith

Ms. Smith is an Associate at KL. She represents plaintiffs in a variety of disputes before

courts and arbitration panels across the country, with particular focus on antitrust and consumer-

protection matters. Ms. Smith is involved in KL's representation of the States of Texas, Idaho, Indiana, Mississippi, North Dakota, South Carolina, and South Dakota in the multi-state antitrust litigation against Google mentioned above. Before joining KL, Ms. Smith was an associate at Schiff Hardin LLP in Chicago, where she litigated complex commercial, intellectual property, and criminal matters at the trial and appellate levels and represented clients in government and internal investigations. Ms. Smith was selected as a 2022 Illinois Super Lawyers Rising Star and is listed in the 2021 and 2022 editions of Best Lawyers: Ones to Watch.

### 3.1.2.4 Ellyn Gendler

As an Associate at KL, Ms. Gendler is an advocate for consumers and individuals harmed by corporate wrongdoing across the United States, in a variety of both litigation and arbitration matters. Her contributions include legal strategy development, law and briefing, and the litigation and management of individual arbitrations, including consumer fraud and antitrust claims. She also supports the firm's product liability practice in litigation against formula manufacturers on behalf of injured infants. Before joining KL, Ms. Gendler was a law clerk at the U.S. Court of Appeals for the Seventh Circuit. She has also worked as a tenant attorney in the San Francisco Bay Area, where she represented low-income clients in administrative and court proceedings, including evictions, subsidy terminations, and fair-housing complaints. Ms. Gendler earned her law degree from Harvard Law School, where she was an Executive Editor of the Harvard Journal of Law & Gender. She earned her undergraduate degree in mathematics from the University of Michigan, graduating with distinction.

### 3.1.3   Factor 3: Counsel's knowledge of applicable law.

Like many of the applicants, KL's knowledge of the applicable law is extensive. As detailed above, KL is currently involved in a number of large antitrust litigations and class

actions. KL is currently outside counsel to seven different State Attorneys General in *The State of Texas, et al v. Google*, *LLC*, 21-CV-6841 (S.D.N.Y.)(PKC). Ms. Bash is also currently court appointed co-lead counsel in a large antitrust class action against Amazon in *De Coster et al. v. Amazon.com, Inc.*, 21-cv-693 (W.D. Wa.). The KL attorneys responsible for this matter, collectively, have decades of antitrust and class action experience. KL is currently class counsel in numerous other class actions.

### 3.1.4   *Rule 23(g) Factor 4: The resources that counsel will commit to representing the class.*

KL will commit whatever human and financial resources are necessary in this case to vindicate the rights of the victims of the defendants' conspiracy. Large and expensive litigation is nothing new for KL. It was founded with the mission of taking on the most complex and resource-intensive litigation challenges. For example, the firm has made substantial investments in the staff and infrastructure to pursue its groundbreaking mass arbitration practice. As part of that practice, KL has advanced arbitration filing fees for its clients totaling tens of millions of dollars.

### 3.1.5   *The Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."*

Although not one of the specific four enumerated Rule 23(g)(1)(A) factors, Rule 23 also provides that in addition to those four factors, the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."[38] Here, KL also brings significant value to any leadership group. As referenced above, these cases result from the unsealing of a criminal indictment against Mahesh Patel, a former Pratt & Whitney executive, on December 9, 2021. The DOJ's criminal investigation is ongoing, and, the DOJ will want to be

---

[38]     Rule 23(g)(1)(B).

heard with respect to discovery and other matters in these cases. Whoever is appointed class counsel will need to foster a cooperative working relationship with the DOJ. KL possesses extensive experience in this regard.

KL has unique experience in working with antitrust enforcers. As referenced above, KL actually represents antitrust enforcers, as it is currently representing seven states in a landmark antitrust litigation against Google. Ms. Bash, one of Keller Lenkner's lawyers in this matter, is also a former member of the Texas Attorney General's office, and while there, her main role was liaising with other states and the Department of Justice, to coordinate various investigations and cases. Further, Mr. Zweig, has experience working closely with the Department of Justice. In connection with the DOJ's litigation against American Express,[39] Mr. Zweig represented several witnesses that the DOJ called to trial in the case, and worked closely with the DOJ lawyers to prepare these witnesses for trial testimony.

### 4.      Oral argument

KL believes that it would assist the Court to hear and observe those who have applied to be class counsel. This would give the Court "an opportunity to observe counsel's demeanor and professionalism, get a sense of their leadership qualities, and assess the level of cooperation among counsel."[40] Therefore, pursuant to the Court's pretrial preferences, KL respectfully requests that the Court allow for oral argument with respect to the class counsel applications.

### 5.      Conclusion

KL respectfully requests that it be appointed as class counsel.

---

[39]      *United States of America et al., v. American Express Co., et al.*, 1:10-CV-04496 (E.D.N.Y.).
[40]      Duke Report 2014, at p. 34.

Date: February 1, 2022

Respectfully submitted,

/s/ Zina G. Bash
Zina Bash (admitted *pro hac vice*)
**KELLER LENKNER LLC**
111 Congress Avenue, Suite 500
Austin, TX 78701
Email: zina.bash@kellerlenkner.com
Fax: (312) 971-3502
Tel: (501) 690-0990

Jason A. Zweig (admitted *pro hac vice*)
Brooke Smith (*pro hac vice* forthcoming)
Ellyn Gendler (*pro hac vice* forthcoming)
**KELLER LENKNER LLC**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
Email: jaz@kellerlenkner.com
brooke.smith@kellerlenkner.com
Ellyn.gendler@kellerlenkner.com
Fax: (312) 971-3502
Tel: (312) 741-5220

*Attorneys for Plaintiffs Matthew Cydylo
and Joshua Ivaldi*