# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID GRANATA, | |
| Plaintiff, | No. 3:21-cv-01657-SVN |
| v. | |
| PRATT & WHITNEY, A DIVISION OF RAYTHEON TECHNOLOGIES CORPORATION; et al., | February 1, 2022 |
| Defendants. | |

## APPLICATION TO APPOINT LABATON SUCHAROW LLP AND QUINN EMANUEL URQUHART & SULLIVAN LLP AS INTERIM CO-LEAD CLASS COUNSEL

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

LEGAL STANDARD............................................................................................................. 6

I.     LABATON AND QUINN EMANUEL HAVE PERFORMED EXTENSIVE
WORK DEVELOPING THE CLAIMS THAT RESULTED IN THE FIRST-
FILED COMPLAINT ................................................................................................. 7

II.    LABATON AND QUINN EMANUEL'S KNOWLEDGE OF ANTITRUST
LAW AND EXPERIENCE IN LITIGATING COMPLEX ANTITRUST CASES ........... 9

       A.     Labaton ........................................................................................... 10

       B.     Quinn Emanuel ................................................................................ 11

       C.     HSSK and Garrison......................................................................... 16

III.   LABATON AND QUINN EMANUEL'S RESOURCES ARE
UNPARALLELED AMONG THE FIRMS VYING FOR APPOINTMENT AS
LEAD COUNSEL ...................................................................................................... 17

IV.   OUR APPLICATION WILL BEST SERVE THE INTERESTS OF
EFFICIENCY ............................................................................................................. 21

CONCLUSION..................................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Aggrenox Antitrust Litig.*,
  No. 14-md-02516 (D. Conn. 2014)..................................................................7

*Alaska Electrical Pension Fund v. Bank of America Corp.*,
  175 F. Supp. 3d 44 (S.D.N.Y. 2016).............................................................13

*Blenheim Cap. Holdings Ltd. v. Lockheed Martin Corp. et al.*,
  No. 20-cv-01608-LO-JFA (E.D. Va.).............................................................14

*In re Bystolic Antitrust Litig.*,
  No. 20-cv-05735 (S.D.N.Y. 2020).....................................................11, 19, 22

*In re Celebrex (Celecoxib) Antitrust Litig.*,
  No. 14-cv-00395 (E.D. Va. 2015)..................................................................22

*In re Credit Default Swaps Antitrust Litig.*,
  No. 13-md-2476 (S.D.N.Y. 2013) ......................................................... *passim*

*In re Crude Oil Commodity Futures Litig.*,
  No. 11-cv-3600, 2012 WL 569195 (S.D.N.Y. Feb. 14, 2012) .............................21

*In re Flexible Polyurethane Foam Antitrust Litig.*,
  No. 10-md-2196 (N.D. Ohio) ........................................................................12

*In re Foreign Exchange Benchmark Rates Antitrust Litig.*,
  No. 13-cv-7789 (S.D.N.Y. 2014)...................................................................22

*In re Gold Fixing Antitrust and Commodity Exchange Act Litig.*,
  No. 14-cv-02917 (S.D.N.Y. 2014)............................................................14, 22

*Granata v. Pratt & Whitney et al.*,
  No. 3:21-cv-01657-SVN (S.D.N.Y. Dec. 14, 2021)......................................2, 7, 8, 9

*In re GSE Bonds Antitrust Litig.*,
  377 F. Supp. 3d 437 (S.D.N.Y. 2019)...............................................................7

*In re Int. Rate Swaps Antitrust Litig.*,
  No. 16-MC-2704, 2016 WL 4131846 (S.D.N.Y. Aug. 3, 2016) ..................... *passim*

*In re Municipal Derivatives Antitrust Litig.*,
  252 F.R.D. 184 (S.D.N.Y. 2008) .................................................................6, 7

*In re Opana ER Antitrust Litig.*,
No. 14-cv-10150 (N.D. Ill. 2015) ........................................................22

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
991 F. Supp. 2d 437 (E.D.N.Y. Jan. 10, 2014) ...........................6, 16, 22

*In re Platinum and Palladium Antitrust Litig.*,
No. 14-cv-9391 (S.D.N.Y. 2015) ..........................................................22

*Pro Music Rights, LLC v. Apple, Inc.*,
No. 3:20-cv-00309-JAM (D. Conn. 2021) .............................................16

*In re Railway Industry Employee No-Poach Antitrust Litigation*,
No. 18-MC-00798 (W.D. Pa.) ...............................................................10

*Rogerson Aircraft Corp. v. Bell Helicopter Textron*,
No. 348-296827-17 (Tex. Dist. Ct.) .......................................................14

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
No. 14-md-02503 (D. Mass. 2014) ........................................................22

*SPS Tech., LLC v. Briles Aerospace, Inc.*,
No. 2018-cv-09536 (C.D. Cal.) .............................................................14

*In re SSA Bonds Antitrust Litig.*,
No. 16-v-3711 (S.D.N.Y. 2016) ............................................................21

*In re Treasury Sec. Auction Antitrust Litig.*,
No. 15-md-2673, 2017 WL 10991411 (S.D.N.Y. Aug. 23, 2017) ......9, 17

*United States of America v. The Boeing Co.*,
No. 21-cr-005-O (N.D. Tex.) .................................................................14

*United States of America v. Mahesh Patel, et al.*,
No. 21-cr-00220-VAB (D. Conn. 2020) ...................................................9

*United States of America v. Mahesh Patel*,
No. 21-mj-01189-RAR (D. Conn. 2021) ..................................................8

*ViaSat Inc. v. Space Sys. Loral, Inc.*,
No. 12-cv-00260 (S.D. Cal.) .................................................................14

*Virgin Galactic v. Firefly LLC, Inc.*,
No. BC609407 (Cal. Sup. Ct.) ..............................................................14

*Visa, Inc. v. Osborn*,
No. 15-961 (U.S. 2016) .........................................................................12

*Wilson et al. v. Raytheon Tech. Corp. et al.*,
    No. 22-cv-00062 (D. Conn. 2021) ........................................................................9

**Statutes, Rules and Regulations**

Fed. R. Civ. P. 23(g) ..............................................................................................1

Fed. R. Civ. P. 23(g)(1)(A)(i) .............................................................................1, 7

Fed. R. Civ. P. 23(g)(1)(A)(ii) ...............................................................................2

Fed. R. Civ. P. 23(g)(1)(A)(iii) ..............................................................................3

Fed. R. Civ. P. 23(g)(1)(A)(iv) ...............................................................................4

Fed. R. Civ. P. 23(g)(1)(B) ..................................................................................5, 7

Fed. R. Civ. P. 23(g)(2)...........................................................................................6

**Secondary Authorities**

*Manual for Complex Litigation*, Fourth § 10.221 (2004) .....................................7, 21

## PRELIMINARY STATEMENT

Labaton Sucharow LLP ("Labaton") and Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel") respectfully apply to this Court for appointment as interim co-lead counsel. We respectfully submit that our appointment as interim co-lead counsel, a role in which we would serve with the assistance of two local Connecticut firms, Hurwitz Sagarin Slossberg & Knuff, LLC ("HSSK") and Garrison, Levin-Epstein, Fitzgerald & Pirrotti, P.C. ("Garrison"), is in the best interest of the proposed class under Federal Rule 23(g).

*First*, our firms played *the* leading role "in identifying or investigating potential claims" and in filing the first class action in this District. Fed. R. Civ. P. 23(g)(1)(A)(i). While first-filed status is not always dispositive, it has special weight where, as here, it is the result of counsel's independent investigation. In this case, that investigation began after David Granata took the initiative over a year ago to retain experienced Connecticut antitrust attorneys at HSSK to look into his concerns about how he was treated as an employee in the aerospace industry. HSSK decided to partner with Labaton to investigate Mr. Granata's concerns because of Labaton's strong reputation for investigating and prosecuting anticompetitive conduct. Labaton and HSSK then spent hundreds of hours over the past nine months investigating potential collusion in aerospace labor markets. They interviewed nearly two dozen former employees of the companies whom they later named as Defendants, consulted a leading economic expert, and conducted in-depth analyses of the aerospace labor market.

On December 14, 2021, shortly after the U.S. Department of Justice ("DOJ") unsealed a heavily redacted affidavit in support of a criminal complaint (filed under seal) against one of the Defendants, Mahesh Patel, Mr. Granata made the courageous decision to step forward and file the first civil complaint challenging Defendants' misconduct. And he did so with the counsel of his choice, Labaton and HSSK, not only on his own behalf but also on behalf of a class of

similarly-situated individuals.  Labaton and HSSK's extensive investigation put them in a position to digest the DOJ filing and move quickly with filing Mr. Granata's complaint (the "*Granata* Complaint").  The *Granata* Complaint challenges unlawful agreements among Defendants (aerospace engineering firms and certain of their executives) to restrain competition in the labor markets in which they compete for engineers and other skilled employees.[1]  As the first class action complaint filed, the *Granata* Complaint became the template for nearly every other complaint filed in this District afterwards.

Quinn Emanuel conducted its own independent investigation, drawing on the firm's sophistication and experience in the aerospace industry and with no-poach matters.  Quinn Emanuel interviewed more than 20 affected employees and retained leading economic consultants, including Fiona Scott Morton, Professor of Economics at Yale University.  Professor Scott Morton was formerly the Deputy Assistant Attorney General for Economic Analysis (Chief Economist) at the Antitrust Division of the DOJ, where she helped enforce the nation's antitrust laws.  Quinn Emanuel has also retained Edward Leamer, Professor of Management, Economics, and Statistics at the University of California at Los Angeles, who is one of the nation's leading experts on the impact of no-poach agreements on labor markets.[2]  Labaton then chose to partner with Quinn Emanuel because of the depth of Quinn Emanuel's investigation and its reputation as one of the top litigation firms in the world with leading antitrust and class action practices.

***Second***, our firms' collective experience "in handling class actions [and] other complex litigation," Fed. R. Civ. P. 23(g)(1)(A)(ii), is second to none, and we are uniquely knowledgeable

---

[1] Complaint, *Granata v. Pratt & Whitney et al.,* No. 3:21-cv-01657-SVN (S.D.N.Y. Dec. 14, 2021), Dkt. # 1.

[2] *See* Declaration of Daniel L. Brockett ¶¶ 6-8.

about the aerospace industry and the legal issues at the center of this case, Fed. R. Civ. P. 23(g)(1)(A)(iii).  Over the past decade alone, Quinn Emanuel has achieved over $40 billion in settlements and verdicts for its plaintiff clients.  Recently, Quinn Emanuel was again recognized by BTI Consulting, based on its survey of Fortune 500 corporate counsel and others, as a member of the "2022 Fearsome Foursome," an elite group of firms that adversaries "don't want to see on the other side—and for good reason."[3]  While Quinn Emanuel has received this recognition for over a decade, no other firm likely to file a competing application for interim class counsel has *ever* been recognized in this fashion.  Quinn Emanuel is also well known for its ability to win complex cases at trial.  Just last week, Quinn Emanuel was again recognized by *Law360* as one of its "Trial Groups of the Year" for its ability to take large and complex cases to trial and win.[4]  Quinn Emanuel's proven trial abilities and successes can often lead to greater and quicker settlements for its clients.

Labaton is also one of the country's leading antitrust class action firms and regularly earns leadership appointments in antitrust cases, including some of the largest ever litigated.  The firm's record of success is a result of the in-depth, wide-ranging experience and knowledge of its lawyers, whose sole focus is investigating and litigating antitrust class actions in federal court.

Collectively, our firms are also uniquely prepared to prosecute claims on behalf of aggrieved employees in the aerospace industry.  As discussed below, Quinn Emanuel has represented dozens of clients in the aerospace industry over the past decade and has gained a

---

[3] *The Four Firms That GCs Fear The Most*, LAW360 (Oct. 17, 2021), https://www.law360.com/articles/1093083.  Quinn Emanuel has been recognized as *the* most feared firm twice (in 2020 and 2021) and has been a member of the Fearsome Foursome in each of the 11 reports BTI has published on the topic.

[4] As Judge Cote in the Southern District of New York observed, Quinn Emanuel attorneys are not just litigators but "trial lawyers who can actually go into court and try a case."  *In re Credit Default Swaps Antitrust Litig.*, ("*CDS*"), 13-MD-2476, (S.D.N.Y. Dec. 5, 2013), Dkt.#. 244, Hr'g Tr. at 37-38. Quinn Emanuel lawyers have tried and arbitrated over 2,500 cases and won most of them.

depth of knowledge about this industry that is unmatched by other firms.  Moreover, Labaton and Quinn Emanuel recognize that this antitrust case is fundamentally about vindicating the rights of *employees*, many of whom are based in Connecticut.  Accordingly, we brought Garrison to the team because of its reputation as *the* premier employee rights firm in Connecticut.  If Labaton and Quinn Emanuel are selected as interim co-lead counsel, we will task Garrison with ensuring that this case is prosecuted at every step (including in settlement negotiations), with a focus on employee rights.

***Third***, our firms have unparalleled resources that we will "commit to representing the class," Fed. R. Civ. P. 23(g)(1)(A)(iv), and we will do so efficiently.  Quinn Emanuel is the largest firm in the world devoted solely to business litigation and arbitration, and it will never be overwhelmed by its adversaries, no matter how many defense firms are aligned against the plaintiff class.  Labaton too boasts a strong team of former federal and state government antitrust enforcers and attorneys from leading defense firms with decades of combined experience as antitrust class action attorneys.  And while we will staff this case with a lean core team of partners (identified below), and associates chosen specifically for this case, our size and reach give us the ability to deploy some of the best lawyers in the world for the class's benefit, no matter what needs may arise.

For example, if the class needs to compel compliance with subpoenas in, say, Florida (where many affected employees are located and relevant events occurred), we can do so out of Quinn Emanuel's Miami office.  If the class needs to defend or pursue an appeal in the Second Circuit, we can deploy Quinn Emanuel's Kathleen Sullivan and her team of appellate litigators who have a proven track record in the Second Circuit.  (And we of course can rely on that appellate team to guide litigation decisions even before appeals arise.)  At every turn, and no

matter the issue or needs, we will offer the class a deep bench of talented lawyers ready to meet the challenge.  No other firms can make this same level of commitment.

*Finally*, a number of "other matter[s] pertinent to counsel's ability to fairly and adequately represent the interests of the class," Fed. R. Civ. P. 23(g)(1)(B), further distinguish our leadership application.  For one, the successful prosecution of this case will require the ability to work constructively with federal prosecutors, and our firms are well positioned to do so.  Quinn Emanuel has more former federal prosecutors than any other firm in the nation, including Manisha Sheth, one of the partners leading the case for Quinn Emanuel.  More recently, Ms. Sheth was the Executive Deputy Attorney General for the Division of Economic Justice at the Office of the New York Attorney General ("NYAG"), and as part of that role, oversaw every antitrust investigation and enforcement proceeding by the State of New York.  Likewise, Greg Asciolla, who will lead the case for Labaton, came to private practice after years of service in the DOJ's Antitrust Division.

We also offer the class a diverse set of attorneys, with women, including women of color, and LGTBQ attorneys playing a leading role.  The differing perspectives from these individuals will benefit the class.  Cognizant of the Court's Pretrial Preferences, we are also committed to providing opportunities for our junior attorneys to appear before the Court and have substantial responsibilities in the litigation.

Our proposed structure is also efficient and will avoid waste or duplication of effort. Since Labaton and Quinn Emanuel (as assisted by our local Connecticut counsel) can cover any need that could arise for the class, we will operate with maximum efficiency.  In our experience, when more than two firms are appointed to a leadership role, the various firms often jockey to increase their own perceived contributions—which does not serve the class.  In addition to

keeping our leadership structure lean, we have included in this submission a template for strictly controlling time spent and expenses incurred, fulfilling our duty to maximize the recovery for the proposed class members.[5]

Indeed, our commitment to efficiency is already evident:  Although we have been retained by numerous clients who may be added to the consolidated amended complaint, our firms have chosen not to file multiple complaints in the interest of avoiding needless duplication and burdens on court staff.  Of even greater significance, if this litigation succeeds in a recovery for the class, we would commit to seeking a fee percentage that is no higher than the graduated, cumulative scale developed by Judge John Gleeson (Ret.) in *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. Jan. 10, 2014), and now endorsed by other federal courts.  This commitment too will inure to the financial benefit of the class.

## <u>LEGAL STANDARD</u>

In selecting interim lead counsel, courts "appoint the applicant best able to represent the interests of the class."  Fed. R. Civ. P. 23(g)(2).  In making this determination, courts generally "look to the same factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A)."  *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008).  Thus, courts consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  Courts may also consider "any other matter pertinent to counsel's ability to fairly

---

[5] *See* Declaration of Robin A. van der Meulen, Exhibit 2.

and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The overriding

principle guiding leadership appointment is the efficient promotion of the class's best interests.

*See Manual for Complex Litigation*, Federal Judicial Center, at § 10.221 (4th ed. 2004)

("Manual").

## I.   LABATON AND QUINN EMANUEL HAVE PERFORMED EXTENSIVE WORK DEVELOPING THE CLAIMS THAT RESULTED IN THE FIRST-FILED COMPLAINT

Labaton and HSSK developed this case over the course of more than a year, leading to

the first-filed case (the *Granata* Complaint) on December 14, 2021.[6] Labaton and HSSK's

extraordinary work "identifying" and "investigating potential claims in the action," is a

substantial factor favoring their leadership application. Fed. R. Civ. P. 23(g)(1)(A)(i). *See also,*

*e.g., In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. at 186 (appointing lead counsel based on

its substantial investigation over an eleven-month period); *In re Aggrenox Antitrust Litig.*, No

14-md-02516 (D. Conn. June 4, 2014) (Dkt. # 86, Transcript, at 9) (awarding lead counsel status

to firm who filed the first case and did the preliminary research).[7]

Labaton and HSSK began work long before the DOJ publicly filed *any* materials related

to its criminal investigation. In November 2020, over a year before the government announced

its investigation, Mr. Granata contacted HSSK with concerns about his treatment as an employee

in the aerospace industry.[8] HSSK invited Labaton to assist in the investigation.[9] These firms

---

[6] *See* van der Meulen Decl. ¶ 4.

[7] *See also In re GSE Bonds Antitrust Litig.*, 377 F. Supp. 3d 437, 38 (S.D.N.Y. 2019) ("[T]he most compelling case [to be appointed lead is when a firm] represent[s] the plaintiff[] who filed the first of the[] consolidated actions."); *In re Int. Rate Swaps Antitrust Litig.*, No. 16-MC-2704, 2016 WL 4131846, at *3 (S.D.N.Y. Aug. 3, 2016) (appointing lead counsel, including Quinn Emanuel, after finding their first-filed action "catalyzed the filing of the later actions"); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. at 186(appointing a firm as lead counsel in part because it "filed the first complaint[] in th[e] case, and the subsequent complaints filed by [other firms] [we]re substantially similar to th[at] initial filing[]").

[8] *See* van der Meulen Decl. ¶ 4.

[9] *See id.*

had worked together in the past, and HSSK was aware of Labaton's reputation for excellence in cases involving price fixing and other anticompetitive practices.[10]

Together, Labaton and HSSK spent hundreds of hours of attorney and investigator time investigating the underlying conduct alleged in the *Granata* Complaint on a contingent fee basis (Mr. Granata was not charged a dime).[11]  They identified and contacted over 60 potential industry participants, interviewing 20 of them.[12]  They spoke with the public servants leading the government investigations.[13]  They conferred with a leading economist in antitrust and labor markets, and later consulted with additional experts following the filing of Quinn Emmanuel's complaint.[14]  They analyzed the labor market and aerospace industry, the potential defendants, the potential class members, and the potential legal claims.[15]

This work led to the *Granata* Complaint, the first class action challenging Defendants' conspiracy.[16]  Mr. Granata instructed Labaton and HSSK to file this complaint after the DOJ partially unsealed an Affidavit in Support of Criminal Complaint and Arrest Warrant related to the anticompetitive scheme.[17]  This Affidavit was heavily redacted and the criminal complaint was filed under seal, so the public was not alerted as to the identity of any of the perpetrators other than Mr. Patel.  But, because of Labaton and HSSK's extensive investigation, they were able to identify and name several companies and individual defendants in the *Granata* Complaint

---

[10] *See id.*

[11] *See id.* ¶ 7.

[12] *See id.* ¶ 8.

[13] *See id.* ¶ 13.

[14] *See id.* ¶ 10.

[15] *See id.* ¶ 11.

[16] *See id.* ¶ 17.

[17] *See* Affidavit in Support of Criminal Complaint and Arrest Warrant, *United States of America v. Mahesh Patel,* No. 3:21-mj-01189-RAR (D. Conn. Dec. 7, 2021), Dkt. # 15.

*before* the DOJ had publicly identified them.[18]  The *Granata* Complaint did not simply "piggyback[] on an existing government investigation or enforcement action," but was the product of a thorough and "independent investigation."[19]

Quinn Emanuel likewise conducted its own investigation before filing its complaint (the *Wilson* Complaint) with Garrison.[20]  Quinn Emanuel interviewed more than 20 former employees of Defendants and gathered evidence regarding Defendants' conspiracy.[21]  Of particular significance, Quinn Emanuel retained two top-flight economists who will enormously benefit the class: Professor Scott Morton[22] and Professor Leamer[23], as noted above.

In short, Labaton and Quinn Emanuel have taken the leading role in identifying and investigating these civil claims, and this first factor thus weighs heavily in our favor.

## II.    LABATON AND QUINN EMANUEL'S KNOWLEDGE OF ANTITRUST LAW AND EXPERIENCE IN LITIGATING COMPLEX ANTITRUST CASES

Labaton and Quinn Emanuel's experience and reputations for prosecuting antitrust class actions are second to none.  Quinn Emanuel is also uniquely sophisticated in the aerospace

---

[18] *See* van der Meulen Decl. ¶ 16.  On December 15, 2021, a federal grand jury in Bridgeport, Connecticut returned an indictment charging Mahesh Patel, Robert Harvey, Harpreet Wasan, Tom Edwards, Gary Prus, and Steven Houghtaling for participating in the conspiracy—all but one of which were first identified and named in the *Granata* Complaint.  Indictment, *United States of America v. Mahesh Patel, et al.*, No. 3:21-cr-00220-VAB (D. Conn. Dec. 15, 2020).

[19] *See In re Int. Rate Swaps*, 2016 WL 4131846, at *3 (appointing firms as lead after finding that "[t]he firms represent[ed] that they interviewed dozens of market participants and confidential witnesses and consulted leading experts").  This factor also highlights the value of cultivating industry insiders and knowledge in appointing class leadership.  *See, e.g.*, Dkt. # 186, Order at 4-5, *In re Treasury Sec. Auction Antitrust Litig.*, No. 15-MD-2673 (S.D.N.Y. Aug. 23, 2017) (selecting co-lead counsel in part because they "interviewed . . . industry insiders"); *In re Int. Rate Swaps*, 2016 WL 4131846, at *3 (appointing Quinn Emanuel as lead counsel in part because it "interviewed dozens of market participants").

[20] *Wilson et al. v. Raytheon Tech. Corp. et al.*, No. 3:22-cv-00062, Dkt. # 1 (D. Conn. Jan. 13, 2021).

[21] *See* Brockett Decl. ¶ 5.

[22] *See id.* ¶ 7.

[23] *See id.* ¶ 8.

industry, and our firms collectively have a wealth of experience in no-poach and employee-rights matters, all of which will be assets for the class.

A.   **Labaton**

Labaton is well known for successfully investigating and litigating antitrust cases, including claims of price-fixing, monopolization, and market allocation.[24]  Labaton's antitrust lawyers have litigated (or currently are litigating) some of the biggest antitrust class actions in the United States, tackling global price-fixing cartels, fighting monopolies in the pharmaceutical and sports industries, and challenging benchmark price manipulation in the financial products services industry.[25]

Labaton served as co-lead counsel in *In re Air Cargo Shipping Services Antitrust Litigation*, where it helped secure more than $1.2 billion in recoveries from over 30 global airlines for price-fixing air cargo shipping services worldwide.  And in *In re Aftermarket Automotive Lighting Products Antitrust Litigation*, Labaton antitrust attorneys intensely litigated a global price-fixing conspiracy involving automotive lighting products all the way to trial, securing a settlement of more than $50 million on the eve of trial.  More recently, in *In re Generic Pharmaceuticals Pricing Antitrust Litigation*—one of the largest antitrust cases of all time—Labaton's Antitrust Practice Group leader, Gregory Asciolla, serves on the Plaintiffs' Steering Committee, where he represents end-payor plaintiffs challenging over 35 of the world's largest pharmaceutical companies for price-fixing over 200 generic drugs.[26]

---

[24] Industry publications and peer rankings consistently recognize Labaton and its antitrust attorneys as respected leaders in antitrust litigation, including *Benchmark Litigation*, *Chambers & Partners*, *The Legal 500*, *Global Competition Review*, *Lawdragon*, and *The Best Lawyers in America*.

[25] Before originating this case, Labaton was also one of the class counsel in *In re Railway Industry Employee No-Poach Antitrust Litigation*, No. 2:18-MC-00798 (W.D. Pa.), a no-poach case involving the railway industry.

[26] *See* van der Meulen Decl., Exhibit 1 (listing current and past antitrust class actions in which Labaton was appointed to a leadership role or served as class counsel).

The proposed Labaton team for this case includes a diverse group of talented antitrust attorneys:

- ***Gregory Asciolla***, Antitrust Practice Group chair, is a seasoned practitioner with nearly 30 years of antitrust experience, including with DOJ's Antitrust Division. Mr. Asciolla has obtained many significant victories serving in a leadership role in antitrust class actions, including *Air Cargo* ($1.2 billion in settlements).  He serves in leadership roles in several major antitrust cases, including on the End-Payor Plaintiffs' Steering Committee in *Generic Pharmaceuticals Pricing*, one of the largest antitrust cases in history.  Mr. Asciolla was named Titan of the Plaintiffs Bar by *Law 360,* Litigation Star and in Band 1 for Antitrust by *Benchmark Litigation*, a leading competition (U.S. plaintiff) lawyer by *Global Competition Review*, and a Leading Lawyer by *The Legal 500*.  He was recommended by *The Legal 500* for being "very effective plaintiffs' counsel" and for "always act[ing] with a good degree of professionalism."  He serves in officer positions in the New York State Bar Association's Antitrust Law Section, the New York County Lawyers' Association Antitrust Committee, the Committee to Support the Antitrust Laws, and he was recently elected to the Advisory Board of the American Antitrust Institute.

- ***Robin van der Meulen***, a partner in the Antitrust Practice Group, has more than a decade of antitrust litigation experience on both the plaintiff and defense side.  Ms. van der Meulen was recently appointed to lead a class of end-payor plaintiffs in *In re Bystolic Antitrust Litigation*, which is pending in the Southern District of New York.  She is also a leader of the Antitrust bar, currently serving as Secretary on the Executive Committee of the New York State Bar Association's Antitrust Law Section and is a vice-chair of the ABA Antitrust Section's Insurance and Financial Services Committee.  *The Legal 500* has recommended Ms. van der Meulen for excellence in the field of Antitrust Civil Litigation and Class Actions, describing her as "persistent, persuasive, and well-respected by peers and opponents alike," and she was selected to Benchmark Litigation's "40 & Under Hot List" as one of the "best and brightest law firm partners."

- ***Matthew J. Perez***, of counsel in the Antitrust Practice Group, formerly prosecuted antitrust cases at the NYAG's Antitrust Bureau, where he received the Louis J. Lefkowitz Memorial Award for his work investigating bid rigging and other illegal conduct in the municipal bond derivatives market, resulting in more than $260 million in restitution to municipalities and nonprofit entities.

**B.**   **Quinn Emanuel**

Quinn Emanuel is recognized as having one of the world's leading antitrust and class action practices—on *both* sides of the "v."  Courts frequently appoint Quinn Emanuel to serve as lead or co-lead counsel in some of the most significant antitrust cases, and leading corporations

regularly hire Quinn Emanuel in complex antitrust matters across a broad range of industries.[27]

Quinn Emanuel's antitrust lawyers are not just paper litigators but accomplished courtroom

advocates.

Quinn Emanuel has been described by *The American Lawyer* as a "litigation

powerhouse" and by *The Wall Street Journal* as a "global force in business litigation."[28]  Most

recently, Quinn Emanuel was ranked as "Tier One" in Competition and Antitrust and included in

the list of "Top 20 Trial Law Firms" for 2021.[29]  The Global Competition Review ranked Quinn

Emanuel's antitrust practice number five on their list of the world's top competition litigation

practices.  Quinn Emanuel was also ranked as one of *Law360*'s 2021 Practice Groups of the Year

in the areas of Class Action, and Trials.[30]  In 2015, *The Recorder* named Quinn Emanuel the

Antitrust "Litigation Department of the Year," while *The American Lawyer* listed Quinn

Emanuel as a finalist for "Litigation Department of the Year" for 2015 and 2016.[31]

Quinn Emanuel's success in these practice areas is exemplified by the *Credit Default*

*Swaps* antitrust action, where the firm deployed its expertise in litigating against numerous Wall

---

[27] *See, e.g.*, *Visa, Inc. v. Osborn*, No. 15-961 (U.S.) (representing class plaintiffs before the Supreme Court in an antitrust action against Visa and Mastercard); *In re Flexible Polyurethane Foam Antitrust Litig.*, No. 10-md-2196 (N.D. Ohio) (achieving class certification on behalf of plaintiffs in an action under the Sherman Antitrust Act). For a full list of the cases in which Quinn Emanuel has been appointed lead counsel in antitrust in other cases, *see Practice Areas: Class Action*, Quinn Emanuel, https://www.quinnemanuel.com/practice-areas/class-action-litigation/ (last visited Feb. 1, 2022).

[28] Jessica E. Vascellaro & Ashby Jones, *Apple-Samsung Patent War Pits Two Legal Stars*, WALL STREET JOURNAL (Aug. 3, 2012), https://www.wsj.com/articles/SB10000872396390443545 50457756537294464 6302.

[29] *Best Law Firms by Practice Area*, FIRSTHAND, https://firsthand.co/best-companies-to-work-for/law/best-law-firms-in-each-practice-area/antitrust (last visited Jan. 29, 2022); *Vault Law 100*, FIRSTHAND, https://bticonsulting.com/themadclientist/the-39-firms-most-feared-in-litigation (last visited Jan. 29, 2022) (ranking Quinn Emanuel #13 for 2021).

[30] *Rankings: Practice Groups of the Year*, LAW360 (Jan. 26, 2022), https://www.law360.com/rankings/practice-groups-of-the-year?facet=&page=1&per_page=25&q=.

[31] *Quinn Emanuel Named "Antitrust Litigation Department of the Year*," QUINN EMANUEL (July 1, 2015), https://www.quinnemanuel.com/the-firm/news-events/#rootNodeId=1054&pageNumber=9&byNewsType=1748.

Street banks about a conspiracy involving complex financial products to recover $1.87 billion after a little more than *one year* of litigation.  The Honorable Denise L. Cote of the Southern District of New York appointed Quinn Emanuel to be the "private attorney general" in that action, recognizing that:

> [Quinn Emanuel] has a track record, a knowledge of the [relevant] market and antitrust litigation.  It's well equipped with trial lawyers who can actually go into court and try a case.  It has run massive discovery cases by itself essentially.  And it has extraordinary strengths with respect to appellate litigation. . . . .

*In re Credit Default Swaps Antitrust Litig. ("CDS")*, 13-MD-2476, Dkt. # 244 at 37-38 (S.D.N.Y. Dec. 5, 2013).

In his declaration supporting the terms of the settlement in that matter, the mediator, the Honorable Daniel Weinstein (Ret.), stated:

> I would go so far as to say that, in 30-plus years of mediating high-stakes disputes, this was *one of the finest examples of efficient and effective lawyering by plaintiffs' counsel that I have ever witnessed*.  I have rarely, if ever, observed a Plaintiff in a case of this complexity and size, achieve a result of this magnitude with the speed that Plaintiffs achieved here.[32]

Quinn Emanuel has also partnered with Labaton on class action antitrust cases.  This collaboration includes *Alaska Electrical Pension Fund v. Bank of America Corp.*, 175 F. Supp. 3d 44 (S.D.N.Y. 2016) ("*ISDAfix*"), where Quinn Emanuel served as co-lead counsel in a case alleging that 14 major banks manipulated "ISDAfix," a benchmark for a broad range of interest rate derivatives.  Working with Labaton, Quinn Emanuel filed a detailed complaint *before* the Commodity Futures Trading Commission publicly disclosed that it had opened a criminal investigation.  The *ISDAfix* case settled for over $500 million.  There, too, the Court recognized

---

[32] Weinstein Decl., *CDS*, Dkt. #. 447, ¶ 4 (emphasis added).

Quinn Emanuel's efficiency and success in an extraordinarily complicated case.[33]  There are many other examples of appointments of our firms to complex antitrust cases like this one.[34]

Quinn Emanuel also has a great depth of knowledge about the aerospace industry specifically, having represented dozens of clients in a variety of complex litigation matters involving this industry over the past decade, in both plaintiff- and defense-related matters.  Our cases have dealt with all aspects of the aerospace market, including employment matters,[35] antitrust claims,[36] and intellectual property issues.[37]  Through these representations, Quinn Emanuel has developed a sophisticated understanding of the aerospace market, and the industry as a whole, making it particularly well-equipped to represent the class in this case.  No other firm vying for lead counsel can match Quinn Emanuel's depth of knowledge in the aerospace industry.

Quinn Emanuel also has invaluable experience in no-poach matters.  For example, Ms. Sheth, while serving as the Executive Deputy Attorney General for the Division of Economic

---

[33] Hr'g Tr., *ISDAfix*, Dkt. # 743, at 27:16-28:6 ("[Co-lead counsel] did an extraordinary job. . . . [I]t is fair to say [this was] probably the most complicated case I have had since I have been on the bench. . . . I cannot really imagine how complicated it would have been if I didn't have counsel who had done as admirable [a] job in briefing it and arguing as you have done.  You have in my view done an extraordinary service to the class. . . . I think you have done an extraordinary job and deserve thanks and commendation for that.").

[34] *See also In re Gold Fixing Antitrust and Commodity Exchange Act Litig.*, No. 14-cv-02917, Dkt. # 19, at 4 (S.D.N.Y. July 22, 2014) (appointing Quinn Emanuel and one other firm as co-lead counsel); *In re Int. Rate Swaps*, 2016 WL 4131846, at *4-5  (court "finds that appointing two interim co-lead counsel is most likely to produce efficient and effective representation"; appointing Quinn Emanuel and one other firm as co-lead counsel in case involving "14 distinct defendant groups").

[35] *Virgin Galactic v. Firefly LLC, Inc.*, No. BC609407 (Cal. Sup. Ct.) (representing plaintiff against former employee who misappropriated trade secrets); *United States of America v. The Boeing Co.*, No. 4:21-CR-005-O (N.D. Tex.) (representing Boeing employees in fraud case).

[36] *Blenheim Cap. Holdings Ltd. v. Lockheed Martin Corp. et al.*, No, 1:20-cv-01608-LO-JFA (E.D. Va.) (representing defendants against antitrust and other claims).

[37] *ViaSat Inc. v. Space Sys. Loral, Inc.*, No. 3:12-CV-00260-H (WVG) (S.D. Cal.) (representing plaintiffs alleging patent infringement); *Rogerson Aircraft Corp. v. Bell Helicopter Textron*, No. 348-296827- 17 (Tex. Dist. Ct.) (representing plaintiffs for contract and trade secret claims); *SPS Tech., LLC v. Briles Aerospace, Inc.*, No. 2:2018-cv-09536 (C.D. Cal.) (representing defendants against alleged misappropriation of trade secrets).

Justice at the Office of the NYAG, was part of the senior leadership team that formulated the strategy for the investigations and enforcement of the NYAG's no-poach matters.  Quinn Emanuel has also handled no-poach competition matters on the defense side, including representing major companies and senior executives in criminal investigations by DOJ Criminal Antitrust and U.S. Attorney's Offices.[38]  Moreover, as noted, to add to our expertise, Quinn Emanuel has retained as a consultant Professor Leamer, who has appeared as an expert economist in multiple no-poach matters.

Quinn Emanuel has assembled a team of accomplished partners committed to leading the prosecution this matter:

- *Daniel L. Brockett* was ranked by *Benchmark Litigation* as one of the "Top 100 Trial Lawyers in America for 2018."  He is a leading antitrust litigator with over 30 years of experience handling numerous and high-profile competition cases for blue-chip companies.  He has been chosen by numerous judges as co-lead counsel in a robust matrix of cutting-edge class actions.  He has served as lead trial counsel in over 15 major bench and jury trials and arbitrations.  He has recovered billions of dollars in verdicts, awards, and settlements for his clients during his career.  *Law360* recognized Mr. Brockett as a "Competition MVP," and in 2016 the *National Law Journal* named him one of its "Litigation Trailblazers."  In 2021, Mr. Brockett was named one of *Lawdragon's* 500 Leading Plaintiff Financial Lawyers.  Mr. Brockett has been frequently recognized in *Chambers USA* as a leading practitioner in the areas of plaintiff securities and antitrust.

- *Manisha M. Sheth* is a seasoned trial lawyer with 20 years of experience both in private practice and as a federal and state prosecutor.  Ms. Sheth has extensive experience representing both plaintiffs and defendants in a wide range of complex commercial disputes, involving issues such as securities fraud, antitrust, and other business frauds and torts.  She currently represents a putative class of consumers in a multidistrict class action litigation against Facebook alleging antitrust and privacy misrepresentations.  Ms. Sheth represented the FHFA in its landmark RMBS litigation against numerous financial institutions resulting in a total recovery of approximately $25 billion.  Among other roles, she served as trial counsel in the case against Nomura and RBS, in which she and the trial team obtained an $806 million judgment that was affirmed by the Second Circuit.  As noted, Ms. Sheth recently served as the Executive Deputy Attorney General for

---

[38] Quinn Emanuel believes its experience on both sides of the "v." gives it valuable insights when we represent plaintiffs.  This experience allows us to know better than plaintiffs-only firms how government investigations progress and how to find the needed evidence without disrupting government proceedings.

the Division of Economic Justice at the Office of the NYAG, where she oversaw the Antitrust Bureau and was responsible for every antitrust investigation and enforcement proceeding by the State of New York.  She was the lead attorney on several high-profile matters, including settlements of the Office's RMBS securities cases and the LIBOR antitrust investigations.

- **_Steig D. Olson_** has played a leading role in representing both plaintiffs and defendants in high-stakes antitrust matters.  A former Second Circuit law clerk for The Honorable Barrington D. Parker, Jr., he has served as one of the lead counsel in the _CDS_ and _ISDAfix_ litigations discussed above, among many others.  He also represents Fortune 500 companies in high-stakes antitrust cases, including The Home Depot as one of the lead plaintiffs in _In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation_, 991 F. Supp. 2d 437.  Working on both sides of the "v.," Mr. Olson successfully led the defense of SoundCloud, helping to secure the dismissal of antitrust claims in 2021 in the District of Connecticut.  _See_ Judgment, _Pro Music Rights, LLC v. Apple, Inc._, No. 3:20-cv-00309-JAM (D. Conn. Jan. 21, 2021) Dkt. # 179.  Mr. Olson has been ranked in "New York Antitrust: Mainly Plaintiff" by _Chambers USA_ from 2019 to 2021, after being named a 2013 "Rising Star" in the field of competition law by _Law360_.

## C.     HSSK and Garrison

As noted, Labaton and Quinn Emanuel propose to be supported in their role as interim co-lead counsel by HSSK and Garrison, two local Connecticut firms who have distinctive strengths that are in the best interests of the class.

**HSSK** is a leader in the areas of unfair trade practices and antitrust in Connecticut, with an active plaintiffs' class action practice, having served in numerous class actions as both lead and liaison counsel.  David Slossberg and Jeffrey Nichols are contributing authors to the leading Connecticut Treatise on CUTPA and Antitrust entitled "Connecticut Unfair Trade Practices, Business Torts and Antitrust," which is part of the Connecticut Practice Series.[39]  Mr. Slossberg is a longtime member of the Federal Bar Council and served as the chairman of its Connecticut

---

[39] During the initial investigation of this no-poaching action in late 2020 and early 2021, HSSK benefited from the insight of the late David L. Belt, who was a member of the firm, an original author of the Treatise, and a leading member of Connecticut's antitrust bar for many years.

committee for multiple terms, and Mr. Nichols served for three years as a judicial law clerk to the Hon. Donna M. Martinez, USMJ.

**Garrison** is the preeminent Connecticut law firm devoted to the representation of non-unionized employees.  As noted, if the Court appoints Labaton and Quinn Emanuel as interim class counsel, we will task Garrison with ensuring, at every step, that the prosecution of this case is focused on protecting the rights of the aerospace employees who comprise the class.  All six of Garrison's partners are listed in *Lawdragon*'s 500 Leading Plaintiff Employment and Civil Rights Lawyers; the next closest Connecticut firm (which is not involved in this case) has just two entrants.  Garrison's partners include the current president and two past presidents of the Connecticut Employment Lawyers Association, as well as one past president and one current Executive Board member of the National Employment Lawyers Association, the nationwide organization for lawyers who represent employees.

## III.    LABATON AND QUINN EMANUEL'S RESOURCES ARE UNPARALLELED AMONG THE FIRMS VYING FOR APPOINTMENT AS LEAD COUNSEL

Courts have held that "the availability of resources is an important factor in determining what firm or firms will serve as interim lead counsel," including "the personnel and physical resources necessary to effectively litigate this matter."  *See In re Treasury Sec. Auction Antitrust Litig.*, 2017 WL 10991411, at *2-3 (S.D.N.Y. Aug. 23, 2017).  Resources are important here, as Defendants' alleged conspiracy spanned approximately a decade and was carried out by several of the world's largest aerospace engineering firms.  Discovery may well require the review of millions of documents from each Defendant.  There could potentially be over 100 depositions.  All the while, the class will be opposed by several extremely well-funded entities, represented by major law firms offering top-flight services.

Labaton and Quinn Emanuel have the resources to vigorously litigate and try this case in the best interests of the class, no matter what needs arise.  And we will do so efficiently, without the need for an explicit or implied partnership of multiple firms.  No matter what challenges our adversaries present, we will never be outmatched.  As noted, Quinn Emanuel has an unparalleled bench of talented lawyers.  Labaton's Antitrust Practice Group, which will litigate this case, includes former federal and state government antitrust enforcers and laterals from major defense firms.  Our firms are stocked with former federal prosecutors, and several of those attorneys will lead our litigation efforts in this case, including Ms. Sheth.  Mr. Brockett has tried several major commercial cases and arbitrations to trial verdicts, winning most of them.  Such experience will ensure that every decision as to what to do—and not do—is tailored to the question of how to get this case ready for trial without unnecessary delay.  In our experience, this credible trial threat encourages quicker, larger settlements.

Our firms also have the ability to handle all of the class's discovery needs in-house and cost efficiently.  Labaton and Quinn Emanuel both have in-house Litigation Support Groups and numerous analytic tools that we can offer to the class at no extra charge (including such tools as predictive coding, e-mail threading, duplicate detection, and concept clustering), which in turn will streamline and minimize the cost of voluminous electronic discovery.

Should there be any need to defend against or pursue an appeal, Quinn Emanuel is home to one of the world's leading appellate practices, headed by Kathleen Sullivan, former Dean of Stanford Law School.  Ms. Sullivan is widely recognized as one of the nation's foremost appellate advocates.  Ms. Sullivan has been ranked by The Best Lawyers in America in Appellate Practice and Commercial Litigation for 10 years in a row, and as one of the 100 Most

Influential Lawyers in America by the *National Law Journal*. Quinn Emanuel's appellate department was ranked Tier 1 in Appellate Practice in the 2021 edition of "Best Law Firms."[40]

We also have a broad geographic reach. Quinn Emanuel has offices all over the country, which will be valuable to protect the rights of this nationwide class.[41] As noted, for example, Quinn Emanuel has an office in Florida, where a substantial portion of the conduct at issue in this case occurred. If we must take action there, we can do so seamlessly.

Labaton and Quinn Emanuel also offer the class a diverse set of attorneys. Labaton's Antitrust Practice Group is almost entirely comprised of individuals from historically underrepresented groups, particularly with respect to gender, ethnicity, and sexual orientation.[42] In appointing Ms. van der Meulen as lead counsel in the *Bystolic* antitrust litigation, for example, the court noted that Labaton "demonstrate[s] a commitment to diversity through [its] ranks" and "harbors a [] commitment to diversity and to recruiting, retaining, and promoting the most talented lawyers best able to represent the class." Opinion and Order, *In re Bystolic Antitrust Litig.*, No. 1:20-cv-05735 (S.D.N.Y. Oct. 13, 2020), Dkt. # 30 at 15. Mr. Asciolla, who chairs Labaton's Antitrust Practice Group, founded the Firm's Diversity, Equity and Inclusion Committee, is a member of the LGBT Bar of New York, and represents pro bono LGBTQ+ individuals from Uganda seeking asylum in the United States.

Quinn Emanuel's work will be led here in large part by Manisha Sheth, consistent with the firm's commitment to its deep bench of female litigators. Quinn Emanuel is the largest U.S.

---

[40] *Best Law Firms for Appellate Practice*, U.S. NEWS, https://bestlawfirms.usnews.com/search.aspx?practice_area_id=50&page=5 (last visited Jan. 30, 2022).

[41] In the United States, Quinn Emanuel has offices in Atlanta, Austin, Chicago, Houston, Los Angeles, New York, Miami, Salt Lake City, San Francisco, Seattle, Silicon Valley, and Washington, D.C.

[42] Labaton has been honored and shortlisted by *Chambers & Partners* as Inclusive Firm of the Year and by *Euromoney* as the Best National Firm for Women in Business Law and Best Gender Diversity Initiative, as well as for *The National Law Journal's* "Elite Trial Lawyers" inaugural Diversity Initiative Award.

law firm with a female named partner (Ms. Sullivan), and 17 of its practice groups and five of its branch offices are headed by women.  The Human Rights Campaign Foundation awarded Quinn Emanuel a top score in the 2022 Corporate Equality Index and named it the "2022 Best Place to work for LGBTQ+ Equality."[43]  Many of Quinn Emanuel's partners have been named to Law360's "Top Female Trial Attorneys,"[44] The Recorder's "Women Leaders in Law,"[45] Daily Journal's "Top Women Lawyers,"[46] Benchmark's "Top 250 Women in Litigation,"[47] and The American Lawyer's "Top 45 Women Litigators Under 45."[48]  The firm was recognized by The American Lawyer for five years in a row as one of the "Top Firms for Diversity,"[49] and The American Lawyer has ranked Quinn Emanuel near the top 10 percent in its annual diversity survey among the AmLaw 200 firms.[50]  Our firms also have stellar junior attorneys among our

---

[43] *Best Places to Work for LGBTQ+ Equality 2022*, HUMAN RIGHTS CAMPAIGN, https://www.hrc.org/resources/best-places-to-work-for-lgbtq-equality-2022 (last visited Jan. 30, 2022).

[44] *Rankings: Top Female Trial Attorneys*, LAW 360 (May 29, 2012), https://www.law360.com/rankings/top-female-trial-attorneys.

[45] Partners Jennifer Kash and Dianne Doolittle have received this accolade. *Women Leaders in Law: Jennifer Kash*, THE RECORDER (Oct. 26, 2012), https://www.law.com/therecorder/almID/1202576145880/?slreturn=20220030210814; *Women Leaders in Tech Law: Dianne Doolittle, Quinn Emanuel*, THE RECORDER (Nov. 2, 2019), https://www.law.com/therecorder/2019/11/02/women-leaders-in-tech-law-diane-doolittle-quinn-emanuel-2/.

[46] *Top Women Lawyers: Dianne M. Doolittle*, DAILY JOURNAL (May 19, 2021), https://www.dailyjournal.com/articles/362722-diane-m-doolittle; *Top Women Lawyers: Crystal Nix-Hines*, DAILY JOURNAL (May 19, 2021), https://www.dailyjournal.com/articles/362764-crystal-nix-hines.

[47] *Benchmark's Top 250 Women in Litigation for 2017*, BENCHMARK LITIGATION (July 31, 2017), https://benchmarklitigation.com/NewsAndAnalysis/Benchmarks-Top-250-Women-in-Litigation-for-2017/Index/4668.

[48] *45 Under 45: The best young women lawyers in The Am Law 200*, Mgalhas International (Jan. 5, 2011), https://www.migalhas.com/TopStories/64,MI124031,41046-45+Under+45+The+best+young+women+lawyers+in+The+Am+Law+200.

[49] *Diversity Scorecard 2012*, The American Lawyer, https://www.law.com/americanlawyer/almID/1202602811669/ (last visited Jan. 31, 2022).

[50] *The 2021 Diversity Scorecard: Ranking the Legal Industry*, THE AMERICAN LAWYER, https://www.law.com/americanlawyer/2021/05/24/the-2021-diversity-scorecard-ranking-the-legal-industry/?tokenvalue=89E84C7A-0057-4832-A898-BCE59DD336C6 (last visited Jan. 30, 2022).

associate ranks whom we will draw upon for meaningful work in the case, with the guidance of more seasoned attorneys.

## IV.   OUR APPLICATION WILL BEST SERVE THE INTERESTS OF EFFICIENCY

Appointing Labaton and Quinn Emanuel as the two co-lead interim counsel will increase efficiency and substantially reduce costs for the proposed class.  Efficiency is an important concern in appointing class counsel.  *See* Manual.  Reduced costs for the proposed class means more money in their pockets if there is a recovery; indeed, maximizing recovery for the class is a critical function of interim lead counsel.[51]

Any applications in this case proposing a large co-lead or steering committee structure, or structures that have numerous firms supporting it in exchange for promises of future assignments, should be viewed skeptically.  Courts recognize that such complicated class leadership structures "can lead to substantially increased costs and unnecessary duplication of efforts."  Manual § 10.221; *In re Crude Oil Commodity Futures Litig.*, No. 11-cv-3600, 2012 WL 569195, at *2 (S.D.N.Y. Feb. 14, 2012).[52]  Such inefficiencies manifest themselves not only in higher costs to the class, but also in slower decision-making, preventing counsel from pushing the case forward.  *In re Int. Rate Swaps*, 2016 WL 4131846, at *4  ("[H]aving more than two interim co-lead counsel will likely yield needless duplication of effort and inefficient decision making.").

---

[51] Our firms have already demonstrated the ability and desire to operate efficiently in this case—by not initiating multiple identical class actions, by not serving Defendants with soon-to-be-preempted complaints, and by not drafting and serving discovery requests that are best left until after the Court selects interim lead counsel.

[52] *See also In re SSA Bonds Antitrust Litig., No. 16-cv-3711*, (S.D.N.Y. May 18, 2016), Dkt. # 88 at 6 ("Taking into consideration that committees can lead to substantially increased costs and duplication of efforts, the Court finds that appointing only Quinn Emanuel and Robbins Geller will be sufficient to address the various complexities that arise, while keeping unnecessary costs to a minimum." internal citation and quotes omitted)).

Accordingly, the trend is to appoint one or two firms as interim lead counsel, especially when they will commit the necessary resources and deploy the attorneys needed throughout the case.[53]  Having just two co-lead firms—which have the resources and expertise needed to expeditiously litigate this case by themselves—will be a significant advantage to the class.

Moreover, if this litigation succeeds in a recovery for the class, Labaton and Quinn Emanuel commit to limiting our requested fees to those in line with the graduated, cumulative scale endorsed by, among others, Judge Gleeson (Ret.) in *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. Jan. 10, 2014). One of the virtues of such an approach is that:

> If plaintiffs' lawyers know in advance (that is, at the start of the case) that such a schedule will be used, it will alter their thinking for the better.  A graduated schedule ensures that the greater the settlement, the greater the fee, and it therefore avoids certain incentive problems that come with simply scaling an overall percentage down as the size of the fund increases.

*Id.* at 446.

## **CONCLUSION**

For the foregoing reasons, Labaton and Quinn Emanuel respectfully request that the Court appoint our firms as interim co-lead counsel.

---

[53] *See, e.g.*, *In re Int. Rate Swaps*, 2016 WL 4131846, at *4 (appointing two firms as co-lead counsel); *In re Bystolic Antitrust Litig.*, No. 20-cv-05735 (S.D.N.Y. Mar. 13, 2020), Dkt. # 50 (same); *In re Platinum and Palladium Antitrust Litig.*, No. 14-cv-9391, Dkt. # 32 (S.D.N.Y. Mar. 20, 2015) (same); *In re Credit Default Swaps Antitrust Litig.*, No. 13-MD-2476, Dkt. #s 244 (S.D.N.Y. Dec. 5, 2013), 255 (S.D.N.Y. Dec. 13, 2013) (same); *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 2:14-cv-00395 (E.D. Va. Apr. 13, 2015), Dkt. # 59 (same); *In re Opana ER Antitrust Litig.*, No. 14-cv-10150 (N.D. Ill. Apr. 2, 2015), Dkt. # 78 (same);  *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-02503 (D. Mass. Aug. 11, 2014), Dkt. # 73 (same); *In re Remicade Antitrust Litig.*, No. 17-cv-4326 (E.D. Pa. Jan. 23, 2018), Dkt. # 50 (appointing one firm to lead the case); *see also In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13-cv-7789, Dkt. # 103, Hr'g Tr. at 43 (S.D.N.Y. Feb. 13, 2014) (rejecting four-firm leadership structure in favor of a two-firm structure because of efficiency concerns in a case involving principally 12 multi-national defendants); *In re Gold Fixing Antitrust Litig.*, , Dkt. # 19, at 4 (S.D.N.Y. July 22, 2014)  (noting that coordinating activity among more firms "would prove unnecessarily costly to the . . . class").

DATED:   New York, New York
              February 1, 2022

By: */s/ Gregory S. Asciolla*

Gregory S. Asciolla (phv02599)
Robin A. van der Meulen (phv09139)
Matthew J. Perez (phv06870)
Veronica Bosco (phv20356)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel.: (212) 907-0700
gasciolla@labaton.com
rvandermeulen@labaton.com
mperez@labaton.com
vbosco@labaton.com

*Attorneys for Plaintiff David Granata*

By: */s/ Daniel L. Brockett*

Daniel L. Brockett (phv20450)
Steig D. Olson (phv06391)
Manisha M. Sheth (phv01061)
Thomas Lepri (phv20453)
**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel.:  (212) 849-7000
Fax:  (212) 849-7100
danbrockett@quinnemanuel.com
steigolson@quinnemanuel.com
manishasheth@quinnemanuel.com
thomaslepri@quinnemanuel.com

*Attorneys for Plaintiffs Alex Scales and
Nicholas Wilson*

By: */s/ David A. Slossberg*

David A. Slossberg (ct13116)
Jeffrey P. Nichols (ct29547)
**HURWITZ SAGARIN SLOSSBERG &
KNUFF, LLC**
147 North Broad Street
Milford, CT 06460
Tel.: (203) 877-8000
dslossberg@hssklaw.com
jnichols@hssklaw.com

By: */s/ Joshua R. Goodbaum*

Joseph D. Garrison (ct04132)
Stephen J. Fitzgerald (ct22939)
Joshua R. Goodbaum (ct28834)
Amanda M. DeMatteis (ct29413)
**GARRISON, LEVIN-EPSTEIN,
FITZGERALD & PIRROTTI, P.C.**
405 Orange Street
New Haven, CT 06511
Tel.: (203) 777-4425
Fax: (203) 776-3965
jgarrison@garrisonlaw.com
sfitzgerald@garrisonlaw.com
jgoodbaum@garrisonlaw.com
adematteis@garrisonlaw.com

## CERTIFICATE OF SERVICE

This is to certify that on February 1, 2022, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's electronic system.

By: */s/ David A. Slossberg*
David A. Slossberg