**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| David Granata, *Plaintiff,* v. Pratt & Whitney et al., *Defendants.* | ))))))))) Case No. 3:21-cv-01657 (SVN) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO APPOINT
KELLIE LERNER AND JOSEPH R. SAVERI AS INTERIM CO-LEAD CLASS
COUNSEL AND JONATHAN M. SHAPIRO AS INTERIM LIAISON COUNSEL**

**<u>TABLE OF CONTENTS</u>**

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     PROPOSED LEADERSHIP STRUCTURE ..................................................... 4

III.    LEGAL STANDARD .......................................................................................... 5

IV.     ARGUMENT ....................................................................................................... 5

        A.     JSLF and Robins Kaplan Investigated and Developed These Claims .................... 7

        B.     JSLF and Robins Kaplan Have Significant Experience Litigating Complex
               Cases, including Groundbreaking No Poach Cases ................................................. 9

               1.     Joseph Saveri Law Firm LLP ...................................................... 9

               2.     Robins Kaplan LLP ....................................................................... 14

               3.     Aeton Law Partners LLP ............................................................ 17

        C.     Robins Kaplan and JSLF Will Commit the Resources Necessary to
               Litigate This Case ............................................................................................... 19

        D.     Additional Factors Support Robins Kaplan and JSLF's Appointment ................ 20

V.      CONCLUSION .................................................................................................... 23

**Cases**

*In re Abbott Labs Norvir Antitrust Litig.*,
No. 04-cv-01511 (N.D. Cal.) ...................................................................................15

*Ace Marine Rigging & Supply, Inc. v. Virginia Harbor Services, et al.*,
No. 11-cv-00436 (C.D. Cal.) ...................................................................................16

*In re Aftermarket Automotive Lighting Products Antitrust Litig.*,
No. 09-ml-02007 (C.D. Cal.) ...................................................................................16

*In re Aftermarket Filters Antitrust Litig.*,
No. 08-cv-04883 (N.D. Ill.) .....................................................................................16

*In re Air Cargo Shipping Services Antitrust Litig.*,
No. 06-md-01775 (E.D.N.Y.) .......................................................................... *passim*

*In re Animation Workers Antitrust Litig.*,
123 F. Supp. 3d 1175 (N.D. Cal. 2015) ...............................................................1, 11

*In re Automotive Parts Antitrust Litigation*,
MDL No. 2311 (E.D. Mich.) .............................................................3, 4, 12, 16

*Balicoco v. Pratt & Whitney*,
No. 21-cv-01673 (D. Conn.) .....................................................................................9

*BCBS of Minnesota, Inc. v. Vyera Pharmaceuticals, LLC, et al.*,
Case No. 1:21-cv-1884 (S.D.N.Y.)...........................................................................15

*In re Capacitors Antitrust Litigation*,
No. 14-cv-3264-JD (N.D. Cal.) ........................................................................ *passim*

*In re Cipro Cases I and II*,
348 P.3d 845 (Cal.4th 2018)..................................................................................9, 12

*City of Providence, Rhode Island v. AbbVie, Inc.*,
2020 WL 6049139 (S.D.N.Y. Oct. 13, 2020) .........................................................21

*Conroy v. Agilis Eng'g, Inc.*,
No. 3:21-cv-01659 (D. Conn.)...................................................................................9

*County of Monmouth, New Jersey v. Florida Cancer Specialists, et al.*,
No. 18-cv-00201 (M.D. Fla.) ...............................................................................15, 16

*Dahl, et al. v. Bain Capital Partners, LLC, et al.*,
No. 07-cv-12388 (D. Mass.) ................................................................15

*In Re: Disposable Contact Lens Antitrust Litigation*,
Case No. 3:15-md-2626 ......................................................................14

*Doe v. Raytheon Technologies Corp et al.*,
No. 3:22-cv-00035 (D. Conn) .....................................................1, 7, 10

*Doe v. YouTube, Inc.*,
No. 4:20-CV-07493-YGR (N.D. Cal.) ...................................................9

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
No. M02-1486PJH (N.D. Cal.) .............................................................13

*In re Enron Corp. Sec. Litig.*,
206 F.R.D. 427 (S.D. Tex. 2002) .........................................................13

*In re Flash Memory Antitrust Litig.*,
No. C 07-0086 SBA (N.D. Cal.) ...........................................................13

*In re Flat Glass II Antitrust Litig.*,
No. 08-mc-00180 (W.D. Pa.) ...............................................................15

*In re Food Service Equipment Hardware Antitrust Litig.*,
No. 10-cv-1849 (N.D. Ga.) ..................................................................16

*Fraizer v. ByteDance, Inc.*,
No. 2:21-cv-9914-RGK-MRW (C.D. Cal.) ............................................9

*In re German Auto. Mfrs. Antitrust Litig.*,
No. 3:17-md-02796-CRB (N.D. Cal.) ECF No. 223 ...............................4

*Giordano v. Saks*,
No. 20-cv-00833-MKB-CLP (E.D.N.Y.) ..........................................9, 11

*Granata v. Pratt & Whitney*,
No. 3:21-cv-01657-SVN (D. Conn.) ECF No. 101 ............................1, 9

*In re Hard Disk Drive Assemblies Antitrust Litigation*,
Case No. 19-md-2918 (N.D. Cal.) ..................................................15, 16

*In re High Tech Employees Antitrust Litigation*,
No. 11-CV-2509-LHK (N.D. Cal.) .................................................*passim*

*Hunter v. Booz Allen Hamilton Holding Corp.*,
No. 2:19-cv-00411 (S.D. Ohio) .......................................................10, 11

*In re Interior Molded Doors Indirect Purchaser Antitrust Litig.*,
    Case No. 18-cv-00850 (E.D. Va.) ............................................................. 5, 6, 15

*In re Jan. 2021 Short Squeeze Trading Litig.*,
    No. 1:21-md-02989-CMA (S.D. Fla.) ECF No. 310 ................................. 4

*In re Juul Labs, Inc. Antitrust Litig.*,
    No. 3:20-cv-02345-WHO (N.D. Cal.) .................................................... 4, 9

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    No. 14-md-02542 (S.D.N.Y.) .................................................................. 15, 22

*Kintz v. Agilis Eng'g, Inc.*,
    No. 21-cv-01674 (D. Conn.) ................................................................... 9

*In re Lithium Ion Batteries Antitrust Litig.*,
    2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) .......................................... 13

*In re Local TV Advertising Antitrust Litig.*,
    No. 18-cv-06785 (N.D. Ill.) .................................................................... 15, 16

*In re Lorazepam and Clorazepate Antitrust Litigation*,
    1:99-mc-00276 (D.D.C.) ........................................................................ 14

*Mamigonian v. Agilis Eng'g, Inc.*,
    3:21-cv-01721-SVN (D. Conn.) ECF No. 1 .......................................... 1, 10

*In re Marine Hose Antitrust Litig.*,
    No. 08-md-01888 (S.D. Fla.) .................................................................. 16

*In re Merck Mumps Vaccine Antitrust Litigation*,
    No. 12-cv-03555 (E.D. Pa.) .................................................................... 15, 22

*Minnesota and BCBS of Minn. v. Philip Morris Inc. et al.*,
    No. Cl-95-1324 (Minn.) .......................................................................... 3, 14

*Nitsch v. DreamWorks Animation SKG, Inc.*,
    Case No. 14-CV-04062-LHK, 2017 WL 2423161 (N.D. Cal. June 5, 2017) ........................... 1

*In re Ocean Shipping Antitrust Litig.*,
    MDL No. 395 (S.D.N.Y.) ....................................................................... 13

*In re Packaged Seafood Prod. Antitrust Litig.*,
    332 F.R.D. 308 (S.D. Cal. 2019) ............................................................ 11

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
    MDL No. 1720 (E.D.N.Y.) (appeal pending) ........................................ 3, 14

*In re Polyurethane Foam Antitrust Litig.*,
    No. 10-md-02196 (N.D. Ohio) ......................................................15, 16

*In re Puerto Rican Cabotage Antitrust Litig.*,
    No. 08-md-01960 (D.P.R.) ......................................................15, 16, 17

*In re Qualcomm Antitrust Litig.*,
    No. 5:17-md-02773-LHK (N.D. Cal.) ...................................................13

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
    No. 18-md-02819(NG)(LB) (E.D.N.Y 2018)...........................................9

*In Re Revolution Lighting Technologies, Inc. Stockholder Derivative Litigation*,
    Master File No.: 3:19-cv-00621-JBA ..................................................18

*Robinson v. Jackson Hewitt, Inc.*,
    No. 2:19-cv-09066-SDWLDW (D.N.J.)................................................9, 10

*Roe v. Surgical Care Affiliates*,
    No. 1:21-cv-00305 (N.D. Ill. 2021) .......................................................9

*Scola v. Facebook Inc.*,
    No. 18-CIV-05135 (Cal. San Mateo)......................................................9

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    No. C 07–01819 CW. (N.D. Cal.).........................................................13

*Sterk et al. v. Bank of Nova Scotia, et al.*,
    No. 20-cv-11059 (D.N.J.) .....................................................................16

*In Re Tangoe, Inc., Securities Litigation*,
    Civil Action No.: 3:17cv00146 (VLB) ..................................................18

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
    MDL No. 1827 (N.D. Cal.).............................................................13, 14

*In re Titanium Dioxide Antitrust Litig.*,
    No. 1:10-cv-00318-RDB (D. Md.) .........................................................4

*In re Treasury Sec. Auction Antitrust Litig.*,
    No. 15 MD 2673 (PGG), 2017 WL 10991411 (S.D.N.Y. Aug. 23, 2017)............................21

*In re Welding Fume Prods.*,
    1:03-CV-17000, 2005 WL 1868046 (N.D. Ohio Aug. 8, 2005)............................11

*In re Wells Fargo Collateral Protection Insurance Litig.*,
    No. 17-ml-02797 (C.D. Cal.) ..........................................................15, 16

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
   No. 5:20-md-02966-LHK (N.D. Cal.) ECF No. 59 .....................................4, 5

**Court Rules**

Fed. R. Civ. P. 23(g)(1)(A) ...............................................................................5

Fed. R. Civ. P. 23(g)(1)(A)(i) ...........................................................................6

Fed. R. Civ. P. 23(g)(1)(A)(iv) .......................................................................19

Fed. R. Civ. P. 23(g)(1)(B) .............................................................................21

Fed. R. Civ. P. 23(g)(1)(C) .............................................................................21

**Other Authorities**

48 C.F.R. 1 .....................................................................................................10

*Inclusivity and Excellence: Guidelines and Best Practices for Judges Appointing
   Lawyers to Leadership Positions in MDL and Class-Action Litigation*, James
   F. Humphreys Complex Litigation Center, George Washington Law School
   (March 15, 2021),
   https://www.law.gwu.edu/sites/g/files/zaxdzs2351/f/downloads/3-
   Page_Summary_Report_and_Signatories_List_3.16.21.pdf .................................21

*Manual for Complex Litig.* (4th ed. 2004) ...................................................................4

Melissa Lipman, *Lieff Cabraser Antitrust Chief to Launch Own Firm* (May 1,
   2012), *available at* https://www.law360.com/articles/335937/lieff-cabraser-
   antitrust-chief-to-launch-own-firm ........................................................................12

Newberg & Conte, *Newberg on Class Actions* ..............................................................8

*Session 3: Roundtable Discussion on ACPERA*, DEP'T OF JUSTICE (Apr. 11,
   2019), https://www.justice.gov/atr/video/public-roundtable-discussion-acpera-
   session3 .............................................................................................................13

## I.       INTRODUCTION

Plaintiffs Camden Mamigonian, Austin Waid-Jones, John Doe and James Roe (collectively, "Plaintiffs") respectfully request that the Court appoint Kellie Lerner of Robins Kaplan LLP ("Robins Kaplan") and Joseph R. Saveri of the Joseph Saveri Law Firm LLP ("JSLF") as Interim Co-Lead Counsel and Jonathan M. Shapiro of Aeton Law Partners LLP ("Aeton Law") as Interim Liaison Counsel. Appointment of two lead attorneys, with deep expertise in litigating the precise type of substantive law at issue, will advantage the Class and promote the interests of justice.

Ms. Lerner and Mr. Saveri have an extraordinary track record of success in antitrust class actions that make them best suited to represent the Class—and with Mr. Saveri in particular, in no-poach actions similar to the case at bar. For example, Joseph R. Saveri, the founding partner of JSLF, successfully represented the first-ever certified class of skilled workers challenging no-poach agreements in *In re High Tech Employees Antitrust Litigation,* No. 11-CV-2509-LHK (N.D. Cal.) ("*High-Tech*"),[1] where he initiated and litigated all phases of the case, including negotiating record-breaking settlements on behalf of a class of engineers working at large tech-companies in the Bay Area. Before *High-Tech*, it was an open question whether it was even possible to certify a class in a no-poach matter. Mr. Saveri answered that question by securing

---

[1] The *High Tech* case has particular relevance here. In the course of the conspiracy, Defendants in this case exchanged communications discussing recent news coverage about the decision in *In re High Tech Antitrust Employees Litigation*—where JSLF served as co-lead counsel—which put them on notice that "these agreements are illegal." *See, e.g., Granata v. Pratt & Whitney*, No. 3:21-cv-01657-SVN (D. Conn.) ECF No. 101, ¶ 121 ("Amended *Doe* Complaint"); *Mamigonian v. Agilis Eng'g, Inc.*, 3:21-cv-01721-SVN (D. Conn.) ECF No. 1, ¶ 93. The case also was the basis for the *Animation Workers* case, which ultimately resolved for a total of $168.5 million. *See Nitsch v. DreamWorks Animation SKG, Inc.*, Case No. 14-CV-04062-LHK, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) ("*High-Tech* provided much of the evidence, legal theories, arguments, and prior rulings necessary to litigate this case."); *see also In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1190-92 (N.D. Cal. 2015) (describing relationship between *High-Tech* and *Animation Workers*).

certification of a class of 64,000 employees and achieving settlements in excess of $435 million. In addition, Mr. Saveri has handled a number of other landmark groundbreaking cases.

Robins Kaplan and JSLF have already brought their experience to bear in this case: They organized a 60-attorney meet and confer, issued preservation letters to preserve critical evidence, and brought new facts to light in an amended complaint. This Class of skilled workers deserves zealous representation and adept leadership. Of all the firms applying for leadership, Robins Kaplan and JSLF best satisfy the requirements of Rule 23(g).

Robins Kaplan and JSLF each have nationally recognized antitrust practices and their attorneys have repeatedly recovered hundreds of millions and even billions of dollars on behalf of class members in antitrust class actions.[2] Mr. Saveri, together with the members of the law firm—many of whom are young and come from diverse backgrounds—have expertise in antitrust litigation honed through years of leading and trying high-profile complex antitrust cases. Both Mr. Saveri and JSLF partner Steven N. Williams have been appointed to lead complex antitrust and other multidistrict class cases on numerous occasions by federal courts across the country. The firm has developed substantial expertise in all phases of litigation, including complex civil discovery, antitrust and labor economics, class certification and trial. Most recently, JSLF successfully tried *In re Capacitors Antitrust Litigation*, No. 14-cv-3264-JD (N.D. Cal.) ("*Capacitors*") on behalf of a certified class of direct purchasers in the Northern District of California. Under JSLF's leadership, total settlements in *Capacitors* substantially exceeded single damages as calculated by the class's experts, a rarity in an antitrust case. This

---

[2] The firm resumes for the Robins Kaplan firm and for JSLF are attached as Exhibit A to each of the Declaration of Kellie Lerner dated February 1, 2022 ("Lerner Decl.") and the Declaration of Joseph R. Saveri dated February 1, 2022 ("Saveri Decl."), respectively. Biographies of attorneys who will work on the case are annexed as Exhibit B to each declaration.

specialized expertise and track record of achieving outsized results will provide a substantial benefit to the Class and the Court.

Robins Kaplan is a leader in antitrust litigation and has a long history of recovering some of the largest settlements on behalf of plaintiffs alleging antitrust violations. The firm broke new ground when it obtained a landmark $6.6 billion settlement—following a fifteen-week trial—on behalf of the State of Minnesota and Blue Cross and Blue Shield of Minnesota in an antitrust and consumer-fraud lawsuit against the tobacco industry. *See Minnesota and BCBS of Minn. v. Philip Morris Inc. et al.*, No. Cl-95-1324 (Minn.) ("*Big Tobacco*"). The $6.24 billion settlement that Robins Kaplan secured in *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, MDL No. 1720 (E.D.N.Y.) (appeal pending), is the largest known settlement of any class action under the Sherman Act. Robins Kaplan attorneys also achieved $1.2 billion in settlements in *In re Air Cargo Shipping Services Antitrust Litig.*, No. 06-md-01775 (E.D.N.Y.) and, in excess of $1.2 billion in settlements in *In re Automotive Parts Antitrust Litigation*, MDL No. 2311 (E.D. Mich.) ("*Auto Parts*"), both civil actions initiated by Ms. Lerner based on DOJ investigations.

JSLF and Robins Kaplan work collaboratively and inclusively as a matter of principle. Indeed, the two firms have a history of collaboration and inclusivity: attorneys from the two firms served together as co-lead counsel in *Auto Parts*, a series of 43 separate but coordinated cases stemming—like this case—from a criminal cartel investigation by the Department of Justice. Counsel in *Auto Parts* have recovered in excess of $1.2 billion dollars for purchasers and lessees of automobiles, the largest ever settlement on behalf of indirect purchasers in an antitrust case.

Through decades of experience, Mr. Saveri and Ms. Lerner have developed collaborative skills and efficient approaches to litigation decision making and problem solving. What's more,

JSLF and Robins Kaplan consistently provide meaningful opportunities for courtroom experience to early career lawyers, including lawyers from underrepresented backgrounds.[3] JSLF and Robins Kaplan are committed to the diversity and development of the next generation of practitioners as core values and, if chosen, would ensure they are advanced here.

## II.    PROPOSED LEADERSHIP STRUCTURE

The appointment of Robins Kaplan and JSLF as Interim Co-Lead Counsel, and Aeton Law as Interim Liaison Counsel would be efficient, economical and consistent with Rule 23(g). While JSLF and Robins Kaplan propose a two-firm lead structure to maximize efficiency, they welcome the appointment of an Executive Committee to aid in the litigation of this case if the Court prefers a structure including representatives of other firms. In determining the structure and responsibilities of counsel in complex cases, the primary purpose is to promote efficiency and economy without jeopardizing fairness to the parties. *See Manual for Complex Litig.* (the "Manual") § 10.221 (4th ed. 2004).[4] Both Ms. Lerner and Mr. Saveri have deep experience managing and leading teams of lawyers in complex cases involving many more defendants than in this case. Indeed, they have supervised and directed many of the plaintiffs' firms that have filed cases here. *See, e.g.*, *Auto Parts*, MDL No. 2311; *High-Tech*, No. 11-CV-2509; *In re Titanium Dioxide Antitrust Litig.*, No. 1:10-cv-00318-RDB (D. Md.); *Capacitors*, No. 14-cv-

---

[3] JSLF's commitment to this is demonstrated in numerous recent cases where young and diverse lawyers had meaningful courtroom roles, including the recent antitrust jury trial presided over by Judge Donato in *Capacitors*, *In re Juul Labs, Inc. Antitrust Litigation* before Judge Orrick, and numerous *pro bono* and other cases pending in federal court. The Robins Kaplan associates who will work with Ms. Lerner on this matter have successfully deposed class certification experts, argued dispositive motions, and presided over entire phases of discovery.

[4] In appointing interim lead counsel, courts have the power to appoint not only lead counsel, but a steering or executive committee to further assist in efficiently litigating plaintiffs' claims. Manual, § 21.11. Courts have increasingly utilized the leadership structure of a lead counsel team with an executive or steering committee in complex litigation. *See In re German Auto. Mfrs. Antitrust Litig.*, No. 3:17-md-02796-CRB (N.D. Cal.) ECF No. 223; *see also In re Jan. 2021 Short Squeeze Trading Litig.*, No. 1:21-md-02989-CMA (S.D. Fla.) ECF No. 310; *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, No. 5:20-md-02966-LHK (N.D. Cal.) ("*Xyrem*") ECF No. 59.

3264; *In re Interior Molded Doors Indirect Purchaser Antitrust Litig.*, Case No. 18-cv-00850 (E.D. Va.); *see also* Saveri Decl., ¶¶ 11-15.

The appointment of two firms as co-lead counsel is an efficient structure. It would avoid inefficiencies associated with having numerous decision makers while also offering a framework to leverage each firm's unique strengths to advantage the Class. Such a structure will permit coordination of a larger group of attorneys while still bringing to bear the experience and resources of the numerous firms. *See* Manual, § 10.221; *see also Xyrem*, ECF No. 59. In the case of competing proposals, this structure will allow the Court to appoint qualified candidates to the Executive Committee to ensure all relevant considerations and criteria are met while still maintaining a lean, flexible and efficient leadership structure. The Committee can be inclusive and representative of all plaintiffs' interests while achieving the efficiency and economy of a central leadership team.

## III. LEGAL STANDARD

To appoint class counsel, the Court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

## IV. ARGUMENT

Together, JSLF and Robins Kaplan have the necessary skills and experience to effectively prosecute the claims in this case, including: (1) experience bringing similar claims against employers who engage in government contract work; (2) decades of experience leading class and multidistrict litigation; (3) expertise in complex litigation with a large and diverse pool

of lawyers; and (4) sufficient resources to litigate this case through trial. Both Ms. Lerner and Mr. Saveri have been trusted countless times by federal courts across the country to lead complex class cases. *See*, *e.g.*, Saveri Decl., ¶ 11-15; Lerner Decl., ¶¶ 7-9. Key members of Ms. Lerner and Mr. Saveri's team include Robins Kaplan partner, William V. Reiss, and JSLF partner, Steven N. Williams, who have been appointed as lead counsel in numerous cases across the country.[5] In addition to the requisite credentials and experience, Robins Kaplan and JSLF bring with them a strong commitment to the mentorship and career-advancement of early-career attorneys, including meaningful courtroom and trial opportunities to historically underrepresented lawyers at every juncture. *See*, *e.g.*, Saveri Decl., ¶ 21; Lerner Decl., ¶ 19-21. If appointed lead counsel, JSLF and Robins Kaplan would ensure the further advancement and achievement of these values and goals in this case.

Plaintiffs respectfully submit that every factor supports the appointment of Ms. Kellie Lerner and Mr. Joseph Saveri as Interim Co-Lead Counsel and Mr. Shapiro as Interim Liaison Counsel. Robins Kaplan and JSLF have: (1) invested significant time and resources identifying and investigating the claims in the case, (2) significant experience prosecuting class actions, including cases alleging claims similar to those here, (3) significant knowledge of the applicable law, and (4) a commitment to investing the time and resources necessary to effectively litigate this case. Indeed, the two firms—of all the firms in this case—most satisfy these criteria.

---

[5] Mr. Reiss and Mr. Williams served together as lead counsel in *Auto Parts*, where settlements now exceed $1.2 billion. And just last year, they worked together to secure a $19.5 million recovery as co-lead counsel for the class in a case alleging price-fixing among the leading sellers of interior molded doors. *See Interior Molded Doors*, Case No. 18-cv-00850 (E.D. Va.).

## A.    JSLF and Robins Kaplan Investigated and Developed These Claims

In evaluating appropriate leadership, courts look to "the work counsel has put into identifying and investigating potential claims in the action." Fed. R. Civ. P. 23(g)(1)(A)(i). While many of the other complaints on file are substantially identical and rely almost exclusively on facts that the DOJ uncovered, Ms. Lerner and Mr. Saveri have moved the litigation forward in material ways, including by conducting independent investigations that uncovered a conspiracy broader than what the DOJ alleged. For example, the Amended *Doe* Complaint names additional corporate and individual Defendants, alleges additional facts that were not provided in the DOJ papers—and are absent from other complaints—and asserts claims on behalf of a larger class of "workers" that is not limited to engineers or employees. Saveri Decl., ¶¶ 24-25, 27.

JSLF and Robins Kaplan interviewed confidential witnesses, including numerous current and former workers across all levels of Defendants as well as third party recruiters and service providers, which corroborated and further developed the DOJ's allegations. Lerner Decl., ¶ 25; Saveri Decl., ¶¶ 22-23. For example, this investigation uncovered the existence of Belcan's Policy 10, a written memorialization of the No-Poach Agreement that the Department of Justice did not find. *See Doe v. Raytheon Technologies Corp et al.*, No. 3:22-cv-00035, at ¶ 91 (D. Conn). The Amended *Doe* Complaint also developed support for detailed allegations against a number of additional defendants. Collins Aerospace (a division of Raytheon) was not named in the DOJ Affidavit or Indictment, despite being involved in the conspiracy. No other complaint has asserted direct evidence of Collins Aerospace personnel directly enforcing the No-Poach Agreements with other Defendants. *Doe* is also the only complaint to bring claims against Defendant Natalia Khandros, a Collins Aerospace executive who directly enforced the No-Poach Agreements and was an ally of Mahesh Patel—the ringleader of the No-Poach Agreements.

JSLF and Robins Kaplan's complaints reflect their understanding of labor markets and showcase the firms' preliminary evaluation of relevant markets and antitrust injury. From past experience, the firms are aware that the economics of labor markets are complex and require careful analysis. *See*, *e.g.*, *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167 (N.D. Cal. 2013). Relying on their in-house economists, consultants, and researchers, JSLF and Robins Kaplan's investigation included studying the relevant input market for labor, the downstream market for aerospace engineering and related work, and the supply and demand conditions in the labor market. Recognizing the need for continued expertise throughout the course of this litigation, Robins Kaplan has retained a labor economist who is one of the nation's leading authorities on no-poach agreements. Lerner Decl., ¶ 26.

In addition to factual investigation, JSLF and Robins Kaplan have taken additional affirmative steps to advance the litigation. Recognizing the pressing need to preserve evidence given the many nonparties who possess or control relevant evidence and the fact that potentially relevant evidence could have been lost as a function of ordinary data retention policies (e.g., call records are typically destroyed within a year), JSLF and Robins Kaplan identified and sent document preservation letters to parties and nonparties, including staffing agencies, to ensure relevant evidence is preserved. Saveri Decl., ¶ 26; Lerner Decl., ¶27. Similarly, JSLF has undertaken similar efforts to preserve telephone and messaging records from various third-party carriers. *Id*. These efforts will substantially benefit all plaintiffs. *Id*.

While JSLF and Robins Kaplan did not win—or try to win—the race to the courthouse, the efforts the firms have taken to develop the case are far more significant than simply being the

first case on file. *See* Newberg & Conte, *Newberg on Class Actions* § 9.35.[6] No firm has done

more to investigate and advance this case than Robins Kaplan and JSLF.

### B.     JSLF and Robins Kaplan Have Significant Experience Litigating Complex Cases, including Groundbreaking No Poach Cases

Courts are often presented with numerous impressive leadership applications in antitrust

class actions. Robins Kaplan and JSLF have routinely been chosen for leadership in those cases,

resulting in extraordinary results on behalf of their clients and classes, efficient resolutions of

disputes and advancement of the interests of justice. This includes extensive trial experience,

which, should this case proceed to jury trial, redound to the benefit of the Class.

#### 1.     Joseph Saveri Law Firm LLP

JSLF is a highly respected law firm that specializes in antitrust and other complex

litigation. Through years of experience, JSLF has developed an expertise in managing large class

actions resulting in sizeable—and outsize—resolutions for the classes it represents. With offices

in San Francisco and New York City, JSLF has been appointed lead or co-lead counsel and

successfully litigated and tried some of the most complex private cases in the last decade,

including no-poach cases.[7] JSLF is recognized as among the preeminent plaintiffs' law firms in

---

[6] Since the Department of Justice unsealed its Affidavit in Support of Criminal Complaint and Arrest Warrant for Patel, *United States v. Patel*, No. 3:21-mj-1189, ECF No. 15 (D. Conn. Dec. 9, 2021) (the "DOJ Affidavit"), and its indictment of five top executives of the Supplier Defendants for their roles in the No Poach Agreement, *United States v. Patel et al.*, No. 3:21-cr-220, ECF No. 20 (D. Conn. Dec. 15, 2021) (the "Indictment"), 33 civil actions have been filed. These copycat cases essentially parrot the basic allegations of the DOJ Affidavit and Indictment, and reflect little or no independent investigation. *Compare Conroy v. Agilis Eng'g, Inc.*, No. 3:21-cv-01659 (D. Conn.) to DOJ Affidavit and Indictment. Many of the subsequent filings are essentially verbatim copies of prior ones. *Compare Granata v. Pratt & Whitney*, No. 3:21-cv-01657 (D. Conn)*; Balicoco v. Pratt & Whitney*, No. 21-cv-01673 (D. Conn.); *Kintz v. Agilis Eng'g, Inc.*, No. 21-cv-01674 (D. Conn.).

[7] *See, e.g.*, Order Appointing Interim Lead Class Counsel, *In re Capacitors Antitrust Litig.*, No. 14-cv-3264-JD (N.D. Cal. Oct. 31, 2014), ECF No. 319; *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, No. 18-md-02819(NG)(LB) (E.D.N.Y 2018); *High-Tech*, No. ll-cv-2509 (N.D. Cal. 2011); *Roe v. Surgical Care Affiliates*, No. 1:21-cv-00305 (N.D. Ill. 2021); *Scola v. Facebook Inc.*, No. 18-CIV-05135 (Cal. San Mateo); *Doe v. YouTube, Inc.*, No. 4:20-CV-07493-YGR (N.D. Cal.); *Fraizer v. ByteDance, Inc.*, No. 2:21-cv-9914-RGK-MRW (C.D. Cal.); *In re Juul Labs, Inc. Antitrust Litig.*, No. 3:20-cv-02345-WHO (N.D. Cal.); *In re Cipro Cases I and II*,

the country and has received numerous accolades for its work as a private enforcer of the antitrust laws.[8] Saveri Decl., Ex. A. JSLF's work in litigating groundbreaking No-Poach cases has already impacted this litigation. *See*, *e.g.*, *id.*, ¶¶ 11, 26. For instance, defendants in this case learned that "these agreements are illegal" based on news coverage the decision in *High Tech*, where JSLF served as lead counsel. *See*, *e.g.*, Amended *Doe* Compl., No. 3:22-cv-00035 (D. Conn.) ECF No. 101, ¶121; *Mamigonian v. Agilis Eng'g, Inc.*, 3:21-cv-01721-SVN (D. Conn.) ECF No. 1, ¶ 93.

JSLF has relevant experience leading no-poach cases involving government contractors—like in this case. *See Hunter v. Booz Allen Hamilton Holding Corp.*, No. 2:19-cv-00411 (S.D. Ohio). Like this case, *Hunter* involves firms supplying employees to other firms to service government contracts and other government services. *Hunter* has progressed through discovery, class certification and summary judgment. Through *Hunter*, JSLF has acquired significant experience with the economics of government contracting and providing service to the Department of Defense, as well as with government contracting generally including the requirements of the Federal Acquisition Regulation ("FAR") 48 C.F.R. 1. JSLF's prior work on No-Poach cases put Defendants in this case on notice and is emblematic of JSLF's expertise and knowledge of the relevant law.

---

348 P.3d 845 (Cal.4th 2018); *Robinson v. Jackson Hewitt, Inc.*, No. 2:19-cv-09066-SDWLDW (D.N.J.); *Giordano v. Saks*, No. 20-cv-00833-MKB-CLP (E.D.N.Y.).

[8] JSLF has been selected for The Legal 500's 2019-2020 rankings in its "United States Antitrust Civil Litigation/Class Actions: Plaintiff" category; Chambers and Partners has ranked The Firm "Band 1" (highest ranking) in its "Antitrust: Mainly Plaintiff—California" category; the American Antitrust Institute honored JSLF with its award for Outstanding Antitrust Litigation Achievement in Private Law Practice in 2017; A winner of the Global Competition Review -GCR100- Competition category; was named by Benchmark Litigation as "One of the Best Competition/Antitrust and Dispute Resolutions Firms in California (2020-Present); Best Lawyers/U.S. News & World Report named JSLF among the Best Law Firms from 2013-Present; and named by the California Daily Journal as one of the top 20 boutiques in 2016, 2018, and 2021. Saveri Decl., ¶ 10.

In connection with prior no poach cases, JSLF has been a trailblazer, handling landmark cases in the field. In addition to *High Tech* and *Hunter*, JSLF also has been appointed to leadership roles in other no-poach cases *Robinson v. Jackson Hewitt Inc*., No. 2:19-cv-09066-SDWLDW (D.N.J.), *Giordano v. Saks*, No. 20-cv-00833-MKB-CLP (E.D.N.Y.). Through these cases JSLF has become the United States' leading expert in No-Poach cases and the application of antitrust law to these unlawful agreements.

In the *High Tech* case, plaintiffs litigated and established key legal principles, including standards applicable to motions to dismiss.[9] Saveri Decl., ¶ 12. Mr. Saveri took the depositions of key witnesses in the case. JSLF also successfully litigated and established principles applicable to class certification.[10] *See id.*; *see In re High-Tech*, ECF Nos. 273 & 509. JSLF has also had an integral role in other recent developments in antitrust class action litigation. In the *Capacitors* case, Judge Donato conducted a hearing involving concurrent testimony of experts on economics topics. *See Capacitors*, ECF No. 828. The success of this "hot tub" procedure has been widely recognized and adopted by many courts. *See, e.g.*, *In re Welding Fume Prods.*, 1:03-CV-17000, 2005 WL 1868046, at *23, n.39 (N.D. Ohio Aug. 8, 2005); *see also*, *In re Packaged Seafood Prod. Antitrust Litig.*, 332 F.R.D. 308, 317 (S.D. Cal. July 30, 2019).

JSLF's leadership has generated remarkable results for their clients. Most recently, JSLF achieved settlements on the eve of closing arguments during a jury trial in *Capacitors*;[11] total

---

[9] JSLF has obtained a similar ruling further defining the pleading standards in *Hunter*. *Hunter v. Booz Allen Hamilton Holding Corp. et al.*, No. 2:19-cv-00411 (S.D Ohio) ECF No. 49.

[10] The success of the *High-Tech* case spawned other follow-on litigation. *See, e.g., In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1186-87 (N.D. Cal.).

[11] In *Capacitors*, Judge Donato remarked that the "docket and the procedural history in this case demonstrate Counsel's expertise and the Direct Purchaser Plaintiffs' successes to date. . . . Counsel have done much to effectively prosecute the Class's claims, and to do so efficiently. . . . Counsel have not come by their success in this litigation easily. Defendants . . . have hired the best antitrust counsel money can buy to defend them." No. 14-cv-03264 (N.D. Cal. June 27, 2017), ECF No. 1714 at 7.

settlements of over $600 million in *Capacitors* significantly exceeded single damages as calculated by the class's experts—a result seldom achieved in private antitrust cases in the last 50 years. Saveri Decl., ¶ 15. The three-week jury trial involved presentation of evidence—mostly in Japanese—of a decade-long global price-fixing cartel involving 22 corporate defendants. *Id.* The case involved seven years of law and motion practice, class certification, merits and experts' discovery and appellate proceedings. *Id.* Over 25 million pages of documents were produced, most of them were produced in Japanese and other foreign languages and over 100 depositions were taken in the case. In March 2020, in the middle of the first trial and near the end of plaintiffs' case-in-chief, the COVID-19 pandemic forced the jury trial to be adjourned and a mistrial was declared. In November 2021, a second jury trial began. *Id.* After three weeks, on the eve of closing arguments, JSLF negotiated settlements with the three remaining defendants. *Id.*

JSLF is led by Joseph R. Saveri, its founder. Mr. Saveri has 35 years of experience in antitrust class action and other complex litigation.[12] *See* Saveri Decl., ¶ 11. Mr. Saveri is rated AV Preeminent by LexisNexis Martindale-Hubbell and were ranked "Band 1" attorneys by Chambers USA in its "Antitrust: Mostly Plaintiff" category for 2018 and 2019. *Id.*, ¶ 4. Mr. Saveri has led numerous highly complex cases. In addition to serving as sole lead counsel in the *Capacitors* case, Mr. Saveri also led the *Cipro* case, where under his leadership plaintiffs prevailed in the California Supreme Court. *Id.*, ¶ 14; *see In re Cipro Cases I and II*, 348 P.3d 845 (Cal.4th 2018). Mr. Saveri also served as lead counsel in the *High-Tech* case. Saveri Decl., ¶ 12; *see In re High Tech Emp. Antitrust Litig.*, 289 F.R.D. 555, 584 (N.D. Cal 2013). In addition to Mr. Saveri, the JSLF team includes other key members, including partner Steven N. Williams

---

[12] For example, David Balto, former policy director at the FTC described Mr. Saveri as the "Michael Jordan of plaintiffs' antitrust." *See* Melissa Lipman, *Lieff Cabraser Antitrust Chief to Launch Own Firm*, Law360 (May 1, 2012), *available at* https://www.law360.com/articles/335937/lieff-cabraser-antitrust-chief-to-launch-own-firm.

who has played a lead role in many of the most prominent class actions in the United States in the last several years.[13] The JSLF team also includes other important members, including associates Christopher K.L. Young, Anupama Reddy, and Abraham Maggard, as well as a team of paralegals, economists, investigators, and other professional staff. *See* Saveri Decl., Ex. B. Each has substantial experience in complex antitrust cases, including the recent *Capacitors* jury trial. Importantly during the *Capacitors* trial, JSLF lawyers Ms. Reddy and Mr. Young—both members of the JSLF team here—had the opportunity to examine key witnesses, argue motions and participate extensively in the trial—trial experience that much more senior lawyers in the plaintiffs' bar still lack. Saveri Decl., ¶¶ 15, 21.

JSLF also has significant experience leading and litigating cases which are running in parallel with federal investigations.[14] Mr. Saveri and Mr. Williams in particular have served as lead counsel in numerous complex cases that occurred concurrently with federal investigations. In this case, JSLF has already assisted in drafting letters to the leniency applicant. Saveri Decl., ¶ 30. Mr. Saveri has further spoken at the DOJ in regard to the parallel investigations. *Id.*, ¶ 16. If

---

[13] For example, Mr. Williams served as co-lead counsel in *Auto Parts*, No. 2:12-md-02311 (E.D. Mich.). The end payor classes have reached settlements to date exceeding $1.2 billion. The case was widely considered the largest antitrust conspiracy in history in terms of impact on U.S. consumers until the *In re Generic Drugs Antitrust Litig.*, a case in which Judge Cynthia M. Rufe appointed both Mr. Saveri and Mr. Williams to the Plaintiff's Steering Committee.

[14] *See, e.g.*, *In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051, 1064 (N.D. Cal 2015); see also, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 589 (N.D. Cal. 2010); *In re Automotive Parts Antitrust Litig.*, 29 F.Supp.3d 982, 991 (E.D. Mich. 2014); *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014); *In re Qualcomm Antitrust Litig.*, No. 5:17-md-02773-LHK (N.D. Cal.); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. C 07–01819 CW. (N.D. Cal.); *In re Air Cargo Shipping Serv. Antitrust Litig.*, No. 06-MD-1175(JG)(VVP) (E.D.N.Y.*); In re Flash Memory Antitrust Litig.*, No. C 07-0086 SBA (N.D. Cal.); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M02-1486PJH (N.D. Cal.); *In re Ocean Shipping Antitrust Litig.*, MDL No. 395 (S.D.N.Y.); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427 (S.D. Tex. 2002). Mr. Saveri has been invited to speak at the Department of Justice regarding ACPERA, the corporate leniency program and other issues in parallel criminal and civil cases. *Session 3: Roundtable Discussion on ACPERA*, DEP'T OF JUSTICE (Apr. 11, 2019), https://www.justice.gov/atr/video/public-roundtable-discussion-acpera-session3.

appointed, JSLF will continue to utilize its expertise in coordinating and working with concurrent federal investigations to the benefit of the Class.

### 2. Robins Kaplan LLP

Robins Kaplan attorneys are responsible for some of the largest settlements ever recorded in matters alleging antitrust violations, including both class and individual actions. The firm broke new ground when it obtained a landmark $6.6 billion settlement—following a fifteen-week trial—on behalf of the State of Minnesota and Blue Cross and Blue Shield of Minnesota in an antitrust and consumer-fraud lawsuit against the tobacco industry. *See Minnesota and BCBS of Minn. v. Philip Morris Inc. et al.*, No. Cl-95-1324 (Minn.) ("*Big Tobacco*"). The $6.24 billion settlement that Robins Kaplan secured in *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, MDL No. 1720 (E.D.N.Y.) (appeal pending), is the largest known settlement of any class action under the Sherman Act. Robins Kaplan attorneys also achieved $1.2 billion in settlements in *Air Cargo* and in excess of $1.2 billion in settlements in *Auto Parts*, both civil actions initiated by Ms. Lerner based on DOJ investigations.

The firm's win in the *Big Tobacco* litigation is just one of many cases contributing to Robins Kaplan's reputation as a savvy and tenacious trial firm. In *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.), Robins Kaplan obtained a unanimous jury verdict on behalf of its client Best Buy, requiring the sole remaining defendant to pay a multi-million dollar judgment for its participation in a global price-fixing conspiracy. Robins Kaplan also secured a multi-million dollar judgment for its client BCBS of Minnesota after a successful trial in *In re Lorazepam and Clorazepate Antitrust Litigation*, 1:99-mc-00276 (D.D.C.). And

next month, but already trial-ready, jury selection begins in *In Re: Disposable Contact Lens Antitrust Litigation*, Case No. 3:15-md-2626, where Robins Kaplan will lead the trial team.[15]

Ms. Lerner, Co-Chair of Robins Kaplan's National Antitrust Practice Group, has two decades of experience prosecuting antitrust class actions in federal courts throughout the country. She has successfully initiated and litigated over a dozen class actions involving antitrust conspiracies. She currently serves as lead counsel in *BCBS of Minnesota, Inc. v. Vyera Pharmaceuticals, LLC, et al.*, Case No. 1:21-cv-1884 (S.D.N.Y.), where she has achieved a settlement valued at up to $40 million in a groundbreaking case alleging that "pharma bro" Martin Shkreli and his company illegally thwarted generic competition for the drug Daraprim. Ms. Lerner also serves as co-lead counsel in *In re Merck Mumps Vaccine Antitrust Litigation*, No. 12-cv-03555 (E.D. Pa.), a class action alleging that Merck unlawfully excluded potential rival manufacturers from the market for measles-mumps-rubella vaccines in the United States. These are just a few of the many complex cases in which Ms. Lerner and her colleagues at Robins Kaplan have served as lead counsel or in other leadership roles.[16] Many of those cases were filed while the DOJ or other government enforcers were investigating similar conduct.[17]

---

[15] To date, Robins Kaplan has secured $43.2 million in settlements on behalf of the Class in the *Contacts* action.

[16] *See, e.g.*, *In re Hard Disk Drive Assemblies Antitrust Litigation*, Case No. 19-md-2918 (N.D. Cal .) (serving as co-lead counsel in antitrust class action proceeding in parallel alongside DOJ investigation involving multiple overseas defendants); *see also In re Wells Fargo Collateral Protection Insurance Litig.*, No. 17-ml-02797 (C.D. Cal.); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-md-02542 (S.D.N.Y.); *In re Local TV Advertising Antitrust Litig.*, No. 18-cv-06785 (N.D. Ill.); *In re Air Cargo Shipping Services Antitrust Litig.*, No. 06-md-01775 (E.D.N.Y.); *County of Monmouth, New Jersey v. Florida Cancer Specialists, et al.*, No. 18-cv-00201 (M.D. Fla.); *Interior Molded Doors*, No. 18-cv-00850 (E.D. Va.); *In re Polyurethane Foam Antitrust Litig.*, No. 10-md-02196 (N.D. Ohio); *Dahl, et al. v. Bain Capital Partners, LLC, et al.*, No. 07-cv-12388 (D. Mass.); *In re Abbott Labs Norvir Antitrust Litig.*, No. 04-cv-01511 (N.D. Cal.)*; *In re Flat Glass II Antitrust Litig.*, No. 08-mc-00180 (W.D. Pa.)*; *In re Puerto Rican Cabotage Antitrust Litig.*, No. 08-md-01960 (D.P.R.)* (asterisk indicates work at prior firm).

[17] *See, e.g.*, *Auto Parts*, No. 12-md-02311 (E.D. Mich.); *Air Cargo*, No. 06-md-01775 (E.D.N.Y.); *Wells Fargo Insur.*, No. 17-ml-02797 (C.D. Cal.)*; Local TV Ads*, No. 18-cv-06785 (N.D. Ill.); *Hard Disk Drive Assemblies*, No. 19-md-02918 (N.D. Cal.); *Sterk et al. v. Bank of Nova Scotia, et al.*, No. 20-cv-11059 (D.N.J.); *Florida Cancer Specialists*, No. 18-cv-00201 (M.D. Fla.); *Ace Marine Rigging & Supply, Inc. v. Virginia Harbor Services, et al.*,

Ms. Lerner is known as a "trailblazer," a "zealous advocate," a "brilliant tactician" and a "fierce litigator."[18] Her peers credit her with a unique ability to "get large teams of people to work effectively together"—a key trait in large, complex actions like this one.[19] The Legal 500 USA has praised Ms. Lerner for her "superior intellect, determination and political savvy in getting the job done."[20]

What's more, appointing Ms. Lerner would bring to bear all the resources and experience of Robins Kaplan LLP, an AM LAW 200 firm heralded by peers and clients alike as "simply amazing," "forward-thinking," "creative," and "very effective."[21] The firm is ranked "Tier 1" for Antitrust by Benchmark Litigation, Chambers USA and U.S. News & World Report, and has been named one of the nation's top firms for antitrust class actions by The Legal 500 each of the past six years.[22] Robins Kaplan has been named among the country's "Most Feared Law Firms in Litigation," a "Top 10 Plaintiffs' Firm," and "A-List" by American Lawyer.[23] Robins Kaplan has spearheaded the development of new techniques in complex litigation. For instance, in *Auto Parts*, Mr. Reiss and other Robins Kaplan attorneys—alongside Mr. Williams and their co-lead counsel Susman Godfrey—created a blueprint for coordinating and settling 43 separate but related cases involving overlapping defendants. That formed the basis for the approach largely

---

No. 11-cv-00436 (C.D. Cal.)*; *In re Aftermarket Automotive Lighting Products Antitrust Litig.*, No. 09-ml-02007 (C.D. Cal.)*; *In re Marine Hose Antitrust Litig.*, No. 08-md-01888 (S.D. Fla.)*; *In re Food Service Equipment Hardware Antitrust Litig.*, No. 10-cv-1849 (N.D. Ga.)*; *In re Aftermarket Filters Antitrust Litig.*, No. 08-cv-04883 (N.D. Ill.)*; *In re Polyurethane Foam Antitrust Litig.*, No. 10-md-02196 (N.D. Ohio); *Puerto Rican Cabotage*, No. 08-md-01960 (D.P.R.)* (asterisk indicates work at prior firm).

[18] Lerner Decl. Ex. A (Robins Kaplan resume) at 8.

[19] *Id.*

[20] *Id.*

[21] *Id.* at 19.

[22] *Id.* at 20.

[23] *Id.* at 23.

adopted by the court in the *Generic Drugs* antitrust litigation in the Eastern District of Pennsylvania, which involves similar issues. The judge presiding over the *Auto Parts* litigation had this to say about the attorneys working on the case:

> Each of you have demonstrated extreme competence, respect for the court, and diligence in your work . . . You are certainly amongst the best attorneys with whom I have had the opportunity to work.[24]

Ms. Lerner and Mr. Reiss are also published authorities on the subject of no poach agreements.[25] Mr. Reiss received a 2021 Antitrust Writing Award for his article on no-poach agreements, and was nominated for the same award the previous year for his article about litigating class actions based on government investigations.[26] On January 24, 2022, Ms. Lerner and Mr. Reiss hosted the keynote panel of the New York State Bar Association Antitrust Law Section's annual meeting, which focused on, among other topics, the proliferation of coordination and consolidation among competing employers and the resulting detrimental impact on workers and consumers.[27]

### 3. Aeton Law Partners LLP

Mr. Jonathan M. Shapiro, of Aeton Law Partners LLP ("Aeton Law"), has over twenty years of litigation experience, and is a well-respected member of the bar, having served as President of the Connecticut Bar Association from 2018-2019. Aeton Law is a boutique law firm with offices located in West Hartford, Middletown, and New Haven.[28]  Since the inception of these actions, Aeton Law has taken an active role in this litigation including extensively

---

[24] *Id.* at 18.

[25] *Id.* at 10, 13.

[26] *Id.* at 13.

[27] *Id.* at 10, 13.

[28] *See* Declaration of Jonathan M. Shapiro, dated February 1, 2022 ("Shapiro Decl."), Exs. A, B.

interviewing potential witnesses and conducting additional investigation. Mr. Shapiro is admitted to practice in the States of Connecticut and New York, and the Districts of Connecticut, Southern District of New York, and Eastern District of New York. His practice focuses on commercial and complex litigation matters involving, among other things, employment, securities, shareholder, business tort and intellectual property disputes. Mr. Shapiro has extensive trial experience, including over 150 trial days over the last four years alone.

In addition, Mr. Shapiro routinely serves as local counsel for non-Connecticut based firms in the State of Connecticut Superior Courts and the United States District Court for the District of Connecticut, including in derivative and class-action lawsuits. For example, Mr. Shapiro recently served as local counsel for plaintiffs in *In Re Tangoe, Inc., Securities Litigation*, Civil Action No.: 3:17-cv-00146 (VLB), which matter was successfully resolved in 2018. In 2019, following an agreement reached among multiple parties, Mr. Shapiro was appointed as Liaison counsel in *In Re Revolution Lighting Technologies, Inc. Stockholder Derivative Litigation,* Master File No.: 3:19-cv-00621-JBA, which matter was successfully resolved in 2020. As a result of his extensive experience, Mr. Shapiro is intimately familiar with local rules and practice and will effectively manage communications among counsel and the Court. Manual, § 10.221 (2006).

If appointed Interim Liaison Counsel, Mr. Shapiro will be supported as needed by his colleagues at Aeton Law, including managing partner N. Kane Bennett. Mr. Bennett has tried over fifty cases before both juries and judges between state and federal court. Mr. Bennett currently serves as local counsel in a *qui tam* action on behalf of the United States through relator under the False Claims Act against United Technologies Corporation ("UTC"). The claims against UTC involve reports made to the United States Government using falsified lab

reports on jet engine parts for F-22 and F-25 fighter jets in relation to a contract worth approximately $3.7 billion. Litigation continues in this action after relator prevailed on motions to dismiss and multiple obstructions to discovery. Aeton Law believes in developing its junior attorneys and giving them active, substantive roles in litigation.  In 2020, all of its litigation attorneys, including its associates, tried cases to verdict as lead counsel. If selected, Aeton Law intends to provide meaningful opportunities to its junior attorneys in this case.

### C. Robins Kaplan and JSLF Will Commit the Resources Necessary to Litigate This Case

As demonstrated by their proven track record of prosecuting complex class actions, Robins Kaplan and JSLF have shown that each have the time and resources to ensure the interests of the Class are zealously prosecuted to a full and fair resolution. The firms have previously litigated complex class actions without support from or involvement with third-party litigation funders and are prepared to do so again here. *See* Fed. R. Civ. P. 23(g)(1)(A)(iv); Saveri Decl., ¶ 8. As demonstrated by past practice, Robins Kaplan and JSLF possess the ability to independently finance this litigation through trial, having done so in many other cases.

Robins Kaplan and JSLF's resources are not only financial—each firm includes some of the most accomplished antitrust trial lawyers, investigators, and professional staff in the United States. Each firm has brought those resources to bear in the past and will do so again here.[29] Indeed, JSLF has consulted with a number of experts, including some of the nations' leading experts in the field of antitrust and competition, in particular those in the no-poach space. Saveri Decl., ¶ 22. Robins Kaplan has retained a labor economist who is one of the nation's leading

---

[29] For example, the timing of the initiation of this case follows closely with the successful conclusion of the *Capacitors* litigation, mentioned above. Those same resources will be brought to bear in this litigation. Likewise, Robins Kaplan will put the full weight of its resource—including its 250 attorneys across eight offices, as well as the litigation support services described below—to work for the benefit of the Class.

authorities on no-poach agreements. Lerner Decl., ¶ 26. Collectively, Robins Kaplan and JSLF have used their in-house investigators and economists to develop the factual record, including by interviewing former employees of the alleged conspirators, as well as third parties who may have relevant information.

Unlike many of the firms that have filed complaints in the consolidated action, Robins Kaplan—an AM LAW 200 law firm—benefits from an in-house litigation support group that will enable proposed lead counsel to minimize the use of outside vendors. The suite of interdisciplinary professional services known as Robins Kaplan Acumen includes Ph.D. scientists, engineers, economic consultants, dedicated eDiscovery professionals, and a trial support and multimedia/graphics department, which work alongside the firm's attorneys. Lerner Decl. Ex. A at 27. Robins Kaplan also deploys a legal project management program, Matter Management Solutions ("MMS"), to predict, track and monitor costs. *Id.* ¶ 22. Courts in the Second Circuit recognize that in-house litigation support services like these can help a firm efficiently litigate a complex antitrust class action. *See In re Treasury Sec. Auction Antitrust Litig.*, No. 15 MD 2673 (PGG), 2017 WL 10991411, at *3 (S.D.N.Y. Aug. 23, 2017). So too here.

### D. Additional Factors Support Robins Kaplan and JSLF's Appointment

In addition to the enumerated factors set forth in Rule 23(g), in determining the best counsel for the class, the Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B)-(C).

Several factors support Ms. Lerner and Mr. Saveri's appointment as interim lead counsel. In addition to the Rule 23(g) factors, "[f]or well over a decade now, the courts have emphasized the importance of diversity in their selection of counsel." *City of Providence, Rhode Island v.*

*AbbVie, Inc.*, 2020 WL 6049139, at *6 (S.D.N.Y. Oct. 13, 2020). A leading guide to best practices for appointing lead counsel emphasizes that diversity "enhances the quality of the decision-making process and results" and encourages courts to "make appointments consistent with the diversity of our society and justice system." *Inclusivity and Excellence: Guidelines and Best Practices for Judges Appointing Lawyers to Leadership Positions in MDL and Class-Action Litigation*, James F. Humphreys Complex Litigation Center, George Washington Law School (March 15, 2021), https://www.law.gwu.edu/sites/g/files/zaxdzs2351/f/downloads/3-Page_Summary_Report_and_Signatories_List_3.16.21.pdf.

Appointment of Ms. Lerner and Mr. Saveri would further the interests of diversity and inclusivity. Ms. Lerner would be one of the first women to serve as lead counsel in a no-poach antitrust class action. More importantly, as the former Chair of Diversity for Robins Kaplan (2014-2020) and the current Chair of Diversity for the Antitrust Section of the New York State Bar Association (2019-present), she is keenly aware of the ways implicit bias can impact decision-making and is committed to harnessing the talents and skills of attorneys and professional staff from all backgrounds. Lerner Decl. ¶ 20. Additionally, both Mr. Saveri's and Ms. Lerner's teams are comprised of young attorneys, many of whom are first-generation attorneys and come from diverse backgrounds.[30]

JSLF and Robins Kaplan have a history of working collaboratively and inclusively in leadership positions, providing strong direction but also listening to co-counsel, resolving differences equitably, and distributing work fairly and in a way that promotes the most efficient

---

[30] Every year, Robins Kaplan expends substantial resources hosting its nationally recognized trial academy, First Chair—a testament to its commitment to developing junior attorneys. https://www.robinskaplan.com/careers/associates/first-chair-training-program. Providing substantive roles to younger attorneys not only furthers the profession, but also inures to the benefit of the Class. Younger attorneys bill at lower rates. If chosen as co-lead counsel, Ms. Lerner and Mr. Saveri are committed to staffing the matter with capable younger attorneys in order to maximize any potential recovery for the Class.

use of the collective resources of co-counsel.[31] Likewise, the firms have a long history of collaborative professional relationships with their adversaries. JSLF and Robins Kaplan recognize they owe a duty of professionalism to their clients, opposing parties and their counsel, the courts, and the public as a whole. *See* Saveri Decl., ¶ 10.

In appointing lead counsel, the Court may inquire into any *quid pro quo* arrangements or promises for future work. *See* Manual, § 21.272 ("To guard against overstaffing and unnecessary fees, the court should order the attorneys to produce for court examination any agreements they have made relating to fees or costs."). JSLF and Robins Kaplan have made no such promises or bargains. Additionally, the two firms have established efficient case management and billing protocols in other cases where they serve in leadership roles and will do so here if appointed as lead counsel. Robins Kaplan's legal project management program, MMS, will also enable the attorneys to closely monitor costs and keep them under control. Lerner Decl. ¶ 22. A small, well-qualified team of attorneys will oversee case strategy, document review, take related depositions, and draft well-supported briefs. There will be no block billing, and time will be entered contemporaneously, to be submitted to the Court at regular intervals. JSLF has also retained a Certified Public Accountant, at no cost to the Class, who will routinely audit time and expense reports. Additionally, the firms have proposed time and expense guidelines to be approved by the Court. *See* Saveri Decl., Ex. D.

---

[31] Both JSLF and Robins Kaplan have strong relationships with many of the other firms that have filed complaints in the consolidated action. *See, e.g.*, *Le v. Zuffa* (JSLF, Berger Montague and Cohen Milstein co-lead counsel); *Surgical Care Assocs.* (JSLF, Lieff Cabraser, and Nussbaum Law co-lead counsel); *Contacts* (Robins Kaplan, Scott + Scott LLP and Hausfeld LLP co-lead counsel); *Auto Parts* (Robins Kaplan and Susman Godfrey co-lead counsel); *Keurig* (Robins Kaplan and Motley Rice LLP co-lead counsel); *Merck Mumps* (Robins Kaplan and Spector Roseman & Kodroff co-lead counsel).

# V. CONCLUSION

For the forgoing reasons, the Court should appoint Ms. Kellie Lerner of Robins Kaplan

LLP and Mr. Joseph R. Saveri and The Joseph Saveri Law Firm, LLP as Interim Co-Lead

Counsel, and Mr. Jonathan M. Shapiro as Interim Liaison Counsel for the Class.

Dated: February 1, 2022

Respectfully Submitted,

By: ___/s/ Jonathan M. Shapiro_____
Jonathan M. Shapiro (SBN CT24075)
**AETON LAW PARTNERS LLP**
311 Centerpoint Drive
Middletown, CT 06457
(860) 724-2160
jms@aetonlaw.com

Kellie Lerner
William V. Reiss
David B. Rochelson*
Laura Song (Bar Admission Pending)*
**ROBINS KAPLAN LLP**
900 Third Avenue
Suite 1900
New York, NY 10022
(212) 980-7400
klerner@robinskaplan.com
wreiss@robinskaplan.com
drochelson@robinskaplan.com
lsong@robinskaplan.com

Joseph R. Saveri (*pro hac vice*)
Anupama K. Reddy (*pro hac vice*)
Christopher K.L. Young (*pro hac vice*)
Abraham A. Maggard (*pro hac vice*)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
areddy@saverilawfirm.com
cyoung@saverilawfirm.com
amaggard@saverilawfirm.com

Steven N. Williams (*pro hac vice*)
**JOSEPH SAVERI LAW FIRM, LLP**
40 Worth Street, Suite 602
New York, NY 10013
Telephone: (646) 527-7310
Facsimile: (212) 202-7678
swilliams@saverilawfirm.com

*Counsel for Plaintiffs Camden Mamigonian,*
*Austin Waid-Jones, John Doe, James Roe and*
*the Putative Class*

*\*Pro hac vice* forthcoming

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

This 1st day of February, 2022.

/s/ Jonathan M. Shapiro ct24075
Jonathan M. Shapiro