# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID GRANATA, on behalf of himself and all others similarly situated, <br><br>        Plaintiff, <br><br>        v. <br><br> PRATT & WHITNEY, A DIVISION OF RAYTHEON TECHNOLOGIES CORPORATION; QUEST GLOBAL SERVICES-NA, INC.; BELCAN ENGINEERING GROUP, LLC; BELCAN ENGINEERING GROUP LIMITED PARTNERSHIP; CYIENT INC.; PARAMETRIC SOLUTIONS, INC.; AGILIS ENGINEERING, INC.; MAHESH PATEL; ROBERT HARVEY; HARPREET WASAN; THOMAS EDWARDS; GARY PRUS; FRANK O'NEILL; and JOHN DOES 1-3, <br><br>        Defendants. | No.   3:21-cv-01657-SVN <br><br> **PROPOSAL TO APPOINT COHEN MILSTEIN SELLERS & TOLL PLLC, SUSMAN GODFREY LLP, AND HAGENS BERMAN SOBOL SHAPIRO LLP AS INTERIM CO-LEAD CLASS COUNSEL** <br><br><br><br><br><br> February 1, 2022 |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 6

    I.       The CSH Team Conducted the Most Thorough Independent Investigation........... 6

    II.      The CSH Team Consistently Obtains Superior Results in Class Action
           Litigation and Trials............................................................................................... 9

           A.  The Most Experience And Best Results in Antitrust Labor Cases ................... 9

           B.  Extensive Class Action Antitrust Experience ................................................. 11

           C.  The CSH Team Will Ensure Efficient Litigation of this Matter..................... 23

    III.     The CSH Team Has the Resources to Litigate This Case Most Effectively. ....... 24

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Animation Workers Antitrust Litig.*,
  No. 14-cv-04062-LHK, 2017 WL 2423161 (N.D. Cal. June 5, 2017) .................................3, 9

*In re High-Tech Employee Antitrust Litig.*,
  No. 11-cv-02509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ....................................3

*In re: Int. Rate Swaps Antitrust Litig.*,
  No. 16-md-2704-PAE, 2016 WL 4131846 (S.D.N.Y. Aug. 3, 2016) ......................................8

*Moehrl v. Nat'l Ass'n of Realtors*,
  No. 19-cv-01610, 2020 WL 5260511 (N.D. Ill. May 30, 2020)..............................................8

*In re: Qualcomm Antitrust Litig.*, No. 17-md-02773-LHK, 2017 WL 2222531
  (N.D. Cal. May 15, 2017) ...............................................................................................1, 15

*In re SSA Bonds Antitrust Litig.*, No. 16-cv-3711, 2016 WL 7439365 (S.D.N.Y.
  Dec. 22, 2016)......................................................................................................................24

*In re Urethane Antitrust Litig.*,
  No. 04-1616-JWL, 2016 WL 4060156 (D. Kan. July 29, 2016) ...........................................12

OTHER AUTHORITIES

Fed. R. Civ. P. 23(g)(1)(iv)...............................................................................................24

Fed. R. Civ. P. 23(g)(1)(A)(i) ..............................................................................................3

Fed. R. Civ. P. 23(g)(1)(A)(ii) .............................................................................................9

Fed. R. Civ. P. 23(g)(1)(A)(ii)-(iii) ......................................................................................2

Fed. R. Civ. P. 23(g)(1)(A)(iv) ............................................................................................5

# INTRODUCTION

On behalf of our five clients, Cohen Milstein Sellers & Toll PLLC, Susman Godfrey LLP, and Hagens Berman Sobol Shapiro LLP (the "CSH Team") propose a leadership structure of only our three firms. We will litigate the entire case with a tight-knit, efficient team of attorneys with deep experience litigating antitrust cases together, including high-profile labor and no-poach cases, and trying cases to juries.

***Jury Trial Experience***.  The CSH Team has assembled a team of lawyers who are not only at the very top of the antitrust bar, but who have successfully tried cases to juries. For example, Susman Godfrey's managing partner, Kalpana Srinivasan, has been appointed co-lead counsel in some of the nation's largest class actions, including *In re: Qualcomm Antitrust Litigation*, in which then-District Judge Koh stated: "Ms. Srinivasan has considerable experience litigating . . . complex class actions. In addition, of all the Plaintiffs' counsel in these consolidated cases, Ms. Srinivasan is the only attorney who has tried a case before this Court, and Ms. Srinivasan was excellent at trial." No. 17-md-02773-LHK, 2017 WL 2222531, at *1 (N.D. Cal. May 15, 2017). Her trial experience also includes winning a $706 million jury verdict in a complex trade secret misappropriation and fraud case, and obtaining a full defense jury verdict in an employment class action.

Hagens Berman's founder, Steve Berman, is one of the most experienced trial attorneys in class actions in the country. Mr. Berman directed the trial team in the *In Re: NCAA Grant-In-Aid Cap Antitrust Litigation*, No. 4:14-md-02541 (N.D. Cal.), on behalf of a nationwide class of college athletes challenging the compensation rules of the NCAA and its members. Mr. Berman successfully obtained a permanent injunction and a decision that the NCAA's longstanding caps on compensation violate Section 1 of the Sherman Act, setting the stage for a monumental shift in the rules governing U.S. college sports. That decision and the injunction were upheld,

unanimously, by the Supreme Court last year. *See NCAA v. Alston*, 141 S. Ct. 1241 (2021). Mr. Berman was also the lead trial lawyer in *In re Pharmaceutical Industry Average Wholesale Price Litigation*, No. 01-cv-12257 (D. Mass.), a case successfully tried in front of the Honorable Patti B. Saris. He also successfully argued the appeal from the trial before the First Circuit. The court approved a total of $338 million in settlements.

Cohen Milstein's Dan Small has also successfully led trials in antitrust class actions. He was co-lead trial counsel for a class of Maine wild blueberry growers who sued four blueberry processors for conspiring to depress blueberry prices. *Pease v. Jasper Wyman & Son*, No. cv-00-015 (Me. Super. Ct.). The case was tried to a jury which found the processors liable for 100% of the damages estimated by the plaintiffs' expert. As co-lead counsel, Cohen Milstein also secured the largest price-fixing jury verdict ever in *In re Urethane Antitrust Litigation*—$1.06 billion after trebling and offsets for pretrial settlements. Tr. of Mot. Hr'g for Final Approval of Settlement at 11, *In re Urethane Antitrust Litig.*, No. 04-md-1616-JWL (D. Kan. July 29, 2018), ECF No. 3272. Other examples of the CSH Team's trial experience are below.

***Antitrust Labor Case Expertise***. The CSH Team's "experience in handling class actions, other complex litigation, and the types of claims asserted in the action," Fed. R. Civ. P. 23(g)(1)(A)(ii)-(iii), is unrivaled. Only a subset of the firms applying for interim class counsel have the critical experience representing classes of *workers* in antitrust class actions, and no firm (or group of firms) has the experience of the CSH Team. Without that knowledge and expertise at each stage, most notably at class certification with its extensive economic analysis of labor markets, the class would be at a disadvantage.

Among the subset of applicant firms who pass this test, the CSH Team stands out. One example of their experience litigating together is *In re Animation Workers Antitrust Litigation*, No.

14–cv–04062 (N.D. Cal.) ("*Animation*"). The same three firms independently developed and served as co-lead counsel for a class of animation and visual effects workers who alleged that the defendants, who included Disney, Pixar, Lucasfilm, and DreamWorks, secretly agreed not to solicit class members. *Animation* involved the same type of Section 1 *per se* claims alleged here as well as a discrete set of highly skilled workers, among other striking parallels to this case. The CSH Team achieved $168.5 million in settlements that paid more than $13,000 per class member—the highest recovery per class member ever achieved in an antitrust labor case, including the DOJ follow-on civil action, *In re High-Tech Employee Antitrust Litigation*, No. 11-cv-02509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015).[1] The firms' other experience in antitrust labor cases abounds: *Poultry Wages* Wage Suppression (Cohen and Hagens), *Detroit Nurse Wages* Wage Suppression (Cohen), *MMA* Wage Suppression (Cohen), *Railway Industry* No Poach (Hagens), *Truckers* No Poach (Susman) (descriptions and citations below).

***Best Investigation***. Besides being trial-experienced leaders of complex antitrust labor class actions, the CSH Team's comprehensive investigation demonstrates why it should be appointed. First, while all applicants rely on the investigation by the Department of Justice ("DOJ"), "the work" that the CSH team "has done in . . . investigating potential claims," Fed. R. Civ. P. 23(g)(1)(A)(i), on top of the DOJ investigation separates it from the pack. The CSH Team's amended complaint contains the most successful independent investigation of any civil complaint

---

[1] Judge Koh, who served as the Judge in both *Animation* and *High-Tech*, noted that final recovery per class member in *Animation* would be "roughly $13,612 per person," compared to "roughly $5,770 per person" in *High-Tech*. *In re Animation Workers Antitrust Litig.*, No. 14-cv-04062-LHK, 2017 WL 2423161, at *15 (N.D. Cal. June 5, 2017). Judge Koh is likely the most knowledgeable jurist in the country concerning the performance of many of the firms applying for leadership in antitrust labor cases.

filed.[2] It revealed two entirely new illegal agreements, one between Pratt & Whitney and Belcan, and another between Pratt & Whitney and Agilis, alleged by no other complaint.[3] Both are the equivalent of the agreement alleged by the DOJ between Pratt & Whitney and Quest, but the DOJ did not include either in its criminal action. They are described in detail below.

The CSH Team also uncovered new **<u>direct</u>** evidence that no other applicants have and that was not mentioned by the DOJ. Here are some examples that provide core proof of the conspiracy:

- A former Belcan recruiter who worked in the industry for many years described a "Do Not Touch" agreement, under which he was not permitted to hire employees from QuEST while at Belcan. This recruiter was told that if he did so, QuEST would "complain to the customer." Am. Compl. ¶¶ 9, 95.

- A different former Belcan recruiter stated the message from Pratt & Whitney to Suppliers was, "Look, this is in our sandbox. You all play in our sandbox, so play nice." This former recruiter recalled that Patel "was the one. . . . He was the contact for upper management at Belcan. He'd call Belcan and tell them they couldn't hire a person." *Id.* ¶¶ 9, 83.

- A third former Belcan recruiter described periodic dinners attended by Patel and Belcan executives where Patel would discuss "border patrol," which was his reference to limiting personnel transfers between Belcan, QuEST, and Pratt & Whitney. This same recruiter confirmed that Patel was the "ringleader" of the no-hire agreements, and would enforce them even when employees wanted to move from one Supplier to another. According to this former recruiter, employees were "held hostage by these agreements," which "were ruining livelihoods." *Id.* ¶¶ 89-90.

- A fourth former Belcan recruiter explained that when she worked for Belcan, "I wasn't into stealing employees. I was very careful. It gets dirty." She explained that hiring contractors from a competing supplier pitted two companies against each other and "doesn't make Pratt & Whitney happy." *Id.* ¶ 91.

- A fifth former Belcan recruiter with direct knowledge of the industry confirmed that these agreements hurt employees like those working for Defendants because "they can't get hired. Engineers are the ones that get the short end of the stick." *Id.* ¶¶ 9, 96.

- A former Belcan manager whose responsibilities included recruiting and hiring similarly recalled that Patel "called the shots." In approximately 2010 or 2011, following a meeting with Pratt & Whitney, Mahesh Patel "cornered [this manager] out in the hallway" to tell

---

[2] The CSH Team filed its initial complaint only two days after the first complaint was filed. It was the third complaint filed after the DOJ action.

[3] First Am. Class Action Compl., *Balicoco* (Feb. 1, 2022), ECF No. 153 ("Am. Compl.").

the Belcan manager that he should not hire any employees from QuEST. After the manager told his supervisor at Belcan about Patel's comments, that supervisor said to him, "you can't touch QuEST employees." *Id.* ¶¶ 84-85.

- A former recruiter who worked at CDI Corporation when it was acquired by Belcan similarly recalled a verbal "gentleman's agreement" between CDI, Belcan, and QuEST, noting that the three were located in the same building. Referring to Belcan and QuEST, this former recruiter stated, "They wouldn't poach from us; we wouldn't poach from them." He reiterated that they "were . . . a small, tight knit community, in the same building." *Id.* ¶ 143.

- A former recruiter at Cyient in East Hartford, Connecticut confirmed that when she worked for Cyient from 2018-2019, she was not allowed to hire employees from QuEST Global "because they [QuEST Global] were working for Pratt & Whitney." *Id.* ¶ 92.

- A former recruiter at QuEST said that "barely anyone" was hired from QuEST to work for a competitor. *Id.* ¶ 97.

- A former manager at Agilis confirmed that Agilis had verbal no-poach agreements with its competitors, including Belcan and Parametric Solutions. This former manager described the industry as having a "good ol' boys" network. *Id.* ¶ 93.[4]

The work that firms do to investigate and advance the class's interests is the first Rule 23(g) factor, and the quality and quantity of the CSH Team's investigation is extraordinary. Plainly put, no other firm has developed evidence like this. It is the kind that wins cases at trial; it's rarely gathered before discovery starts. If the CSH Team can achieve this result for the class in just seven short weeks without formal discovery, it can accomplish a lot more as interim co-lead counsel.

***Efficient Team***. Finally, under the factor of "resources that counsel will commit to representing the class," Fed. R. Civ. P. 23(g)(1)(A)(iv), the CSH Team again is the right choice. Each of the three firms has the track record of victories to prove that they have the leadership, deep benches, and financial wherewithal to take this case to trial or negotiate the best settlements. No one firm or slate thereof can match their collective value.

---

[4] *See also generally id.* ¶¶ 5, 9, 12-14, 65, 81, 83-98, 102, 107-08, 121, 123-36, 143, 146.

They also come as a lean and nimble team of three firms who can efficiently and effectively handle the work themselves. This strategy means that fewer attorneys spend a larger proportion of their time litigating this case. As a result, they have deeper institutional knowledge of the facts, law and theory, produce better work product, and litigate more efficiently. Attorneys who oversee the document review will know the facts—leading to successful, well-written and supported briefs. Small numbers of attorneys will take related depositions, accumulate working knowledge of the facts and previous testimony, and pursue consistent themes during cross-examination. These and other synergies and efficiencies will only be obtained by a small, coherent team with extensive expertise in this specific area of law.

Other co-lead submissions will likely have the support of an army of lawyers, all of whom have been promised or expect work in return. The CSH Team could have lobbied for such a structure behind their leadership proposal—the three firms are some of the best known and respected in the plaintiffs' bar. We chose not to. Such large structures lead to less focus and efficiency and generally inferior results. They also yield excessive attorney time billed and excessive costs incurred, which can mean a larger share of proceeds diverted from the class to the lawyers. With the CSH Team as interim co-lead counsel, there will be no executive committees, layers of firms, or work farmed out on an ad hoc basis to the dozens of different firms who have filed cases. Class members deserve what these three firms have previously accomplished together as co-lead counsel—effective representation with no duplication or wasted effort.

In sum, the Court should appoint the CSH Team as interim co-lead class counsel.

## ARGUMENT

### I.     The CSH Team Conducted the Most Thorough Independent Investigation.

Rule 23(g) instructs the Court to consider the work undertaken to investigate the potential claims in the action. That factor undoubtedly supports the appointment of the CSH Team. The

CSH Team independently investigated the DOJ's allegations, resulting in the most comprehensive set of allegations in any civil complaint filed. To date, the CSH Team has contacted or interviewed 110 industry witnesses, including recruiting professionals that worked for the Defendants, to unearth direct evidence of the conspiracy not referenced in the DOJ's public allegations. As noted above, it includes damning liability evidence of the Defendants' illegal conduct like one Belcan recruiter describing a "Do Not Touch" agreement. Am. Compl. ¶¶ 9, 95. It also confirms the harm this conduct caused the class. For example, another industry recruiter explained that these agreements hurt the class because "they can't get hired. Engineers are the ones that get the short end of the stick." *Id.* ¶¶ 9, 96.

In addition, the CSH Team's independent investigation uncovered two entire agreements between (1) Pratt & Whitney and Belcan, and (2) Pratt & Whitney and Agilis that were not identified by the DOJ or any other civil complaint. *Id.* ¶¶ 11, 123-36. As to the first agreement, a former recruiter described that Pratt & Whitney agreed not to hire any Belcan contract employees until they had worked for Belcan for a certain period of time, and even then, the employee had to wait an additional "moratorium" of six months before being hired directly by Pratt & Whitney. *Id.* ¶¶ 12, 126. In the interim six months, the contract employee would remain unemployed with no guarantee that the Pratt & Whitney position would be available at the end of the moratorium. *Id.* ¶ 126. If Pratt & Whitney hired the employee without complying with this agreement, Belcan would charge a penalty fee. *Id.* ¶ 127. The recruiter further explained that this agreement was reduced to writing in the Master Terms Agreement (MTA) between Pratt & Whitney and Belcan, and that other companies—including Cyient—had similar provisions in their MTAs with Pratt & Whitney. *Id.* ¶¶ 128-29. According to another former Belcan recruiter, a similar monetary penalty applied if Pratt & Whitney wanted to hire a Belcan salaried employee. *Id.* ¶¶ 13, 131. The fee that

Belcan charged a customer for directly hiring a Belcan salaried employee was 30% of the employee's annual salary. *Id*.

Concerning the second agreement between Pratt & Whitney and Agilis, a former manager at Agilis described a verbal agreement between Pratt & Whitney and Agilis that prohibited both parties from hiring each other's employees. *Id.* ¶¶ 14, 133. This former manager explained that Agilis founder Frank O'Neill had an agreement with Pratt & Whitney executives that Pratt & Whitney "wouldn't come barking up our tree and we wouldn't poach from them." *Id.* ¶¶ 14, 134. If O'Neill learned an Agilis employee was considering moving to a competitor, he would comment "I gotta make a call," meaning that he was contacting someone that could block the hiring of the employee. *Id.* ¶ 135. This same former Agilis manager described the close relationship between Agilis founder Frank O'Neill and the other co-conspirators: O'Neill had started his career at Pratt & Whitney and "knew everyone at Pratt." *Id.* ¶¶ 134, 146. This former manager also recalled close relationships between O'Neill and high-level management at Parametric Solutions and Belcan. *Id.* ¶ 146.

The work counsel has done to investigate the claims is a crucial factor weighing favor of appointment as interim class counsel. *See Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2020 WL 5260511, at *2 (N.D. Ill. May 30, 2020) (appointing the three CSH Team firms as interim class counsel because they "have already devoted substantial time and effort cooperatively investigating the matters alleged in the complaint and researching the claims"); *In re: Int. Rate Swaps Antitrust Litig.*, No. 16-md-2704-PAE, 2016 WL 4131846, at *3 (S.D.N.Y. Aug. 3, 2016) ("[T]he Court's assessment is that the efforts undertaken by [counsel, including Cohen Milstein] were more generative and exceeded the investigative work of the other applicants by an order of magnitude" and therefore "the first Rule 23(g) factor strongly favors appointing [them] as interim

co-lead counsel."). The CSH Team's independent investigation is indicative of the methodical and detailed work they will do for the class. It strongly counsels for their appointment.

## II.    The CSH Team Consistently Obtains Superior Results in Class Action Litigation and Trials.

### A.    The Most Experience and Best Results in Antitrust Labor Cases

Class members should be represented by counsel that will obtain the best results for the class possible. *See* Fed. R. Civ. P. 23(g)(1)(A)(ii). This team of attorneys has closely cooperated and consistently won recoveries for classes that far surpass outcomes in comparable litigation. Each firm has extensive experience with litigating antitrust class actions, including the necessary specialized experience for this case in representing workers against Defendants who made anticompetitive agreements to restrain labor markets and suppress their compensation. The unique expertise and experience necessary to win these cases sets the CSH Team apart.

***Animation* No Poach.**  Together, the CSH Team successfully litigated *In re Animation Workers Antitrust Litigation*, obtaining a total recovery of $168.95 million on behalf of the class—over $13,000 per class member. *See Animation*, 2017 WL 2423161, at *8. Like the aerospace workers in the instant case, the class members in *Animation*—highly skilled artists and engineers that created the animation and visual effects in motion pictures—suffered suppressed compensation as a result of the defendants' anti-solicitation and wage-fixing conspiracy. *Id.* at *1, *3. The CSH Team likewise conducted a thorough pre-complaint investigation in *Animation*, uncovering harm to a new set of employees and a new method by which the defendants conducted their conspiracy. *See* Pls.' Mot. for Att'ys' Fees, Expenses, & Serv. Awards at 1, *Animation*, No. 14–cv–04062 (N.D. Cal. Sept. 15, 2016), ECF No. 331.

***Poultry Wages* Wage Suppression.**  In addition to their work in *Animation*, Hagens Berman and Cohen Milstein serve as interim co-lead class counsel in *Jien v. Perdue Farms, Inc.*,

No. 1:19-cv-2521 (D. Md.) ("*Poultry Wages*"), a case alleging that more than a dozen poultry producers conspired to depress the hourly wages paid to vulnerable workers in poultry processing plants in violation of federal antitrust laws. This case was the first such class action in the country and was based on an independent factual investigation. The Court so far has preliminarily approved settlements with four defendants for $37.8 million and discovery continues against the others.

**_Detroit Nurse Wages_ Wage Suppression.** In *Detroit Nurse Wages Antitrust Litigation*, No. 2:06-cv-15601 (E.D. Mich.), Cohen Milstein also co-led a case alleging that certain hospitals in Detroit conspired to suppress the compensation of registered nurses and exchanged information about their compensation in violation of federal antitrust laws. Cohen Milstein's efforts in this case resulted in settlements totaling over $90 million, which the court noted "conferred significant and valuable benefits to" the class. Order at 3, *Merenda v. VHS of Michigan, Inc.*, No. 2:06-cv-1560 (E.D. Mich. Jan. 29, 2016), ECF No. 971.

**_MMA_ Wage Suppression**. Cohen Milstein is also co-lead counsel in an antitrust class action on behalf of current and former UFC fighters who allege that the UFC unlawfully monopolized the market for mixed martial arts ("MMA") promotion by, among other things, locking up fighters with exclusive contracts and acquiring its rivals, leading to suppressed compensation for the fighters. *Le v. Zuffa*, No. 2:15-cv-01045 (D. Nev.). The Court denied a motion to dismiss in September 2015, and, at a recent status conference, the Court stated that it was "likely" to grant the pending motion for class certification.

**_Railway Industry_ No Poach.** Hagens Berman was on the executive committee in *In re: Railway Industry Employee No-Poach Antitrust Litigation*, No. 2:18-mc-00798 (W.D. Penn.). In that case, plaintiffs' allegations included similar agreements amongst defendants to not hire each

other's employees to suppress employee compensation and competition in the related job market. The court granted final approval to settlements totaling $48.95 million for the class.

***Truckers* No Poach.**   Susman Godfrey represents the truck driver plaintiffs in *Markson v. CRST International, Inc.*, No. 17-cv-01261 (C.D. Cal.). The plaintiffs in *Markson* allege that several commercial trucking companies agreed not to poach truck drivers from each other in order to suppress driver compensation. These no-poach agreements were discovered due to independent investigation without DOJ involvement. Class certification is currently pending, and Susman Godfrey has negotiated settlements totaling $9.75 million to date.

### B.       Extensive Class Action Antitrust Experience

In addition to their work in antitrust labor cases, each firm in the CSH team has substantial experience litigating large, complex antitrust class actions, and doing so together. In a recent fairness hearing in *In re Broiler Chicken Antitrust Litigation*, No. 1:16-cv-08637 (D. Ill.), the court praised the "exceptional outcome" achieved by counsel for plaintiffs consumers of chickens— Hagens Berman and Cohen Milstein—noting that "[t]he end-user class plaintiffs have recovered more from the settling defendants than any other class, both by total cash paid and settlement value per point of market share." Transcript of Proceedings at 10, 18, *Broilers*, No. 16-cv-08637 (Dec. 20, 2021), ECF No. 5315. In June 2019, at the hearing on final approval of the settlement in *In re Dental Supplies Antitrust Litigation*, the court stated of plaintiffs' counsel, including Cohen Milstein and Susman Godfrey: "This is a substantial recovery that has the deterrent effect that class actions are supposed to have, and I think it was done because we had really good Plaintiffs' Lawyers in the case running it." Transcript of Proceedings at 22, *Dental Supplies*, No. 1:16-cv-00696 (E.D.N.Y. June 24, 2019), ECF No. 350.

The three firms are preeminent plaintiffs' firms, deeply immersed in the antitrust bar, with unparalleled expertise in this field. Each firm in the CSH Team proposes a deep group of partners, associates and staff attorneys specializing in the antitrust laws. Moreover, all three firms have a strong commitment to diversity and the development of younger attorneys. A brief summary of each firm's background and proposed teams is below.

### 1. Cohen Milstein

Cohen Milstein is one of the oldest, largest, and most experienced firms dedicated primarily to the prosecution of class actions. The firm litigates a broad range of cases, with practice groups focused on Antitrust, Securities, Civil Rights, Consumer Protection, and Sexual Abuse cases, among others. Cohen Milstein's Antitrust Practice Group has achieved an impressive series of wins over the course of nearly five decades. *See generally* Ex. 1 (CMST Resume). In *In re Urethane Antitrust Litigation*, Cohen Milstein secured the largest *ever* price-fixing jury verdict— $1.06 billion after trebling and offsets for pretrial settlements. District Judge John W. Lungstrum commented: "In almost 25 years of service on the bench, this Court has not experienced a more remarkable result." *In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2016 WL 4060156, at *4 (D. Kan. July 29, 2016).

Cohen Milstein was recently part of a co-lead counsel team that secured a landmark settlement in the *Sutter Health Antitrust Litigation*, obtaining $575 million and extensive injunctive relief to end anti-competitive behavior that extracted monopoly rents from California businesses, union trust funds, and government entities. *See* Mot. for Preliminary Approval of Settlement at 12, *UFCW & Emps. Benefit Trust v. Sutter Health*, No. CGC-14-538451 (Cal. Sup. Ct. Dec. 19, 2019). Other recent successes for Cohen Milstein include *In re Electronic Books Antitrust Litigation*, No. 1:11-md-02293 (S.D.N.Y.) (more than $550 million in settlements); *In re*

*Domestic Drywall Antitrust Litigation*, No. 2:13-md-02437 (E.D. Pa.) ($190 million in settlements); *In re Broiler Chicken Antitrust Litigation* ($181 million in settlements); and *In re Lidoderm Antitrust Litigation*, No. 3:14-md-02521 (N.D. Cal.) ($104.75 million in settlements). These and other substantial recoveries led the Legal 500 to name Cohen Milstein as a Leading Firm in Antitrust and Class Action Litigation in 2021, and National Trial Lawyers to name Cohen Milstein "Antitrust Law Firm of the Year" in 2020.

Cohen Milstein's team will be led by **Brent Johnson** and **Daniel Small**, two of the attorneys that successfully spearheaded the *Animation* case. Daniel Small has more than thirty years of experience in antitrust litigation, including negotiating settlements totaling hundreds of millions of dollars, trying cases to verdict, and arguing appeals in circuit courts and the U.S. Supreme Court. Law360 named Mr. Small a "Titan of the Plaintiffs Bar" in 2020—only one in a long series of recognitions, including LawDragon's 500 Leading Lawyers in America" list and Super Lawyers' list of Top Antitrust Litigation Attorneys in Washington, D.C. Mr. Small served as co-lead counsel in *Animation* and has done so, or played a leading role, in a host of antitrust class actions, including the *Sutter Health* antitrust litigation, which settled in 2019 for $575 million and detailed injunctive relief, and *Rotavirus Vaccines Antitrust Litigation*, No. 2:18-cv-01851 (E.D. Pa.), among many others.

Brent Johnson is co-chair of Cohen Milstein's Antitrust Practice Group and serves in senior firm management. He has nearly two decades of experience in large, complex class actions. He serves as co-lead counsel in *Poultry Wages* ($37.8 million so far) and heads Cohen Milstein's co-lead counsel team in *Broilers* ($181 million so far). He was a critical senior member of the CMST co-lead counsel team in *Animation* with Daniel Small. Mr. Johnson also initiated *In re Domestic Drywall Antitrust Litigation* in which Cohen Milstein as co-lead counsel secured settlements that

total more than $190 million for direct purchasers of drywall. Mr. Johnson was recognized by *The Legal 500* in 2017, 2018, and 2019 as a "Next Generation Lawyer" and in 2020, and 2021 as a "Next Generation Partner," an honor bestowed upon less than a dozen lawyers positioned to become leaders in antitrust civil litigation and class actions. In addition to other honors, Mr. Johnson was named to *Lawdragon*'s list of "500 Leading Plaintiff Financial Lawyers" in 2019, 2020 and 2021, and to *Global Competition Review*'s "Who's Who Legal: Competition 2021" list for Plaintiffs.

Cohen Milstein's team also includes **Emmy Levens**, a Partner in the Antitrust Practice Group with over a decade of experience in complex antitrust litigation, class actions, and appellate litigation. Ms. Levens has been recognized by the legal industry for her exceptional work, including being named to *The National Law Journal's* 2021 "Elite Women of the Plaintiffs Bar," recognizing the top women litigators in the U.S., who "have demonstrated repeated success in cutting-edge work on behalf of plaintiffs," as well as Bloomberg Law's 2021 "They've Got Next: The 40 Under 40 – Mass Torts" and Law360's 2020 "Rising Stars – Class Action."

The CSH Team will also include **Jessica Weiner**, an Associate at Cohen Milstein. Ms. Weiner has represented individuals and businesses in class action antitrust cases and was a member of the trial team in the *Sutter Health Antitrust Litigation* described above. In 2019, Ms. Weiner was presented with the American Antitrust Institute's "Outstanding Antitrust Litigation Achievement Award," for her work in *In re Dental Supplies Antitrust Litigation*, where Cohen Milstein helped secure an $80 million settlement against dental supply companies. In 2021, Ms. Weiner was named to *The National Law Journal's* inaugural list of "Rising Stars of the Plaintiffs Bar," and in 2020 and 2021, she was named one of Super Lawyers' "Rising Stars."

2.      *Susman Godfrey*

Susman Godfrey has assembled a flagship team of diverse lawyers with experience both in complex antitrust matters and in trying cases against large defendants. The team is led by one of the firm's two managing partners—Kalpana Srinivasan. Ms. Srinivasan has established herself as one of the nation's top antitrust class action attorneys, including being appointed as co-lead counsel in *In re: Qualcomm Antitrust Litigation*, No. 5:17-md-02773 (N.D. Cal.). Krysta Pachman has a track record of leading complex class actions, including serving as lead co-counsel counsel in *In re: Blackbaud Inc. Customer Data Security Breach Litigation*, No. 3:20-mn-02972 (D. S.C.) ("*Blackbaud*"). And Marc Seltzer brings nearly fifty years of class action experience, having successfully resolved some of the nation's largest class actions during that time.

**Kalpana Srinivasan** is one of Susman Godfrey's two Managing Partners and a member of the firm's Executive Committee. Ms. Srinivasan will serve as lead trial counsel for Susman Godfrey. She has substantial experience in trying big-ticket commercial cases and handling significant class action matters, especially against large defendants. She also has been a leader in the legal profession of promoting diverse trial teams and cultivating the next generation of trial lawyers, including by ensuring they have significant roles on her trial teams. She was appointed as co-lead counsel in *In re: Qualcomm Antitrust Litigation*, in the order by Judge Koh quoted above. *See* 2017 WL 2222531, at *1. In 2018, she won a $706.2 million jury verdict for client HouseCanary in a misappropriation of trade secrets, fraud, and breach of contract case, which is currently the subject of an appeal in the state courts. She currently serves as co-lead or lead counsel in numerous class actions, including: *In re Telescopes Antitrust Litigation*, No. 20-cv-03639 (N.D. Cal) (prosecuting claims of price-fixing in the market for amateur telescopes); *Flo & Eddie, Inc. v. Pandora Media, Inc.*, No. 14-7648 (C.D. Cal.) (pursuing class claims filed by the '70s rock group The Turtles regarding illegal digital copying); and *Bernstein v. Cengage Learning, Inc.*, No.

19-cv-7541 (S.D.N.Y.) (representing authors of higher education in claims against publisher for failure to properly pay royalties). Ms. Srinivasan has been recognized for her ability to "handle and manage large cases" by Chambers USA, deemed a Titan of the Plaintiffs Bar by Law360, and recognized by Benchmark Litigation as one of the Top 100 Trial Lawyers in America. The Legal 500, in its Tier 1 rankings, described her as working at "the intersection of intellectual property and unfair competition, all while displaying strong know-how of the technology industry." Ms. Srinivasan is a strong proponent of the development of junior lawyers, particularly diverse attorneys. She is the recipient of Chambers' Gender Diversity Lawyer of the Year; the Cornerstone Award from the South Asian Bar Association of North America; and the Managing Partner of the Year award from Corporate Counsel.

Susman Godfrey partner **Krysta Kauble Pachman** was appointed by United States District Judge J. Michelle Childs of the District of South Carolina to serve as co-lead counsel in *Blackbaud*. Ms. Pachman has secured hundreds of millions of dollars for plaintiffs in class action settlements, including: a deal valued at over $112 million for a class of music copyright owners in *Ferrick v. Spotify USA Inc.*, No. 16-cv-8412 (S.D.N.Y.); a $40 million settlement for a class of derivative investors in *Allergan, Inc. Proxy Violation Derivatives Litigation*, No. 2:17-cv-4776 (C.D. Cal.); and a deal worth $37.5 million for a class of more than 7,000 limited partners who invested in 12 oil & gas limited partnerships in the securities and insider trading class action, *Schulein v. Petroleum Development Corp.*, No. 8:11-cv-189 (C.D. Cal.).

**Marc M. Seltzer**, one of Susman Godfrey's most senior lawyers, has practiced law for nearly fifty years, litigating complex business law cases in state and federal courts throughout the United States. Mr. Seltzer has been appointed to serve as lead counsel for the plaintiffs in numerous antitrust and other class action cases. For example, Mr. Seltzer leads the firm's efforts as co-lead

counsel for the end-payor plaintiffs in *In re Automotive Parts Antitrust Litigation* discussed below. In 2013, Mr. Seltzer was named a Law360 "Class Action MVP," one of only three attorneys named nationwide. Mr. Seltzer has also tried antitrust cases to verdict, including *In re: Universal Service Fund Telephone Billing Practices Litigation*, No. 02-md-1468 (D. Kan.) and *Masimo Corp. v. Tyco Health Care Group, L.P.*, No. 02-cv-4770 (C.D. Cal.). Mr. Seltzer was recognized for, among other achievements, serving as one of three co-lead counsel who helped to obtain an unprecedented settlement valued by the court at approximately \$1.6 billion in *In re Toyota Motor Corp. Unintended Acceleration Marketing Sales Practices, & Product Liability Litigation*, No. 8:10-ml-02151 (C.D. Cal.)—a case in which he served as co-lead counsel with Steve W. Berman of Hagens Berman. He was recently named one of the top 100 lawyers in California and a top antitrust lawyer by the *Los Angeles Daily Journal*. He has also been included in the *International Who's Who of Competition Lawyers & Economists* as one of the top antitrust lawyers in the world. Mr. Seltzer is a Life Member of the American Law Institute and is also a member of the Advisory Board of the American Antitrust Institute.

**Steven Sklaver, Matthew Berry, and Ian Gore** will be included on the Susman Godfrey team. All three are involved in the *Markson* antitrust case alleging a no-poach conspiracy against several nationwide trucking companies. Mr. Sklaver and Mr. Berry also both served as an integral part of the Susman Godfrey team in the *Animation* no-poach antitrust case. Mr. Gore was also part of the Susman Godfrey team that was appointed co-lead counsel in the *In re Dental Supplies Antitrust Litigation* case and was presented with the American Antitrust Institute's "Outstanding Antitrust Litigation Achievement by a Young Lawyer" award for his work on that case.

Behind this leadership team is a deep bench of experienced antitrust and trial lawyers. Since the firm's founding in 1980, Susman Godfrey has served as lead counsel in hundreds of antitrust

class actions and other complex commercial disputes throughout the country. *See generally* Ex. 2 (SG resume). Susman Godfrey's practice is dedicated exclusively to litigating and trying lawsuits, and its track record of success is reflected in its wide recognition as one of the nation's leading trial firms, including by *The American Lawyer* in its first-ever "Litigation Boutique of the Year" competition and the *National Law Journal*'s "America's Elite Trial Lawyers" list.

Susman Godfrey knows how to face large, formidable foes and, where appropriate, bring cases to resolution. In *In re Automotive Parts Antitrust Litigation*, Susman Godfrey has helped to secure over $1.2 billion in settlements as co-lead counsel for a class of end-payor plaintiffs in a complex series of antitrust cases brought against suppliers in the automotive parts industry. *See, e.g.*, Mot. for Final Approval of Fourth Round of Settlements at 19, *In re Heater Control Panels*, No. 2:12-cv-00403 (E.D. Mich. Oct. 30, 2019), ECF No. 294. Susman Godfrey has been appointed to serve as lead or co-lead counsel in numerous antitrust class actions, including:

- *In re Crude Oil Commodity Futures Litigation*, No. 11-cv-3600 (S.D.N.Y.)

- *In re Municipal Derivatives Antitrust Litigation*, No. 08-cv-2516 (S.D.N.Y.)

- *In re Korean Air Lines Co. Antitrust Litigation*, No. 07-cv-05107 (C.D. Cal.)

- *In re Vitamin C Antitrust Litigation*, No. 06-md-1738 (E.D.N.Y.)

- *In re Ready-Mixed Concrete Antitrust Litigation*, No. 05-cv-00979 (S.D. Ind.)

- *In re Lease Oil Antitrust Litigation*, No. MDL-1206 (S.D. Tex.)

- *In re LIBOR-Based Financial Instruments Antitrust Litigation*, No. 11-md-2262 (S.D.N.Y.)

- *Behrend v. Comcast Corp.*, No. 03-6604 (E.D. Pa.)

- *In re Processed Egg Products Antitrust Litigation*, No. 08-md-02002 (E.D. Pa.)

- *White v. NCAA*, No. 06-cv-0999 (C.D. Cal.)

- *In re: Universal Service Fund Tel. Billing Practices Litigation*, No. 02-md-1468 (D. Kan.)

- *In re Vitamins Antitrust Litigation*, No. MDL-1285 (D.D.C.)

- *In re Commercial Explosives Litigation*, No. 2:96-md-1093S (D. Utah)

- *In re Qualcomm Antitrust Litigation*, No. 17-md-02773 (N.D. Cal.)

### 3. Hagens Berman

Hagens Berman was founded nearly thirty years ago by its named partner, Steve Berman. It has grown to be over 80 attorneys with nine offices nationwide, focusing nearly exclusively on plaintiffs' side complex class actions. Hagens Berman has led some of the most complicated antitrust cases of the last decade, resulting in settlements of hundreds of millions of dollars for consumers and businesses nationwide. Examples of its success in antitrust cases include:

- *In Re: NCAA Grant-In-Aid Cap Antitrust Litigation*, No. 4:14-md-02541 (N.D. Cal.): Hagens Berman served as co-lead counsel for a class of student athletes alleging antitrust claims challenging the compensation rules of the NCAA and its members. Hagens Berman obtained a $200 million settlement for the class and then continued the litigation to seek a permanent injunction to prevent further harm to class members. After trial on these claims, the district court issued a permanent injunction against the NCAA. That decision and injunction was affirmed by the Supreme Court in spring 2021. *See NCAA v. Alston*, 141 S. Ct. 1241 (2021).

- *Cameron v. Apple Inc.*, No. 4:19-cv-03074 (N.D. Cal.): Hagens Berman was appointed lead counsel for iOS app developers in this complex action alleging that Apple monopolized U.S. distribution services for iOS apps and in-app digital products, which resulted in commission overcharges to U.S. iOS developers. In fall 2021, the parties reached a settlement that will result in the creation of a $100 million Small Developer Assistance Fund and important changes to Apple's App Store policies and practices.

- *In re Electronic Books Antitrust Litigation*, No. 11-md-2293 (S.D.N.Y.): Hagens Berman was appointed co-lead counsel in this complex litigation involving six defendants, 33 State Attorneys General and the United States Department of Justice. Settlements in the case totaled more than $550 million, representing recovery of approximately 200% of class members' damages.

The attorneys working on this litigation will include Steve W. Berman, the founder and managing partner of Hagens Berman; Shana E. Scarlett, the regional managing partner of Hagens Berman's Berkeley office; as well as Ben Siegel, Abigail Pershing, and Hannah Song. This team reflects Hagens Berman's commitment to diversity in terms of both gender and experience.

**Steve Berman**, the founder and managing partner of Hagens Berman's nine offices, has served as lead or co-lead counsel in antitrust, securities, consumer, product liability, and employment class actions and complex litigation throughout the country, including in MDL actions too numerous to count. Mr. Berman brings to this case a vast wealth of experience that is almost unmatched in the plaintiffs' bar. Hagens Berman, at the direction of Mr. Berman, is one of the few plaintiffs' firms in the United States that often takes complex civil litigation, including class actions, to trial.

Mr. Berman was co-lead counsel in *In re Visa Check/Mastercard Antitrust Litigation*, No. 96-cv-05238 (E.D.N.Y.) with only one other firm, a case which settled on the eve of trial for over $3 billion in cash and over $20 billion in injunctive relief, making it one of the largest antitrust settlements in history. Mr. Berman was the lead trial lawyer in *In re Pharmaceutical Industry Average Wholesale Price Litigation*, as noted above. Mr. Berman was also the lead counsel in *New England Carpenters Health Benefits Fund v. First DataBank*, No. 05-11148 (D. Mass.) on behalf of a nationwide class of private payors that purchased prescription brand name drugs. Hagens Berman achieved a $350 million settlement eleven days before trial was scheduled to start. In *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, & Products Liability Litigation*, Judge James V. Selna *sua sponte* identified Mr. Berman as a presumptive co-lead counsel when Judge Selna was assigned the Toyota MDL. The Toyota MDL settled for over $1.4 billion, one of the largest class settlements in the history of automobile litigation in this country.

In *In re NCAA Grant-in-Aid Cap Antitrust Litigation*, Mr. Berman led Hagens Berman's trial team in a 10-day trial in September 2019 before former Chief Judge Claudia Wilken of the Northern District of California, successfully obtaining an injunction against the NCAA relating to caps on compensation available to college student-athletes, which was upheld by the Supreme

Court. *See NCAA v. Alston*, 141 U.S. 1241 (2021). Prior to trial, Mr. Berman recovered a $200 million settlement for the class, but continued to litigate on behalf of the class for the extraordinary injunction affirmed by the Supreme Court. Appointing Mr. Berman in a large MDL, Judge Milton Shadur, stated:

> But it must be said that the track record of Hagens Berman and its lead partner Steve Berman is even more impressive, having racked up such accomplishments as a $1.6 billion settlement in the Toyota Unintended Acceleration Litigation and a substantial number of really outstanding big ticket results.
>
> It may be worth mentioning that to this Court's recollection it has had no first-hand judicial experience with either of the two finalist firms. . . . But that is not true of its colleagues in this District of more recent vintage, an email inquiry to whom brought in return some high praise of attorney Berman's skills.[5]

Mr. Berman has received countless awards and recognition for his work, including the *National Law Journal*'s 2021 recognition of him as a Sports & Entertainment Law Trailblazer, the American Antitrust Institute recognizing him in 2021, 2019, and 2018 as an Honoree for Outstanding Antitrust Litigation Achievement, and being named as a Class Action MVP of the Year for 2016 through 2020 by Law360.

**Shana Scarlett** is a graduate of Stanford Law School and the regional managing partner in Hagens Berman's Berkeley office. In 2020, Ms. Scarlett joined the nationwide Management Committee of Hagens Berman. Ms. Scarlett has played a leading role in many of Hagens Berman's largest antitrust cases, including: *In re Electronic Books Antitrust Litigation* (firm appointed; recovery of $568 million); *In re Optical Disk Drive Antitrust Litigation,* No. 10-md-02143 (firm appointed lead counsel; recovery of $205 million); *In re Lithium Ion Batteries Antitrust Litigation*, No. 13-md-02420 (N.D. Cal.) (firm appointed co-lead counsel; recovery of $113.45 million); *In re Broiler Chicken Antitrust Litigation* (firm appointed co-lead counsel with Cohen Milstein for

---

[5] Memorandum Order at 5, *In re Stericycle, Inc., Sterisafe Contract Litig.*, No. 13-cv-5795 (N.D. Ill. Oct.11, 2013), ECF No. 56 (footnotes omitted).

indirect purchaser class; recovery to date of $181 million); *In re Beef Purchasers Antitrust Litigation*, No. 0:19-cv-01129 (D. Minn.) (firm appointed co-lead counsel for indirect purchaser class); and *In re Turkey Antitrust Litigation*, No. 1:19-cv-08318 (N.D. Ill.) (firm appointed co-lead counsel for direct purchaser class). In 2019, Judge Alsup *sua sponte* appointed Ms. Scarlett personally as one of the lead counsel in the generic drug litigation *In re Glumetza Antitrust Litig*ation, No. C19-05822 (N.D. Cal.), where over $450 million was recovered on behalf of the direct purchaser class. In 2020, Judge Koh appointed Ms. Scarlett as co-lead counsel on behalf of the consumer case in the *Klein v. Facebook, Inc*. antitrust litigation No. 20-cv-8570 (N.D. Cal.).

Beyond her extensive antitrust experience, Ms. Scarlett has specific expertise representing employee classes in complex antitrust litigation. Ms. Scarlett was one of the Hagens Berman attorneys litigating the *In re Animation Workers Antitrust Litigation*, noted above. Alongside attorneys at Cohen Milstein, Ms. Scarlett has served as interim co-lead counsel on the *Poultry Wages* antitrust litigation. Ms. Scarlett is also a member of the executive committee of the *Railway Industry* litigation, where the allegations included no-poach agreements amongst defendants to suppress employee compensation.

Ms. Scarlett has received numerous awards for her work for plaintiffs, including being named a Northern California Super Lawyer each year since 2013, and a Top 50 Women Northern California Super Lawyer in 2020 and 2021. Ms. Scarlett was named as a Top 100 Civil Plaintiff Trial Lawyer in California by the National Trial Lawyers in 2021, and a Lawdragon Leading Plaintiff Lawyer in 2020 and 2021, and she received a Band 1 Ranking in 2021 by Chambers and Partners.

**Ben Siegel**, Of Counsel in Hagens Berman's Berkeley office, is a 2007 graduate of The University of Texas School of Law, where he was an Articles Editor of the Texas Law Review.

Mr. Siegel was a judicial law clerk to the Honorable Thomas M. Reavley of the United States Court of Appeals for the Fifth Circuit. Mr. Siegel has had a practice focused on antitrust class actions and is a member of the Hagens Berman teams in *In re Resistors Antitrust Litigation*, No. 15-cv-03820 (N.D. Cal.); *In re Optical Disk Drive Antitrust Litigation,* No. 10-md-02143; *Mackmin v. Visa Inc.*, No. 11-cv-1831 (D.D.C.); *In re College Athlete NIL Litigation*, No. 20-cv-03919 (N.D. Cal.); and *In re NCAA Grant-In-Aid Cap Antitrust Litig*ation. In the latter case, Mr. Siegel was part of the team that successfully defended its trial win before the Supreme Court and received the American Law Institute's award for Outstanding Antitrust Litigation Achievement in Private Law Practice. In 2018, he was named one of Super Lawyers' "Rising Stars."

**Abigail Pershing**, an associate in Hagens Berman's Seattle office, is a 2020 graduate of Yale Law School. She was a recipient of a Robina Foundation Post-Graduate Fellowship in Human Rights, during which time she clerked at the European Court of Human Rights in Strasbourg for Judges Helen Keller and Darian Pavli. She is part of the Hagens Berman team litigating the *Poultry Wages* antitrust case, as well as *In re Pork Antitrust Litigation*, No. 18-cv-01776 (D. Minn.).

**Hannah K. Song**, an associate in Hagens Berman's Berkeley office, is a 2021 graduate of Stanford Law School. Ms. Song has represented individuals and businesses in antitrust cases in industries including advertising technology, government procurement, and meatpacking. She has worked on class action civil suits as well as government criminal matters while at the U.S. Department of Justice Antitrust Division.

### C. The CSH Team Will Ensure Efficient Litigation of this Matter

As noted above, the CSH Team has not promised work to legions of plaintiffs' firms (as sometimes happens in cases as large as this one). These three firms propose to litigate the case themselves. They come with deep reserves of attorneys devoted to their antitrust practices.

To ensure cost-effective representation of the class, the CSH Team proposes a number of common-sense measures. *First*, primary responsibility for specific tasks in this litigation will be assigned to a single firm, and when appropriate, a single attorney. *Second*, attendance at fact depositions will be limited to no more than one attorney from each firm (unless a junior attorney has been assigned a lead role, in which case they can be supported by a more senior attorney). *Third*, no more than one lawyer from each firm will bill for attending discovery hearings unless a junior lawyer is taking the lead, in which case a more senior attorney may also attend.

Each firm has robust timekeeping policies to ensure timely and detailed records of all billable time. Time must be contemporaneously tracked by attorneys at each firm in time-keeping software, according to agreed-upon time codes that are used in other large antitrust cases. Time descriptions must be sufficiently detailed to enable anyone reviewing the entries to identify the specific activity performed, the time spent and its purpose, and its relationship to the matter. Time must be tracked in tenth-of-an-hour increments. And time records are entered promptly at each firm, no later than the fifteenth day of the following month unless express permission is given by the supervising partner. The CSH Team commits to exchanging their time records with each other once a quarter to allow for transparency and inter-firm review.

## III. The CSH Team Has the Resources to Litigate This Case Most Effectively.

The final factor to be considered are the resources committed to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(iv). Where the class faces well-financed adversaries represented by capable and well-funded counsel, it should be represented by counsel with similar resources. *See In re SSA Bonds Antitrust Litig.*, No. 16-cv-3711, 2016 WL 7439365, at *3 (S.D.N.Y. Dec. 22, 2016) (appointed firms had "substantially more resources at their disposal than the other applicant teams"). This Court must be satisfied that counsel "will commit sufficient attorney time and

financial resources to vigorously prosecute the putative class's claims." *Smith v. State Farm Mut. Auto. Ins. Co.*, 301 F.R.D. 284, 289 (N.D. Ill. 2014). The CSH Team meets this standard.

The CSH Team is formed by three of the most established and respected plaintiffs' firms in the country, with decades of experience between them. These three firms are well-capitalized and possess some of the largest and most robust investigatory and litigation teams in their field. Collectively, they have offices in sixteen cities across the United States, including Cohen Milstein's office in Florida, one of the foci of the conspiracy.[6] Combined, the CSH Team brings the resources of hundreds of attorneys at their disposal (Cohen Milstein has more than 100 attorneys; Susman has over 180 attorneys; Hagens Berman has 85 attorneys).[7]

Cohen Milstein, Susman and Hagens Berman consistently advance millions of dollars in litigation costs in matters of comparable or even greater size and complexity. They do not receive any litigation funding to litigate class actions and commit to not receiving any here. They will approach litigating against this well-funded industry with the same commitment.

## CONCLUSION

The class in this case deserves one team who can handle the case efficiently, try the case before the jury, and do so with substantial antitrust labor case experience. Plaintiffs John Balicoco, M. Torey Mercurio, John Sockwell, Jeffrey Howe, and Michael Kwok therefore respectfully request that the Court appoint the CSH Team as interim class counsel. A proposed order is attached.

---

[6] *See* Ex. 1 (Cohen Milstein firm resume with offices in New York, Washington, DC, and Florida); Ex. 3 (Hagens Berman firm resume with offices in Washington, California, Texas, Arizona, Boston, Illinois, and New York); Ex. 2 (Susman Godfrey firm resume with offices in New York, California, Washington and Texas).

[7] *See generally* Exs. 1-3.

DATED: February 1, 2022

SUSMAN GODFREY LLP

By    /s/ *Kalpana Srinivasan*

Kalpana Srinivasan*
Marc M. Seltzer*
Krysta Kauble Pachman*
Steven G. Sklaver*
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ksrinivasan@susmangodfrey.com
mseltzer@susmangodfrey.com
kpachman@susmangodfrey.com
ssklaver@susmangodfrey.com

Matthew R. Berry*
Ian M. Gore*
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
mberry@susmangodfrey.com
igore@susmangodfrey.com

*Counsel were admitted *pro hac vice* in *Balicoco v. Pratt & Whitney*, No. 21-cv-01673, and per an order of the Court, are also counsel in the consolidated case, *Granata v. Pratt & Whitney*, No. 3:21-cv-01657, ECF No. 52.

**Pro hac vice* forthcoming

Respectfully Submitted,

COHEN MILSTEIN SELLERS & TOLL PLLC

By    /s/ *Brent W. Johnson*

Brent W. Johnson*
Daniel A. Small*
Emmy L. Levens*
Jessica Weiner*
1100 New York Ave. NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
dsmall@cohenmilstein.com
bjohnson@cohenmilstein.com
elevens@cohenmilstein.com
jweiner@cohenmilstein.com

HAGENS BERMAN SOBOL SHAPIRO LLP

By    /s/ *Shana E. Scarlett*

Shana E. Scarlett*
Benjamin Siegel*
Abigail Pershing (ct442063)**
715 Hearst Avenue, Suite 202
Berkeley, CA 9471
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com
bens@hbsslaw.com
abigailp@hbsslaw.com

Steve W. Berman*
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

***Proposed Co-lead Counsel for the Class and Plaintiffs John Balicoco, John Sockwell, M. Torey Mercurio, Jeffrey Howe and Michael Kwok***