# Exhibit
1



1818 Market Street | Suite 3600 | Philadelphia, PA 19103
info@bm.net
bergermontague.com
800-424-6690

## About Berger Montague

Berger Montague is a full-spectrum class action and complex civil litigation firm, with nationally known attorneys highly sought after for their legal skills. The firm has been recognized by courts throughout the country for its ability and experience in handling major complex litigation, particularly in the fields of antitrust, securities, mass torts, civil and human rights, whistleblower cases, employment, and consumer litigation. In numerous precedent-setting cases, the firm has played a principal or lead role.

The *National Law Journal* selected Berger Montague in 12 out of 14 years (2003-2005, 2007-2013, 2015-2016) for its "Hot List" of top plaintiffs-oriented litigation firms in the United States. The select group of law firms recognized each year had done "exemplary, cutting-edge work on the plaintiffs' side." The *National Law Journal* ended its "Hot List" award in 2017 and replaced it with "Elite Trial Lawyers," which Berger Montague has won from 2018-2020. The firm has also achieved the highest possible rating by its peers and opponents as reported in *Martindale-Hubbell* and was ranked as a 2021 "Best Law Firm" by *U.S. News - Best Lawyers*.

Currently, the firm consists of 62 lawyers; 25 paralegals; and an experienced support staff. Few firms in the United States have our breadth of practice and match our successful track record in such a broad array of complex litigation.

## Class Action Pioneers Litigating Historic Cases

Berger Montague was founded in 1970 by the late David Berger to concentrate on the representation of plaintiffs in antitrust class actions. David Berger helped pioneer the use of class actions in antitrust litigation and was instrumental in extending the use of the class action procedure to other litigation areas, including securities, employment discrimination, civil and human rights, and mass torts. The firm's complement of nationally recognized lawyers has represented both plaintiffs and defendants in these and other areas and has recovered billions of dollars for its clients. In complex litigation, particularly in areas of class action litigation, Berger Montague has established new law and forged the path for recovery.

The firm has been involved in a series of notable cases, some of them among the most important in the last 50 years of civil litigation. For example, the firm was one of the principal counsel for plaintiffs in the *Drexel Burnham Lambert/Michael Milken* securities and bankruptcy litigation. Claimants in these cases recovered approximately $2 billion in the aftermath of the collapse of the junk bond market and the bankruptcy of *Drexel* in the late 1980's. The firm was also among the principal trial counsel in the *Exxon Valdez Oil Spill* litigation in Anchorage, Alaska, a trial resulting in a record jury award of $5 billion against Exxon, later reduced by the U.S. Supreme Court to $507.5 million. Berger Montague was lead counsel in the *School Asbestos Litigation*,

inwhich a national class of secondary and elementary schools recovered in excess of $200 millionto defray the costs of asbestos abatement. The case was the first mass tort property damage class action certified on a national basis. Berger Montague was also lead/liaison counsel in the *Three Mile Island Litigation* arising out of a serious nuclear incident.

Additionally, in the human rights area, the firm, through its membership on the executive committee in the *Holocaust Victim Assets Litigation*, helped to achieve a $1.25 billion settlement with the largest Swiss banks on behalf of victims of Nazi aggression whose deposits were not returned after the Second World War. The firm also played an instrumental role in bringing about a $4.37 billion settlement with German industry and government for the use of slave and forced labor during the Holocaust.

## Decades of Successful Antitrust Litigation

Berger Montague has been a leading national advocate for clients and class members in many of the most important complex antitrust cases ever litigated, including, serving as co-lead counsel most recently in the largest private antitrust settlement ever achieved (approximately $5.62 billion) in the *Payment Card Interchange Fee & Merchant Discount Antitrust Litig.* (*In re Payment Card*), MDL No. 1720 (E.D.N.Y.) and the largest single-defendant settlement ever for a case alleging delayed generic competition in *In re: Namenda Direct Purchaser Antitrust Litig.*, No. 15-cv-7488 (S.D.N.Y.) ($750 million).

Indeed, the firm has served as lead, co-lead or co-trial counsel on many of the most significant civil antitrust cases over the last 50 years, including *In re Corrugated Container Antitrust Litigation* (recovery in excess of $366 million), the *Infant Formula* case (recovery of $125 million), the *Brand Name Prescription Drug* price-fixing case (settlement of more than $700 million), the *State of Connecticut Tobacco Litigation* (settlement of $3.6 billion), the *Graphite Electrodes Antitrust Litigation* (settlement of more than $134 million), and the *High-Fructose Corn Syrup Litigation* ($531 million). These cases reflect the firm's commitment to obtaining recoveries for consumers and businesses harmed by anticompetitive conduct. Notable cases include:

- **In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation:** Berger Montague served as co-lead counsel for a national class including millions of merchants in the *Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* against Visa, MasterCard, and several of the largest banks in the U.S. (*e.g.*, Chase, Bank of America, and Citi). The lawsuit alleged that merchants paid excessive fees to accept Visa and MasterCard cards because the payment cards, individually and together with their respective member banks, violated the antitrust laws. The challenged conduct included, *inter alia*, the collective fixing of interchange fees and adoption of rulesthat hindered any competitive pressure by merchants to reduce those fees. The lawsuit further alleged that defendants maintained their conspiracy even after both Visa and MasterCard changed their corporate forms from joint ventures owned by member banks to publicly-owned corporations following commencement of this litigation. On September 18, 2018, after thirteen years of hard-fought litigation, Visa and MasterCard agreed to payas much as approximately $6.26 billion, but no less than approximately $5.56 billion, to settle the case. This result is the largest-ever class action settlement of an antitrust case.The settlement received preliminary approval on January 24, 2019. The settlement received final approval on December 16, 2019, for approximately $5.6 billion.

- ***In re Dental Supplies Antitrust Litigation:*** Berger Montague served as co-lead counselfor a class of dental practices and dental laboratories in *In re Dental Supplies Antitrust Litigation*, a suit brought against Henry Schein, Inc., Patterson Companies, Inc., and Benco Dental Supply Company, the three largest distributors of dental supplies in the United States. On September 7, 2018, co-lead counsel announced that they agreed withdefendants to settle on a classwide basis for $80 million. The settlement received final approval on June 24, 2019. The suit alleged that the defendants, who collectively control close to 90 percent of the dental supplies and equipment distribution market, conspired torestrain trade and fix prices at anticompetitive levels, in violation of the Sherman Act. In furtherance of the alleged conspiracy, plaintiffs claimed that the defendants colluded to boycott and pressure dental manufacturers, dental distributors, and state dental associations that did business with or considered doing business with the defendants' lower-priced rivals. The suit claimed that, because of the defendants' anticompetitive conduct, members of the class were overcharged on dental supplies and equipment. In the 2019 Fairness Hearing, Judge Brian M. Cogan of the U.S. District Court for the EasternDistrict of New York said: "This is a substantial recovery that has the deterrent effect thatclass actions are supposed to have, and I think it was done because we had really good Plaintiffs' lawyers in this case who were running it."

- ***In re Domestic Drywall Antitrust Litigation:*** Berger Montague served as co-lead counsel on behalf of a class of direct purchasers of drywall, in a case alleging that the dominant manufacturers of drywall engaged in a conspiracy to fix drywall prices in the U.S. and to abolish the industry's long-standing practice of limiting price increases for the duration of a construction project through "job quotes." Berger Montague represented a class of direct purchasers of drywall from defendants for the period from January 1, 2012to January 31, 2013. USG Corporation and United States Gypsum Company (collectively, "USG"), New NGC, Inc., Lafarge North America Inc., Eagle Materials, Inc., American Gypsum Company LLC, TIN Inc. d/b/a Temple-Inland Inc., and PABCO Building Products,LLC were named as defendants in this action. On August 20, 2015, the district court granted final approval of two settlements—one with USG and the other with TIN Inc.— totaling $44.5 million. On December 8, 2016, the district court granted final approval of a $21.2 million settlement with Lafarge North America, Inc. On February 18, 2016, the district court denied the motions for summary judgment filed by American Gypsum Company, New NGC, Inc., Lafarge North America, Inc., and PABCO Building Products. On August 23, 2017, the district court granted direct purchaser plaintiffs' motion for classcertification. On January 29, 2018, the district court granted preliminary approval of a jointsettlement with the remaining defendants, New NGC, Inc., Eagle Materials, Inc., AmericanGypsum Company LLC, and PABCO Building Products, LLC, for $125 million. The settlement received final approval on July 17, 2018, bringing the total amount of settlements for the class to $190.7 million.

- ***In re Marchbanks Truck Service Inc., et al. v. Comdata Network, Inc.:*** Berger Montague was co-lead counsel in this antitrust class action brought on behalf of a class of thousands of Independent Truck Stops. The lawsuit alleged that defendant Comdata Network, Inc. had monopolized the market for specialized Fleet Cards used by long-haul truckers. Comdata imposed anticompetitive provisions in its agreements with Independent Truck Stops that artificially inflated the fees Independents paid when accepting the Comdata's Fleet Card for payment. These contractual provisions, commonly referred to as anti-steering provisions or merchant restraints, barred Independents from takingvarious competitive steps that could have been used to steer fleets to rival payment cards.The settlement for $130 million and valuable prospective

relief was preliminary approvedon March 17, 2014, and finally approved on July 14, 2014. In its July 14, 2014 order approving Class Counsel's fee request, entered contemporaneously with its order finally approving the settlement, the Court described this outcome as "substantial, both in absolute terms, and when assessed in light of the risks of establishing liability and damages in this case."

- *In re High Fructose Corn Syrup Antitrust Litigation:* Berger Montague was one of threeco-lead counsel in this nationwide class action alleging a conspiracy to allocate volumes and customers and to price-fix among five producers of high fructose corn syrup. After nine years of litigation, including four appeals, the case was settled on the eve of trial for $531 million. (MDL. No. 1087, Master File No. 95-1477 (C.D. Ill.)).

- *In re Linerboard Antitrust Litigation:* Berger Montague was one of a small group of court-appointed executive committee members who led this nationwide class action against producers of linerboard. The complaint alleged that the defendants conspired to reduce production of linerboard in order to increase the price of linerboard and corrugated boxes made therefrom.  At the close of discovery, the case was settled for more than $200million. (98 Civ. 5055 and 99-1341 (E.D. Pa.)).

- *In re Graphite Electrodes Antitrust Litigation:* Berger Montague was one of the four co-lead counsel in a nationwide class action price-fixing case. The case settled for in excess of $134 million and over 100% of claimed damages. (02 Civ. 99-482 (E.D. Pa.)).

- *In re Infant Formula Antitrust Litigation*: The firm served as co-lead counsel in an antitrust class action where settlement was achieved two days prior to trial, bringing the total settlement proceeds to $125 million. (MDL No. 878 (N.D. Fla.)).

- *In re Corrugated Container Antitrust Litigation:* The firm, led by H. Laddie Montague, was co-trial counsel in an antitrust class action which yielded a settlement of $366 million,plus interest, following trial. (MDL No. 310 (S.D. Tex.)).

- *Bogosian v. Gulf Oil Corp.:* With Berger Montague as sole lead counsel, this landmark action on behalf of a national class of more than 100,000 gasoline dealers against 13 major oil companies led to settlements of over $35 million plus equitable relief on the eveof trial. (No. 71-1137 (E.D. Pa.)).

- *In re Master Key Antitrust Litigation:*  The firm served as co-lead counsel in an antitrust class action that yielded a settlement of $21 million during trial. (MDL No. 45 (D. Conn.)).

More recently, Berger Montague's antitrust practice has focused on four goals: (1) vindicating the rights of workers harmed by anticompetitive conduct; (2) ensuring that generic pharmaceuticals are available in the market at competitive prices; (3) holding financial institutions accountable for anticompetitive conduct; and (4) identifying innovative cases that promote competition and hold antitrust violators accountable.

## 1. Vindicating the Rights of Workers

The firm harnessed its deep antitrust expertise to pursue litigation on behalf of workers whose wages were suppressed due to anticompetitive conduct. Nearly 15 years ago, Berger Montague brought one of the first antitrust class actions to challenge wage-fixing practices. Since then, Berger Montague has developed and litigated innovative cases on behalf of workers across a wide spectrum of industries—from nurses to chicken growers to mixed martial arts fighters.

- ***Johnson, et al. v AzHHA, et al.:*** In one of the first class action cases to pursue lost wages due to anticompetitive conduct, Berger Montague was co-lead counsel in this litigation on behalf of a class of temporary nursing personnel, against the Arizona Hospital and Healthcare Association, and its member hospitals, for agreeing and conspiring to fix the rates and wages for temporary nursing personnel. The court approved $24 million in settlements on behalf of this class of nurses.(Case No. 07-1292 (D. Ariz.))

- ***Le v. Zuffa, LLC:*** Berger Montague is co-lead counsel in the long-running Section 2 case alleging that the Ultimate Fighting Championship (the dominant mixed martial arts ("MMA") promoter) suppressed compensation to professional MMA fighters by locking up the vast majority of top fighters to long-term, exclusive contracts, thereby foreclosing other promoters' access to such fighters and enabling the UFC to suppress fighters' compensation. Following a multi-week class certification hearing, the court stated it would certify the proposed class.  (Case No. 15-cv-1045 (D. Nev.))

- ***In re High-Tech Employees Antitrust Litigation:*** Co-lead counsel in this requested Berger Montague's assistance in litigating this groundbreaking case against Google, Apple, Intel, Adobe, Pixar, Lucasfilm, and Intuit. Berger Montague worked side-by-side with co-lead counsel to defeat the motion to dismiss, develop the factual record, certify a class of over 64,000 technology workers, defeat motions for summary judgment, and prepare for trial. After four years of litigation, defendants agreed to settle for $435 million. (Case No. 11-2509 (N.D. Cal.))

- ***In re Broiler Chicken Grower Antitrust Litigation:*** In January 2017, Berger Montague was one of two firms that filed a labor-side antitrust case on behalf of broiler chicken farmers alleging that the major poultry processing companies conspired to suppress compensation to the farmers through no-poach agreements and sharing compensation information. To date, plaintiffs have settled on a class basis with two of the five defendants for $35.75 million and are continuing to litigate against the other three defendants. (Case No. 20-2977 (E.D. Okla.))

- ***In re Geisinger Health and Evangelical Community Hosp. Healthcare Workers Antitrust Litigation:*** The firm, as co-lead counsel, represents a class of doctors, nurses, and other healthcare workers in an antitrust class action alleging that rival hospitals entered no-poach agreements to suppress compensation to healthcare workers. The court recently denied the motion to dismiss and the case is in discovery. (Case No. 21-196 (M.D. Pa.))

5

- ***Giordano, et al. v. Saks Incorporated, et al.*:** The firm, as co-lead counsel, represents a proposed class of Luxury Retail Employees alleging that employers conspired to suppress employee compensation through "no hire" agreements. (Case No. 20-00833 (E.D.N.Y.))

In addition to the work of its antitrust team, Berger Montague's employment department has served as lead or co-lead counsel in more than 100 employment actions seeking to recover unpaid or underpaid wages under relevant employment statutes.

## 2. Ensuring Availability of Generic Pharmaceuticals at Competitive Prices

The firm has also played a leading role in cases in the pharmaceutical arena, especially in cases involving competition in the market for generic pharmaceuticals, having achieved over $2 billion in settlementsin such cases over the past decade, including:

- ***In re: Namenda Direct Purchaser Antitrust Litigation:*** Berger Montague is co-lead counsel for the class in this antitrust action brought on behalf of a class of direct purchasers of branded and/or generic Namenda IR and/or branded Namenda XR. It settled for $750 million on the very eve of trial. The $750 million settlement received finalapproval on May 27, 2020, and is the largest single-defendant settlement ever for a casealleging delayed generic competition. (Case No. 15-cv-7488 (S.D.N.Y.)).

- ***In re: Generic Pharmaceuticals Pricing Antitrust Litigation:*** Berger Montague is a member of the Plaintiffs' Steering Committee for the direct purchaser plaintiffs in this antitrust action—believed to be one of the largest antitrust cases ever—alleging that the major manufacturers of generic drugs conspired to artificially inflate prices of hundreds of drugs. (Case No. 16-2774 (E.D. Pa.))

- ***King Drug Co. v. Cephalon, Inc.:*** Berger Montague played a major role (serving on theexecutive committee) in this antitrust class action on behalf of direct purchasers of the prescription drug Provigil (modafinil). After nine years of hard-fought litigation, the court approved a $512 million partial settlement, then the largest settlement ever for a case alleging delayed generic competition. (Case No. 2:06-cv-01797 (E.D. Pa.)). Subsequent non-class settlements pushed the total settlement figure even higher.

- ***In re Aggrenox Antitrust Litigation:*** Berger Montague represented a class of direct purchasers of Aggrenox in in an action alleging that defendants delayed the availability of less expensive generic Aggrenox through, *inter alia*, unlawful reverse payment agreements. The case settled for $146 million. (Case No. 14-02516 (D. Conn.)).

- ***In re Asacol Antitrust Litigation:*** The firm served as class counsel for direct purchasersof Asacol HS and Delzicol in a case alleging that defendants participated in a scheme to block generic competition for the ulcerative colitis drug Asacol. The case settled for $15 million. (Case No. 15-cv-12730-DJC (D. Mass.)).

- ***In re Buspirone Antitrust Litigation:*** The firm served on the court-appointed steering committee in this class action, representing a class of primarily pharmaceutical wholesalers and resellers. The Buspirone class action alleged that pharmaceutical manufacturer BMS engaged in a pattern of illegal conduct surrounding its popular anti-anxiety medication, Buspar, by paying a competitor to refrain from marketing a generic version of Buspar, improperly listing a patent with the FDA, and wrongfully prosecuting patent infringement actions against generic competitors to Buspar. The case settled for $220 million.  (MDL No. 1410 (S.D.N.Y.)).

- ***In re Cardizem CD Antitrust Litigation:*** Berger Montague served on the executive committee of firms appointed to represent the class of direct purchasers of Cardizem CD. The suit charged that Aventis (the brand-name drug manufacturer of Cardizem CD) entered into an illegal agreement to pay Andrx (the maker of a generic substitute to Cardizem CD) millions of dollars to delay the entry of the less expensive generic product. The case settled for $110 million. (No. 99-MD-1278, MDL No. 1278 (E.D. Mich.)).

- ***In re DDAVP Direct Purchaser Antitrust Litigation:*** Berger Montague served as co-lead counsel in a case that charged defendants with using sham litigation and a fraudulently obtained patent to delay the entry of generic versions of the prescription drug DDAVP. Berger Montague achieved a $20.25 million settlement only after winning a precedent- setting victory before the United States Court of Appeals for the Second Circuit that ruled that direct purchasers had standing to recover overcharges arising from a patent-holder's misuse of an allegedly fraudulently obtained patent. (Case No. 05-2237 (S.D.N.Y.)).

- ***Meijer, Inc., et al. v. Abbott Laboratories:*** Berger Montague served as co-lead counsel in a class action on behalf of pharmaceutical wholesalers and pharmacies charging Abbott Laboratories with illegally maintaining monopoly power and overcharging purchasers in violation of the federal antitrust laws. Plaintiffs alleged that Abbott had used its monopoly with respect to its anti-HIV medicine Norvir (ritonavir) to protect its monopoly power for another highly profitable Abbott HIV drug, Kaletra. This antitrust class action settled for $52 million after four days of a jury trial in federal court in Oakland, California. (Case No. 07-5985 (N.D. Cal.)).

- ***In re Neurontin Antitrust Litigation:*** Berger Montague served as part of a small group of firms challenging the maintenance of a monopoly relating to the pain medication Neurontin. The case settled for $190 million. (Case No. 02-1830 (D.N.J.)).

- ***In re Relafen Antitrust Litigation:*** Berger Montague was one of a small group of firms who prepared for the trial of this nationwide class action against GlaxoSmithKline, which was alleged to have used fraudulently-procured patents to block competitors from marketing less-expensive generic versions of its popular nonsteroidal anti-inflammatory drug, Relafen (nabumetone). Just before trial, the case was settled for $175 million. (No. 01-12239-WGY (D. Mass.)).

- ***In re Terazosin Antitrust Litigation:*** Berger Montague was one of a small group of counsel in a case alleging that Abbott Laboratories was paying its competitors to refrain from introducing less expensive generic versions of Hytrin. The case settled for $74.5 million. (Case No. 99-MDL-1317 (S.D. Fla.)).

- ***In re Tricor Antitrust Litigation:*** Berger Montague was one of a small group of counsel in a case alleging that the manufacturer of this drug was paying its competitors to refrain from introducing less expensive generic versions of Tricor. The case settled for $250 million. (No. 05-340 (D. Del.)).

### 3. Holding Large Financial Institutions Accountable

Berger Montague applies its antitrust expertise to complex cases against international banks and credit card issuers. The firm has been successful in its litigation against sophisticated, well-funded defendants. Notable cases include:

- ***In re Commodity Exchange, Inc. Gold Futures & Options Trading Litigation:*** Berger Montague serves as co-lead counsel in this case on behalf of sellers of gold investments. Plaintiffs alleged that the five banks that participated in the London Gold Fixing process manipulated this benchmark, causing the price of gold investments to be suppressed. After years of hard-fought litigation, Plaintiffs obtained a total of $152 million in settlements from Defendants, which have been preliminarily approved by the court.

- ***Contant, et al. v. Bank of America Corp., et al.:*** Berger Montague served as lead classcounsel in the multistate indirect purchaser antitrust class action *Contant, et al. v. Bank of America Corp., et al.*, against *16* of the world's largest dealer banks. Plaintiffs alleged that the defendants colluded to manipulate prices on foreign currency ("FX") instruments, using a number of methods to carry out their conspiracies, including sharing confidential price and order information through electronic chat rooms, thereby enabling the defendants to coordinate pricing and eliminate price competition. As with prior bank rigging scandals involving conspiracies to manipulate prices on other financial instruments, the defendants' alleged conspiracy to manipulate FX prices was the subject of numerous governmental investigations as well as direct purchaser class actions brought under antitrust federal law. However, the *Contant* action was the first of such cases to bring claims under state indirect purchaser antitrust laws on behalf of state-wide classes of retail investors of those financial instruments and whose claims have never been redressed. On July 29, 2019, U.S. District Judge Lorna G. Schofield granted preliminary approval of a $10 million settlement with Citigroup and a $985,000 settlement with MUFG Bank Ltd. On July 17, 2020, the Court granted preliminary approval of three settlements with all remaining defendants for a combined $12.695 million. Each of the five settlements, totaling $23.63 million, received final approval on November 19, 2020.

- ***In re Currency Conversion Fee Antitrust Litigation:*** Berger Montague, as one of two co-lead counsel, spearheaded a class action lawsuit alleging that the major credit cards had conspired to fix prices for foreign currency conversion fees imposed on credit card transactions. After eight years of litigation, a settlement of $336 million was approved in October 2009, with a Final Judgment entered in November 2009. Following the resolution of eleven appeals, the District Court, on October 5, 2011, directed distribution of the settlement funds to more than 10 million timely filed claimants, among the largest class of claimants in an antitrust consumer class action. A subsequent settlement with American Express increased the settlement amount to $386 million. (MDL No. 1409 (S.D.N.Y)).

- ***Ross, et al. v. Bank of America (USA) N.A., et al.:*** Berger Montague, as lead counsel for the cardholder classes, obtained final approval of settlements reached with Chase, Bank of America, Capital One and HSBC, on claims that the defendant banks unlawfully acted in concert to require cardholders to arbitrate disputes, including debt collections, and to preclude cardholders from participating in any class actions. The case was brought for injunctive relief only. The settlements remove arbitration clauses nationwide for 3.5 years from the so-called "cardholder agreements" for over 100 million credit card holders. This victory for consumers and small businesses came after nearly five years of hard- fought litigation, including obtaining a decision by the Court of Appeals reversing the order dismissing the case, and will aid consumers and small businesses in their ability to resist unfair and abusive credit card practices. In June 2009, the National Arbitration Forum (or "NAF") was added as a defendant. Berger Montague also reached a settlement with NAF. Under that agreement, NAF ceased administering arbitration proceedings involving business cards for a period of three and one-half (3.5) years, which relief is in addition to the requirements of a Consent Judgment with the State of Minnesota, entered into by the NAF on July 24, 2009.

### 4. Innovative Antitrust Cases

In addition to the cases discussed above, Berger Montague develops cutting edge antitrust cases outside of the employment, generic pharmaceutical, or financial areas—cases that pursue innovative theories of liability, impact, and damages and challenge ingrained harmful practices in a variety of industries.

- ***Henry, et al. v. Brown University, et al.:*** In 1994, Congress carved out a limited exemption to the antitrust laws that permitted universities to coordinate regarding financial aid formulas, provided that the universities engaged in need-blind admissions. On January 9, 2022, Berger Montague, along with three other firms, filed a complaint alleging that sixteen elite universities violated the terms of that antitrust exemption by failing to admit students on a fully need-blind basis or by colluding with institutions who failed in that way. (Case No. 22-125 (N.D. Ill.))

- ***Fusion Elite All Stars v. Varsity Brands, et al.:*** Berger Montague is co-lead counsel in a case on behalf of a proposed class of All-Star cheerleading gyms alleging that Varsity Brands and the U.S. All Star Federation engaged in a scheme to monopolize the markets for competitive All-Star cheerleading and apparel. (Case No. 20-3521 (N.D. Cal.))

- ***In re: Google Digital Publisher Antitrust Litigation:*** Berger Montague is co-lead counsel in a case on behalf of a proposed class of publishers that sell digital display advertising inventory through Google products. Plaintiffs allege that Google engaged in an anticompetitive scheme to suppress the ad revenues that publishers can generate on their display advertising inventory. (Case No. 20-8984 (N.D. Cal.))

## Judicial Praise in Antitrust Cases

Berger Montague's record of successful prosecution of antitrust class actions has been recognized and commended by federal judges across the country. Some remarks on the skill, efficiency, and expertise of the firm's attorneys are excerpted below.

From **Judge Margo K. Brodie,** of the U.S. District Court for the Eastern District of New York:

> "Class counsel has without question done a tremendous job in litigating this case. They represent some of the best plaintiff-side antitrust groups in the country, and the size and skill of the defense they litigated against cannot be overstated. They have also demonstrated the utmost professionalism despite the demands of the extreme perseverance that this case has required…"

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 1:05-md-01720 (E.D.N.Y. 2019) (Mem. & Order).

From **Judge Brian M. Cogan**, of the U.S. District Court of the Eastern District of New York:

> "This is a substantial recovery that has the deterrent effect that class actions are supposed to have, and I think it was done because we had really good Plaintiffs' lawyers in this case who were running it."

Transcript of June 24, 2019 Fairness Hearing, *In re Dental Supplies Antitrust Litigation*, No. 16-cv-696 (E.D.N.Y.).

From **Judge Michael M. Baylson**, of the U.S. District Court of the Eastern District of Pennsylvania:

> "[C]ounsel…for direct action plaintiffs have done an outstanding job here with representing the class, and I thought your briefing was always very on point. I thought the presentation of the very contentious issues on the class action motion was very well done, it was very well briefed, it was well argued."

Transcript of the June 28, 2018 Hearing in ***In re Domestic Drywall Antitrust Litigation***, No. MD-13-2437 at 11:6-11.

From **Judge Madeline Cox Arleo,** of the U.S. District Court for the District of New Jersey praising the efforts of all counsel:

> "I just want to thank you for an outstanding presentation. I don't say that lightly . . . it's not lost on me at all when lawyers come very, very prepared. And really, your clients should be very proud to have such fine lawyering. I don't see lawyering like this every day in the federal courts, and I am very grateful. And I appreciate the time and the effort you put in, not only to the merits, but the respect you've shown for each other, the respect you've shown for the Court, the staff, and the time constraints. And as I tell my law clerks all the time, good lawyers don't fight, good lawyers advocate. And I really appreciate that more than I can express."

Transcript of the September 9 to 11, 2015 Daubert Hearing in ***Castro v. Sanofi Pasteur***, No. 11-cv-07178 (D.N.J.) at 658:14-659:4.


From **Judge William H. Pauley, III**, of the U.S. District Court of the Southern District of New York:

> "Class Counsel did their work on their own with enormous attention to detail and unflagging devotion to the cause. Many of the issues in this litigation . . . were unique and issues of first impression."

* * *

> "Class Counsel provided extraordinarily high-quality representation. This case raised a number of unique and complex legal issues …. The law firms of Berger Montague and Coughlin Stoia were indefatigable. They represented the Class with a high degree of professionalism, and vigorously litigated every issue against some of the ablest lawyers in the antitrust defense bar."

***In re Currency Conversion Fee Antitrust Litigation***, 263 F.R.D. 110, 129 (2009).


From **Judge Faith S. Hochberg,** of the United States District court for the District of New Jersey:

> "[W]e sitting here don't always get to see such fine lawyering, and it's really wonderful for me both to have tough issues and smart lawyers … I want to congratulate all of you for the really hard work you put into this, the way you presented the issues, … On behalf of the entire federal judiciary I want to thank you for the kind of lawyering we wish everybody would do."

***In re Remeron Antitrust Litig.***, Civ. No. 02-2007 (Nov. 2, 2005).

From U.S. District **Judge Jan DuBois**, of the U.S. District Court of the Eastern District of Pennsylvania:

> "[T]he size of the settlements in absolute terms and expressed as a percentage of total damages evidence a high level of skill by petitioners … The Court has repeatedly stated that the lawyering in the case at every stage was superb, and does so again."

*In re Linerboard Antitrust Litig*., 2004 WL 1221350, at *5-*6 (E.D. Pa. 2004).

From **Judge Nancy G. Edmunds**, of the U.S. District Court of the Eastern District of Michigan:

> "[T]his represents an excellent settlement for the Class and reflects the outstanding effort on the part of highly experienced, skilled, and hard working Class Counsel….[T]heir efforts were not only successful, but were highly organized and efficient in addressing numerous complex issues raised in this litigation[.]"

*In re Cardizem CD Antitrust Litig.*, MDL No. 1278 (E.D. Mich., Nov. 26, 2002).

From **Judge Charles P. Kocoras,** of the U.S. District Court for the Northern District of Illinois:

> "The stakes were high here, with the result that most matters of consequence were contested. There were numerous trips to the courthouse, and the path to the trial court and the Court of Appeals frequently traveled. The efforts of counsel for the class has [sic] produced a substantial recovery, and it is represented that the cash settlement alone is the second largest in the history of class action litigation. . . . There is no question that the results achieved by class counsel were extraordinary [.]"

Regarding the work of Berger Montague in achieving more than $700 million in settlements with some of the defendants in *In Re Brand Name Prescription Drugs Antitrust Litigation*, 2000 U.S. Dist. LEXIS 1734, at *3-*6 (N.D. Ill. Feb. 9, 2000).

From **Judge Peter J. Messitte,** of the U.S. District Court for the District of Maryland:

> "The experience and ability of the attorneys I have mentioned earlier, in my view in reviewing the documents, which I have no reason to doubt, the plaintiffs' counsel are at the top of the profession in this regard and certainly have used their expertise to craft an extremely favorable settlement for their clients, and to that extent they deserve to be rewarded."

Settlement Approval Hearing, Oct. 28, 1994, in *Spawd, Inc. and General Generics v. Bolar Pharmaceutical Co., Inc.*, CA No. PJM-92-3624 (D. Md.).

From **Judge Donald W. Van Artsdalen,** of the U.S. District Court for the Eastern District of Pennsylvania:

> "As to the quality of the work performed, although that would normally be reflected in the not immodest hourly rates of all attorneys, for which one would expect to obtain excellent quality work at all times, the results of the settlements speak for themselves. Despite the extreme uncertainties of trial, plaintiffs' counsel were able to negotiate a cash settlement of a not insubstantial sum, and in addition, by way of equitable relief, substantial concessions by the defendants which, subject to various condition, will afford the right, at least, to lessee-dealers to obtain gasoline supply product from major oil companies and suppliers other than from their respective lessors. The additional benefits obtained for the classes by way of equitable relief would, in and of itself, justify some upward adjustment of the lodestar figure."

*Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 31 (E.D. Pa. 1985).

From **Judge Krupansky**, who had been elevated to the Sixth Circuit Court of Appeals:

> "Finally, the court unhesitatingly concludes that the quality of the representation rendered by counsel was uniformly high. The attorneys involved in this litigation are extremely experienced and skilled in their prosecution of antitrust litigation and other complex actions. Their services have been rendered in an efficient and expeditious manner, but have nevertheless been productive of highly favorable result."

*In re Art Materials Antitrust Litigation*, 1984 CCH Trade Cases ¶65,815 (N.D. Ohio 1983).

From **Judge Joseph Blumenfeld,** of the U.S. District Court for the District of Connecticut:

> "The work of the Berger firm showed a high degree of efficiency and imagination, particularly in the maintenance and management of the national class actions."

*In re Master Key Antitrust Litigation*, 1977 U.S. Dist. LEXIS 12948, at *35 (Nov. 4, 1977).

## Attorney Biographies

If appointed as co-lead counsel, the following Berger Montague attorneys would play a leading role in the litigation of this case.





**Eric L. Cramer** is Chairman of Berger Montague and is also Co-Chair of the Firm's antitrust department. He has a national practice in the field of complex litigation, primarily in antitrust. He is currently co-lead counsel in multiple significant antitrust class actions across the country in a variety of industries and is responsible for winning numerous significant settlements for his clients totaling well over $3 billion. Most recently, he has focused on representing workers claiming that anticompetitive practices have suppressed their pay, including cases on behalf of mixed-martial-arts fighters, luxury retail and healthcare workers, and chicken growers. He just finished up serving as one of the main trial counsel in a two-week jury trial in *In re Capacitors Antitrust Litig.* (N.D. Cal.), which resulted in a $160 million class settlement just before closing arguments.

In 2020, Law360 named Mr. Cramer a Titan of the Plaintiffs Bar, and Who's Who Legal identified him as a Global Elite Thought Leader, stating that he "comes recommended by peers as a top name for antitrust class action proceedings." In 2021, Chambers & Partners ranked Mr. Cramer in the top tier nationally in antitrust, observing that "He excels in economic analysis. He is a real leader;" and that he has "a great presence in court and at trial," and is at the "[t]op of the profession; a phenomenal lawyer who is an expert on economics." In 2019, The National Law Journal awarded Mr. Cramer the 2019 Keith Givens Visionary Award, which was developed to honor an outstanding trial lawyer who has moved the industry forward through his or her work within the legal industry ecosystem, demonstrating excellence in all aspects of work from client advocacy to peer education and mentoring. In 2018, he was named Philadelphia antitrust "Lawyer of the Year" by Best Lawyers, and in 2017, he won the American Antitrust Institute's Antitrust Enforcement Award for Outstanding Antitrust Litigation Achievement in Private Law Practice for his work in *Castro v. Sanofi Pasteur Inc.*, No. 11-cv-07178 (D.N.J.). In that case, Mr. Cramer represented a national class of physicians challenging Sanofi Pasteur



with anticompetitive conduct in the market for meningitis vaccines, resulting in a settlement of more than $60 million for the class.

Mr. Cramer has prosecuted multiple complex antitrust matters. Mr. Cramer has stewarded multiple cartel cases to successful resolution as co-lead counsel, including In re Dental Supplies Antitrust Litig., No. 1:16-cv-696 (E.D.N.Y.) (Cogan, J.) (one of four co-leads) (Section 1 price-fixing case against dental supplies distributors that resulted in an $80 million settlement in 2019) and In re Domestic Drywall Antitrust Litig., 13-md-2437 (E.D. Pa.) (one of 3 co-leads) (Section 1 price fixing cases against drywall manufacturers that resulted in settlements totaling more than $190 million). He was also co-lead counsel in connection with a ground-breaking settlement in an antitrust case relating to the over-the-road fleet payment card market in Comdata, which provided for $130 million in cash plus valuable prospective relief that rolled back much of the conduct plaintiffs had challenged. And he litigated as co-lead counsel an antitrust case against Abbott Labs, which settled for $54 million after three days of trial. Meijer v. Abbott Labs., Nos. 04-cv-1511, 07-cv-5985 (N.D. Cal.). He is also currently co-lead in multiple antitrust class actions, including Le v. Zuffa, LLC, No. 15-cv-1045 (D. Nev.) (one of 3 co-leads); In re Google Digital Advertising Antitrust Litig., No. 21-md-3010 (S.D.N.Y.) (one of 3 co-leads for the class of publishers); Fusion Elite All Stars v. Varsity Brands LLC, No. 2:20-cv-3390 (E.D. Pa.) (one of 3 co-leads); and In re Rotavirus Vaccines Antitrust Litig., No. 2:18-cv-1734 (E.D. Pa.) (one of 2 co-leads).

![BERGER | MONTAGUE]



**Candice J. Enders** is a Shareholder in the Antitrust Practice Group. She concentrates her practice in complex antitrust litigation.

Ms. Enders has significant experience investigating and developing antitrust cases, navigating complex legal and factual issues, negotiating discovery, designing large-scale document reviews, synthesizing and distilling conspiracy evidence, and working with economic experts to develop models of antitrust impact and damages. Ms. Enders applies these skills cases involving allegations price-fixing, wage suppression, and monopolization in a variety of industries, including the pharmaceutical industry and complex financial markets.

Ms. Enders currently plays a significant role *in In re Generic Pharmaceuticals Pricing Antitrust Litigation*, No. 16-2724 (E.D. Pa.), one of the largest antitrust cases in history. She spearheads discovery efforts on behalf of Direct Purchaser Plaintiffs in a sprawling price-fixing conspiracy case involving dozens of generic manufacturer defendants and hundreds of generic drugs.  Ms. Enders is also involved in the discovery process in *Jien, et al. v. Perdue Farms, Inc., et al.*, No. 19-2521 (D. Md.), a case alleging the major producers of poultry conspired to suppress wages of workers in their processing plants. Ms. Enders recently played a central role in discovery in *In re Commodity Exchange, Inc. Gold Futures & Options Trading Litigation*, No. 14-2548 (S.D.N.Y.), a case alleging that the five banks that participated in a gold benchmark setting process conspired to suppress the benchmark.

Her work on antitrust conspiracy cases has contributed to settlements totaling hundreds of millions of dollars, including *in In re Commodity Exchange, Inc. Gold Futures & Options Trading Litigation*, No. 14-2548 (S.D.N.Y.) ($152 million in settlements preliminarily approved on behalf of sellers of gold investments); *In re Domestic Drywall Antitrust Litigation*, No. 13-2437 (E.D. Pa.) ($190 million in total settlements on behalf of direct purchasers of drywall; plaintiffs' motion for class certification granted; defendants' motion for summary judgment denied); *In re Liquid Aluminum Sulfate Antitrust Litigation*,



No. 16-2687 (D.N.J.) ($90.5 million in total settlements); and *In re Microcrystalline Cellulose Antitrust Litigation*, No. 01-111 (E.D. Pa.) ($50 million settlement achieved shortly before trial on behalf of direct purchasers).

In addition to her case work, Ms. Enders contributes to the administration of the Firm by serving as the Firm's Attorney Recruitment Coordinator, Paralegal Coordinator, and a member of the Diversity, Equity & Inclusion Task Force. Ms. Enders has been a featured speaker at Harvard Plaintiffs' Law Association events and the American Antitrust Institute annual meeting. Ms. Enders also regularly meets with law school affinity groups, including chapters of the Black Law Students Association and Asian Pacific American Law Students Association, to build awareness of career opportunities within the plaintiffs' antitrust bar.





**Daniel J. Walker** is a Shareholder and member of the firm's antitrust department and practices in Washington, DC, where he has been named a Super Lawyer for 2020-2022. Mr. Walker rejoined the firm in 2017 from the Federal Trade Commission, where he was an attorney in the Health Care Division. Mr. Walker litigates complex cases on behalf of consumers and workers and has helped recover hundreds of millions of dollars on behalf of plaintiffs. Significant past successes include *In re Loestrin 24 Fe Antitrust Litig.*, No. 13-md-2472 (D.R.I.) (settlements totaling $120 million for purchasers of hormonal birth control pills), *In re High Tech Employee Antitrust Litig.*, No. 11-cv-2509 (N.D. Cal.) (settlements totaling $435 million for workers in the high tech industry), *Adriana Castro, M.D., P.A., et al. v. Sanofi Pasteur Inc.*, No. 11-cv-07178 (D.N.J.) ($61.5 million settlement on behalf of pediatricians who purchased meningococcal vaccine), and *In re Titanium Dioxide Antitrust Litig.*, No. 10-cv-318 (D. Md.) (settlements totaling $163.5 million for purchasers of titanium dioxide).

While at the Federal Trade Commission, Mr. Walker investigated and litigated antitrust matters in the health care industry. In addition to leading various nonpublic investigations in the pharmaceutical and health information technology sectors, Mr. Walker litigated *Federal Trade Commission v. AbbVie Inc.*, et al., a case alleging that a brand pharmaceutical manufacturer engaged in sham patent litigation to delay generic competition, and *Federal Trade Commission v. Cephalon Inc.*, a "pay-for-delay" lawsuit over a brand pharmaceutical manufacturer's payment to four generic competitors in return for the generics' agreement to delay entry into the market. The Cephalon case settled shortly before trial for $1.2 billion—the largest equitable monetary relief ever secured by the Federal Trade Commission—as well as significant injunctive relief.



**Patrick F. Madden** is a Shareholder in the Antitrust, Consumer Protection, Insurance Fraud, and Predatory Lending and Borrowers' Rights practice groups.

Mr. Madden represents plaintiffs in antitrust class actions, with a particular focus on workers. For example, Mr. Madden is on the lead counsel team representing a proposed class of mixed martial arts fighters in an antitrust lawsuit against the Ultimate Fighting Championship. *Le v. Zuffa, LLC*, No. 15-cv-1045 (D. Nev.). Following six years of hard-fought litigation, in December 2020, the Court in that case announced that it would certify the principal class of fighters. Mr. Madden is also on the lead counsel team representing a proposed class of broiler chicken farmers in an antitrust suit against the major chicken processing companies for colluding to suppress compensation to the farmers. *In re Broiler Chicken Grower Antitrust Litig.*, No. 6:20-md-2977 (E.D. Okla.). To date, Mr. Madden and his co-counsel have recovered in excess of $35 million on behalf of the class of chicken farmers. Mr. Madden is also on the lead counsel team representing a proposed class of luxury retail employees who allege that Saks entered into no-poach agreements with various luxury retail brands that restricted employee mobility and suppressed employees' compensation. *Giordano v. Saks, Inc.*, No. 1:20-cv-833 (E.D.N.Y.). In addition to these antitrust suits concerning workers, Mr. Madden is on the lead counsel team representing proposed classes of digital content publishers against Google concerning Google's digital advertising practices in the *Google Digital Publisher Antitrust Litigation*, No. 1:21-cv-7034 (S.D.N.Y.).

Mr. Madden has also served in key roles in multiple nationwide consumer class actions. For example, he represented homeowners whose mortgage loan servicers force-placed extraordinarily high-priced insurance on them and allegedly received a kickback from the insurer in exchange. Collectively, Mr. Madden's force-placed insurance settlements have made more than $175 million in recoveries available to class members.



Mr. Madden has been recognized for his work in these cases and others. In 2021, Law360.com named Mr. Madden a "Rising Star" in Class Actions, and every year from 2013-2021, Pennsylvania Super Lawyers also named him a "Rising Star."