UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| David Granata, | ) | 3:21-CV-01657 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Pratt & Whitney et al., | ) | |
| *Defendants*. | ) | March 11, 2022 |

**DECISION AND ORDER APPOINTING INTERIM CLASS COUNSEL**

Sarala V. Nagala, United States District Judge.

On December 14, 2021, Plaintiff filed this action for violations of 15 U.S.C. § 1 (the "Sherman Act"). In his complaint, Plaintiff alleges the Defendants, which are aerospace engineering firms, entered a "no-poach agreement" and, through that agreement, "knowingly, intentionally, and cooperatively engaged in a contract, combination, or conspiracy in unreasonable restraint of trade." ECF No. 1 ¶ 1, 112. Plaintiff further contends that the unlawful behavior was only recently uncovered when "the U.S. Department of Justice ("DOJ") unsealed a criminal complaint" against a former employee of Defendant Pratt & Whitney. (*Id.* ¶ 8). Since this action was filed, about thirty additional complaints have been filed in this district, all of which have been consolidated into the present action.

Currently pending before the Court are seven proposals from different law firms, or groups of law firms, to act as interim class counsel pending class certification. ECF Nos. 143, 150, 151, 152, 154, 155, 156. For the reasons outlined below, the Court believes the appointment of DiCello

Levitt Gutzler[1] ("DiCello") and Quinn Emanuel Urquhart & Sullivan LLP ("Quinn"), along with local Connecticut counsel from Hurwitz Sagarin Slossberg & Knuff, LLC ("HSSK") and Garrison, Levin-Epstein, Fitzgerald & Pirotti P.C. ("Garrison") will best serve the interests of the class and therefore GRANTS the Motion to Appoint Counsel found at ECF No. 151 and DENIES the Motions to Appoint Counsel found at ECF Nos. 143, 150, 152, 154, 155, and 156.

I.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 23(g)(3) allows the Court to designate interim class counsel of a putative class, pending class certification. "When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Rule 23(g) of the Federal Rules of Civil Procedure." *In re Amla Litig.*, 320 F.R.D. 120, 121 (S.D.N.Y. 2017). Therefore, the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. The Court may also consider any other "matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23. Finally, where there are multiple applications for interim class counsel and "more than one choice of counsel satisfies these requirements for adequacy, Rule 23(g)(2) provides that the court 'must appoint the applicant best able to represent the interests of' the plaintiffs." *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008).

---

[1] The Court notes that the original proposal included the law firm of Labaton Sucharow LLP. All attorneys included in the proposal who were employed with Labaton Sucharow LLP have since joined the firm DiCello Levitt Gutzler. The attorneys involved in the proposal have represented that the DiCello firm fully supports the effort of being named interim class counsel in the instant action. Therefore, the Court does not believe the change in employment of certain attorneys will have any impact on their ability to represent the class. To avoid confusion, the Court will refer to the proposed arrangement as the "DiCello/Quinn Proposal."

## II. DISCUSSION

Initially, the Court has no doubt that each of the distinguished counsel who submitted proposals to be named interim class counsel are more than capable of adequately representing the class in the present action. Thus, the Court's decision is based simply on the proposal the Court believes would best serve the interests of the class. After reviewing each of the proposals and examining how the relevant factors under the Federal Rules relate to each, the Court believes that the DiCello/Quinn Proposal will best suit the interests of the class.

### A. The Work Counsel Has Done in Identifying or Investigating Potential Claims

The first Rule 23(g) factor the court examines is the work done by counsel investigating the claims involved in the case. Although all of the firms vying for appointment have conducted some (and often substantial) investigation, this factor weighs in favor of selection of the DiCello/Quinn Proposal because of the early nature of the investigation conducted by these firms. The investigation conducted by the attorneys at DiCello and HSSK commenced nine months before the Department of Justice announced that it was investigating the alleged conduct. ECF No. 151-1 ¶ 6. Together, the two firms spent several hundred hours investigating the conduct alleged in the *Granata* complaint. *Id.* ¶ 7. In the course of their investigation, the firms contacted more than sixty industry participants, mostly former employees of the now defendant companies, and interviewed twenty of them. *Id.* ¶ 8.

In addition to identifying the facts underlying the current action, the DiCello and HSSK attorneys hired a leading economic expert specializing in labor markets and no-poach agreements' effects on said markets. *Id.* ¶ 10. This allowed the attorneys to better understand the impact the alleged scheme had on the aerospace industry as a whole. All of this work was done prior to the DOJ releasing any information to the public, and it allowed DiCello and HSSK to be in position

3

to file the first complaint in the present action, only one week after the DOJ filed a sealed criminal complaint. *Id.* ¶¶ 15, 17; *See also Granata v. Pratt & Whitney et. al.*, 3:21-cv-01657, at ECF No. 1.[2]  It is clear that this complaint was not simply "piggybacking on an existing government investigation," *In re: Int. Rate Swaps Antitrust Litig.*, No. 16-MC-2704 (PAE), 2016 WL 4131846, at *3 (S.D.N.Y. Aug. 3, 2016), but, rather, was the result of substantial time and energy on behalf of DiCello and HSSK.  *See In re: Bystolic Antitrust Litig.*, Nos. 20-cv-5735 (LJL), 20-cv-7110 (LJL) 20-cv-8754 (LJL), 20-cv-8756 (LJL), 2020 WL 6700830 at *1 (Nov. 12, 2020) (appointing as interim class counsel firms that "were the first to identify the claims in these actions and to investigate them and have expended substantial resources to do so").

Equally as important as the pre-complaint investigation is that DiCello and Quinn have not rested on their laurels after filing their respective complaints.  Rather, since filing their complaints, both firms have continued interviewing former employees.  ECF No. 151-1 ¶ 19.  Quinn has also retained two separate economic experts that it represents will assist the firms in understanding the past and ongoing economic impact that the alleged scheme has had on the plaintiff class.  ECF No. 151-4 ¶¶ 7, 8.  These efforts have and will continue to benefit the Plaintiff class.

The Court recognizes that Quin and DiCello are not the only firms to conduct substantial investigation into the claims at issue.  However, their efforts, which culminated in the first-filed complaint in this consolidated action counsels in favor of their appointment as interim class counsel.

---

[2] While the DiCello/Quinn Proposal contemplates the firms working together as interim class counsel, it is worth noting that Quinn conducted its own independent investigation, interviewing more than twenty witnesses and culminating in the filing of a complaint on behalf of its own client. *See* ECF No. 151 at 7, 14; *see Wilson et al. v. Raytheon Tech. Corp. et. al.*, 3:22-cv-00062, ECF No. 1.

B. <u>Counsel's Experience Handling Class Actions, Other Complex Litigation, and the Types of Claims Asserted and Counsel's Knowledge of the Applicable Law</u>

The Court acknowledges that the attorneys involved in all of the proposals demonstrate deep understanding and experience with antitrust matters generally and often no-poach matters specifically. The DiCello/Quinn Proposal is no exception. Attorneys from both DiCello and Quinn have litigated numerous class actions related to both the aerospace industry and no-poach agreements. Specifically, the DiCello attorneys served as lead or co-lead counsel in *In re Aftermarket Automotive Lighting Products Antitrust Litigation., In re Air Cargo Shipping Services Antitrust Litigation,* and *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, in the Central District of California, the Eastern District of New York, and the Eastern District of Pennsylvania, respectively, among others. While the *Generic Pharmaceuticals* case remains pending, the DiCello attorneys were able to secure large recoveries for the plaintiff class in both the *Air Cargo* and *Automotive Lighting* cases.

Quinn has similarly been involved in numerous large antitrust cases across a variety of industries. *See* ECF No. 151 at 17, n. 27. Importantly, Quinn also has experience in dealing with both the aerospace industry and no-poach agreements. Specifically, Quinn has represented numerous clients as both plaintiff and defense counsel in employment, antitrust, and intellectual property matters, all within the aerospace industry. *Id.* at 19. Additionally, attorneys at Quinn have been involved in no-poach matters representing both private and public clients. *Id.* at 20. A leader of the Quinn team was part of the senior leadership at the New York Attorney General's office and worked on creating its strategy for investigation and enforcement of no-poach matters, while others at the firm have represented large companies and senior executives during investigations into potential no-poach agreements by both the Department of Justice and the United States Attorney's offices. *Id.* The ability to think about the present case from not only the

perspective of the plaintiffs, but also with an understanding of the Government's interests and the different strategies the defendants may attempt to employ is a valuable tool for the plaintiff class.

In addition to DiCello and Quinn, the attorneys at HSSK and Garrison are well versed in anti-trust and employment law. Several partners at HSSK are contributing editors to one of Connecticut's leadings treatises on Unfair Trade Practices and Antitrust law and Garrison has six partners named to Lawdragon's 500 Leading Plaintiff Employment and Civil Rights Lawyers. *Id.* at 21-22. It is clear that the experience litigating in, and knowledge of, the applicable areas of the law that each of the four firms in this proposal brings is substantial. Thus, the second and third factors of the analysis also favor the DiCello/Quinn proposal.

### C. The Resources Counsel Will Commit to Representing the Class

The final 23(g) factor is the resources interim class counsel will commit to the class. In determining who should be named interim class counsel, "the availability of resources is an important factor." *In re Treasury Sec. Auction Antitrust Litig.*, No. 15 MD 2673 (PGG), 2017 WL 10991411, at *2 (S.D.N.Y. Aug. 23, 2017). The resources of the DiCello/Quinn Proposal are immense, and the firms have already shown their willingness to utilize those resources where necessary.

Initially, Quinn has an in-house litigation support group, which will allow for all discovery to be handled cost effectively and without engaging the services of an outside vendor. This Litigation Support Group also provides analytic tools that can be used to maximize the efficiency of any document review at no extra cost to the plaintiff class. ECF No. 151 at 18. DiCello and Quinn also provide a "deep bench" of both trial level and appellate attorneys who can step in and assist with any tasks that should arise. *Id.* The ability to handle any potential appeals that should arise, without needing to work with any other firms, could prove valuable to the class.

Quinn also has many offices situated all over the country. This is likely to be beneficial to the class in this case, particularly in Florida where a large part of the conduct at issue allegedly took place. The ability to operate out of an already established office in Florida, instead of either set up a temporary office, or engage in repeated travel has the potential to save the class substantial sums of money.

Finally, as discussed above, all firms involved in this proposal have already demonstrated a willingness to devote the necessary time and resources to prosecuting this action. They have spent substantial time investigating the claims and retained economic experts to advise the class going forward. This demonstrated willingness to utilize their extensive resources to help the class is equally as important as having these resources at the ready. Thus, the fourth factor favors the DiCello/Quinn Proposal.

### D. Other Matters Pertinent to Counsel's Ability to Represent the Class

In addition to the explicit factors named in Rule 23(g), the Court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In the present action there are a few factors the Court believes counsel in favor of the DiCello/Quinn Proposal. While the Court appreciates the other applicants' willingness to work together with firms outside of their formal proposal for the successful prosecution of the present matter, the Court is also concerned that if too many firms were to get involved, inefficiencies could result. The DiCello/Quinn Proposal expressly forgoes any such agreement with other firms, and maintains that only two firms, with support from the two Connecticut firms, will be involved in the prosecution of this matter. The Court believes this will decrease the likelihood of duplicative work and will result in a more efficient and productive interim class counsel structure. Such an arrangement is in the best interest of the class.

The DiCello/Quinn Proposal also commits, to the extent there is a recovery, to requesting only fees in line with the graduated, cumulative scale for fees laid out in *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014). While the Court would ultimately need to approve any request for fees that was made, having the certainty and predictability of knowing that their fees are directly related to the success of the class will align the interests of the class and class counsel. The greater recovery for the class, the greater recovery for the counsel. *Id.* The Court believes these additional considerations also favor the DiCello/Quinn Proposal and notes that this proposal was the only proposal to affirmatively address the issue of the proposed fee structure.

Finally, the Court appreciates that many of the firms advancing proposals have represented a commitment to diversity amongst their assigned attorneys, including DiCello and Quinn. DiCello and Quinn are committed to recruiting, cultivating, and utilizing talent from a diverse pool of lawyers who will work on this matter. As a recent study notes, "diversity enhances the quality of decision-making process[es] and results." James F. Humphreys Complex Litigation Center, George Washington Law School, *Inclusivity and Excellence: Guidelines and Best Practices for Judges Appointing Lawyers to Leadership Positions in MDL and Class-Action Litigation* (March 15, 2021). This is particularly important where, as here, the size of the plaintiff class numbers in the tens of thousands and the class is likely to be diverse itself.

### III. CONCLUSION

For the reasons discussed above, the Court appoints DiCello Levitt Gutzler and Quinn Emanuel Urquhart & Sullivan LLP, along with local Connecticut counsel from Hurwitz Sagarin Slossberg & Knuff, LLC and Garrison, Levin-Epstein, Fitzgerald & Pirotti P.C. as interim co-lead counsel for the putative class and GRANTS the Motion to Appoint Counsel found at ECF No. 151.

As co-lead counsel for the interim class these firms shall have the authority to:

A. Prepare and file the Consolidated Class Complaint on behalf of the putative class as well as any subsequent pleadings;

B. Make, brief, and argue any necessary motions;

C. Conduct or coordinate discovery on behalf of the putative class consistent with the Federal Rules of Civil Procedure;

D. Consult with and retain experts for the putative class and;

E. Negotiate with defense counsel with respect to settlement and other matters.

It is further ORDERED that the Motions to Appoint Counsel found at ECF Nos. 143, 150, 152, 154, 155, and 156 are DENIED.

It is further ORDERED Interim Co-Lead Counsel may not delegate its responsibilities or assign legal work to other law firms without the prior approval of the Court.

It is further ORDERED that pursuant to this Court's consolidation order, ECF No. 44, a consolidated amended complaint shall be filed no later than **April 11, 2022,** and the parties' Rule 26(f) report shall be filed no later than **April 29, 2022.**

**SO ORDERED** at Hartford, Connecticut, this 11th day of March, 2022.

                                                 /s/ Sarala V. Nagala  
                                                SARALA V. NAGALA  
                                                UNITED STATES DISTRICT JUDGE