# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

---

TARAH KYE BOROZNY, et al.; on behalf of
themselves and all others similarly situated,

                          Plaintiffs,

        vs.                                                     Case No.: 3:21-1657 (SVN)

RAYTHEON TECHNOLOGIES
CORPORATION, PRATT & WHITNEY
DIVISION; et al.,

                          Defendants.

---

## ORDER REGARDING THE PROTOCOL FOR PRODUCTION
## OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS

WHEREAS, the above consolidated action, brought by Tarah Kye Borozny, Anthony DeGennaro, Ryan Glogowski, Ellen McIsaac, Scott Prentiss, Alex Scales, Austin Waid-Jones, Nicholas Wilson, and Steven Zappulla (collectively, "Plaintiffs") against Defendants Raytheon Technologies Corporation, Pratt & Whitney Division; Agilis Engineering, Inc.; Belcan LLC; Cyient, Inc.; Parametric Solutions, Inc.; and QuEST Global Services-NA, Inc., (collectively, "Defendants") is pending before this Court;

WHEREAS, the Parties seek to facilitate the exchange of ESI and Hard Copy Documents in this action, pursuant to this Court's authority and with the consent of the Parties; and

WHEREAS, the Parties and the Court recognize that this ESI and Hard Copy Documents protocol is based on facts and circumstances as they are currently known to each Party, that the electronic discovery process is iterative, and that additions and modifications to this protocol may become necessary as more information becomes known to the Parties.

**IT IS HEREBY ORDERED:**

**1.     DEFINITIONS**

1.1     "Action" means *Borozny, et al. v. Raytheon Technologies Corporation, Pratt & Whitney Division, et al.*, No. 3:21-1657 (SVN) and all cases consolidated with that matter.

1.2     "Custodial Data Source" means any data source used by a custodian for relevant business purposes in or on which a custodian stores potentially relevant Documents, ESI, or Hard Copy Documents, but excluding shared locations and/or repositories deemed "Non-Custodial Data Sources," whether or not created or generated by a custodian, which may include but are not limited to computers, laptops, tablets, E-mail, network servers or folders, cloud storage systems, or structured data systems.

1.3     "Document" shall have the meaning contemplated by Rule 26(c)(2) of the Local Rules of Civil Procedure of the United States District Court for the District of Connecticut ("Local Rules") and Federal Rule of Civil Procedure 34(a)(l)(A). A draft or non-identical copy is a separate document.

1.4     "Document Family" means a collection of pages or files maintained together constituting a logical single communication of information but consisting of more than a single stand-alone record. Examples include a fax cover, the faxed letter, and an attachment to the letter—the fax cover being the "Parent" and the letter and attachment being a "Child"—or an E-mail and associated attachments, or a presentation with embedded files. The Parties agree to meet and confer concerning the treatment of hyperlinked ESI referenced in E-mails or other platforms.

1.5     "ESI" is an abbreviation of "electronically stored information" and shall have the same meaning it has in Federal Rule of Civil Procedure 34(a)(l)(A).

1.6     "Extracted Text" means the text extracted from a Document, and includes all

header, footer, and document body information. A "Text File" is a file containing the full text of native files extracted directly from the native file, or, in the case of Hard Copy Documents or scanned PDF documents, subject to OCR, a file containing the text resulting from the OCR.

1.7     "Hard Copy Document" means a Document that was maintained in paper form.

1.8     "Instant Message" means a real-time communication sent via chat or SMS, including, but not limited to, Bloomberg Chat, AOL Instant Messenger, Blackberry Messenger, ICQ, Pidgin, Audium, Trillian, iMessage, Teams, WhatsApp, Facebook Messenger, or any other proprietary instant messaging system.

1.9     "Load/Unitization File" means an electronic file containing information identifying a set of paper-scanned images, processed ESI, or native format files, as well as the corresponding Extracted Text or OCR text files, and containing agreed-upon extracted or user-created metadata, as well as information indicating unitization (*i.e.*, Document breaks and Document relationships such as those between an E-mail or Instant Message and its attachments, or a Document and information related to embedded content). A Load/Unitization File is used to import all image, native, and text files and their corresponding production information into a document database. The Producing Party shall produce a load/unitization file ("load file") for all produced Documents in accordance with specifications provided in Exhibit A.

1.10     "Non-Custodial Data Source" means any data source that is not kept or maintained by any particular custodian but which may contain potentially relevant Documents or ESI, including data sources used by any department, business unit, or division of a Producing Party, and shared storage systems that may contain potentially relevant information, such as electronic mail systems, backup systems or backup media, or archival systems or archival storage.

1.11     "OCR" means the optical character recognition technology used to read Hard Copy

Documents or electronic images of Documents and output such Documents to a searchable text format. The latter text is also referred to as the "OCR text" or simply "OCR."

1.12    "Party" or "Parties" means, individually or collectively, all Plaintiffs and Defendants, as well as any later added plaintiffs and defendants.

1.13    "Producing Party" means any Party or third party that produces Hard Copy or ESI Documents in this Action.

1.14    "Requesting Party" means any Party that requests production of information, Documents, or ESI in the Action.

1.15    "Structured Data" means data that resides in a fixed field within a record or file, or stored in a structured format, such as databases (such as Oracle, SQL, Access) or data sets, according to specific form and content rules as defined by each field of the database.

1.16    "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or Hard Copy Documents. For files produced as TIFF images, each page of a Document shall be electronically saved as an image file, as outlined in Exhibit A.

1.17    "TAR" (Technology-Assisted Review) means a process for prioritizing or coding a collection of ESI using a computerized system, using algorithms or systematic rules, that harnesses human judgments of subject matter expert(s) on a smaller set of Documents and then extrapolates those judgments to the remaining Documents in the collection. TAR systems generally incorporate statistical models and/or sampling techniques to guide the process and to measure overall system effectiveness.

1.18    "Unstructured data" refers to free-form data which either does not have a data structure or has a data structure not easily readable by a computer without the use of a specific

program designed to interpret the data, including but not limited to, word processing documents, slide presentations, E-mail, PDFs, spreadsheets, and webpages, blogs, image files, Instant Messages, audio and video files, and others of similar variable format.

## 2. SCOPE

2.1     The procedures and protocols set forth in this Order shall govern the production format of Hard Copy Documents and ESI in this Action unless the Parties agree in writing to change them or the Court changes them at the request of a Party.

2.2     The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the Action consistent with this Court's Local Rules. The proportionality standard set forth in Fed. R. Civ. P. 26(b)(2)(C) should be applied in each case when formulating a discovery plan.

2.3     This Order does not define the scope of production, nor the relevance of any particular information. This Order is intended to aid the Parties by providing a more predictable, cost-effective, and efficient management structure for the maintenance and production of electronic discovery. Nothing in this Order establishes any agreement as to either the temporal or subject matter scope of discovery in the Action, except as expressly stated. The discovery requests, objections thereto, agreements of the Parties, applicable law and rules and any Court orders shall govern the scope of Documents to be produced. Nothing in this Order is intended to be inconsistent with or to exceed a Party's obligations under the Local Rules, the Federal Rules of Civil Procedure, or other applicable statutes, laws or requirements.

2.4     As outlined in Federal Rule of Civil Procedure 26(b)(2)(B), a Producing Party need not ordinarily provide discovery of ESI from sources that it identifies as not reasonably accessible because of undue burden or cost, which sources a Producing Party shall disclose in a

manner compliant with the Local Rules and Federal Rules of Civil Procedure. The Parties shall promptly meet and confer as to any disputes concerning such disclosure. However, for purposes of this ESI Protocol, the Parties agree that the following data categories shall be deemed inaccessible and therefore, not discoverable, and should not be preserved:

a) Deleted, slack, fragmented, or other data only accessible by forensics.

b) Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system.

c) Online access data such as temporary internet files cache, and cookies.

d) Data in metadata fields that are frequently updated automatically, such as last opened date.

e) Backup and archive data that are substantially duplicative of data that are more accessible elsewhere.

2.5    The production specifications in this Order and Exhibit A hereto apply to Documents that are produced in this Action, except that, to the extent any Party is required or agrees to re-produce Documents in this Action that originally were produced or prepared for production in other cases or government investigations, if relevant to this Action, such Documents may be produced in the same format in which they originally were produced or prepared for production, along with any previously produced metadata, load files and accompanying text files, and same Bates numbers and confidentiality designations as is appropriate. This paragraph addresses the format of production only and does not impose any obligation to produce documents produced in other proceedings. The Requesting Party reserves the right to make particularized requests for additional metadata from the Producing Party and the Producing Party shall not unreasonably deny such requests.

2.6     The Parties do not waive any objections including to the responsiveness, production, discoverability, possession, custody, control, or confidentiality of Documents, including (without limitation) objections regarding the burden, over-breadth, or relevance of any document requests, or any other objection under the Local Rules or Federal Rules of Civil Procedure. Nothing in this Stipulated Order shall be interpreted to require the disclosure of information that is otherwise not discoverable under the Local Rules, Federal Rules of Civil Procedure, or other applicable statutes, laws or requirements.

## 3.     PRODUCTION FORMAT

3.1     Subject to the other provisions contained herein, including those pertaining to redaction and withholding of Documents, a Document should be produced together with its entire Document Family. For example, a responsive E-mail should include the E-mail itself, plus associated attachments. Similarly, if a Document is produced that is an attachment to an E-mail, the cover E-mail and other associated attachments to the cover E-mail should also be produced.

3.2     If a member of a Document Family that has otherwise been determined to be responsive cannot technically be processed (e.g., unsupported file format, file corruption, inaccessible password-protected Document), those technical problems shall be identified and disclosed to the Requesting Party by production of a Bates numbered slipsheet that states "Technical issue-file cannot be processed" (or similar language). Appropriate metadata for the file with the technical problem shall be produced if technically possible and reasonable. A Requesting Party may thereafter raise with the Producing Party any questions or concerns, and the Parties shall meet and confer regarding any issues.

3.3     (a) A Party may redact or withhold responsive documents only on grounds of (1) attorney-client privilege; (2) protection under the work-product doctrine; or (3) any other applicable privilege or protection. A Party may also redact or withhold an attachment to an E-

mail that contains CONFIDENTIAL-ATTORNEYS' EYES ONLY non-responsive business information. Additionally, because of the risk of irreparable harm to individuals, such as identity theft: (1) an otherwise responsive Document that contains non-public personal information or protected health information[1] of (a) customers or patients or potential customers or patients, (b) individual Plaintiffs, (c) individual employees or agents of the Parties, or (d) individuals not a Party to this litigation (together, "protected identifying and health information" or "PIHI") may be redacted to exclude PIHI; (2) a Document that is a member of a family that includes one or more responsive documents may be withheld if it contains exclusively PIHI. The Producing Party shall redact the minimal amount of PIHI to comply with applicable statutes or regulations. If any member of a Document Family is responsive, the Producing Party shall produce all family members and/or portions thereof that are not independently protected as described in this paragraph. Notwithstanding the foregoing, to the extent that any withheld PIHI or NPPI is reasonably necessary (e.g., to understand a document or for use in any expert analyses or reports), the Parties shall meet and confer with respect to parameters of such disclosure.

(b) If a Party claims that a member of a Document Family that contains a responsive document is privileged or otherwise protected per Paragraph 3.3(a), it may be redacted or produced as a Bates-labeled slipsheet in place of the attachment, along with all metadata for the attachment as specified in Exhibit A, except that the Full Text Metadata field and any protected information in other fields need not be populated. The TIFF slipsheet for each withheld

---

[1] As used herein, "non-public personal information" ("NPPI") includes individuals' names, addresses (except city and state), Social Security numbers, taxpayer identification numbers, driver's license numbers, credit card numbers, and financial and bank account numbers; and "protected health information" ("PHI") includes any individually identifiable information relating to the past, present, or future health status of an individual as defined in the Privacy Rule implementing the requirement of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

attachment will state "Family Member Withheld as Privileged" (or similar language). The Parties agree to meet and confer in good faith regarding any disputes arising under this provision.

(c) In the event that a Party initially withholds a Document that forms a part of a Document Family, and that Document is later produced either by decision of the Party or by order of the Court, the Party shall produce that Document such that the slipsheet previously replacing that document in the production is easily identifiable.

(d) Where possible, the Producing Party shall provide updated metadata associating the previously withheld Document with its Document family.

3.4    The Parties shall meet and confer in good faith regarding any disputes that may arise under this Order, prior to seeking assistance from the Court.

3.5    Format Guidelines. The Parties shall produce Hard Copy Documents and ESI according to the specifications provided in this Order and Exhibit A hereto. The Parties agree to meet and confer in good faith if any of the technological specifications set forth in this Order or Exhibit A result in technological issues. The Parties agree not to degrade the searchability of Documents as part of the Document production process, subject to the provisions herein.

3.6    De-Duplication. The Parties shall use reasonable, good faith efforts to avoid the production of duplicate ESI. The Parties agree that production of ESI Documents globally de-duplicated to remove exact duplicate Documents shall constitute production of Documents as maintained in the ordinary course of business provided that a single copy of the responsive Document or record is produced. Near-duplicate Documents shall be produced rather than removed. No Party shall eliminate duplicates of hard copy or electronic Documents by manual review. Exact duplicates shall be defined as ESI with exact MD5 or SHA-1 hash values. Where any such Documents have attachments, hash values must be identical for both the Document–

plus–attachment(s) (including associated metadata) as well as for any attachment (including associated metadata) standing alone. For E-mail, the MD5 or SHA-1 hash values should be calculated at the family level and include the full body of any and all attachments, as well as the "To," "From," "Cc," "Bcc," "Date Sent," "Date Received," "Date Create," and "Date Modified" values to the extent used in that calculation. To the extent a Producing Party seeks to use a de-duplication methodology other than one described in the preceding sentences, the Producing Party shall disclose such methodology and either Party may seek to meet and confer concerning that methodology. When the Producing Party is globally de-duplicating across custodians, the Producing Party shall populate a field of metadata that identifies each custodian who had a copy of the produced Document (the "Duplicate Custodian" field) in addition to a separate field of data identifying the custodian whose Document is produced.

3.7     <u>Email Thread Suppression</u>. The Parties may use "E-mail thread suppression". As used in this Protocol, email thread suppression means reducing duplicative production of email threads by producing the most inclusive email containing the thread of emails, as well as all attachments within the thread, and excluding E-mails constituting duplicates of E-mails within the produced string. For purposes of this paragraph, only E-mail messages in which the parent document and all attachments are exactly the same will be considered duplicates. Nothing in this paragraph shall permit a Party to separate or break E-mail threads in favor of reducing volume. The Producing Party shall make commercially reasonable efforts to include the metadata listed in Exhibit A that is maintained and provided in the load file from the suppressed E-mails, with the exception of the Subject, FileName, and Full Text fields. To the extent the Producing Party identifies additional suppressed E-mail metadata fields that are excessively burdensome for review/redaction, the Parties shall meet and confer to discuss their exclusion from production.

The Requesting Party may request the Producing Party produce a copy of a reasonable number of specific unthreaded E-mails from a custodian/deponent's files within a reasonable time before the deposition, which request shall not unreasonably be refused.

      3.8    <u>Documents To Be Produced Natively.</u> A Producing Party shall produce Microsoft Excel and other spreadsheet files, including comma or tab delimited text files, and audio and video files in native format except where such files are redacted in accordance with this Order. Other document types which may be difficult or costly to be accurately imaged, such as large Microsoft Power Point and image files, may be selected to be produced natively at the Producing Party's discretion. The production of Structured Data, which the Parties may, from time to time, agree is also to be produced in its native format, is governed by Paragraph 3.13.

      The production Load Files shall contain a link to the produced native format files as specified in the ''Native Link'' metadata field described in Exhibit A. Each electronic file produced in native format shall be assigned a unique Bates number as set forth in Paragraph 3.14, and for each a single page placeholder TIFF image branded with this unique Bates number, the phrase "PRODUCED IN NATIVE FORMAT" (or similar language), and the corresponding confidentiality designation under the Protective Order will be produced. No Party may attach to any pleading or any correspondence addressed to the Court, Special Master, or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy of any produced native format Document without ensuring that either the corresponding placeholder slipsheet is attached to the Document or the corresponding Bates number and confidentiality legend, as designated by the Producing Party, appears on the Document.

      Responsive ESI produced in native format shall be produced with all required metadata

to the extent reasonable consistent with Exhibit A. Extracted Text taken from natively produced files will be provided at a Document level. There will be one text file per Document, using the same name as the beginning Bates number of the Document. The extracted text file for a Document will reside in a folder titled "TEXT." The text file associated with any redacted Document will exclude redacted text (*i.e.*, the Producing Party will OCR the redacted image and replace the original extracted text).

A Party may request the production of particular Documents in a format other than as specified in this Protocol. The Parties shall thereafter meet and confer, and the Producing Party shall not unreasonably deny such particularized requests.

Where the Document produced only in TIFF format that is requested in Native Format contains redactions, the Producing Party will, if reasonable, produce a version of the native format Document containing redactions. If the Producing Party is unable to do so, the Parties will meet and confer.

3.9     <u>Hard Copy Documents.</u> Black-and-white ("B&W") Hard Copy Documents shall be produced as single-page, B&W group IV TIFFs imaged at 300 dpi. To the extent that a static image has been created of any Hard Copy Document containing color and/or grayscale, such static image containing color and/or grayscale shall be produced. If not previously imaged in color or grayscale, the Parties will use reasonable efforts to produce Hard Copy Documents containing color and/or grayscale as static images with grayscale and color, respectively; however, a Party may, unless previously imaged in color and/or grayscale, produce documents containing color in grayscale if it determines that the color-portion of a document is minimal and that production using grayscale would not in any way affect a reader's understanding of that document (e.g., a letter where the only color included is a corporate logo on the first page).

Notwithstanding such a provision, reasonable requests to produce grayscale documents in color shall be accommodated. If, in the ordinary course of business, responsive Documents are maintained in a file, folder, envelope, binder, notebook or similar container used to store Documents, all contents therein shall be reviewed for production and privilege unless the Producing Party determines that such process is not reasonable, in which case, the Producing Party shall notify the Receiving Party and the Parties shall meet and confer on an alternative production process.

3.10    Unitization. If a Document is more than one page, to the extent possible, the unitization of the Document and any attachments or affixed notes shall be maintained as it existed in the ordinary course of business when collected by the Producing Party (*i.e.*, distinct Documents should not be merged into a single record, and a single Document should not be split into multiple records). The Producing Party shall take reasonable steps to physically and logically unitize Hard Copy Documents. For example, Documents stored in a binder, folder, or similar container (each, a "container") shall be produced in the same order as they appear in the container. Similarly, pages that are stapled or clipped shall be produced as a single document and not multiple one-page documents. The Producing Party shall undertake reasonable efforts to, or have its vendors, logically unitize (*i.e.*, use cues such as consecutive numbering, report titles, similar headers and footers, and other logical cues that indicate the pages belong together) Hard Copy Documents that are not otherwise bound. The Producing Party shall make reasonable best efforts to unitize Hard Copy Documents correctly. This provision does not obligate any Producing Party to reassemble Document Families for Hard Copy Documents that are not stored or maintained as Document Families in the location in which members of that family are found or as they are kept in the ordinary course of business. Nor shall this provision obligate any Producing Party to make whole any Document that is not stored or maintained in its complete form.

3.11 <u>Social Media</u>. The Parties shall meet and confer to address the collection and production format of any responsive documents and data contained on any social media platform, in a Party's possession, custody, or control. The Parties recognize that there is no tool that can capture all potentially relevant social media ESI. Therefore, should responsive information in a Party's possession, custody, or control reside on social media, the Parties may satisfy any discovery obligations in different manners which may include but not be limited to producing information through "screen shots" or "screen captures" or exporting using the platforms' export tools. The Producing Party shall provide document level OCR text files to accompany any TIFF or other image format production. To the extent reasonably available, the minimum data that must be provided for information produced from a social media platform will be BEGBATES, ENDBATES, CUSTODIAN(S), SOCIAL MEDIA PLATFORM, SOCIAL MEDIA USERNAME, SOCIAL MEDIA CUSTODIAN(S), and TEXT, indicating the beginning and ending Bates numbers, the custodian information, and the OCR text.

3.12 <u>Mobile and Handheld Device Documents and Data.</u> Requesting and Producing Parties shall meet and confer to address the collection and production format of any responsive Documents and data contained on any mobile or handheld device, to the extent discoverable and within the possession, custody, and control of the Producing Party.

3.13 <u>Structured Data.</u> To the extent a response to discovery requires production of discoverable electronic information contained in a database (including Microsoft Access files) and the responsive data cannot reasonably be produced in either Excel or .csv format, in advance of producing such information, the Parties agree to meet and confer regarding the format of the production (e.g., commercial database, or some other agreed-upon format). The Producing Party will answer reasonable requests to explain fields provided and any codes or abbreviations

contained in the structured data, through a meet and confer process.

      3.14   <u>Bates Numbers and Confidentiality Designations for TIFF Images.</u> Each page of a Document produced in TIFF file format shall have a legible, unique fixed-length numeric identifier ("Bates number") electronically "burned" onto the image at a place on the Document that does not obscure, conceal, or interfere with any information originally appearing on the Document. Bates numbers should not be included in the Extracted Text of ESI. The Bates number for each Document shall be created so as to identify the Producing Party. To that end, each Party's Bates numbers shall have unique identifying prefixes. If a Document is produced subject to a claim that it is Confidential under the Protective Order (ECF No. 4), each page of the Document shall have the appropriate confidentiality designation electronically "burned" onto the image at a place on the Document that does not obscure, conceal, or interfere with any information originally appearing on the Document.

      3.15   <u>Metadata Fields and Processing.</u> The Parties shall not remove any metadata from any Document prior to its production (provided, however, that metadata may be removed on the basis of privilege, work product protection, or applicable data privacy or other data protections) and shall produce Documents with, at least, all agreed upon metadata fields identified in Exhibit A to the extent reasonably available. However, the Parties are not obligated to populate manually any of the fields in Exhibit A, with the exception of the following, which must always be populated: (a) BegBates, (b) EndBates, (c) Custodian, (d) Page Count, (e) Production Volume, and (f) Confidentiality. Additionally, the Parties must populate the following fields in Exhibit A if applicable: (a) BegAttach, (b) EndAttach, (c) Hash Value, and (d) Duplicate Custodian (if Documents are being de-duplicated across custodians and a duplicate Document exists). Metadata identified in Exhibit A shall be provided in a Concordance format delimited file as

outlined in Exhibit A. With the exception of the fields which the Parties have agreed to manually populate as noted herein, nothing herein shall require a Producing Party to create or produce metadata that does not exist in the data as kept in the ordinary course of business or is not reasonably or technically accessible. Unless otherwise specified, by producing metadata, the Producing Party affirms that such metadata came from its records, with the exception of the manually populated fields outlined above.

      3.16   <u>Production Method.</u> The Producing Party shall produce Document images, native format files, Load Files, and metadata by secure FTP link or other file sharing platform link, provided via email at the time a production letter is emailed, unless such transfer is unreasonable or the Parties agree otherwise. Productions made via FTP or electronic transfer are not required to be supplemented with hard media containing the same Documents. On the occasion in which a particular production is of a size that would make sending it via FTP/file sharing platform link impractical, the Parties may agree to send encrypted physical media such as a Hard Drive or USB ("Production Media"). Each piece of Production Media shall include a unique identifying label including the following information: (a) name of the Action and its case number; (b) name of the Producing Party; (c) the date of the production; (d) production volume number; and (e) the Bates number ranges of the Documents in that production. To the extent that the Production Media includes any Confidential Information protected under any Protective Order entered by the Court, the label on such Production Media shall indicate that the Production Media includes information so designated. Further, any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates number range that is being replaced. All Production Media that is capable of write protection should be

write-protected before production. All Production Media shall be encrypted, with the Producing Party to provide a decryption key at the time of production.

3.17   Redacted Documents. To the extent a Document requires redaction, the Parties agree that the native version need not be produced, full text may be replaced with OCR text that excludes the redacted material, and Metadata fields may be excluded if they contain redacted material. The image file should indicate it is redacted (e.g., through a black box or showing the word "Redacted" and the reason for the redaction), where applicable. A production Load File field should be populated to indicate the Document contains a redaction. Metadata fields may be withheld if they contain information that may be redacted pursuant to this Paragraph.

If a Document to be produced in native format contains information that may be redacted pursuant to this Paragraph 3.17, the Document may be produced by producing the Document either in redacted TIFF format, or in native format with the redactable information withheld, as long as the Document or its produced metadata indicates that it has been redacted. The Parties agree to meet and confer in good faith regarding any dispute arising under this Paragraph.

3.18   Attachments. E-mail attachments and embedded files must be mapped to their parent Document by the Bates Number by including a "BegAttach" field designating the beginning of each such attachment and "EndAttach" field designating the end of each such attachment. If attachments and embedded files cannot be separated from their parent Documents, then "BegAttach" and "EndAttach" fields listing the unique beginning and end number for each attachment or embedded Document must be included. Non-substantive automatically-generated embedded files, such as logos, embedded, non-substantive formatting files such as .ole or .dll formats, zero-byte files, widgets, or confidentiality legends need not be produced as separate attachments. To the extent they are maintained together, all Documents in a Document Family

shall be consecutively Bates Number stamped with the child Documents produced immediately after the parent-document.

    3.19  <u>Text Files.</u> Each Document produced under this ESI Protocol shall be accompanied by a single, multipage text file containing all of the text for that Document (as opposed to one text file per page of such Document). Each text file shall be named using the Bates Number of the first page of the corresponding production item.

    (a)  <u>ESI</u>: The text of each ESI item shall be extracted directly from the ESI native file. To the extent that is not reasonably possible (e.g., the underlying native file is an image file), the text for each ESI item shall be generated by applying OCR to the native file under the provision above. For contacts and calendars, user modifiable fields shall be extracted and produced as text.

    (b)  <u>OCR</u>: To the extent that Documents have been run through OCR software, the full text shall be provided on a document-level basis in an appropriately formatted text file (.txt) that is named to match the first Bates Number of the document. Text files shall be provided in a "Text" folder. To the extent that a Document is redacted as allowed under Paragraph 3.17, the text files shall not contain the text of the redacted portions, but shall indicate where the redactions were made, e.g., with the notation "REDACTED." There is no obligation to OCR any electronic Documents that do not natively exist in a text-searchable format.

    3.20  <u>Password Protected Files.</u> The Producing Party shall make reasonable efforts to ensure that all encrypted or password-protected Documents are successfully processed for review and production under the requirements of this ESI Protocol, and the decrypted Document is produced. To the extent encrypted or password-protected Documents are successfully processed according to the requirements of this ESI Protocol, the Producing Party has no duty to identify the prior encrypted status of such Documents. To the extent such Documents are not successfully

processed, the Producing Party agrees to: (a) produce a slipsheet for each encrypted or password protected Document that cannot be successfully processed indicating that the Document cannot be decrypted; and (b) provide the metadata for the Document required by Exhibit A to the extent it can be reasonably extracted from the file in its encrypted form. Notwithstanding the preceding sentence, a Producing Party need not produce a slipsheet or provide metadata for encrypted attachments in otherwise non-responsive Document Families that are encrypted, but do not appear reasonably likely to contain responsive material. The Requesting Party and/or Producing Party, as appropriate, shall meet and confer regarding any requests that a Producing Party undertake additional efforts to decrypt files after production. If the Parties are unable to agree after meeting and conferring in good faith, the Parties may notify the Court or an appointed discovery master of their unresolved dispute(s) and seek resolution by the Court or an appointed discovery master.

     3.21  <u>Embedded Documents.</u> Embedded ESI documents (e.g., a spread sheet embedded within a word processing document) will be extracted, produced as an independent Document, and treated like attachments to the document in which they were embedded (e.g., standalone file, E-mail message, tec.) via the BegAttach and EndAttach fields referenced in Exhibit A, subject to the above provisions in Paragraph 3.18. Related embedded documents will be produced within a continuous Bates Range. Graphic objects embedded within documents or emails, such as logos, signature blocks, and backgrounds need not be extracted as separate documents.

     3.22  <u>Compressed and Container files.</u> Compression file types (e.g., .CAB, .GZ, .RAR. .ZIP) shall be decompressed to ensure that a compressed file within a compressed file is decompressed into the lowest possible compression resulting in individual folders and/or files. Original compression files and container files need not be produced, provided the responsive content files are produced in accordance with the specifications of this ESI Protocol.

3.23   <u>Custodian or Originating Source.</u> Producing Parties shall make reasonable efforts to identify the custodian or originating source in the Custodian field of the database load files, as provided in Exhibit A. Documents found in the possession of a natural person (or on a natural person's hardware or storage media) shall be produced in such fashion as to identify the natural person. Documents found in the possession of a department, group, entity, or other common facility (e.g., office, file room, archive, network storage, file share, back-up, hard drive, etc.) shall be produced in such a fashion as to identify the department, group, entity, or facility. A Producing Party shall use a uniform description of a particular agreed custodian across productions.

3.24   <u>Privilege Logs.</u>

(a)   Pursuant to Rule 26(b)(5) of the Federal Rules of Civil Procedure, the Parties hereby agree that a Producing Party may withhold or redact a Document if the Document withheld is protected by attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity from disclosure. The Requesting and Producing Parties shall meet and confer concerning circumstances under which categorical listings may be used. If the Parties cannot reach agreement concerning the use of categorical listings, any Party may seek relief from the Court.

(b)   Where multiple E-mail messages are part of a single chain or thread, the Producing Party is only required to include on a privilege log the most inclusive message and need not log earlier, less inclusive E-mail messages or "thread members" that are fully contained within the thread, provided that the log entry includes the names of the authors, addressees, and recipients (including copyees and blind copyees) for all thread members, that the description of the thread include the nature of the message sufficient to enable the Requesting Party to assess the claim of privilege for each thread member over which privilege is asserted, and that the log entry include

the privilege designations applicable to any thread members.

(c)     If a Producing Party identifies portions of a Document and redacts such portions of the Document pursuant to Paragraph 3.3 of this ESI Protocol, the Producing Party must log the fact of redaction except if such redactions are solely to protect PIHI.

(d)     To the extent a response to discovery requires a Party to provide a production set from a prior litigation or investigation, the privilege logs from those proceedings/litigations will be sufficient to inform the Requesting Party of the Documents that were withheld. Any privilege log from those proceedings/litigations will be produced in the same file format as produced in those proceedings/litigations, to the extent it still exists in that format, except to the extent that further redaction or supplementation is appropriate. The Producing Party does not need to re-log these Documents on another privilege log.

(e)     The Parties agree to produce, in Excel format, privilege logs(s) associated with any given production. The Parties shall meet and confer to identify reasonable date(s) for privilege log production, and the timing of such meet and confers shall be consistent with the development of further information on scope and timing of productions and depositions. Standard privilege logs shall conform to the requirements of Federal Rule of Civil Procedure 26(b) and Local Rule 26(e), and shall include the following categories of information:

   i.     a unique privilege log identifier or, in the case of redacted documents unless no logging is required, the Bates number assigned to such documents

   ii.    the date of the Document or ESI

   iii.   the type of Document or ESI

   iv.    the general subject matter of the Document or ESI sufficient to understand the subject matter of the Document and the basis of the claim of privilege

     v.     the author or identity of the person(s) who sent the Document or ESI

     vi.    each recipient of the Document or ESI

     vii.   the type or nature of the privilege asserted (i.e., attorney-client privilege or work product doctrine)

(f)     For ESI, as an alternative to manually entering the information required under this ESI Protocol, a portion of each Producing Party's privilege log may be generated by exporting objective metadata from the review tool used to identify privileged or work-product protected Documents where the objective metadata provides the information required, provided, however, that: the metadata are reasonably understandable and legible; for E-mail senders or recipients for which the metadata reveals only an E-mail address rather than an individual's name, the Producing Party shall provide a "key" that provides the identities of the individuals associated with such E-mail addresses as are reasonably available; and that for E-mail, E-mail and any attachments are sequentially logged.

Such metadata shall include the following:

     i.     A unique privilege log identifier or, in the case of redacted documents, the Bates number assigned to such documents

     ii.    Author

     iii.   Custodian

     iv.   File Name

     v.     Email Subject

     vi.    To

     vii.   From

    viii.    CC

    ix.    BCC

    x.    Dates Sent, Received, or Created

    xi.    Document Type

(g)    On the face of the privilege log or in a list or other appropriate format served with the privilege log, the Producing Party shall provide information sufficient for the Requesting Party to ascertain which of the individuals listed on the log was, as of the time of the Document's creation, sending, or receipt working in their capacity as an attorney.

(h)    After the receipt of a privilege log, if a Requesting Party believes in good faith that one or more items in a Producing Party's privilege log are inappropriately being withheld and should be produced, then it shall raise the issue as to each log entry with the Producing Party in writing with sufficient detail so that the Producing Party may understand the Requesting Party's complaint. Within thirty (30) days thereafter, the Producing Party shall respond in writing. If the response does not satisfy the Requesting Party, then the Parties shall meet and confer within twenty-one (21) days of the Producing Party's response and, if the dispute as to the privileged nature of the materials is not resolved, then the Requesting Party shall promptly seek relief from the Court as to the specific log entries raised with the Producing Party.

(i)    The Parties shall not be required to log:

    i.    Privileged communications between a Party or its representative(s) and its internal or outside counsel that are dated after that Party received a subpoena from the U.S. Department of Justice relating to the subject matter of this Action;

ii.    Work product created by or at the direction of a Party or its representative(s) internal or outside counsel after the date described above;

iii.    Joint defense privileged communications or work-product materials after the earliest date described above. This date does not otherwise limit the relevant time period for discovery.

iv.    Inclusive email threads that are suppressed pursuant to Paragraph 3.7 of this Stipulation and Order.

v.    Non-responsive privileged family members.

The Parties agree that they will meet and confer at a later time to determine whether any other categories of privileged Documents can be excluded from the logging requirement. Notwithstanding the foregoing, and subject to the above provisions, all such privileged material must be preserved in the event of a later dispute.

## 4.    PROCESSING SPECIFICATIONS

4.1    The Producing Party shall collect and process Documents using reasonable methods that preserve available data subject to discovery. The Producing Party shall adhere to the processing specifications in Exhibit A (to the extent reasonably feasible) and shall employ the following when converting ESI from its Native Format into TIFF image files prior to production:

(a)    All tracked changes and comments shall be maintained as last saved so that all changes to a Document are evident.

(b)    All Word Documents shall either include and show field codes for auto-date and auto-time fields or the vendor shall force off Auto Date when processing.

(c)    Author comments shall remain and be made visible.

(d)     Presenter notes shall be made visible.

(e)     Any other hidden text shall be expanded, extracted, and rendered in the TIFF file, including hidden worksheets, hidden columns, hidden rows, speakers notes, tracked changes, or comments.

The Parties reserve their right to request native versions of specific TIFF files if they have a reasonable basis to believe that responsive material or metadata may be contained in the native file but not in the TIFF file.

4.2     Time. When processing ESI, a consistent time zone should be selected, with a preference for UTC if a separate time zone has not otherwise been applied to ESI. When a metadata field includes a date and/or time, it shall be provided in the format outlined in Exhibit A. ESI items shall be processed so as to maintain the date/time in the Document's metadata as it was last saved by the custodian or end user, not the date of collection or processing (*i.e.*, shall force off Auto Date).

## 5.     SCOPE AND SEARCH METHODOLOGIES FOR UNSTRUCTURED DATA

5.1     In general. Prior to conducting a new search for responsive ESI, regardless of the search methodologies to be employed, the Requesting Party and Producing Party shall meet and confer regarding the search methodologies the Producing Party proposes to employ to identify responsive Documents, and make such reasonable disclosures regarding their proposed search methodology that will permit the Requesting Party to evaluate the proposed methodology and enable meaningful meet and confers, such as the type of methodology to be used (e.g., Search Terms, TAR or other advanced analytics, etc.) and the Custodial Data Sources and Non-Custodial Data Sources to which they will be applied, along with information sufficient for the Requesting Party to evaluate the reasonableness of the custodians whose Documents are to be searched, and the Custodial Data Sources and Non-Custodial Data Sources to be searched. The Producing Party

shall also provide a list of third-party data sources, if any, that the Party reasonably believes are likely to contain discoverable Documents.

5.2    Protocol for Identifying Custodians. After the Producing Party serves its Responses and Objections to Requests for Production, the Producing Party shall identify its own proposed individual custodians (including their title) within 21 days. Within 45 days after Producing Party serves its Responses and Objections to Requests for Production, the Producing Party will make reasonable efforts to identify each custodian's title and the departments within its organization in which the proposed individual custodians worked at the time relevant to the Requests for Production as well as specific years of service for each proposed individual custodian, which information may include relevant, readily accessible organizational charts. Thereafter the Parties will meet and confer to agree as to the individual custodians ("Individual Custodian(s)").

The Parties shall search the relevant files for the Individual Custodians pursuant to the procedures set out herein.

5.3    Protocol for Agreeing on Use of Search Filters. Each Party will identify proposed keyword search terms and date ranges to identify potentially responsive ESI. The meet and confer process regarding search filters will begin at the same time as the meet and confer process regarding custodians.

If a Party has identified particular responsive Document(s) outside of those in the files of Individual Custodians that are not also independently identified via searches of the files of Individual Custodians, that Party must still produce the responsive Document(s), subject to any agreements reached regarding scope and that Party's objections to discovery requests. Nothing in this ESI Protocol requires a Party to search for Documents outside of the Individual

Custodians, Non-Custodial Sources and search methodology disclosed hereunder.

      5.4    <u>Additional Search Terms and Custodians.</u>  Once a list of search terms and a list of Individual Custodians is finalized (either through agreement of the Parties, Order of the Court, or otherwise if a Party does not timely choose to seek a Court Order), a Party may propose additional custodians or search terms for consideration only if it provides a reasonable and particularized basis to believe that additional custodians or search terms will lead to the discovery of responsive material. To the extent the Producing Party identifies any such custodians or proposed search terms it deems objectionable, the Producing Party shall propose alternative terms and the Parties shall meet and confer to discuss alternatives.

      5.5    <u>Technology Assisted Review ("TAR") and Similar Advanced Analytics.</u> If a Producing Party elects to use TAR or similar advanced analytics as a means of including or excluding Documents to be reviewed for responsiveness or of culling or otherwise limiting the volume of information to be reviewed for responsiveness, prior to use of such tool the Requesting Party and Producing Party shall disclose to the Requesting Party (1) the Custodial Data Sources and Non-Custodial Data Sources against which TAR will be run; and (2) the TAR or advanced analytics vendor and methodology being deployed, including a description of the TAR tool's procedures and whether the Producing Party proposes to use Search Terms to cull ESI prior to the application of TAR. The Requesting Party and Producing Party shall thereafter meet and confer regarding any further disclosures and the appropriateness of the methodology. Any Party after meeting and conferring in good faith as to TAR may seek resolution by the Court of any unresolved dispute(s).

      5.6    <u>Hard Copy Documents.</u> In addition to ESI addressed by this provision, the Producing Party shall perform a reasonable, proportional and diligent search to locate relevant

non-ESI Documents (*i.e.*, Hard Copy Documents, devices, etc.) for the Individual Custodians and other relevant and reasonably accessible locations in the Party's possession, custody, or control not attributed to any specific custodian that the Party identifies following a reasonable, proportional and diligent investigation.

**6.      ADDITIONAL ISSUES**

If no English version of a Document is available, the Producing Party has no obligation to produce an English translation of that Document, even if one is generated for litigation purposes.

**7.      CONFIDENTIALITY**

Documents shall be subject to the terms of the Amended Protective Order entered in this case, as well as Federal Rule of Civil Procedure 26(b)(5)(B).

**8.      FINAL DISPOSITION OF ESI**

Within sixty (60) days of final adjudication, including the expiration or exhaustion of all rights to appeal or petitions for extraordinary writs, each Party or non-party to whom any materials were produced shall, without further request or direction from the Producing Party, promptly take reasonable steps to destroy all documents, items, or data received including, but not limited to, copies thereof, in the possession or control of any expert or employee. Any undestroyed materials shall remain subject to the Protective Order in this matter. The Requesting Party shall upon request of the Producing Party provide written certification of destruction to the Producing Party.

**9.      AMENDMENT OF ORDER**

Nothing herein shall preclude any Party from seeking to amend this Order in writing, provided, however, that no Party may seek relief from the Court concerning compliance with

the Order until that Party has met and conferred in good faith with all Parties involved in the dispute.

**SO ORDERED.**

Dated: __August 11__, 2022

Sarala V.
Nagala

Digitally signed by Sarala
V. Nagala
Date: 2022.08.11
11:56:19 -04'00'

Hon. Sarala V. Nagala
United States District Judge

So stipulated and agreed to by the Parties, August 10, 2022

By: _/s/ Robin A. van der Meulen_
Gregory S. Asciolla (phv02599)
Robin A. van der Meulen (phv09139)
Matthew J. Perez (phv06870)
Veronica Bosco (phv20356)
**DICELLO LEVITT GUTZLER LLC**
One Grand Central Place
60 East 42nd Street, Suite 2400
New York, NY 10165
Tel.: (646) 933-1000
Fax: (646) 494-9648
gasciolla@dicellolevitt.com
rvandermeulen@dicellolevitt.com
mperez@dicellolevitt.com
vbosco@dicellolevitt.com

By: _/s/ Daniel L. Brockett_
Daniel L. Brockett (phv20450)
Manisha M. Sheth (phv01061)
Steig D. Olson (phv06391)
Thomas Lepri (phv20453)
**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel.:  (212) 849-7000
Fax:  (212) 849-7100
danbrockett@quinnemanuel.com
manishasheth@quinnemanuel.com
steigolson@quinnemanuel.com
thomaslepri@quinnemanuel.com

Justin Reinheimer (phv20572)
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel.: (415) 875-6600
Fax: (415) 875-6700
justinreinheimer@quinnemanuel.com

By: _/s/ Erica O. Nolan_
David A. Slossberg (ct13116)
Erica O. Nolan (ct31097)
**HURWITZ SAGARIN SLOSSBERG &
KNUFF, LLC**
147 North Broad Street
Milford, CT 06460
Tel.: (203) 877-8000
dslossberg@hssklaw.com
enolan@hssklaw.com

By: _/s/ Joshua R. Goodbaum_
Joseph D. Garrison (ct04132)
Stephen J. Fitzgerald (ct22939)
Joshua R. Goodbaum (ct28834)
Amanda M. DeMatteis (ct29413)
**GARRISON, LEVIN-EPSTEIN,
FITZGERALD & PIRROTTI, P.C.**
405 Orange Street
New Haven, CT 06511
Tel.: (203) 777-4425
Fax: (203) 776-3965
jgarrison@garrisonlaw.com
sfitzgerald@garrisonlaw.com
jgoodbaum@garrisonlaw.com
adematteis@garrisonlaw.com

**INTERIM CO-LEAD COUNSEL FOR THE PROPOSED CLASS**

By: */s/ Chahira Solh*
Chahira Solh (phv20470)
**CROWELL & MORING LLP**
3 Park Plaza, 20th Floor
Irvine, CA 92614
Telephone:  (949) 263-8400
Facsimile:  (949) 263-8414
Email:  CSolh@crowell.com

Kent Gardiner (phv ct15260)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  (202) 624-2500
Facsimile:  (202) 628-5116
Email:  KGardiner@crowell.com

John W Cerreta (ct28919)
**DAY PITNEY LLP**
242 Trumbull Street
Hartford, CT 06103
Telephone:  (860) 275-0665
Facsimile:  (860) 881-2517
Email:  jcerreta@daypitney.com

*Counsel for Raytheon Technologies*
*Corporation, Pratt & Whitney Division*

By: */s/ Stephen J. Kastenberg*
Stephen J. Kastenberg (phv20536)
Jason Allen Leckerman (phv20484)
Marcel S. Pratt (phv20495)
Elizabeth Weissert (phv20494)
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone:  (215) 665-8500
Facsimile:  (215) 864-8999
Email:  kastenberg@ballardspahr.com
           leckermanj@ballardspahr.com
           prattm@ballardspahr.com
           weisserte@ballardspahr.com

Thomas V. Daily (ct03467)
**REID AND RIEGE, P.C.**
One Financial Plaza
755 Main Street, 21st floor
Hartford, CT 06103-3185
Telephone:  (860) 240-1067
Facsimile:  (860) 240-1002
Email: tdaily@reidandriege.com

*Counsel for QuEST Global Services-NA, Inc.*

By: */s/ Catie Ventura*
Catie Ventura (phv20424)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone:  (202) 389-5907
Email: catie.ventura@kirkland.com

James H. Mutchnik (phv20423)
**KIRKLAND & ELLIS LLP**
300 N LaSalle
Chicago, IL 60654
Telephone:  (312) 862-2000
Email: jmutchnik@kirkland.com

Patrick A. Klingman (ct17813)
**KLINGMAN LAW, LLC**
280 Trumbull Street, Floor 21
Hartford, CT 06103-3514
Telephone:  (860) 256-6120
Email: pak@klingmanlaw.com

*Counsel for Belcan Engineering Group, LLC*

By: */s/ Bethany Lukitsch*
Bethany Lukitsch (phv20474)
Bridget S. McCabe (phv20469)
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone:  (310) 820-8800
Facsimile:  (310) 820-8859
Email: blukitsch@bakerlaw.com
        bmccabe@bakerlaw.com

James M. Moriarty (ct21876)
**ZEISLER & ZEISLER, P.C.**
10 Middle Street, 15th Floor
Bridgeport, CT 06604
Telephone:  (203) 368-4234
Facsimile:  (203) 549-0907
Email: jmoriarty@zeislaw.com

Robert S. Friedman (ct31256)
**SHEPPARD MULLIN RICHTER &
HAMPTON LLP**
30 Rockefeller Plaza
New York, NY 10112
Telephone:  (212) 653-8700
Facsimile:  (212) 652-8701
Email: rfriedman@sheppardmullin.com

Leo Caseria (phv20459)
**SHEPPARD MULLIN RICHTER &
HAMPTON LLP**
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006
Telephone:  (202) 747-1900
Facsimile:  (202) 747-1901
Email: lcaseria@sheppardmullin.com

*Counsel for Cyient, Inc.*

By: */s/ Patrick M. Fahey*
Patrick M. Fahey (ct13862)
Elizabeth H. Buchanan (ct31230)
**SHIPMAN & GOODWIN LLP**
One Constitution Plaza
Hartford, CT 06103
Telephone:  (860) 251-5000
Facsimile:  (860) 251-5219
Email: pfahey@goodwin.com
            ebuchanan@goodwin.com


*Counsel for Parametric Solutions, Inc.*

By: */s/ Marguerite S. Willis*
Marguerite S. Willis, Fed ID No. 11293*
Travis C. Wheeler, Fed ID No. 9715*
Michael A. Parente, Fed ID No. 13358*
**NEXSEN PRUET, LLC**
1230 Main Street, Suite 700 (29201)
Post Office Box 2426
Columbia, South Carolina 29202
Telephone:  803-771-8900
Facsimile:  803-253-8277
MWillis@nexsenpruet.com
TWheeler@nexsenpruet.com
MParente@nexsenpruet.com

James T. Shearin, Esq. ct 01326
**PULLMAN & COMLEY, LLC**
850 Main Street P.O. Box 7006
Bridgeport, CT  06601-7006
Telephone: 203-330-2000
Facsimile: 203-576-8888
JTShearin@pullcom.com

*Admitted pro hac vice

*Counsel for Agilis Engineering, Inc.*

## EXHIBIT A

**1.    COVER LETTER**

A cover letter shall be included with each production and shall include information sufficient to identify all accompanying media (e.g., hard drive, thumb drive, DVD, CD, secure FTP), shall identify each production on such media by assigning a Production Volume name or number, shall indicate whether any material in the production has been designated as Confidential or Highly Confidential under the Amended Protective Order, and shall include the Bates range for the Documents produced in each volume.

**2.    PRODUCTION LOAD FILES**

There will be two Load files accompanying all productions of Hard Copy Documents and ESI.

- The first will be a metadata import file with a .DAT file extension, in Concordance format delimited file, including ASCII 020 and 254 delimiters for column break and text qualifier, and new line as ASCII 174, that contains the agreed upon metadata fields in UTF-8 encoding. The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each Document.

- The second will be an image load file containing the Document break instructions for the image base. The acceptable formats for the cross-reference files are .lfp and .opt.

**3.    IMAGES**

- Produce Documents in Single Page Group IV TIFF.

- Image Resolution of 300 DPI.

- Images may be produced in black and white unless color images are necessary to decipher the meaning, context, or content of the Document, or if black and white photocopying or conversion to TIFF format makes any substantive information contained in the Document unintelligible.

- If a Requesting Party reasonably believes that a particular Document originally produced in black and white needs to be produced in color, it shall notify the Producing Party. To the extent the original Document was in color, the Producing Party will timely honor reasonable requests made in good faith for either the production of the original Document for inspection and copying or production of a color JPEG file image of the Document(s).

- File Naming Convention: Match Bates Number of the page.

- Insert placeholder image for files produced in native format (see Paragraph 3.8).

- Insert placeholder image for unprocessable technical-issue family members.

4. **SPECIAL FILE TYPE INSTRUCTIONS**

- Certain file types shall be produced in native format, as specified in Paragraph 3.8.

- If redactions are required, see production requirements specified in Paragraph 3.3.

5. **FULL TEXT EXTRACTION/OCR**

- Where available, produce the native extracted text for all file types (Redacted text will not be produced). In the event that a Document requires redaction, the Parties agree that the native version need not be produced, full text may be replaced with OCR text that excludes the redacted material and metadata fields may be excluded if they contain redactable information (including Subject and FileName).

- Production format: Single text file for each Document, not one text file per page. The relative path to this text file should be populated in the "Full Text" field listed in section 6 below.

- File Naming Convention: Match Beg Bates Number.

6. **ESI (AND PAPER TO THE EXTENT APPLICABLE) PRODUCTION METADATA FIELDS**

- BegBates: Beginning Bates Number.

- EndBates: Ending Bates Number.

- BegAttach: Beginning Bates number of the first Document in attachment range in a Document Family range. Documents that are part of Document families, *i.e.,* containing parents and attachments should receive a value.

- EndAttach: Ending Bates number of the last Document in attachment range in a Document Family range. Documents that are part of Document Families, containing parents or attachments, should receive a value.

- AttachmentCount: Populated for E-mail parent records and indicates the number of attachments that constitute the whole family.

- Custodian: Name of the Custodian of the Document produced, to the extent reasonable and technically available.

- Duplicate Custodian: Identifying any and all unique custodians in whose files an exact duplicate Document was found.

- FileName: Filename of the original source ESI.

- NativeLink: Relative path and filename to the produced Native Format file.

- Subject: Subject line extracted from an E-mail message or calendar entry.

- Title: Title field extracted from the metadata of a non-E-mail Document.

- Author: Author field extracted from the metadata of a non-E-mail Document.

2

- From: From field extracted from an E-mail message.

- To: To or Recipient field extracted from an E-mail message.

- Cc: CC or Carbon Copy field extracted from an E-mail message.

- BCC: BCC or Blind Carbon Copy field extracted from an E-mail message.

- DateSent: Sent date of an E-mail message (mm/dd/yyyy format).

- TimeSent: Time of an E-mail message (hh:mm:ss format).

- DateReceived: Received date of an E-mail message (mm/dd/yyyy format).

- TimeReceived: Received time of an E-mail message (hh:mm:ss format).

- DateCreated: Creation date of a file (mm/dd/yyyy format).

- TimeCreated: Creation time of a file (hh:mm:ss format).

- DateLastModified: Last modification date and time (mm/dd/yyyy format).

- TimeLastModified: Last modification time (hh:mm:ss format).

- File Extension: File extension of Document (.msg, .doc, .xls, etc.).

- Full Text: Relative file path to the full text/OCR File.

- Confidentiality: "Confidential" or "Highly Confidential," if a Document has been so designated under the Protective Order; otherwise, blank.

- Message-ID: The Outlook Message ID assigned by the Outlook mail server, if applicable.

- Hash Value: MD5 or SHA-1 hash of the Document.

- Page Count: The number of pages in the file.

- Production Volume: Production volume name or number.

- Redaction: Field indicating whether a document contains redactions.

7. **De-Duplication:** Parties shall use reasonable efforts to de-duplicate stand-alone Documents or entire Document families globally using MD5 or SHA-1 Hash value matching as outlined in Paragraph 3.6.

8. **De-NISTing**

- Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be produced.