**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| TARAH KYE BOROZNY, *et al.* individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>RAYTHEON TECHNOLOGIES CORPORATION, PRATT & WHITNEY DIVISION, *et al.*,<br><br>    Defendants. | No. 3:21-cv-01657 (SVN)<br><br>*Class Action*<br><br>October 3, 2022 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
<u>**DEFENDANTS' MOTIONS TO DISMISS**</u>

# TABLE OF CONTENTS

Page

ARGUMENT ......................................................................................................................1

I.      Plaintiffs' pleading confirms that the *per se* rule does not apply given the vertical, intrabrand nature of the alleged restriction. ...............................................................1

II.     Plaintiffs cannot point to a single case in which a court has applied *per se* treatment to an alleged vertical, or even mixed-vertical, intrabrand restraint. ..........................4

        1.      Other precedent analyzing employee hiring restrictions further emphasizes that the rule of reason applies here.........................................6

        2.      Precedent beyond alleged hiring restrictions makes it even more clear that rule of reason is applicable here. ................................................9

        3.      The cases relied on by Plaintiffs are categorically distinguishable and underscore the inapplicability of *per se* analysis to this set of facts. ...................................................................................................10

III.    Plaintiffs misstate the law defining ancillary restraints and their Complaint does not set forth any "naked" restraint...............................................................................13

IV.     Application of "quick look" is also inappropriate. ..................................................15

V.      Rule of reason is the correct standard to apply, but Plaintiffs' allegations fail to adequately plead a rule of reason claim. ...................................................................16

VI.     Plaintiffs' factual allegations do not plead a plausible eleven-year no-poach agreement..................................................................................................................19

CONCLUSION ................................................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Animation Workers Antitrust Litig.*,
  123 F. Supp. 3d 1175 (N.D. Cal. 2015) ............................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .........................................................................................20

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
  9 F.4th 1102 (9th Cir. 2021) ......................................................................*passim*

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
  No. 17-cv-205 MMA (MDD). 2018 WL 3032552 (S.D. Cal. June 19, 2018) ........................7

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
  No. 20-55679 (9th Cir. Nov. 19, 2020) ...........................................................6, 8

*Bell Atl. Corp v. Twombly*,
  550 U.S. 544 (2007) .........................................................................................20

*Bogan v. Hodgkins*,
  166 F.3d 509 (2d Cir. 1999) ......................................................................*passim*

*Cal. Dental Ass'n v. FTC*,
  526 U.S. 756 (1999) .........................................................................................15

*Continental T.V., Inc. v. GTE Sylvania Inc.*,
  433 U.S. 36 (1977) ....................................................................................8, 9, 10

*Deslandes v. McDonald's USA, LLC*,
  No. 17 C 4857, 2018 WL 3105955 (N.D. Ill. June 25, 2018) ............................12

*In re Elevator Antitrust Litig.*,
  502 F.3d 47 (2d Cir. 2007) ...............................................................................19

*Gelboim v. Bank of Am. Corp.*,
  823 F.3d 759 (2d Cir. 2016) .............................................................................20

*Kelly-Brown v. Winfrey*,
  717 F.3d 295 (2d Cir. 2013) ...............................................................................4

*Law v. National Collegiate Athletic Association*,
  134 F.3d 1010 (10th Cir. 1998) ...................................................................15, 16

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
   542 F.3d 290 (2d Cir. 2008)...........................................................................................14

*Markson v. CRST International, Inc.*,
   No. 5:17-cv-01261-SB-SP, 2021 WL 1156863 (C.D. Cal. Feb. 10, 2021) ...........................12

*Morgan v. Semple*,
   No. 3:16-cv-225 (VAB), 2020 WL 2198117 (D. Conn. May 6, 2020)...................................4

*In re Outpatient Med. Ctr. Emp. Antitrust Litig.*,
   1:21-cv-00305 (N.D. Ill. Dec. 9, 2021)....................................................................... 6, 11

*Polk Bros., Inc. v. Forest City Enters., Inc.*,
   776 F.2d 185 (7th Cir. 1985)...................................................................................7, 8, 14

*Ret. Sys. v. MF Global, Ltd.*,
   620 F.3d 137 (2d Cir. 2010)..............................................................................................4

*In re Ry. Indus. Emp. No-Poach Antitrust Litig.*,
   395 F. Supp. 3d 464 (W.D. Pa. 2019)................................................................. 10, 11, 19

*Stigar v. Dough Dough, Inc.*,
   No. 2:18-cv-00244 (E.D. Wash. Mar. 8, 2019) ...............................................................6

*Success Sys., Inc. v. Excentus Corp.*,
   439 F. Supp. 3d 31 (D. Conn. 2020) ...............................................................................16

*Todd v. Exxon Corp.*,
   275 F.3d 191 (2d Cir. 2001)...........................................................................................17

*Ulrich v. Moody's Corp.*,
   No. 13-CV-00008, 2014 WL 12776746 (S.D.N.Y. Mar. 31, 2014).......................................4

*United States v. Apple*,
   791 F.3d 290 (2d Cir. 2015).................................................................................... 12, 13

*United States v. DaVita*,
   No. 1:21-cr-00229-RBJ, ECF No. 262 (D. Colo. Apr. 15, 2022)..........................................6

*United States v. eBay, Inc.*,
   968 F. Supp. 2d 1030 (N.D. Cal. 2013) ..........................................................................12

*United States v. Jass*,
   569 F.3d 47 (2d Cir. 2009)...............................................................................................6

*United States v. Manahe*,
   No. 2:22-cr-00013-JAW, 2022 WL 3161781 (D. Me. Aug. 8, 2022).....................................8

*United States v. Patel*,
    No. 3:21-cr-00220-VAB (D. Conn. Dec. 15, 2021)...................................................*passim*

*United States v. Topco Assocs., Inc.*,
    405 U.S. 596 (1972) .............................................................................................................13

**Other Authorities**

Fed. R. Civ. P. 12............................................................................................................. 1, 4, 17

Pratt and Whitney division of Raytheon Technologies Corporation ("P&W"), along with Outsourcing Defendants Belcan Engineering Group, LLC ("Belcan"), Cyient, Inc. ("Cyient"), Parametric Solutions, Inc. ("PSI"), and QuEST Global Services-NA, Inc. ("QuEST"), by their undersigned counsel, respectfully submit this consolidated reply memorandum in further support of their motions to dismiss (ECF Nos. 465-1 and 466-1, hereinafter, "P&W Mot." and "OD Mot." respectively) Plaintiffs' Consolidated Class Action Complaint (hereinafter, "Complaint" or "Compl.").

Application of the *per se* standard to the facts Plaintiffs allege here is unprecedented and without legal support. Plaintiffs ask this Court to ignore binding precedent, disregard the default standard in antitrust cases—rule of reason—and instead apply the exceptional *per se* rule, reserved only for naked restraints, to what Plaintiffs themselves have alleged to be a vertical, intrabrand restriction. This Complaint stands apart from the cases cited by Plaintiffs because, here, Plaintiffs' own allegations about the relationship among the Defendants do not plausibly describe a naked, horizontal restraint. And, while rule of reason would be the correct legal standard to apply to this case, Plaintiffs have also failed properly to allege a claim that would survive Rule 12 scrutiny even under the rule of reason. Plaintiffs' Complaint should therefore be dismissed.

## ARGUMENT

### I.   Plaintiffs' pleading confirms that the *per se* rule does not apply given the vertical, intrabrand nature of the alleged restriction.

Plaintiffs' pleading demonstrates this is a vertical, intrabrand case, and thus cannot be analyzed under the *per se* standard. Plaintiffs concede this through the allegations in the Complaint

and the documents they incorporate by reference,[1] alleging:

- "Once a bid was accepted, [P&W] and the chosen outsourcing firm would enter into an agreement for the project, and the outsourcing firm would allocate Aerospace Workers from among its own employees to work on the project, often alongside [P&W's] own employees[,]" Compl. ¶ 50;

- a direction "not to hire [QuEST] outsource resources <u>currently deployed on [P&W] projects</u>[,]" *id.* ¶ 103 (emphasis added);

- a request "not to interview or hire active employees <u>working on [Company A (P&W)] work</u>[,]" Indictment ¶ 22(d) (emphasis added);

- the individual defendants "agreed to allocate victim-employees in the labor market in the aerospace industry <u>working on projects for Company A [P&W]</u>," *Patel* Aff. ¶ 11 (emphasis added); and

- the Named Plaintiffs themselves all worked "exclusively" or "primarily" on projects for P&W, Compl. ¶¶ 22-30.

And they continue to concede the vertical, intrabrand relationship in their brief:

- "[C]ertain of the Defendants have a vertical business relationship[,]" Opp'n at 2;

- "In the aerospace services market, <u>the ODs act as suppliers for Pratt</u>[,]" *id.* at 4 (citing Compl. ¶¶ 4, 50) (emphasis added);

- The hiring restriction has the effect of enabling P&W's suppliers to "retain resources needed to provide the desired services" under their contracts for P&W projects, *id.* at 5 (quoting Compl. ¶ 105);

- P&W and its suppliers "have a 'vertical' outsourcing relationship in their provision of aerospace products and services," *id.* at 10; and

- "Defendants include a <u>common customer (Pratt)</u>[,]" *id.* at 11 (emphasis added).

Plaintiffs' Complaint and their Opposition also embrace the Department of Justice's ("DOJ") legally deficient allegations made in the related criminal matter. *See* ECF No. 524

---

[1] Criminal Indictment in *United States v. Patel*, No. 3:21-cr-00220-VAB (D. Conn. Dec. 15, 2021) (ECF No. 20, hereinafter, "Indictment"); Aff. Supp. Criminal Compl. & Arrest Warrant in *Patel* (Dec. 9, 2021) (ECF No. 15, hereinafter, "*Patel* Aff.").

(hereinafter "Opposition" or "Opp'n") at 1, 3, 7; Compl. ¶¶ 10, 12, 14, 166.[2] Indeed, in their brief's Introduction, Plaintiffs quote the DOJ's criminal Indictment, alleging that the defendants conspired "to suppress competition by allocating employees in the aerospace industry . . . specifically by agreeing to restrict the hiring and recruiting of engineers and other skilled-labor employees between and among" their respective companies. Opp'n at 7 (quoting Indictment ¶ 19). However, Plaintiffs deliberately and misleadingly omit the key language from the Indictment that describes the vertical, intrabrand nature of the alleged restraint: that the alleged hiring restriction related exclusively to those employees "working on projects for Company A [P&W]." Indictment ¶ 19 (emphasis added). This seeming attempt to hide the fact that the alleged restriction involves an intrabrand, vertical arrangement—between outsourcing suppliers and their customer P&W, on P&W projects—fails. It is not plausible that a restriction on P&W's "suppliers" of outsourced engineering services, limited to "P&W's projects," could be "purely horizontal" and subject to the *per se* rule. *See* Opp'n at 2-3. *But see, e.g.*, Compl. ¶¶ 4, 37, 50, 95; Indictment ¶¶ 2, 10.

These are not facts Defendants seek to introduce or rewrite—these are Plaintiffs' own allegations: the alleged restraint involves a manufacturer (P&W) and its vertical relationship with its outsourcing labor suppliers, and the alleged restraint was limited to contracts for outsourced engineering labor supporting active P&W projects. *See, e.g.*, Compl. ¶¶ 4, 50, 103, 105; Indictment ¶¶ 2, 10, 19. Plaintiffs do not allege an agreement outside of the P&W brand, nor between aircraft engine manufacturers or employers of "Aerospace Workers" in any properly-defined market. *See*

---

[2] On the basis that the criminal Indictment fails to state a *per se* violation, three major member organizations—the American Staffing Association, the Society of Human Resource Management, and the National Association of Criminal Defense Lawyers—each took the extraordinary step of submitting an amicus brief in support of the individual defendants' motion to dismiss in the related criminal case, upon which Plaintiffs' Complaint in this matter is based. *See United States v. Patel*, No. 3:21-cr-00220-VAB, ECF Nos. 187, 195 & 212 (D. Conn.). It is on the same legal basis that the American Staffing Association also filed an amicus brief in this matter. *See* Br. of Amicus Curiae Am. Staffing Assoc. Supp. Defs.' Mots. to Dismiss, ECF No. 498 (Aug. 16, 2022) (hereinafter, "ASA Amicus").

Opp'n at 10. It is within this context, which Plaintiffs themselves have pleaded, that Defendants move to dismiss the Complaint. And within that context, dismissal of Plaintiffs' claim is squarely within the ambit of Rule 12 scrutiny.[3]

## II. Plaintiffs cannot point to a single case in which a court has applied *per se* treatment to an alleged vertical, or even mixed-vertical, intrabrand restraint.

Plaintiffs' Opposition does not cite a single case that considers allegations of hiring restrictions as *per se* unlawful in the context of an underlying vertical relationship,[4] and as to a single brand. Nor can they, because <u>all</u> legal authority runs counter to their claim. *See, e.g.*, ASA Amicus at 10 ("[N]o court has concluded that coordination between staffing firms at a shared client is anticompetitive, let alone categorically so.").

The Second Circuit has already determined that the *per se* standard is inappropriate when analyzing intrabrand employee hiring restrictions. *Bogan v. Hodgkins*, 166 F.3d 509, 516 (2d Cir. 1999). The court in *Bogan* analyzed the alleged *per se* claim in two ways, and under either scenario, found that the plaintiffs "fail[ed] to establish a threshold case for *per se* treatment." *Id.* at 516. Importantly, while the court in *Bogan* found *per se* application to the restraint was inappropriate pursuant to an "intrafirm" analysis, *id.* at 515, Plaintiffs are incorrect that *Bogan* stopped there, *see* Opp'n at 25-26. The Second Circuit also analyzed the restraint as an interfirm agreement among

---

[3]  *Ulrich v. Moody's Corp.*, No. 13-CV-00008, 2014 WL 12776746, at *26-28 (S.D.N.Y. Mar. 31, 2014), *report and recommendation adopted as modified*, No. 13-CV-00008, 2014 WL 4977562 (S.D.N.Y. Sept. 30, 2014) ("Deciding which of these tests to apply is a question of law. . . . [T]he complaint fails as a matter of law to state a cause of action under the antitrust laws."). Even assuming Plaintiffs' incorrect assertion that the ancillary restraints doctrine is an affirmative defense, *see* Opp'n at 22, 27, the Court may adjudicate affirmative defenses at the motion to dismiss phase where the facts necessary to establish the defense are evident on the face of the complaint, as they are here. *See Morgan v. Semple*, No. 3:16-cv-225 (VAB), 2020 WL 2198117, at *24 (D. Conn. May 6, 2020) (citing *McKenna v. Wright*, 386 F.3d 432 (2d Cir. 2004)); *see also Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013); *Iowa Pub. Emps.' Ret. Sys. v. MF Global, Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010).

[4] Plaintiffs avoid addressing the cases holding that agreements based on mixed-vertical and horizontal relationships must be evaluated under the rule of reason. *See* P&W Mot. at 10-11 (citing *Beyer Farms, Inc. v. Elmhurst Dairy, Inc.*, 35 F. App'x 29, 29 (2d Cir. 2002); *Gatt Commc'ns, Inc. v. PMC Assocs., LLC*, No. 10 Civ.8 (DAB), 2011 WL 1044898, at *6 (S.D.N.Y. Mar. 10, 2011)); OD Mot. at 28 (same).

separate companies. *Id.* at 515 ("Even if the Agreement were interfirm, we still would not afford it *per se* illegal treatment. We have previously identified interagency no-switching agreements as 'distinguishable from those [restraints] that have been held illegal *per se*.'" (quoting *Union Circulation Co. v. Federal Trade Comm'n*, 241 F.2d 652, 657 (2d Cir. 1957)). To that point, the court viewed the agents as "independent contractors," not part of the same firm (just as here, the alleged restraint is among "several independent entities," Opp'n at 26), but working for the same firm. *Bogan*, 166 F.3d at 511, 515. Thus, the *Bogan* court rejected the *per se* claim because even if the agents were separate entities for antitrust purposes, the restrictions among them all were "intrabrand"—that is, they all related to the products of a single company, Northwestern Mutual Life ("NML"). *Id.* Because "other insurance companies compete for the services of experienced NML agents," the court noted that the alleged agreement "does not allocate the market for agents to any meaningful extent." *Id.* at 515-16. Accordingly, "[t]he agreement [was] far from a typical *per se* illegal restraint, consistent with the fact that antitrust law shows more *concern to protect inter rather than intrabrand competition*." *Id.* (emphasis added); *see also id.* at 513 and n.6 (rejecting plaintiffs' argument that the alleged agreement was a "naked restriction").

Given such binding precedent, Plaintiffs have no cogent response to *Bogan*. *See* Opp'n at 25-26. Plaintiffs instead rely on DOJ's Indictment (and arguments in DOJ's opposition to the motion to dismiss filed in that case), which are contested and undermined by legal precedent, to argue that this case should be treated as *per se* illegal. *See* Opp'n at 1, 2, 3, 15, 18-20, 22. Plaintiffs also selectively ignore that even the DOJ has made clear that: "The *per se* rule does not apply to

all no-hire and no-solicitation agreements."[5] Plaintiffs likewise ignore the DOJ's failing record to

persuade courts[6] and juries[7] to accept its attempts to expand the boundaries of *per se* application

to all labor restrictions.

The Second Circuit, and district courts in the Second Circuit, are "bound by prior decisions

of [the Second Circuit] unless and until the precedents established therein are reversed *en banc* or

by the Supreme Court." *United States v. Jass*, 569 F.3d 47, 58 (2d Cir. 2009). Plaintiffs offer no

explanation for why this Court should accept the DOJ's allegations over Second Circuit precedent

explicitly addressing intrabrand employee hiring restrictions, which requires the application of

the rule of reason and rejects a *per se* standard. *See Bogan*, 166 F.3d at 514-16.

*Bogan* demonstrates that *per se* treatment is not appropriate here, and Plaintiffs are unable

to provide support for their theory because none exists. While Plaintiffs' Complaint makes clear

that other aircraft engine manufacturers—other brands—competed with P&W, the restraint is not

related to P&W's competition with other aircraft engine manufacturers, and is instead, as alleged,

limited to P&W's own brand, its own projects, and its own contracts with the Outsourcing

Defendants. Plaintiffs' alleged intrabrand restraints in this vertical context are not subject to *per*

*se* treatment as a matter of law.

**1.    Other precedent analyzing employee hiring restrictions further emphasizes that the rule of reason applies here.**

---

[5] Statement of Interest of the U.S. at 11-13, *Stigar v. Dough, Inc.*, No. 2:18-cv-00244 (E.D. Wash. Mar. 8, 2019), ECF No. 34 (noting that the rule of reason applies when the restraint at issue had a vertical component and is not solely the product of a horizontal agreement); *see also* Statement of Interest of the U.S. at 11, *In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, 1:21-cv-00305 (N.D. Ill. Dec. 9, 2021), ECF No. 91 (distinguishing *Bogan*: "this case, in contrast, addresses the type of 'classic interfirm horizontal restraint of trade' that the *Bogan* court thought was absent, and the defendants do not raise the factual challenge that doomed the claim in that case" (internal citation omitted)).

[6] *Compare Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 9 F.4th 1102 (9th Cir. 2021), *with* Br. of Amicus U.S. in Supp. of Neither Party at 12, *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, No. 20-55679 (9th Cir. Nov. 19, 2020), ECF No. 14.

[7] *See, e.g.*, Jury Verdict, *United States v. DaVita*, No. 1:21-cr-00229-RBJ, ECF No. 262 (D. Colo. Apr. 15, 2022).

Other analogous cases reveal that the default rule of reason standard has always been applied to restraints similar to the one alleged here, where the economic reality is that business partners entered into plausibly procompetitive relationships. *See Polk Bros., Inc. v. Forest City Enters., Inc.*, 776 F.2d 185, 189 (7th Cir. 1985) ("A court must ask whether an agreement promoted enterprise and productivity at the time it was adopted. If it *arguably* did, then the court *must* apply the Rule of Reason to make a more discriminating assessment." (emphasis added)). Nevertheless, Plaintiffs incorrectly insist that "these types of agreements among competitors are *per se* unlawful under the Sherman Act for over 100 years." Opp'n at 2; *see also id.* at 13. Plaintiffs are incorrect.

Just as they do with *Bogan*, Plaintiffs downplay the relevance of other important cases to the facts alleged here. For example, in *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, the Ninth Circuit rejected the plaintiff's claim that hiring restrictions among outsourcing services suppliers should be *per se* illegal. 9 F.4th 1102 (9th Cir. 2021).[8] Yet *Aya* was a much closer call than the restraint alleged here. Aya and AMN were horizontal competitors in their main business (providing nursing services to hospitals), and the alleged agreement involved AMN subcontracting to Aya for extra nursing services to help AMN meet its contracts with hospitals. Whereas the *Aya* agreement did not involve any of their downstream hospital customers, the alleged restraint here directly involves the common downstream customer of the Outsourcing Defendants—P&W—

---

[8] Plaintiffs' argument that *Aya* is a summary judgment ruling, *see* Opp'n at 25, is unavailing. At the motion to dismiss phase, the district court in *Aya* could not "determine as a matter of law that *per se* treatment [would] be inappropriate with respect to the no-poaching restraints in the context of the joint ventures." *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, No. 17-cv-205 MMA (MDD). 2018 WL 3032552, at *16 (S.D. Cal. June 19, 2018). Unlike here, the plaintiffs in *Aya* had alleged "that the no-poaching restraints last[ed] in perpetuity, thereby surviving termination of the joint venture agreements," the "restraints bar[red] rivals forever from soliciting any of the Defendants' employees . . . despite the fact that the purpose of these subcontractor agreements [was] for rival providers to send their medical travelers to Defendants' customers," and the no-poaching restraints applied to all of defendants' employees, "no matter how or where employed, and *even when not currently on assignment for AMN*." *Id.* at *15 (internal quotations omitted). Based on these factual allegations, the district court was "unable to determine with certainty whether the restraints [were] ancillary to procompetitive business purposes, or 'so broad that part of the restraint suppresses competition without creating efficiency.'" *Id.* at *15 (quoting *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 224 (D.C. Cir. 1986)). The Court here is not so constrained given the Complaint's allegations, which describe a vertical relationship, instead of the horizontal relationship at issue in *Aya*.

making the allegations in the Complaint more solidly vertical than *Aya*. Even so, the *Aya* court held that the restraint between horizontal competitors was subject to rule of reason analysis, not *per se*, because the restraint was not "naked." *Id.* at 1109-11. The court held that the hiring restrictions were not "naked restraints" because "a restraint is naked if it has 'no purpose except stifling of competition.'" *Id.* at 1109. The court found that in contrast, the restriction at issue "ensure[d] that AMN [would] not lose its personnel during the collaboration," and "promote[d] competitiveness" because "more hospitals receive more traveling nurses." *Id.* at 1110; *see also United States v. Manahe*, No. 2:22-cr-00013-JAW, 2022 WL 3161781, at *8 (D. Me. Aug. 8, 2022) (explaining that "[t]his Case is distinguishable from *Aya*," in which "a horizontal restraint between would-be competitors . . . did warrant rule-of-reason analysis"). When an agreement is "arguably" procompetitive "then the court must apply the Rule of Reason" and the inquiry into which legal standard to apply is over. *Polk Bros.*, 776 F.2d at 189.

Because *Aya* was not intrabrand (it was not limited to AMN's contracts with Aya), the DOJ argued there that the restraint should be treated as *per se*. Although the Ninth Circuit rejected that argument, it is important to note that, in <u>its own Amicus Brief</u>, the DOJ acknowledged that an intrabrand restraint would be subject to a rule of reason analysis. *See* Br. of Amicus United States of America in Support of Neither Party at 19-20, *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, No. 20-55679 (9th Cir. Nov. 19, 2020), ECF No. 14 (hereinafter, "DOJ *Aya* Amicus") (describing the "vertical market-allocation agreement at issue in *GTE Sylvania*" and admitting that an "analogous intrabrand restraint in the present case would be one that precluded Aya from soliciting AMN employees only to fulfill its subcontracted assignments from AMN"). <u>That is this Complaint</u>. Plaintiffs concede that the alleged restraints are limited to P&W's projects and P&W's

associated contracts for services. *See* Compl. ¶ 103; Indictment ¶ 22(d); *Patel* Aff. ¶ 11; Opp'n at 4, 11.

### 2.   Precedent beyond alleged hiring restrictions makes it even more clear that rule of reason is applicable here.

Plaintiffs assert that this case should be "treated no differently than agreements among sellers in a product market not to solicit each other's customers." Opp'n at 13; *see id.* at 16 (analogizing this case to territorial or customer allocation cases). Territorial, customer or market allocation agreements are indeed subject to *per se* treatment if they are <u>naked</u>, purely <u>horizontal</u> restrictions. But where, as here, the restrictions arise in a vertical, or even mixed-vertical, intrabrand context, the Supreme Court has made clear that they are to be judged under the rule of reason.

The seminal case in this regard is *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36 (1977). There, a manufacturer restricted its retailers—who were purely horizontal competitors with each other in the sale of Sylvania's televisions—from directly competing against each other. *Id*. at 38. The territorial market allocation allowed Sylvania "to regulate the amount of competition among their retailers" and "limited the freedom of the retailer to dispose of the purchased products as he desired." *Id.* Sylvania's distributors agreed not to compete with regard to their common manufacturer's product. The Supreme Court held that the rule of reason was the appropriate standard to analyze such allocation agreements. *Id.* at 59 ("When anticompetitive effects are shown to result from particular vertical restrictions they can be adequately policed under the rule of reason, the standard traditionally applied for the majority of anticompetitive practices challenged under Section 1 of the [Sherman] Act.").

The Supreme Court explained that interbrand competition would provide a "significant check" on any attempt to exploit intrabrand market power. *Id.* at 52 n.19. In *Aya*, the DOJ

recognized that territorial-allocation agreements in the context of a vertical relationship, such as those in *GTE Sylvania*, "may have both procompetitive and anticompetitive effects," and therefore it is appropriate for courts to "evaluate their legality using the rule of reason's balancing approach." DOJ *Aya* Amicus at 14-15 ("A restriction of this type is said to restrain intrabrand competition . . . to the benefit of interbrand competition by allowing the manufacturer to achieve certain efficiencies in the distribution of his products and, in a number of ways, to compete more effectively against other manufacturers." (internal citations and quotations omitted)). It is no different here. Like in *GTE Sylvania*, the alleged restraint here involves a common manufacturer (P&W) and its outsourcing suppliers, limited to their work on active P&W projects, which is plausibly procompetitive. *See Patel* Aff. ¶ 51; *see also* ASA Amicus at 13 ("Vertically-situated entities . . . can, for instance, allocate markets or set prices at other levels of the supply chain." (citing *Leegin Creative Leather Prods., Inc. v. PSKs*, 551 U.S. 877, 890 (2007))). Plaintiffs' pleading makes rule of reason the only plausible standard to apply here.

### 3.    The cases relied on by Plaintiffs are categorically distinguishable and underscore the inapplicability of *per se* analysis to this set of facts.

The cases relied on by Plaintiffs—largely horizontal price-fixing cases with no vertical, intrabrand component—are distinguishable and inapplicable to the alleged facts. Rather than suggest why the Court should apply *per se* to the instant case, the underlying facts discussed in those cases underscore why the restraint alleged in Plaintiffs' Complaint is not a naked, horizontal restraint and therefore is properly subject to the rule of reason.

The hiring restraint alleged here is not a "classic" horizontal agreement. *See* Opp'n at 9, 15, 26. In *In re Railway Industries Employee No-Poach Antitrust Litigation*, the court's reference to a "classic" example of a *per se* violation was to "an agreement between competitors *at the same level of the market structure* to allocate territories in order to minimize competition." 395 F. Supp.

10

3d 464, 481 (W.D. Pa. 2019) (citing *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 609 (1972) (emphasis added)). Plaintiffs' omission in their Opposition of "at the same level of the market structure" is key because the *Railway* court specifically explained that defendants were all "railroad industry suppliers, i.e., they were at the same level of the market, and they agreed to not hire each other's employees, . . ." *Id.* The *Railway* court did not limit the inquiry to whether the defendants were horizontally-situated in the labor market, as Plaintiffs urge here. Instead, the court's analysis flowed from the defendants' purely horizontal relationship as railroad industry suppliers. Notably, the court held that the plaintiffs "plausibly alleged" that alleged restraints were "naked agreements" because plaintiffs did "not allege *any basis* upon which the court *could reasonably* infer that the agreements had *any* procompetitive results or were somehow ancillary to a proper business dealing or purpose." *Id.* (emphases added). That is not the case given the Plaintiffs' allegations here. *See Patel* Aff. ¶ 51 (incorporated by reference in Plaintiffs' Complaint to allege that the hiring restrictions helped "avoid disruption of engineering projects").

Similarly, the recent ruling in *In re Outpatient Medical Center Employee Antitrust Litigation*, is distinguishable because it did not involve defendants with a vertical, intrabrand relationship, as this case does. Case No. 21-cv-00305, 2022 WL 4465929, at *10 (N.D. Ill. Sept. 26, 2022) (quoting *Topco* to describe "competitors at the same level of the market structure").[9] The defendants there all "operate[d] ambulatory surgery centers, outpatient medical centers, and other healthcare facilities." *Id.* at *1. The court accordingly held that the allegations in the complaint pled "naked horizontal market allocation agreements." *Id.* at *10. Because the defendants competed at the same level of the market structure, unlike here, there were no

---

[9] *See* Plfs.' Notice of Add'l Authority, ECF No. 539 at 1 (Sept. 29, 2022) (describing *Outpatient Med. Ctr.* as involving "an alleged conspiracy among several outpatient medical centers," not outpatient medical centers servicing a common customer or in furtherance of a single brand).

allegations that established a vertical, intrabrand relationship between them. And unlike this case, the plaintiffs' allegations "contain[ed] no suggestion that the non-solicitation agreements were ancillary to *some* procompetitive business purpose." *Id.* at *11 (emphasis added). "Rather, as pleaded, the non-solicitation agreements were naked agreements that served only to reduce competition for Defendants' senior employees." *Id.*

Plaintiffs' reliance on *Markson v. CRST International, Inc.* also is misplaced. No. 5:17-cv-01261-SB-SP, 2021 WL 1156863 (C.D. Cal. Feb. 10, 2021). *First*, in *Markson*, all of the defendants were horizontally-situated trucking companies, with no potential vertical relationship. *Id.* at *1; *see also United States v. eBay, Inc.*, 968 F. Supp. 1030, 1038-40 (N.D. Cal. 2013) (no allegations of a vertical, intrabrand relationship between eBay and Intuit). *Markson* was thus a "purely horizontal" case, which is not what Plaintiffs plead here. *See* Opp'n at 2-3 (arguing, without legal or factual support, that the restraint is "purely horizontal"). *Second*, the statement that Plaintiffs quote from *Markson*, *see* Opp'n at 15, that "Courts have concluded that no-poach agreements among competitors are per se violations of the Sherman Act[,]" *Markson*, 2021 WL 1156863, at *4, is an incorrect statement, as demonstrated by a review of the cases *Markson* cited in support of this proposition[10]—citations that the Opposition omits. *See* Opp'n at 15.

Finally, this case is not *Apple*. *Apple* involved a price-fixing agreement that sought to limit interbrand (not intrabrand) competition among e-book publishers across the entire market for e-books—whether sold within the Apple ecosystem or the Amazon ecosystem—to the detriment of the ultimate consumer. *United States v. Apple*, 791 F.3d 290, 316-17, 325 (2d Cir. 2015). The e-

---

[10] *Markson* inappropriately relies on *In re Animation Workers*, which analyzed a wage-fixing claim, not a hiring restriction, in the context of a strictly horizontal conspiracy. *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1211-14 (N.D. Cal. 2015). Similarly, the *Deslandes* opinion relied on by *Markson*, rejected *per se* at the initial motion to dismiss phase, even though there, too, the court evaluated an alleged horizontal agreement. *Deslandes v. McDonald's USA, LLC*, No. 17 C 4857, 2018 WL 3105955, at *6 (N.D. Ill. June 25, 2018).

book publishers agreed with Apple to fix retail e-book prices because the e-book publishers regarded Amazon's prices as too low. *Id.* at 302-06. "Apple wanted . . . to eliminate retail price competition with Amazon." *Id.* at 305. Thus, the publishers and Apple engaged in a scheme to force Amazon to raise its prices, with the intended result of strengthening Apple's position in the distribution of e-books at the expense of Amazon and consumers.  *Id.* at 316-17, 325. In other words, the price-fixing conduct in *Apple* eliminated interbrand competition between Apple and Amazon. *Apple* does not resolve the fundamental issue Plaintiffs face in bringing a *per se* claim in this case: the intrabrand nature of the alleged hiring restriction. Here, Plaintiffs allege that any intent by Defendants to "contain labor cost increases" was limited to their "joint 'ecosystem.'" Compl. ¶ 14 (quoting Indictment ¶ 27(d)); *id.* ¶ 105 (same).

Unlike the cases above, Plaintiffs' Complaint is replete with allegations at odds with their assertion that the alleged restraint was between "competitors at the same level of the market structure" as required by *Topco*. 405 U.S. at 608.  For example, Plaintiffs allege that they suffered harm because they have "specialized training on projects specific to Pratt & Whitney" that "limit[s] their mobility to aerospace engineering firm [sic] outside of Defendants." Compl. ¶ 170.  Similarly, P&W "instituted an approval process whereby outsourcers were required to submit for approval by [P&W] a list of employees who the outsourcer planned to staff on a new [P&W] project." *Id.* ¶ 84. Plaintiffs should not be permitted to rely on vertical, intrabrand allegations to plead necessary elements of their claim, while at the same time asking the Court to ignore the vertical, intrabrand nature of the Defendants' relationship when it cuts against their *per se* theory.

### III.   Plaintiffs misstate the law defining ancillary restraints and their Complaint does not set forth any "naked" restraint.

Even where a restraint is purely horizontal, a condition lacking here, the rule of reason remains the default rule under the ancillary restraints doctrine.  Regardless of whether the restraint

is vertical or horizontal, if the agreement as alleged "arguably" was a procompetitive arrangement (i.e., not a naked restraint), meaning it "contribute[d] to the success of a cooperative venture that promises greater productivity and output," like P&W's development of engines in the aerospace industry, "then the court *must apply* the Rule of Reason" and the inquiry into whether the *per se* standard applies is over. *Polk Bros.*, 776 F.2d at 189 (emphasis added). Plaintiffs argue that Defendants have not shown the alleged restriction was an "essential part" of business dealings, or "necessary" for a procompetitive purpose. Opp'n at 12, 22, 25. That is not the law. The ancillary restraints doctrine applies and *per se* treatment is inappropriate provided the alleged restraint "could have a procompetitive impact related to the efficiency-enhancing purposes of" the business relationship. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 340 (2d Cir. 2008) (Sotomayor, J., concurring). A "challenged restraint need not be essential," and instead "is ancillary if it may promote the success of the more extensive cooperation." *Id.* at 340 nn.10-11 (quoting *Polk Bros.*, 776 F.2d at 189).

For purposes of this motion to dismiss, it is irrelevant who has the burden of proof because Plaintiffs actually have alleged the procompetitive impact the alleged restraint *has*, not just what it "could have." *See Patel* Aff. ¶ 51 (providing a "reason[]  for wanting to limit hiring and recruiting": "to avoid disruption of engineering projects"). Discovery and development of a factual record is not necessary to show that *per se* treatment is inappropriate in this case. The Complaint's factual allegations—of an intrabrand restraint within a vertical collaboration between P&W and the Outsourcing Defendants to supply labor to work on P&W projects—more than adequately establish, well beyond an "arguable" procompetitive arrangement, that the alleged agreement could not be plausibly described as a naked horizontal restraint. Plaintiffs do not plausibly plead (or argue) any facts that would support their conclusory assertion that the alleged restraint is

"naked." *See* Opp'n at 22 ("[T]he Complaint alleges that the restraint was a naked effort to suppress wages . . ." (citing Compl. ¶¶ 8, 60, 126, 155, 158)). None of these cited paragraphs plausibly supports an inference that the alleged hiring restraint was a "naked" restraint of competition. Rather, these allegations further demonstrate that the alleged hiring restraint at issue is integrally related to the Outsourcing Defendants' vertical, intrabrand relationship with P&W.

Plaintiffs' assertion that the application of the ancillary restraints doctrine raises factual inquiries preventing the Court from granting the motion to dismiss, Opp'n at 22, is a red herring. All parties agree that the legal standard applicable to the alleged restraint is a question of law the Court can decide on a motion to dismiss. *See* Opp'n at 20. Plaintiffs cannot ask that the Court selectively ignore factual allegations in the Complaint that demonstrate Plaintiffs' failure to state a *per se* claim as a matter of law.

## IV.   Application of "quick look" is also inappropriate.

Application of "quick look" analysis also is inappropriate for the reasons Defendants explained in their Motions. *See* P&W Mot. at 26-27; OD Mot. at 28-30; *see also Cal. Dental Ass'n v. FTC*, 526 U.S. 756, 779-80 (1999) (explaining that for quick look to apply, the "likelihood of anticompetitive effects" must be "comparably obvious" to "an observer with even a rudimentary understanding of economics" in order to conclude that the hiring restriction would have no anticompetitive effect on customers and markets). Plaintiffs must confront <u>their own</u> alleged procompetitive justifications for the vertical, or, at worst, mixed-vertical, intrabrand restraint they assert in this case. Plaintiffs' reliance on the Tenth Circuit's decision in *Law v. National Collegiate Athletic Association*, 134 F.3d 1010 (10th Cir. 1998), to argue quick look applies in this case, *see* Opp'n at 28-29, again misses the mark.   In that case, the "practice" with "obvious anticompetitive effects" was price fixing. *Id.* at 1020. The Tenth Circuit explained that "[u]nder a quick look rule of reason analysis, anticompetitive effect is established, . . . where the plaintiff shows that a

horizontal agreement to fix prices exists, that the agreement is effective, and that the price set by such an agreement is more favorable to the defendant than otherwise would have resulted from the operation of market forces." *Id.* Plaintiffs allege a vertical, intrabrand hiring restraint that involves Aerospace Workers working on the projects of a single manufacturer and a single brand; this is in stark contrast to horizontal agreements to fix prices among interbrand competitors. Accordingly, the allegations are far from "obvious[ly] anticompetitive," *Law*, 134 F.3d at 1020, and quick look analysis in this case would be improper.

## V.   Rule of reason is the correct standard to apply, but Plaintiffs' allegations fail to adequately plead a rule of reason claim.

Plaintiffs now assert, <u>for the first time</u>, and in direct contrast to the words in their Complaint, that they allege a rule of reason claim. *See* P&W Mot. at 27-30; OD Mot. at 7.[11] Regardless, the Complaint fails to allege any plausible facts to establish the elements of a rule of reason claim, and therefore should be dismissed. While it is true that "courts hesitate to grant motions to dismiss for failure to plead a relevant product market," Opp'n at 34 (quoting *Todd v. Exxon Corp.,* 275 F.3d 191, 199-200 (2d Cir. 2001)), courts often grant them in situations like this one, where Plaintiffs do not define any plausible relevant market:

> While defining a relevant market is a fact intensive inquiry, if a "plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted."

*Success Sys., Inc. v. Excentus Corp.*, 439 F. Supp. 3d 31, 63-64 (D. Conn. 2020) (Bolden, J.) (quoting *Chapman v. New York State Div. for Youth*, 546 F.3d 230, 238 (2d Cir. 2008)).

Here, Plaintiffs' alleged markets are deficient and contradictory. Plaintiffs' claim that

---

[11] The Complaint explicitly references "*per se*" and briefly mentions "quick look," *see* Compl. ¶¶ 156, 160, without mentioning rule of reason.

Aerospace Workers do not view jobs outside of jet propulsion systems as reasonable substitutes, without providing any factual support, is legally insufficient. Compl. ¶¶ 2, 106. Plaintiffs' allegations describing purported markets, *see* Compl. ¶¶ 163-72, fail to encompass interchangeable employment opportunities for Aerospace Workers, or to describe facts to determine the cross-elasticity of demand, at least one of which is necessary to adequately plead a relevant market. *Todd*, 275 F.3d at 200 ("To survive a Rule 12(b)(6) motion to dismiss, an alleged product market must bear a rational relation to the methodology courts prescribe to define a market for antitrust purposes—analysis of the interchangeability of use or the cross-elasticity of demand, and it must be 'plausible.'" (internal quotations omitted)). A relevant market spanning the entire United States is not plausible where Plaintiffs' own allegations dispute the interchangeable nature of jobs across that market. *See* Compl. ¶¶ 63, 168 (describing employees' unwillingness to relocate and view that jobs outside of Connecticut and South Florida are not reasonable substitutes).

Similarly, when Plaintiffs alternatively advocate for more narrow geographic markets made up of Connecticut and Northeast South Florida, they fail to allege facts that could plausibly explain why jobs outside of those areas are not interchangeable or facts describing any cross-elasticities. *Todd*, 275 F.3d at 200. Instead, the gerrymandering is Plaintiffs' improper attempt to allege a P&W-only labor market, an approach courts reject. *See id.* at 200 n.3 (collecting cases where single-brand market definition was deemed inadequate); Compl. ¶ 63 (explaining that "Defendants' employees were . . . geographically concentrated" in these locations).

Critically, in either geographic market asserted, Plaintiffs fail adequately to allege market power in the labor market for Aerospace Workers from which anticompetitive effects may be inferred. *See* P&W Mot. at 28-30. Plaintiffs concede, as they must, that companies other than Defendants also compete in the labor market for qualified Aerospace Workers (namely, P&W's

competitors, and other outsource engineering companies, *see* Indictment ¶ 4; 2019 Annual Report at 24; PwC Report at 5, 25-27).

"Plaintiffs allege that, in the Connecticut market, Defendants and their affiliates comprised over 40% of available job postings for aerospace workers in Connecticut." Opp'n at 31 (citing Compl. ¶ 163). The percentage of available job postings does not equate to market power, but rather, to the percentage of open positions that Defendants sought to fill. Under Plaintiffs' theory, PSI and Agilis would have 0% market power in the labor market for Aerospace Workers. Compl. ¶ 167 n.30. An extrapolation from available job postings to market power is not a reasonable inference.

Plaintiffs do not even attempt to make a similar allegation of market power for the nationwide market they allege. Their argument that "Defendants' market power is demonstrated directly by the very existence of their multi-year conspiracy to fix, maintain, and suppress compensation" is circular, and misstates the factual allegations where Plaintiffs do not allege wage fixing. *See* Compl. ¶ 166.[12]

Nor have Plaintiffs alleged "actual detrimental effects," *see* Opp'n at 34, or facts to reasonably infer a "substantial" impact,[13] on either relevant market Plaintiffs claim to have defined

---

[12] Plaintiffs rely on P&W's alleged market power in the global market for commercial aircraft engines and domestic market for military aircraft engines. *See* Compl. ¶ 164 (alleging 35% and 50% respectively); Opp'n at 32. *But see* Compl. ¶¶ 44, 49 (simultaneously alleging that P&W's revenue makes up no more than three percent of the U.S. aerospace and defense industry where P&W generated $21 billion in net sales and the U.S. aerospace and defense industry reported nearly $700 billion in revenue). In arguing that *per se* analysis is appropriate because this case involves a "purely horizontal" restraint, Plaintiffs claim that Defendants incorrectly reference the interbrand engine market. *See* Opp'n at 11 n.5; *id.* at 12. But when confronted with meeting the standard to plead a rule-of-reason case, Plaintiffs continuously slip back into describing the primary market in which P&W competes (i.e., aircraft engines, and the aerospace industry more broadly)—the market in which competition is enhanced through the outsourcing relationship among P&W and the Outsourcing Defendants. *See* Opp'n at 32. That is precisely why the vertical, intrabrand nature of the alleged restraint cannot be ignored. Even Plaintiffs cannot escape the realities of the business relationship they have pleaded.

[13] Plaintiffs concede that, under the rule of reason, they must allege a "substantial anticompetitive effect that harms . . . the relevant market." Opp'n at 29 (quoting *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018)).

in their Complaint. It is not plausible—according to Plaintiffs' own allegations—that Defendants could suppress wages without sufficient market power. *See Bogan*, 166 F.3d at 516 ("In the end, the problem with the Bogans' proposed submarket is that other insurance companies compete for the services of experienced NML agents, as is clearly evidenced by the Bogans having found other work . . ."). Without market power, had Defendants restricted hiring in a way that suppressed employees' wages, "workers would have moved to employers that offered greater compensation," Opp'n at 23.[14] This would include movement to any of the firms outside of the intrabrand (P&W) relationship alleged here that Plaintiffs do not claim are part of this conspiracy. *See Bogan*, 166 F.3d at 516 n.7 ("Given that NML is only one of many carriers in the New York area, any alleged conspiracy . . . to restrict intra-NML transfers would only encourage other insurers' entry into a hypothetically distinct market for experienced NML agents, increasing competition.").

Plaintiffs' arguments of market power are internally inconsistent and legally unsupported; either way, they are insufficient to state a rule of reason claim.

## VI.  <u>Plaintiffs' factual allegations do not plead a plausible eleven-year no-poach agreement.</u>

Plaintiffs' Opposition highlights that the Complaint's allegations fail to plausibly allege an eleven years-long conspiracy among Defendants. Opp'n at 35-40; *see* OD Mot. at 30-35. The purported allegations of "direct" evidence do not support an alleged conspiracy of that time frame and scope. *See In re Elevator Antitrust Litig.,* 502 F.3d 47, 51 (2d Cir. 2007); *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d at 471 (dismissing two defendants and shortening alleged conspiracy scope where the plaintiffs pleaded "[a]t best . . . three bilateral" agreements,

---

[14] *See* Compl. ¶ 52 ("If an employer does not react to competition on the basis of compensation, their Aerospace Workers would be more receptive to recruiting by a rival employer or seek out such position on their own."); *id.* at ¶ 166 ("Had there existed competing opportunities for Defendants' employees to make more money at other aerospace engineering firms, they would have ceased their employment with Defendants and pursued those more lucrative opportunities.").

which was insufficient to "show plausibly that all defendants were engaged in an overarching 'no-poach' conspiracy from 2009") (relied on by Plaintiffs, *see* Opp'n at 14, 19, 25). Specifically, Plaintiffs' claim of alleged concerted action by the Defendants shows nothing more than sporadic discussions between two Defendants and social engagements in furtherance of a business relationship. *See* Compl. ¶¶ 17, 70, 72-73, 79-80, 86, 87, 89-91, 98.[15] Further, Plaintiffs' claim of "direct evidence" of an "explicit" agreement "not recruit or hire each other's employees," *id.* ¶¶ 8, 11, 69, is undermined by their own words. There are multiple allegations that the Defendants did hire each other's employees during the alleged conspiracy period. *See* Compl. ¶¶ 73, 78- 80, 86-87, 89. Plaintiffs must allege more here to sustain a plausible no-poach case. *See* OD Mot. at 30-33 (setting forth factors for pleading direct or circumstantial evidence); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007).  Despite their purported substantial work, *see* Appl. to Appoint Interim Co-Lead Class Counsel, ECF No. 151 at 1, 3, 7, Plaintiffs' claims fall short and should be dismissed for these additional reasons.

## CONCLUSION

Defendants respectfully request that the Court grant their Motions and dismiss Plaintiffs' *per se* claim with prejudice.  If the Court agrees that *per se* is inappropriate, the Court could provide Plaintiffs with an opportunity to properly allege a rule of reason case, since the current Complaint fails to do so.

---

[15] The Complaint's allegations against PSI and Cyient are too sparse to support the existence of a conspiracy involving either. The Plaintiffs rest their entire claim of an eleven-year conspiracy against these two defendants on a few one-sided emails, taken out of context, unconnected to any named Plaintiff. This falls far short of the "high number of interfirm communications" that might "clear the bar of plausibility" to plead a conspiracy. *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 781-82 (2d Cir. 2016). As set forth in the original motion, the facts alleged against PSI and Cyient are insufficient to plead a claim of *per se* illegal conduct.

October 3, 2022

By: */s/ Chahira Solh*

Chahira Solh (phv20470)
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614
Telephone:  (949) 263-8400
Facsimile:  (949) 263-8414
Email:  CSolh@crowell.com

Kent Gardiner (phv ct15260)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  (202) 624-2500
Facsimile:  (202) 628-5116
Email:  KGardiner@crowell.com

Sima Namiri-Kalantari (phv206721)
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone:  (213) 622-4750
Facsimile:  (213) 622-2690
Email:  SNamiri@crowell.com

John W Cerreta (ct28919)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Telephone:  (860) 275-0665
Facsimile:  (860) 881-2517
Email:  jcerreta@daypitney.com

*Counsel for Raytheon Technologies*
*Corporation, Pratt & Whitney Division*

Respectfully submitted,

By: */s/ Niall Lynch*

Niall E. Lynch (phv206783)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile:  (415) 395-8095
Email: niall.lynch@lw.com

Elizabeth Prewitt (phv206784)
Anna M. Rathbun (phv10682)
Daniel J. Blackman (phv206785)
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile:  (202) 637-2201
Email: elizabeth.prewitt@lw.com
        anna.rathbun@lw.com
        daniel.blackman@lw.com

Stephen J. Kastenberg (phv20536)
Jason Allen Leckerman (phv20484)
Marcel S. Pratt (phv20495)
Elizabeth Weissert (phv20494)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone:  (215) 665-8500
Facsimile:  (215) 864-8999
Email:  kastenberg@ballardspahr.com
        leckermanj@ballardspahr.com
        prattm@ballardspahr.com
        weisserte@ballardspahr.com

Thomas V. Daily (ct03467)
REID AND RIEGE, P.C.
One Financial Plaza
755 Main Street, 21st floor
Hartford, CT 06103-3185
Telephone:  (860) 240-1067
Facsimile:   (860) 240-1002
Email: tdaily@reidandriege.com

*Counsel for QuEST Global Services-NA, Inc.*

By: */s/ Catie Ventura*
Catie Ventura (phv20424)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 389-5907
Email: catie.ventura@kirkland.com

James H. Mutchnik (phv20423)
KIRKLAND & ELLIS LLP
300 N LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Email: jmutchnik@kirkland.com

Patrick A. Klingman (ct17813)
KLINGMAN LAW, LLC
280 Trumbull Street, Floor 21
Hartford, CT 06103-3514
Telephone: (860) 256-6120
Email: pak@klingmanlaw.com

*Counsel for Belcan Engineering Group, LLC*

By: */s/ John J. Robinson*
John J. Robinson (ct14802)
Kelcie B. Reid
Mitchell L. Fishberg
GORDON REES SCULLY MANSUKHANI, LLP
95 Glastonbury Boulevard, Suite 206
Glastonbury, CT 06033
Telephone: (860) 494-7505
Facsimile: (860) 560-0185
Email: jjrobinson@grsm.com
         kreid@grsm.com
         mfishberg@grsm.com

*Counsel for Parametric Solutions, Inc.*

By: */s/ Bethany Lukitsch*
Bethany Lukitsch (phv20474)
Bridget S. McCabe (phv20469)
BAKER & HOSTETLER LLP
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone: (310) 820-8800
Facsimile: (310) 820-8859
Email: blukitsch@bakerlaw.com
         bmccabe@bakerlaw.com

James M. Moriarty (ct21876)
ZEISLER & ZEISLER, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
Telephone: (203) 368-4234
Facsimile: (203) 549-0907
Email: jmoriarty@zeislaw.com

Robert S. Friedman (ct31256)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 653-8700
Facsimile: (212) 652-8701
Email: rfriedman@sheppardmullin.com

Leo Caseria (phv20459)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006
Telephone: (202) 747-1900
Facsimile: (202) 747-1901
Email: lcaseria@sheppardmullin.com

*Counsel for Cyient, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 3, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record

<em>/s/ Chahira Solh</em>