UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TARAH KYE BOROZNY, ANTHONY DeGENNARO, RYAN GLOGOWSKI, ELLEN McISAAC, SCOTT PRENTISS, ALEX SCALES, AUSTIN WAID-JONES, NICHOLAS WILSON, and STEVEN ZAPPULLA, individually and on behalf of all others similarly situated,<br>    *Plaintiffs*,<br><br>v.<br><br>RAYTHEON TECHNOLOGIES CORPORATION, PRATT & WHITNEY DIVISION; AGILIS ENGINEERING, INC.; BELCAN ENGINEERING GROUP, LLC; CYIENT, INC.; PARAMETRIC SOLUTIONS, INC.; and QUEST GLOBAL SERVICES-NA, INC.,<br>    *Defendants*. | 3:21-CV-1657-SVN<br><br><br><br><br><br>January 20, 2023 |

**RULING AND ORDER ON QUEST GLOBAL SERVICES-NA INC.'S
MOTION TO COMPEL ARBITRATION**

Sarala V. Nagala, United States District Judge.

In this antitrust putative class action, eight named Plaintiffs have alleged, on behalf of themselves and others similarly situated, that six corporate Defendants engaged in a conspiracy to restrain trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, by secretly agreeing to restrict their competition in the recruitment and hiring of aerospace engineers and other skilled workers in the jet propulsion systems industry.

Defendant QuEST Global Services-NA, Inc. ("QuEST") has moved for an order compelling Plaintiffs Borozny, Glogowski, and Waid-Jones, who are former employees of QuEST, to arbitrate their claims against QuEST pursuant to arbitration agreements each employee entered into with QuEST at the start of their employment. Plaintiffs Borozny, Glogowski, and Waid-Jones do not dispute that they are subject to such agreements or that the agreements cover the claims in

the present case, so the motion to compel arbitration is GRANTED with respect to those named Plaintiffs. The parties dispute, however, whether the Court or the arbitrator should decide whether arbitration may proceed as a class. Additionally, Defendants argue that Plaintiffs should be required to initiate arbitration within thirty days of this Order, and Plaintiffs contend that the arbitration agreements apply only to claims between former QuEST employees and QuEST, but not to other claims, such as the former QuEST employees' claims against defendants other than QuEST and the other plaintiffs' claims against QuEST. The Court addresses these issues below.

## I. PROCEDURAL HISTORY

This action has already had a somewhat lengthy procedural history. The initial complaint, filed on December 14, 2021, was the first of what would ultimately become thirty-one separate lawsuits filed against substantially the same Defendants. Each of these suits was consolidated into the present action. ECF Nos. 44, 52, 62, 192, and 232. Following consolidation, the Court appointed interim class counsel to lead the putative class, and gave such counsel the opportunity to file a consolidated amended complaint (the "CAC"). The CAC was filed on May 5, 2022. The present motion to compel arbitration was filed by QuEST in response to the CAC.

## II. FACTUAL BACKGROUND

The facts relevant to this case are set out in detail in the Court's ruling on the Defendants' motions to dismiss, which is being entered concurrently with this Order. In short, Plaintiffs, aerospace engineers and employees, have brought a putative class action lawsuit, alleging Defendants, aerospace engineering firms and employers, entered "no-poach" agreements such that none of the Defendants would hire current employees from any of the other Defendants. This, Plaintiffs claim, resulted in artificially depressed wages for numerous highly skilled workers in the aerospace industry. The present motion, however, has a far narrower focus.

Three of the named Plaintiffs were employees of QuEST during the relevant time period. The Court will refer to these Plaintiffs as the "QuEST Plaintiffs." It is undisputed that, when they began their employment with QuEST, each of the QuEST Plaintiffs entered into an arbitration agreement with QuEST that states:

> A. *Arbitration.* IN CONSIDERATION OF MY EMPLOYMENT WITH THE COMPANY, ITS PROMISE TO ARBITRATE ALL EMPLOYMENT-RELATED DISPUTES AND MY RECEIPT OF THE COMPENSATION, PAY RAISES AND OTHER BENEFITS PAID TO ME BY THE COMPANY, AT PRESENT AND IN THE FUTURE, I AGREE THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH ANYONE (INCLUDING THE COMPANY AND ANY EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER OR BENEFIT PLAN OF THE COMPANY IN THEIR CAPACITY AS SUCH OR OTHERWISE) ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT WITH THE COMPANY OR THE TERMINATION OF MY EMPLOYMENT WITH THE COMPANY, INCLUDING BUT NOT LIMITED TO ANY BREACH OF THIS AGREEMENT, SHALL BE SUBJECT TO BINDING ARBITRATION TO BE HELD IN THE STATE AND COUNTY OF THE PRINCIPAL OFFICE OF THE COMPANY PURSUANT TO THAT STATE'S LAW, AS THE SAME MAY BE RELOCATED, FROM TIME TO TIME; IT BEING ACKNOWLEDGED THAT THE PRINCIPAL OFFICE OF THE COMPANY IS CURRENTLY LOCATED IN THE STATE OF CONNECTICUT. DISPUTES WHICH I AGREE TO ARBITRATE, AND THEREBY AGREE TO WAIVE ANY RIGHT TO A TRIAL BY JURY, INCLUDE BUT ARE NOT LIMITED TO ANY STATUTORY CLAIMS UNDER STATE OR FEDERAL LAW, INCLUDING, BUT NOT LIMITED TO, CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE AMERICANS WITH DISABILITIES ACT OF 1990, THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, THE OLDER WORKERS BENEFIT PROTECTION ACT, CLAIMS OF HARASSMENT, DISCRIMINATION OR WRONGFUL TERMINATION AND ANY STATUTORY CLAIMS. I FURTHER UNDERSTAND THAT THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY DISPUTES THAT THE COMPANY MAY HAVE WITH ME.
>
> B. *Procedure.* I AGREE THAT ANY ARBITRATION WILL BE ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION ("AAA") IN ACCORDANCE WITH THE AAA'S NATIONAL RULES FOR THE RESOLUTION OF EMPLOYMENT DISPUTES AND THAT THE NEUTRAL ARBITRATOR(S) WILL BE SELECTED IN A MANNER CONSISTENT WITH ITS NATIONAL RULES FOR THE RESOLUTION OF EMPLOYMENT DISPUTES. I ALSO AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO AWARD ANY REMEDIES, INCLUDING

ATTORNEYS' FEES AND COSTS, AVAILABLE UNDER APPLICABLE LAW. I UNDERSTAND THE COMPANY WILL PAY FOR ANY ADMINISTRATIVE OR HEARING FEES CHARGED BY THE ARBITRATOR OR AAA EXCEPT THAT I SHALL PAY THE FIRST $200.00 OF ANY FILING FEES ASSOCIATED WITH ANY ARBITRATION I INITIATE. THE FEDERAL ARBITRATION ACT SHALL GOVERN THE INTERPRETATION AND ENFORCEMENT OF THIS SECTION 12.

Despite that these clauses were undisputedly in the QuEST Plaintiffs' employment agreements, they initiated this suit naming as a Defendant, among others, QuEST. QuEST believes that these arbitration clauses require the QuEST Plaintiffs to arbitrate their claims and now moves to compel such arbitration under § 4 of the Federal Arbitration Act ("FAA").

### III.  DISCUSSION

The Supreme Court has repeatedly made clear that "the FAA was designed to promote arbitration" and the act "embod[ies] [a] national policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345–46 (2011). For these reasons, "the Act places arbitration agreements upon the same footing as other contracts," but "it does not require parties to arbitrate when they have not agreed to do so." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012) (internal quotations omitted). "Thus, before an agreement to arbitrate can be enforced, the district court must first determine whether such agreement exists between the parties." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017).

Here, the parties agree that an enforceable arbitration agreement exists. Further, the parties agree that the subject matter of this case is covered by the arbitration agreement. Thus, the Court must decide only certain narrower questions. Specifically, the parties contest: (a) whether the Court or the arbitrator should rule on the availability of class arbitration and, relatedly, if this question is for the Court to decide, whether the QuEST Plaintiffs can bring a class arbitration; (b) whether the QuEST Plaintiffs should be required to commence arbitration within a given period

of time; and (c) what must be done with the QuEST Plaintiffs and QuEST itself in this litigation once the QuEST Plaintiffs' claims against QuEST are sent to arbitration. The Court addresses each question in sequence below.

### A. Who Determines Class Arbitrability

First, the Court must determine whether the Court or the arbitrator should decide if the QuEST Plaintiffs can arbitrate as a class. The Second Circuit has assumed, without deciding, that "whether an arbitration clause authorizes class arbitration is a so-called 'question of arbitrability' presumptively for a court, rather than an arbitrator, to decide." *Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 394 (2d Cir. 2018). This Court will do the same. This presumption, however, is "only the first step" in the Court's inquiry. *Id.* at 395. That is because "the presumption that a court should decide a question of arbitrability is overcome when there exists 'clear and unmistakable' evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by [an] arbitrator." *Id.* Thus, the Court next turns to an examination of whether Connecticut law would consider there to be such clear and unmistakable evidence in the arbitration agreement at issue here.

In Connecticut, "the intention to have arbitrability solely determined by an arbitrator can be manifested by an express provision or through the use of broad terms to describe the scope of arbitration, such as 'all questions in dispute' and 'all claims arising out of the contract' or 'any dispute that cannot be adjudicated.'" *City of New Britain v. AFSCME, Council 4, Loc. 1186*, 43 A.3d 143, 151 (Conn. 2012) (internal quotation marks added). Here, the arbitration provision contains precisely the type of broad language contemplated by *City of New Britain*. Specifically, the clause states that employees "agree that any and all controversies, claims, or disputes with anyone . . . arising out of, relating to, or resulting from my employment with the company or the

5

termination of my employment with the company, including but not limited to any breach of this agreement, shall be subject to binding arbitration." ECF No. 467-1 at 7. This broad language counsels in favor of allowing arbitrability, including the question of class arbitration, to be determined by the arbitrator.

Further, it has been long settled in this Circuit that when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005). This principle has been followed by numerous courts applying Connecticut law. *Achilles v. NCR Corp.*, No. X03-CV-21-6147084-S, 2022 WL 1059524, at *5 (Conn. Super. Ct. Mar. 25, 2022) ("Several decisions applying Connecticut law also conclude that parties agree to submit questions of arbitrability to the arbitrator when their agreement incorporates rules authorizing the arbitrator to decide questions of its own jurisdiction."); *Deleon v. Dollar Tree Stores, Inc.*, No. 3:16-CV-00767 (CSH), 2017 WL 396535, at *5 (D. Conn. Jan. 30, 2017); *Doctor's Assocs., Inc. v. Inder Pahwa & Satinder Pahwa*, No. 3:16-CV-00446 (JCH), 2016 WL 7635748, at *19 (D. Conn. Nov. 3, 2016), *report and recommendation adopted sub nom. Doctor's Assocs. Inc. v. Pahwa*, No. 3:16-CV-446 (JCH), 2016 WL 7410782 (D. Conn. Dec. 2, 2016).

The Court must therefore determine whether the parties incorporated rules or regulations that provide the arbitrator the authority to determine whether class arbitration is appropriate. Plaintiffs argue that the arbitration agreement makes clear the American Arbitration Association ("AAA") rules apply to any arbitration undertaken pursuant to the agreement. ECF No. 525 at 7. Plaintiffs further argue that, because the claims are subject to resolution through the AAA, the

Supplementary Rules for Class Arbitrations (the "Supplementary Rules") also apply to the dispute.

*Id.* The Supplementary Rules provide, in relevant part:

> These Supplementary Rules for Class Arbitrations ("Supplementary Rules") shall apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the American Arbitration Association ("AAA") where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules. These Supplementary Rules shall also apply whenever a court refers a matter pleaded as a class action to the AAA for administration, or when a party to a pending AAA arbitration asserts new claims on behalf of or against a class or purported class.

AAA Supp. R. Class Arb. 1(a). QuEST, for its part, argues that the "daisy-chain of cross-references" used by Plaintiffs to arrive at application of the Supplementary Rules does not evidence the parties' clear and unmistakable intent to have the issue of class arbitration decided by the arbitrator. ECF No. 541 at 3.

Despite QuEST's protestations to the contrary, the Second Circuit's holding in *Wells Fargo Advisors* forecloses its argument. In that case, the plaintiffs argued that the "gateway" question of whether class arbitration was permissible was a question for the arbitrator because the arbitration agreement incorporated the procedures laid out in a set of 1993 AAA rules. *Wells Fargo Advisors, LLC*, 884 F.3d at 396. Specifically, the 1993 rules stated that the rules applicable to an arbitration were those in effect at the time the arbitration was commenced. *Id.* By the time the arbitration was commenced, the Supplementary Rules had been enacted, *id.*; by their terms, the Supplementary Rules applied to any arbitration commenced pursuant to any of the AAA rules. *Id.* at 397. The Supplementary Rules further provided that the arbitrator would determine whether class arbitration was permitted or not. *Id.* Thus, the Second Circuit determined that, by incorporating the procedures in the AAA rules (and, by default, the Supplementary Rules) into their agreement, the parties had clearly and unmistakably consented to the arbitrator determining

whether class arbitration was appropriate. *Id.* Further, the Second Circuit expressly rejected a "string of references" argument very similar to the one advanced by QuEST here. *Id.*

Just as in *Wells Fargo Advisors*, the QuEST Plaintiffs and QuEST here agreed to have their arbitration governed by the AAA rules. ECF No. 467-1 at 8. Further, the Supplementary Rules are still in effect and expressly state that they apply to "any dispute arising out of an agreement that provides for arbitration pursuant to *any* of the rules of the American Arbitration Association." AAA Supp. R. Class Arb. 1(a) (emphasis added). That the arbitration agreement here specifies that arbitration shall be pursuant to the AAA Rules for Resolution of Employment Disputes therefore does not change the outcome. Further, QuEST's reply brief chastises Plaintiffs for "misleadingly omit[ting]" language from the Supplemental Rules that limits their application to cases "where a party submits a dispute to arbitration on behalf of or against a class or purported class." ECF No. 541 at 6. QuEST attempts to use this language to argue the Supplementary Rules do not apply here because this case was first filed in federal court. It appears to the Court, however, that QuEST is now itself misleadingly omitting language from the Supplementary Rules, as the very next sentence states "these Supplementary Rules shall also apply *whenever a court refers a matter pleaded as a class action to the AAA for administration*." AAA Supp. R. Class Arb. 1(a) (emphasis added).

Given the broad language of the arbitration agreement, as well as the agreement's incorporation of the AAA rules, including the Supplementary Rules, the arbitrator should determine whether class arbitration is permissible. *See Jock v. Sterling Jewelers Inc.*, 942 F.3d 617, 623 (2d Cir. 2019) (holding parties to arbitration agreement consented to arbitrator determining whether class arbitration was appropriate through their agreement to use AAA rules, which include the Supplementary Rules). Thus, the Court will not take up this issue at this time.

8

For the avoidance of doubt, this opinion makes no finding as to whether class arbitration is or is not appropriate in this case; the Court simply holds that such a decision should be made by the arbitrator.

### B. Commencing Arbitration Within a Certain Time

QuEST also requests, in a footnote, that if the Court grants the motion to compel arbitration and stays the QuEST Plaintiffs' arbitrable claims, it should also require the QuEST Plaintiffs to begin any forthcoming arbitration within thirty days of this Order. This request is supported by only a single citation to a Southern District of New York decision, which in turn cites no authority for its ruling. ECF No. 467-1 at 15. The QuEST Plaintiffs argue that there is nothing in the arbitration agreement that would permit, let alone require, the Court to direct that arbitration must be commenced within any timeframe, and that they may file an arbitration at any time within any applicable statute of limitations under the applicable arbitration rules. ECF No. 525 at 7.

The Court agrees with the QuEST Plaintiffs. "[A]rbitration is a creature of contract," *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019), and courts are not "empowered to re-write" the parties' arbitration agreement, *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 323 (2d Cir. 2021). QuEST's request finds no footing in the arbitration agreement itself. To the contrary, the arbitration agreement incorporated the AAA Rules for Resolution of Employment Disputes; under Rule 4(b)(i)(1) of those Rules, a party may initiate a claim "within the time limit established by the applicable statute of limitations." The rule goes on to provide that "any dispute over the timeliness of the demand shall be referred to the arbitrator." *Id.* Therefore, the arbitration agreement itself, by incorporation of AAA rules, contains an express timeframe for the filing of claims: the statute of limitations period. The Court is not free to change that agreement. Further, to the extent there are any disputes over the timeliness of the commencement of the arbitration,

9

such disputes are for the arbitrator to decide. For these reasons, QuEST's request that the Court require the commencement of arbitration within thirty days of this Order is denied.

### C. The Reach of This Order

Having discussed each of QuEST's requests, the Court turns to a request made by the QuEST Plaintiffs. The QuEST Plaintiffs request that the Court make clear that any order of arbitration applies only to the QuEST Plaintiffs' claims against QuEST and no other claims or defenses. ECF No. 525 at 12. QuEST does not appear to contest this invitation. Further, QuEST has made no argument why any of the non-QuEST Plaintiffs' claims against QuEST, or the QuEST Plaintiffs' claims against the non-QuEST Defendants, would be impacted in any way by the arbitration agreement at issue. In fact, at least one other federal court presented with a nearly identical question held that a narrow stay related to only the relevant plaintiffs' claims against the relevant defendants was appropriate. *See Nitsch v. DreamWorks Animation SKG Inc.*, 100 F. Supp. 3d 851, 871 (N.D. Cal. 2015). Thus, for the avoidance of doubt, this Court's Order relates only to the QuEST Plaintiffs' claims against QuEST. The QuEST Plaintiffs' claims against the non-QuEST Defendants will continue, as will the non-QuEST Plaintiffs' claims against QuEST.

### D. To Stay or to Dismiss

The final issue the Court must take up in connection with this motion is whether to stay or dismiss the QuEST Plaintiffs' claims against QuEST. While the parties' positions on this issue were less than clear in their respective briefs, their positions were clarified at oral argument. QuEST requests that the Court dismiss these claims, while the QuEST Plaintiffs request that the Court stay its claims against QuEST while allowing the remaining claims to proceed.

Given that the QuEST Plaintiffs have requested a stay, the Court must grant this request. *See* 9 U.S.C. § 3 (providing that, if a claim is referable to arbitration and a party requests a stay of the trial of the action pending arbitration, the Court "shall" stay the proceedings pending

10

completion of the arbitration); *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("We join those Circuits that consider a stay of proceedings necessary after all claims have been referred to arbitration and a stay requested."). The parties have not provided the Court any authority to the contrary and, when questioned about this at oral argument, both QuEST and the QuEST Plaintiffs conceded that if a stay were requested by either of them, the Court would be required to grant such a request. Given that the QuEST Plaintiffs have requested a stay, the Court lacks the discretion to dismiss the claims, and must instead stay them.

## IV.  CONCLUSION

For the reasons discussed herein, QuEST's motion to compel arbitration is GRANTED. All claims by the QuEST Plaintiffs against QuEST are stayed pending resolution of arbitration.

**SO ORDERED** at Hartford, Connecticut, this 20th day of January, 2023.

         */s/ Sarala V. Nagala*
         SARALA V. NAGALA
         UNITED STATES DISTRICT JUDGE