# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| TARAH KYE BOROZNY, et al.; on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PRATT & WHITNEY, A DIVISION OF RAYTHEON TECHNOLOGIES CORPORATION, et al.,<br><br>Defendants. | Case No. 3:21-cv-1657-SVN<br><br>Date: January 27, 2023 |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 3

    I.    Proof of a Relevant Market Is Not a Required Element for a Conspiracy
        That Is Unlawful *Per Se*................................................................................................ 3

    II.   To the Extent Footnote 6 of the Ruling Limits Plaintiffs' *Per Se* Theory
        to Any Particular Geographic Market, It Is Clear Error. ..................................................... 6

CONCLUSION............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                   **Page(s)**

*Ayazi v. United Fed'n of Teachers Local 2*,
   487 F. App'x 680 (2d Cir. 2012) .................................................................................................7

*Barnett v. Conn. Light & Power Co.*,
   967 F. Supp. 2d 593 (D. Conn. 2013)..........................................................................................7

*Belfiore v. N.Y. Times Co.*,
   826 F.2d 177 (2d Cir. 1987).........................................................................................................8

*Bogan v. Hodgkins*,
   166 F.3d 509 (2d Cir. 1999).............................................................................................. passim

*Cal. Dental Ass'n v. F.T.C.*,
   526 U.S. 756 (1999).....................................................................................................................4

*Campfield v. State Farm Mut. Auto Ins. Co.*,
   532 F.3d 1111 (10th Cir. 2008) ................................................................................................5, 6

*Concord Assoc., L.P. v. Ent. Properties Trust*,
   2014 WL 1396524 (S.D.N.Y. Apr. 9, 2014)................................................................................8

*Concord Assoc., L.P. v. Ent. Properties Trust*,
   817 F. 3d 46 (2d Cir. 2016)..........................................................................................................8

*Cont'l Orthopedic Appliances, Inc. v. Health Ins. Plan of Greater N.Y., Inc.*,
   40 F. Supp. 2d 109 (E.D.N.Y. 1999) ...........................................................................................7

*Downtown Music Publ'g LLC v. Peloton Interactive, Inc.*,
   436 F. Supp. 3d 754 (S.D.N.Y. 2020).........................................................................................8

*In re European Rail Pass Antitrust Litig.*,
   166 F. Supp. 2d 836 (S.D.N.Y. 2001).........................................................................................7

*F.T.C. v. Ind. Fed'n of Dentists*,
   476 U.S. 447 (1986).........................................................................................................1, 3, 4, 7

*F.T.C. v. Superior Ct. Trial Law. Ass'n*,
   493 U.S. 411 (1992).....................................................................................................................3

*Hicks v. PGA Tour, Inc.*,
   897 F.3d 1109 (9th Cir. 2018) .....................................................................................................5

*In re Interest Rate Swaps Antitrust Litig.*,
   261 F. Supp. 3d 430 (S.D.N.Y. 2017)......................................................................................7, 8

*Law v. NCAA*,
   134 F.3d 1010 (10th Cir. 1998) ...................................................................................4

*Meredith Corp. v. SESAC, LLC*,
   2011 WL 856266 (S.D.N.Y. Mar. 9, 2011) ................................................................7

*N. Pac. Ry. Co. v. United States*,
   356 U.S. 1 (1958) ................................................................................................1, 3, 7

*NCAA v. Bd. of Regents of Univ. of Okla.*,
   468 U.S. 85 (1984) .......................................................................................................4

*Nifty Foods Corp. v. Great Atl. & Pac. Tea Co.*,
   614 F.2d 832 (2d Cir. 1980) ........................................................................................8

*In re Nine W. Shoes Antitrust Litig.*,
   80 F. Supp. 2d 181 (S.D.N.Y. 2000) ...........................................................................7

*Ohio v. American Express Company*,
   138 S. Ct. 2274 (2018) .................................................................................................5

*PharmacyChecker.com, LLC v. Nat'l Ass'n of Bds. of Pharmacy*,
   530 F. Supp. 3d 301 (S.D.N.Y. 2021) .........................................................................8

*Radiant Burners, Inc. v. Peoples Gas Light & Coke Co.*,
   364 U.S. 656 (1961) ....................................................................................................6

*Singh v. Am. Racing-Tioga Downs Inc.*,
   2021 WL 6125432 (N.D.N.Y. Dec. 28, 2021) ............................................................8

*Todd v. Exxon Corp.*,
   275 F.3d 191 (2d Cir. 2001) ........................................................................................9

*TV Signal Co. of Aberdeen v. Am. Tel. & Tel.*,
   617 F.2d 1302 (8th Cir. 1980) .....................................................................................6

*United States v. Aiyer*,
   33 F.4th 97 (2d Cir. 2022) .............................................................................2, 5, 7, 9

*United States v. Bertelsmann SE & Co. KGA*,
   2022 WL 16949715 (D.D.C. Nov. 15, 2022) .............................................................3

*United States v. Coop. Theatres of Ohio Inc.*,
   845 F.2d 1367 (6th Cir. 1988) .....................................................................................6

*United States v. Koppers Co., Inc.*,
   652 F.2d 290 (2d Cir. 1981) ....................................................................................2, 5

*United States v. Patel*,
  No. 3:21-cr-220, 2022 WL 17404509 (D. Conn. Dec. 2, 2022) .................................................2

*United States v. Topco Assocs., Inc.*,
  405 U.S. 596 (1972) ..................................................................................................... 4, 5, 6

*United States v. Visa U.S.A., Inc.*,
  344 F.3d 229 (2d Cir. 2003) ....................................................................................................7

**Other Authorities**

ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases,
  (2016) .......................................................................................................................................6

Dep't of Justice & Fed. Trade Comm'n Horizontal Merger Guidelines (2010) ..............................3

DOJ Antitrust Division Leniency Policy and Procedures (2022),
  https://www.justice.gov/atr/page/file/1490246/download .......................................................2

DOJ Corporate Leniency Policy (1993),
  https://www.justice.gov/atr/file/810281/download .................................................................2

Federal Rule of Civil Procedure 12(b) ............................................................................................1

3A P. Areeda & H. Hovenkamp, Antitrust Law (2016) ..................................................................5

7 P. Areeda, Antitrust Law (1986) ..................................................................................................3

## PRELIMINARY STATEMENT

On January 20, 2023, the Court issued its Ruling and Order ("Ruling") denying Defendants' Rule 12(b) motion to dismiss Plaintiffs' Consolidated Amended Class Action Complaint ("CAC") in its entirety, finding that Plaintiffs sufficiently pleaded a *per se* violation of the antitrust laws. However, in a footnote addressing an argument that Pratt & Whitney made only "in passing," the Court stated that "'it is an element of a *per se* case to describe the relevant market in which we may presume the anticompetitive effect would occur.'" Ruling at 22 n.6 (quoting *Bogan v. Hodgkins*, 166 F.3d 509, 515 (2d Cir. 1999)). Consequently, the Court noted that its analysis of the relevant market "relate[d] not only to the rule of reason claim, but to the *per se* allegations, as well." *Id.*

Plaintiffs respectfully submit this memorandum of law in support of their motion for limited reconsideration of this sole statement in Footnote 6 of the Ruling. Simply put, proof of a specific geographic market is not a necessary element of a *per se* claim under Section 1 of the Sherman Act—a *per se* violation is unlawful no matter where it occurs within the United States. Antitrust law has long been clear that the *per se* rule applies to "certain agreements or practices that, because of their pernicious effect on competition and lack of any redeeming virtue, are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958). As the Supreme Court has stated, the very nature of the *per se* rule dispenses with the need to define and examine specific markets because such an examination is merely a means "to determine whether an arrangement has the potential for genuine adverse effects on competition." *F.T.C. v. Ind. Fed'n of Dentists*, 476 U.S. 447, 460 (1986).

Indeed, the Second Circuit recently confirmed this long-standing rule, holding that in a *per se* case the plaintiff "'need prove only that [the offense conduct] occurred in order to win [its] case, **there being no other elements to the offense** and no allowable defense.'" *United States v. Aiyer*, 33 F.4th 97, 115 (2d Cir. 2022) (emphasis added) (quoting *United States v. Koppers Co., Inc.*, 652 F.2d 290, 294 (2d Cir. 1981)). To the extent *Bogan*—on which the Ruling relied—stated otherwise, it is inconsistent with binding Supreme Court and more recent Second Circuit authority.

The concern here is not academic. By holding that geographic market definition is an element of Plaintiffs' claim under a *per se* analysis, the Court potentially has limited Plaintiffs' claims to the State of Connecticut, even though Defendants imposed the very same restraint on aerospace employees in other states as well, pursuant to a single unified conspiracy. Accordingly, Defendants can be expected to use the Court's ruling to try to exclude claims by members of the proposed class who were employees of the two Florida-based defendants in this litigation: Agilis Engineering, Inc. ("Agilis"), which has admitted to participating in the alleged no-poach conspiracy,[1] and Parametric Solutions, Inc. ("PSI"), whose former Chief Operating Officer/Executive Vice President was indicted for his participation in the conspiracy. *See* CAC ¶ 42; *United States v. Patel*, No. 3:21-cr-220, 2022 WL 17404509 (D. Conn. Dec. 2, 2022). Plaintiffs are aware of no case in which a single conspiracy to restrain trade was held *per se* unlawful only for some of its domestic victims but not others, based on where those victims happened to reside.

---

[1] Agilis is a DOJ leniency applicant and admitted its participation in the conspiracy. (ECF No. 579 at 1 n.1). DOJ, Corporate Leniency Policy, at A.3 (1993) (leniency from criminal prosecution granted if, among other things, "[t]he corporation reports the wrongdoing with candor and completeness and provides full, continuing and complete cooperation to the Division throughout the investigation"), *superseded by* DOJ, Antitrust Division Leniency Policy and Procedures, § 7-3.310(3) (2022) (similar).

Accordingly, because Footnote 6 of the Ruling overlooks and is contrary to controlling decisions from the U.S. Supreme Court and the Second Circuit, Plaintiffs respectfully move for reconsideration, limited to the Court's statement that Plaintiffs need to plead a relevant market as an element of a *per se* antitrust violation. Plaintiffs request that the Court clarify that there is no geographic limit to Plaintiffs' *per se* case.

## ARGUMENT

### I. Proof of a Relevant Market Is Not a Required Element for a Conspiracy That Is Unlawful *Per Se*.

The Supreme Court has made clear that the *per se* rule dispenses with the need to undertake a "burdensome inquiry into actual market conditions in situations where the likelihood of anticompetitive conduct is so great as to render unjustified the costs of determining whether the particular case at bar involves anticompetitive conduct." *F.T.C. v. Superior Ct. Trial Law. Ass'n*, 493 U.S. 411, 432, n.15 (1992). *See also N. Pac. Ry.*, 356 U.S. at 5 (*per se* rule "avoids the necessity for an incredibly complicated and prolonged economic investigation into the entire history of the industry involved . . . in an effort to determine at large whether a particular restraint has been unreasonable—an inquiry so often wholly fruitless when undertaken"). And "[s]ince the purpose of the inquiries into market definition and market power is to determine whether an arrangement has the potential for genuine adverse effects on competition, 'proof of actual detrimental effects, such as a reduction of output,' can obviate the need for an inquiry into market power, which is but a 'surrogate for detrimental effects.'" *Ind. Fed'n of Dentists*, 476 U.S. at 460–61 (quoting 7 P. Areeda, ANTITRUST LAW ¶ 1511, p. 429 (1986)).[2]

---

[2] *See also United States v. Bertelsmann SE & Co. KGA*, 2022 WL 16949715, at *11 (D.D.C. Nov. 15, 2022) (market definition "helps specify the line of commerce and section of the country in which the competitive concern arises"; and allows the Court to evaluate any anticompetitive effects by "identify[ing] market participants and measur[ing] market shares and market concentration.") (quoting

3

Although decided under the "quick look" standard,[3] the Supreme Court's decision in *Indiana Federation of Dentists* demonstrates the need to dispense with market definition in a *per se* case. There, the respondent argued that "in the absence of specific findings by the Commission concerning the definition of the market in which the Federation allegedly restrained trade and the power of the Federation's members in that market, the conclusion that the Federation unreasonably restrained trade is erroneous as a matter of law." 476 U.S. at 460. The Supreme Court rejected respondent's argument:

> This contention, however, runs counter to the Court's holding in *National Collegiate Athletic Association. v. Board of Regents of University of Oklahoma, supra,* that "***[a]s a matter of law, the absence of proof of market power does not justify a naked restriction on price or output,*"** and that such a restriction "***requires some competitive justification even in the absence of a detailed market analysis***."

*Id.* (emphasis added) (quoting *NCAA v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 109–110 (1984)).

Here, Plaintiffs allege that Defendants engaged in a conspiracy to allocate the labor for aerospace engineers and other skilled workers. Because the Court correctly recognized this as a naked horizontal restriction on trade, it upheld application of the *per se* rule. Ruling at 14–17. Given this holding, the type of "detailed market analysis" required to prove a specific geographic market is unnecessary to establish the antitrust violation and is not a required element of the

---

Dep't of Justice & Fed. Trade Comm'n, HORIZONTAL MERGER GUIDELINES § 4 (2010)); *Law v. NCAA*, 134 F.3d 1010, 1020 (10th Cir. 1998) ("The NCAA misapprehends the purpose in antitrust law of market definition, which is not an end unto itself but rather exists to illuminate a practice's effect on competition.").

[3] *See Cal. Dental Ass'n v. F.T.C.*, 526 U.S. 756, 770 (1999) (describing *Indiana Federation of Dentists* as a "quick look" case, where, like *per se* cases, the challenged conduct can be readily viewed as anticompetitive with "no elaborate industry analysis . . . required to demonstrate the anticompetitive character of horizontal agreements among competitors").

offense. *See United States v. Topco Assocs., Inc.*, 405 U.S. 596, 607 (1972) (applying *per se* rule to territorial market allocation without detailed inquiry into the geographic markets restrained).

The Supreme Court repeatedly has recognized that market definition is not a required element of *per se* antitrust cases. For example, in *Ohio v. American Express Company*, the Court recognized that *per se* cases are designated as such because the restraints at issue "always or almost always tend to restrict competition and decrease output." 138 S. Ct. 2274, 2283 (2018) (internal quotation marks and citations omitted). In contrast, the Court explained that the rule of reason "requires courts to conduct a fact-specific assessment of market power and market structure ... to assess the [restraint]'s actual effect on competition." *Id.* at 2284 (internal quotation marks and citations omitted). Nowhere did the Court impose a market definition requirement in its description of the *per se* rule. Indeed, to Plaintiffs' knowledge, the Supreme Court has never imposed such a requirement in a case involving a *per se* unlawful conspiracy.

The Second Circuit's most recent holdings are in accord. In *United States v. Aiyer*, the Second Circuit held that in *per se* cases, the government plaintiff "'need prove only that [the offense conduct] occurred in order to win [its] case, there being no other elements to the offense and no allowable defense.'" *Aiyer*, 33 F.4th at 115 (quoting *Koppers*, 652 F.2d at 294).[4] Other circuit courts agree. *See, e.g.*, *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018) ("Plaintiffs must plead a relevant market to state an antitrust claim under the Sherman Act, unless they assert a per se claim."); *Campfield v. State Farm Mut. Auto Ins. Co.*, 532 F.3d 1111, 1119 (10th Cir. 2008) ("Horizontal price fixing and group boycott . . . are per se violations, so

---

[4] Although private plaintiffs are required to prove injury to recover damages arising from their antitrust claims, the elements of the violation are the same between private plaintiffs and the government. *See* H. Hovenkamp, ANTITRUST LAW ¶ 303e3 ("[T]he private plaintiff must prove 'standing,' threatened injury, and 'antitrust injury,' as well as the defendant's antitrust violation, while the government plaintiff need only show the latter.") (internal citation omitted).

[the plaintiff's] failure to allege a relevant market is not fatal to [its] claims"); *United States v. Coop. Theatres of Ohio Inc.*, 845 F.2d 1367, 1372 (6th Cir. 1988) (non-solicitation agreements among horizontal competitors are *per se* unlawful despite defendants' contention that the government "failed to prove that the agreement had any adverse impact on competition within the relevant market"); *TV Signal Co. of Aberdeen v. Am. Tel. & Tel.*, 617 F.2d 1302, 1309 n.8 (8th Cir. 1980) ("No proof of relevant market is required under section 1 where a per se violation is established.") (citing *Topco*, 405 U.S. 596; *Radiant Burners, Inc. v. Peoples Gas Light & Coke Co.*, 364 U.S. 656 (1961)).

Additional support can be found in the ABA's Model Jury Instructions in Civil Antitrust Cases for allocation of customers or product markets—which is the type of conduct Plaintiffs plead here. Neither instruction requires a plaintiff to prove a relevant market. *See* ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases, Ch. 2, Instructions 1 & 3 (2016).

Accordingly, under a *per se* theory of antitrust liability, which the Court found Plaintiffs sufficiently alleged here, proof of a specific geographic market is not an element, and such a market need not be defined or proved.

**II.     To the Extent Footnote 6 of the Ruling Limits Plaintiffs' *Per Se* Theory to Any Particular Geographic Market, It Is Clear Error.**

Having decided that Plaintiffs pleaded a plausible *per se* violation of the antitrust laws, it was unnecessary for the Court to analyze the limits of any geographic market in which the harm occurred. By doing so, and concluding that "Defendants are correct [that] 'it is an element of a *per se* case to describe the relevant market in which we may presume the anticompetitive effect would occur,'" (Ruling at 22 n.6 (quoting *Bogan*)), Footnote 6 of the Ruling overlooks controlling decisions by the U.S. Supreme Court and the Second Circuit. Reconsideration of the

6

statements contained in Footnote 6 of the Ruling is therefore appropriate. *See Barnett v. Conn. Light & Power Co.*, 967 F. Supp. 2d 593, 596 (D. Conn. 2013) ("A motion for reconsideration is justified only where the [party] identifies an intervening change in controlling law, the availability of new evidence, *or* the need to correct a clear error or prevent manifest injustice.") (emphasis added) (quoting *Ayazi v. United Fed'n of Teachers Local 2*, 487 F. App'x 680, 681 (2d Cir. 2012)).

Insofar as *Bogan* can be read to require a detailed market analysis for a *per se* claim, it is contrary to the Supreme Court's decisions in *Superior Court*, *Indiana Federation of Dentists*, and *Northern Pacific Railway*, as well as the Second Circuit's recent decision in *Aiyer*. *See Aiyer,* 33 F.4th at 115. *See also United States v. Visa U.S.A., Inc.*, 344 F.3d 229, 238 n.4 (2d Cir. 2003) (observing that in *Indiana Federation of Dentists*, the Supreme Court did not require a market to be defined). District courts in this Circuit also agree that in *per se* cases, plaintiffs need not define a relevant market. *See, e.g.*, *In re European Rail Pass Antitrust Litig.*, 166 F. Supp. 2d 836, 844 (S.D.N.Y. 2001) ("it is well settled that [a] plaintiff is excused from defining the relevant product market" in a *per se* case) (internal quotation marks and citations omitted), *accord Meredith Corp. v. SESAC, LLC*, 2011 WL 856266, at *12 n.13 (S.D.N.Y. Mar. 9, 2011); *In re Nine W. Shoes Antitrust Litig.*, 80 F. Supp. 2d 181, 188–89 (S.D.N.Y. 2000) ("Case law teaches that consumers are not required to prove market power in cases involving *per se* violations of the antitrust laws."); *Cont'l Orthopedic Appliances, Inc. v. Health Ins. Plan of Greater N.Y., Inc.*, 40 F. Supp. 2d 109, 116 (E.D.N.Y. 1999) ("under the *per se* rule the plaintiff is excused from defining the relevant product market."). *Cf. In re Interest Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 467 (S.D.N.Y. 2017) ("Agreements that do not fall under *per se* illegality are analyzed under the rule of reason," where "the plaintiff bears the burden of showing

that the alleged [agreement] produced adverse, anti-competitive effects within a *relevant geographic market*.") (emphasis added) (internal quotation marks and citations omitted).

*Bogan* is also inapposite because it relies on two Second Circuit decisions addressing **Section 2** claims for monopolization and attempted monopolization, where plaintiffs typically must plead a relevant market to demonstrate monopoly power. This is not true in Section 1 market allocation cases, as pleaded here. *See Bogan*, 166 F.3d at 515 (citing *Belfiore v. N.Y. Times Co.*, 826 F.2d 177, 180-81 (2d Cir. 1987) (addressing monopolization claim); *Nifty Foods Corp. v. Great Atl. & Pac. Tea Co.*, 614 F.2d 832, 840 (2d Cir. 1980) (addressing monopolization and attempted monopolization claims)).[5]

At most, *Bogan* should be read to require only that plaintiffs in *per se* cases must *describe* a general market to put in context the nature and scope of commerce restrained by the conspiracy. Plaintiffs did provide such a description here, explaining that the conspiracy restrained competition for the *labor* of aerospace engineers and other skilled workers Defendants employed. *See* CAC ¶ 163. The Court considered that description when analyzing whether the restraint was horizontal or vertical in nature and concluded that it was horizontal. Ruling at 12–17. This general description of the market restrained was all that is needed to support a *per se* claim.

---

[5] The other district court cases cited in the Ruling are equally unavailing insofar as they rely on *Bogan* for their recitation of the law. *See PharmacyChecker.com, LLC v. Nat'l Ass'n of Bds. of Pharmacy*, 530 F. Supp. 3d 301, 347 (S.D.N.Y. 2021); *Downtown Music Publ'g LLC v. Peloton Interactive, Inc.*, 436 F. Supp. 3d 754, 766 (S.D.N.Y. 2020). *See also Singh v. Am. Racing-Tioga Downs Inc.*, 2021 WL 6125432, at *9 (N.D.N.Y. Dec. 28, 2021) (citing *Downtown Music*, which relies on *Bogan*). *PharmacyChecker.com* further cites *Concord Assoc., L.P. v. Ent. Properties Trust*, which rejected plaintiffs' attempt to avoid pleading a "market-wide anticompetitive effect" because it agreed with the lower court that plaintiffs had failed to plead a *per se* group boycott. 817 F. 3d 46, 53 n.5 (2d Cir. 2016) (citing *Concord Assoc., L.P. v. Ent. Properties Trust*, 2014 WL 1396524, at *11 (S.D.N.Y. Apr. 9, 2014) (holding that because plaintiffs failed to plead a horizontal agreement among competitors, the *per se* rule did not apply)).

*Bogan* should not be read, however, as requiring specific proof of a relevant market (and especially not specific proof of the scope of a geographic market within the United States) as an element of the *per se* violation. Nothing about the precise scope of any geographic market was relevant to the Court's determination of whether the alleged conspiracy was horizontal or vertical, and thus it is irrelevant to the *per se* claim. At the least, it would not be appropriate to place geographic limits on Plaintiffs' *per se* claims on a pleading motion when those issues are "deeply fact-intensive" and require development of a full record. *Todd v. Exxon Corp.*, 275 F.3d 191, 199 (2d Cir. 2001).

Indeed, were the rule otherwise—that is, if pleading a specific relevant market were deemed a substantive element of the *per se* violation—it would have far-reaching consequences. Not only civil plaintiffs but the government would be required to plead and prove the existence of a relevant market as part of the *per se* offense. As *Aiyer* teaches, there is no such requirement, and none should exist here. Tellingly, the indictment in the parallel criminal action involving Defendants' conspiracy did not attempt to define a relevant market—in fact, nowhere in the indictment (or in the government's opposition to defendants' dismissal motion) do the words "relevant market" or "market definition" even appear. Judge Bolden's decision upholding the indictment did not find the absence of such allegations to be fatal to or otherwise constrain the government's *per se* theory to a specific geographic market. *See* Order on Motion to Dismiss, *United States v. Patel*, No. 3:21-cr-00220, ECF No. 257 (D. Conn. Dec. 2, 2022). The same should hold true here.

Plaintiffs are compelled to seek limited reconsideration because Footnote 6 of the Ruling potentially has significant implications on the scope of Plaintiffs' claims in this litigation. As the Court found that the State of Connecticut was the only plausible geographic market (Ruling at

9

25), Defendants may argue that Footnote 6 limits Plaintiffs' *per se* antitrust claim to those aerospace workers employed in this state, even though Defendants applied the very same unlawful restraint, pursuant to a single horizontal conspiracy, to aerospace workers located in other states as well. But because the restraint and the conspiracy were *per se* unlawful, it would not make sense to parse who can bring antitrust claims based on whether they happened to live within or without the borders of Connecticut—*all* workers who were the victims of the unlawful restraint have a claim.

Nor does a Connecticut-based relevant geographic market make sense given the participation of Agilis and PSI, two *Florida*-based Defendants, whose workers were subject to the same challenged restraint. Agilis is the DOJ leniency applicant and thus admitted to participating in the alleged no-poach conspiracy. (ECF No. 579 at 1 n.1). PSI's former COO/EVP was indicted for his participation in the alleged conspiracy (CAC ¶ 42), and the Court held that Plaintiffs plausibly alleged PSI's participation in the alleged conspiracy. Ruling at 31. Accordingly, a geographically limited *per se* case is unsupportable in fact or law and thus requires the Court to clarify that there is no geographic limit to Plaintiffs' *per se* case.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court reconsider Footnote 6 of the Ruling and clarify that its relevant market analysis does not affect or otherwise limit the scope of Plaintiffs' *per se* theory of antitrust liability.

Dated: January 27, 2023                                    Respectfully submitted,

By: */s/ Gregory S. Asciolla*                              By: */s/ Daniel L. Brockett*
Gregory S. Asciolla (phv02599)                             Daniel L. Brockett (phv20450)
Robin A. van der Meulen (phv09139)                         Steig D. Olson (phv06391)
Matthew J. Perez (phv06870)                                Manisha M. Sheth (phv01061)

10

| | |
|---|---|
| Veronica Bosco (phv20356)<br>**DICELLO LEVITT LLC**<br>485 Lexington Avenue<br>Suite 1001<br>New York, NY 10017<br>Tel.: (646) 933-1000<br>gasciolla@dicellolevitt.com<br>rvandermeulen@dicellolevitt.com<br>mperez@dicellolevitt.com<br>vbosco@dicellolevitt.com | Thomas Lepri (phv20453)<br>**QUINN EMANUEL URQUHART &<br>SULLIVAN LLP**<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>Tel.: (212) 849-7000<br>Fax: (212) 849-7100<br>danbrockett@quinnemanuel.com<br>steigolson@quinnemanuel.com<br>manishasheth@quinnemanuel.com<br>thomaslepri@quinnemanuel.com<br><br>Justin Reinheimer (phv20572)<br>50 California Street, 22nd Floor<br>San Francisco, California 94111<br>Telephone:  (415) 875-6600<br>justinreinheimer@quinnemanuel.com |

*Interim Co-Lead Counsel for the Class*

| | |
|---|---|
| By: /s/ *David A. Slossberg*<br>David A. Slossberg (ct13116)<br>Timothy C. Cowan (ct30786)<br>Kyle A. Bechet (ct31299)<br>**HURWITZ SAGARIN SLOSSBERG &<br>KNUFF, LLC**<br>147 North Broad Street<br>Milford, CT 06460<br>Tel.: (203) 877-8000<br>dslossberg@hssklaw.com | By: */s/ Joshua R. Goodbaum*<br>Joseph D. Garrison (ct04132)<br>Stephen J. Fitzgerald (ct22939)<br>Joshua R. Goodbaum (ct28834)<br>Amanda M. DeMatteis (ct29413)<br>**GARRISON, LEVIN-EPSTEIN,<br>FITZGERALD & PIRROTTI, P.C.**<br>405 Orange Street<br>New Haven, CT 06511<br>Tel.: (203) 777-4425<br>Fax: (203) 776-3965<br>jgarrison@garrisonlaw.com<br>sfitzgerald@garrisonlaw.com<br>jgoodbaum@garrisonlaw.com<br>adematteis@garrisonlaw.com |

*Local Counsel for the Class*

**CERTIFICATE OF SERVICE**

  I hereby certify that on January 27, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ *Timothy C. Cowan*