### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| TARAH KYE BOROZNY, *et al.* individually and on behalf of all others similarly situated, | No. 3:21-cv-01657 (SVN) |
| Plaintiffs, | *Class Action* |
| v. | |
| RAYTHEON TECHNOLOGIES CORPORATION, PRATT & WHITNEY DIVISION, *et al.*, | February 24, 2023 |
| Defendants. | |

### DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .......................................................................... 1

ARGUMENT .................................................................................................... 2

    A.    The Court Did Not Commit Any Error—Let Alone Clear Error—In Finding that Plaintiffs Must Plead a Relevant Market in Connection with Their *Per Se* Market Allocation Case. ........................................... 2

        1.    Footnote 6 is Supported by Relevant, Binding Case Law. .................... 2

        2.    Plaintiffs Fail to Demonstrate that the Court Committed Error. ........... 5

                a.    *Bogan* is Controlling Law in the Second Circuit. ...................... 6

                b.    The Cases that Plaintiffs Cite Do Not Support Their Argument. ................................................................................... 7

                c.    Plaintiffs' Remaining Arguments are Unpersuasive. .................. 10

    B.    Plaintiffs' Motion is an Apparent End-Run Around the Mechanisms to Properly Amend Their Complaint to Try to Allege a Plausible Nationwide Geographic Market. ........................................................ 12

    C.    The Division's Statement of Interest is Not Entitled to Deference and Does Not Contradict Defendants' Arguments. ................................... 13

        1.    Deference to the Division's Position Here is Not Warranted. ............ 14

        2.    The Division's SOI Provides No Unique or Unbiased Insight Into the Correct Application of the Law and is Instead Meant to Benefit Plaintiffs. ....................................................................................... 15

        3.    The Court Should Consider the Timing of the Division's Statement. ...................................................................................... 17

CONCLUSION ............................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All Care Nursing Service v. High Tech Staffing Ser.*,
 135 F.3d 740 (11th Cir. 1998) ...............................................................16

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ...............................................................................12, 13

*Bogan v. Hodgkins*,
 166 F.3d 509 (2d Cir. 1999) ........................................................... *passim*

*Bogan v. Nw. Mut. Life Ins. Co.*,
 953 F. Supp. 532 (S.D.N.Y. 1997) ..........................................................2, 3

*Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*,
 441 U.S. 1 (1979) ......................................................................................9

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
 429 U.S. 477 (1977) ..................................................................................17

*Campfield v. State Farm Mut. Auto. Ins. Co.*,
 532 F.3d 1111 (10th Cir. 2008) ...............................................................17

*Cho v. Blackberry Ltd.*,
 991 F.3d 155 (2d Cir. 2021) .......................................................................5

*Deslandes v. McDonald's USA, LLC*,
 No. 1:17-cv-04857 (N.D. Ill. March 3, 2022) .........................................14

*Double D Spotting Serv. v. Supervalu, Inc.*,
 136 F.3d 554 (8th Cir. 1998) ................................................................3, 10

*Downtown Music Publ'g LLC v. Peloton Interactive, Inc.*,
 436 F. Supp. 3d 754 (S.D.N.Y. 2020) .......................................................7

*E.I. Du Pont De Nemours & Co. v. Smiley*,
 138 S. Ct. 2563 (2018) (Gorsuch, J., respecting denial of *certiorari*) ....14

*F.T.C. v. Indiana Federation of Dentists*,
 476 U.S. 447 (1986) ..........................................................................7, 8, 9, 16

*F.T.C. v. Superior Court Trial Lawyers Ass'n*,
 493 U.S. 411 (1990) ..........................................................................5, 9, 16

*Gerlinger v. Amazon.Com, Inc.*,
    311 F. Supp. 2d 838 (N.D. Cal. 2004) ....................................................................4, 5

*United States ex rel. Gudur v. Deloitte Consulting LLP*,
    512 F. Supp. 2d 920 (S.D. Tex. 2007) ......................................................................18

*In re Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010).......................................................................................17

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
    232 F.3d 979 (9th Cir. 2000) ....................................................................................17

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
    551 U.S. 877 (2007).....................................................................................................9

*LSP Transmission Holdings, LLC v. Lange*,
    329 F. Supp. 3d 695 (D. Minn. 2018).......................................................................17

*Meijer, Inc. v. Barr Pharms., Inc.*,
    572 F. Supp. 2d 38 (D.D.C. 2008) .............................................................................3

*NCAA v. Board of Regents*,
    468 U.S. 85 (1984)......................................................................................................6

*Northern Pacific Railway Company v. United States*,
    356 U.S. 1 (1958).....................................................................................................7, 8

*NYU Hosps. Ctr. v. League of Voluntary Hosps. & Homes of New York*,
    318 F. Supp. 3d 622 (S.D.N.Y. 2018).........................................................................3

*Oscar Ins. Co. of Fla. v. Blue Cross Blue Shield of Fla., Inc.*,
    No. 6:18-cv-1944-Orl-40EJL, 2019 WL 5295091 (M.D. Fla. Sept. 20, 2019) ......14

*Palmer v. BRG of Georgia, Inc.*,
    498 U.S. 46 (1990)..................................................................................................4, 5

*PharmacyChecker.com, LLC v. Nat'l Ass'n of Bds. of Pharmacy*,
    530 F. Supp. 3d 301 (S.D.N.Y. 2021)......................................................................6, 7

*Preston Hollow Cap. LLC v. Nuveen LLC*,
    No. 20-CV-5597 (PKC), 2021 WL 3542255 (S.D.N.Y. Aug. 10, 2021) ..................3

*Radiant Burners, Inc. v. Peoples Gas Light & Coke Co.*,
    364 U.S. 656 (1961)..................................................................................................10

*Republic of Austria v. Altmann*,
    541 U.S. 677 (2004)..................................................................................................14

*Singh v. Am. Racing-Tioga Downs Inc.*,
   No. 3:21-CV-0947 (LEK/ML), 2021 WL 6125432 (N.D.N.Y. Dec. 28, 2021).......................7

*Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
   552 F.3d 430 (6th Cir. 2008) .................................................................................................17

*TV Signal Co. of Aberdeen v. Am. Tel. & Tel.*,
   617 F.2d 1302 (8th Cir. 1980) .........................................................................................10, 17

*United States v. Aiyer*,
   33 F.4th 97 (2d Cir. 2022) ................................................................................................9, 10

*United States v. Harwin*,
   No. 2:20-cr-115-VMC-KCD-1 (M.D. Fla. Sept. 23, 2022)...................................................12

*United States v. Koppers Co.*,
   652 F.2d 290 (2d Cir. 1981)...........................................................................................15, 16

*United States v. Patel*,
   No. 3:21-cv-00220-VAB (D. Conn. Dec. 2, 2022)......................................................... *passim*

*United States v. Salus Rehab*,
   No. 8:11-CV-1303-T-23TBM, 2017 WL 1495862 (M.D. Fla. Apr. 26, 2017)................14, 17

*United States v. Socony-Vacuum Oil Co.*,
   310 U.S. 150 (1940).............................................................................................................15

*United States v. Topco Associates, Inc.*,
   405 U.S. 596 (1972)..........................................................................................................8, 10

*Van Buskirk v. United Grp. of Cos., Inc.*,
   935 F.3d 49 (2d Cir. 2019)....................................................................................................5

**Statutes**

15 U.S.C. § 1.......................................................................................................................3, 6, 10

15 U.S.C. § 15...........................................................................................................................16

## PRELIMINARY STATEMENT[1]

The Court's holding that Plaintiffs must plead a plausible market in connection with their alleged *per se* claim is entirely correct. (ECF No. 582 (hereinafter "Ruling") at 22 n.6.) Footnote 6 is supported by relevant, binding case law, *see Bogan v. Hodgkins*, 166 F.3d 509, 515 (2d Cir. 1999), and none of the cases cited in Plaintiffs' Motion or the Division's SOI suggest otherwise. The Court did not overlook any controlling decisions or commit any error. Nothing Plaintiffs argue in their Motion, or that the Division presents in its SOI, is new: the Court fully considered these arguments when it issued its Ruling.[2]

Moreover, this is a procedurally improper tool to obtain the relief the Plaintiffs and the Division are seeking. If the Plaintiffs wish to allege a nationwide class, they should seek leave to amend their Consolidated Amended Complaint ("Complaint") to remedy their failure to allege a plausible nationwide market. *See* Ruling at 24. Additionally, the Division is actively litigating these same issues before Judge Bolden in the related criminal case, and it should not attempt to influence the criminal case through its SOI in this civil case. Accordingly, Defendants respectfully request that the Court deny Plaintiffs' Motion.

---

[1] Defendant Raytheon Technologies Corporation, Pratt & Whitney Division ("P&W"), along with Outsourcing Defendants Belcan Engineering Group, LLC, Cyient, Inc., Parametric Solutions, Inc., and QuEST Global Services-NA, Inc. (collectively "Defendants") file this opposition to Plaintiffs' Motion for Reconsideration (ECF No. 584-1, hereinafter "Motion" or "Mot.") and in response to the Statement of Interest filed by the Antitrust Division of the Department of Justice (the "Division") (ECF No. 595, hereinafter "SOI").

[2] Plaintiffs do not raise any new arguments beyond what was already briefed (ECF No. 465-1 at 28-30; ECF No. 524 at 26 n.17), discussed at oral argument (Mot. to Dismiss Hr'g Tr. at 46:15-47:2), and decided upon by the Court (ECF No. 582 at 22 n.6).

## ARGUMENT

**A.   The Court Did Not Commit Any Error—Let Alone Clear Error—In Finding that Plaintiffs Must Plead a Relevant Market in Connection with Their *Per Se* Market Allocation Case.**

In denying Defendants' Motions to Dismiss, the Court determined that Plaintiffs' Complaint sufficiently pleaded an anticompetitive restraint in the form of a market allocation. Ruling at 14. The Court further noted that Plaintiffs must "plead a relevant market regardless of whether the complaint states a claim for a *per se* or rule of reason violation." Ruling at 22 n.6. The Court reached this conclusion after considering the parties' arguments regarding this issue—identical to those raised in Plaintiffs' Motion. Plaintiffs' attempt to relitigate this issue is futile as the Court's ruling is correct. First, Plaintiffs must articulate a plausible market in which the restraint allegedly occurred, which is what the law requires. *See Bogan*, 166 F.3d at 515. Second, the Court did not commit clear error. The Court should deny this Motion.

### 1.   Footnote 6 is Supported by Relevant, Binding Case Law.

Courts routinely require claimants to sufficiently plead the relevant market as a threshold matter in *per se* cases, especially where Plaintiffs plead a market allocation, as they do here. In *Bogan*, the Second Circuit affirmatively stated that "it is an element of a *per se* case to describe the relevant market in which we may presume the anticompetitive effect would occur." *Id.* Indeed, the relevant market was expressly considered at the district court level in the context of the plaintiff's *per se* claim. *See Bogan v. Nw. Mut. Life Ins. Co.*, 953 F. Supp. 532, 546-47 (S.D.N.Y. 1997) ("[Bogan's] definition of the relevant market as consisting only of the services of NML agents is unacceptable. The market is properly considered the entire industry (or at least the New York Metropolitan area), and thus any restriction on wage competition in NML's small share of the industry does not seriously affect such competition in the industry as a whole. Thus,

the Metropolitan Policy cannot be considered a restriction on price competition that would fall

under the *per se* analysis."); *see also id.* at 547 n.16 (stating that Bogan was "incorrect in

defining the proper market"). This was not a passing comment by the Second Circuit, *see* 166

F.3d at 515, as Plaintiffs would have this Court believe. Moreover, the Second Circuit's

statement is entirely consistent with other courts that have considered the issue.

 For example, in *Double D Spotting Service*, the Eighth Circuit affirmed the dismissal of

*per se* claims under Rule 12 for failure to plead a relevant market, explaining that "a plaintiff

alleging a horizontal restraint must at least define the market and its participants." *Double D

Spotting Serv. v. Supervalu, Inc.*, 136 F.3d 554, 559 (8th Cir. 1998). The plaintiff argued that

failure to plead a relevant market did not warrant dismissal because "it [had] pleaded *per se*

antitrust violations." *Id.* at 558. The Eighth Circuit rejected this assertion, finding that the

plaintiff had not properly alleged a *per se* case because it "failed to plead a valid relevant

market." *Id.* at 559. *Double D* and *Bogan* directly undermine Plaintiffs' unsupported argument

that plaintiffs do not need to allege a plausible market in connection with a *per se* claim.

Other cases further explain that plaintiffs do not have a *carte blanche* to avoid defining a

market even where they have alleged a *per se* antitrust violation. *See Preston Hollow Cap. LLC

v. Nuveen LLC*, No. 20-CV-5597 (PKC), 2021 WL 3542255, at *3 (S.D.N.Y. Aug. 10, 2021)

(citing *Bogan* favorably and noting that a plaintiff must describe the relevant market even in a

*per se* case); *NYU Hosps. Ctr. v. League of Voluntary Hosps. & Homes of New York*, 318 F.

Supp. 3d 622, 631 (S.D.N.Y. 2018) ("As an initial matter, NYU is wrong that '[g]iven the *per se*

nature of the violation of Section 1 of the Sherman Act, allegations with respect to the relevant

product market . . . are not required.'"); *Meijer, Inc. v. Barr Pharms., Inc.*, 572 F. Supp. 2d 38,

49 n.14 (D.D.C. 2008) (rejecting as "legally inaccurate Plaintiffs' argument that a decision to

apply the *per se* rule does not depend on any inquiry into market definition or market power

because that inquiry is made only after a court has decided not to apply the *per se* rule") (cleaned up).

In *per se* cases based upon claims of *market allocation*, identifying and plausibly describing the market alleged to have been allocated is an essential element of the claim. *Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d 838, 851 (N.D. Cal. 2004) ("Before the court can determine whether [an agreement] constitutes an agreement to split a market, the court must determine what the relevant market is."). *Gerlinger* explains that a court cannot allow a *per se* market allocation claim to proceed without first "determin[ing] what the relevant market is." *Id.* The court in *Gerlinger* explained that in the Supreme Court's decision in *Palmer*, "the question was very straightforward, the market was the State of Georgia." *Id.* (citing *Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46, 47 (1990)). The court reasoned that the appropriate market definition was required before the court could find "clear *per se* market allocation." *Id.* With "nothing but unsupported allegations" from the plaintiff regarding the appropriate market definition, "the court [was] precluded from finding a *per se* violation such as that found in *Palmer*." *Id.*

Here, the Court found that the only plausible market that the alleged conduct could have allocated was the geographic market of the State of Connecticut. Ruling at 25. With respect to the other markets alleged—the national market and the Palm Beach, Florida and Hartford-East/Hartford-Middletown, Connecticut markets, which the Court held were implausible—the Court properly found that these markets could not be the basis of a *per se* market allocation. *See, e.g.*, Ruling at 23-24 (finding that Plaintiffs' alleged national labor market and Palm Beach,

Florida labor market for Aerospace Workers failed to plausibly define a market "in which competition could be impaired").[3]

This principle—that the relevant market is not obvious in some *per se* cases and is therefore fundamental for plaintiffs to allege and prove given the nature of the alleged violation—is found in numerous cases. For these reasons, Footnote 6 of the Court's Ruling is correct and consistent with established law, and Plaintiffs' Motion should be denied.

### 2.    Plaintiffs Fail to Demonstrate that the Court Committed Error.

Plaintiffs' Motion does not meet the "strict" standard for granting reconsideration. *See Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019) ("The standard for granting . . . [reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." ); *see also Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021) ("A party may move for reconsideration and obtain relief only when the party identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.") (cleaned up); D. Conn. L. Civ. R. 7(c)(1). The Court did not overlook any controlling precedent, there has been no change in law, and none of Plaintiffs' arguments seeking reconsideration are persuasive or supported by controlling precedent.

---

[3] It is true that in certain cases where a *per se* violation is alleged, most particularly price-fixing cases (unlike market allocation cases), the specific definition of the market is not always discussed. But this is because, unlike this case, the scope of the market is often either obvious or is not in dispute. For example, Plaintiffs rely on *F.T.C. v. Superior Court Trial Lawyers Association*, where the relevant market was conspicuous and not in dispute. 493 U.S. 411, 432 n.15 (1990). As discussed further, these cases dealing with obvious markets are distinguishable. (*Infra* Section A.2.a.) Plaintiffs cite cases where "the question [of market definition] was very straightforward." *Gerlinger*, 311 F. Supp. 2d at 858 (*citing Palmer v. BRG of Georgia*, 498 U.S. 46, 47 (1990)).

a.     *Bogan* **is Controlling Law in the Second Circuit.**

Plaintiffs incorrectly question the Court's reliance on *Bogan* and its progeny. Plaintiffs attempt to discredit *Bogan* by asserting that "*Bogan* is also inapposite because it relies on two Second Circuit decisions addressing ***Section 2*** claims for monopolization and attempted monopolization, where plaintiffs typically must plead a relevant market to demonstrate monopoly power." Mot. at 8 (emphasis in original). Even if true, *Bogan* is a Section 1 case involving restrictions on labor markets and is controlling law in the Second Circuit. Moreover, it is incorrect for Plaintiffs to assert that monopolization and attempted monopolization cases—in which a market must logically be defined to discern the monopolization of that market—are wholly distinguishable from market allocation claims. In a *market allocation* case, the pleading must logically define the market to put defendants on notice of what market is alleged to have been allocated or where competition is alleged to have been impaired. (*See supra*, section A.1.)

Plaintiffs cannot refute that *Bogan* is good law that binds this Court. Additionally, Plaintiffs ignore all of the cases upon which *Bogan* relies when affirming that pleading a relevant market is required in a *per se* case. For example, *Bogan* cites *NCAA v. Board of Regents*, 468 U.S. 85, 104 n.26 (1984), for its conclusion that "*[p]er se* rules may require considerable inquiry into market conditions before the evidence justifies a presumption of anticompetitive conduct." *Bogan*, 166 F.3d at 515-16. Plaintiffs have no authority to support their argument that *Bogan* should be read to require plaintiffs to only "*describe* a general market"—an unsupported alternative and lesser standard that presumably falls short of alleging a plausible market. Mot. at 8.

Plaintiffs argue that the Court should not only disregard *Bogan*, but also all of the recent district court opinions that rely on *Bogan*, including those cited in Footnote 6 of the Ruling: *PharmacyChecker.com, LLC v. Nat'l Ass'n of Bds. of Pharmacy*, 530 F. Supp. 3d 301, 347

(S.D.N.Y. 2021); *Downtown Music Publ'g LLC v. Peloton Interactive, Inc.*, 436 F. Supp. 3d 754, 766 (S.D.N.Y. 2020); *Singh v. Am. Racing-Tioga Downs Inc.*, No. 3:21-CV-0947 (LEK/ML), 2021 WL 6125432, at *9 (N.D.N.Y. Dec. 28, 2021). *Pharmacy Checker* is especially instructive here. There, the district court conducted a thorough analysis of *Indiana Federation of Dentists* and concluded that the "Plaintiff must allege product and geographic markets in order to establish a *per se* violation." 530 F. Supp. 3d at 347. This Court's reliance on the binding precedent of *Bogan*, and those cases relying on *Bogan* in Footnote 6, thus is entirely sound.

> **b.    The Cases that Plaintiffs Cite Do Not Support Their Argument.**

Plaintiffs have mischaracterized Supreme Court jurisprudence in their effort to circumvent Plaintiffs' requirement to plead a plausible market. Certain Supreme Court decisions instruct courts to not inquire into the *reasonableness* of *per se* restraints. But the fact that *per se* analysis may foreclose arguments about reasonableness, and the existence of procompetitive benefits, has nothing to do with Plaintiffs having to plausibly define the market in which the supposed *per se* offense occurred. The cases cited in Plaintiffs' Motion do not contradict this point.

Plaintiffs quote *Northern Pacific Railway Company v. United States*, 356 U.S. 1, 5 (1958), once and cite it only in passing. *See* Mot. at 1, 7. In that case, the Supreme Court implicitly acknowledged the need for market definition, noting "that the vice of tying arrangements lies in the use of economic power in *one market* to restrict competition on the merits *in another*." 356 U.S. at 11 (emphasis added). Moreover, nothing about the Supreme Court's explanation indicating that *per se* applies to "certain agreements or practices [that,] because of their pernicious effect on competition and lack of any redeeming virtue," *id.* at 5, undermines Footnote 6 of the Court's Ruling. The Ruling holds that Plaintiffs "set forth no

allegations regarding the national labor market for Aerospace Workers" and the Complaint thus "failed to show the national aerospace labor market is a plausible market *in which competition could be impaired*." Ruling at 24 (emphasis added). In other words, without the geographic limitation to Connecticut—the only plausible market the Court found—the Court held that the alleged agreement did not have a "pernicious effect on competition." *N. Pac. Ry.*, 356 U.S. at 5.

Plaintiffs cite *United States v. Topco Associates, Inc.*, 405 U.S. 596 (1972), for their argument that "the type of 'detailed market analysis' required to prove a specific geographic market is unnecessary to establish the antitrust violation and is not a required element of the offense." *See* Mot. at 4-5. However, in *Topco*, whether or not the Government alleged a plausible market was not at issue. Although *Topco* involved an alleged market allocation agreement, the market in *Topco* was entirely obvious, and specifically defined by the alleged unreasonable restraints ("trademark licenses specifying the territory in which each member may sell [the] products"). 405 U.S. at 605. Indeed, "[f]rom the inception of [the] lawsuit, *Topco* accepted as true most of the Government's allegations regarding territorial divisions and restrictions on wholesaling." *Id.* at 604-05. *Topco* is thus inapposite.

Plaintiffs argue that *F.T.C. v. Indiana Federation of Dentists*, 476 U.S. 447 (1986), "demonstrat[es] the need to dispense with market definition in a *per se* case." Mot. at 4. But the Supreme Court said no such thing. *Indiana Federation* is not a *per se* case. The Court rejected applying *per se* to the alleged group boycott. 476 U.S. at 458-49. When rejecting *per se* treatment, the Court signified the importance of market analysis. "[T]he *per se* approach has generally been limited to cases in which firms *with market power* boycott suppliers or customers in order to discourage them from doing business with a competitor." *Id.* at 458 (emphasis added).

With an explicit reference to "market power," the court in *Indiana* did analyze the market; it did not suggest that no definition of the market is required in a *per se* case.[4]

In *F.T.C. v. Superior Court Trial Lawyers Ass'n*, the geographic market—the District of Columbia—was obvious. 493 U.S. 411 (1990). The case involved an organized boycott by lawyers who acted as court-appointed counsel for indigent defendants in the District of Columbia Superior Court. *Id.* at 414. Given the obvious and already defined geographic market, the case in no way supports Plaintiffs' argument that "there is no geographic limit to Plaintiffs' *per se* case." Mot. at 3. Accordingly, *none* of the Supreme Court decisions discussed by Plaintiffs undermine the Court's finding in Footnote 6 of the Ruling or the controlling Second Circuit precedent of *Bogan* with respect to requiring a sufficiently pleaded market definition. (*See infra* section A.2.b.)[5]

The Court's finding in Footnote 6 is supported by other cases cited in Plaintiffs' Motion. The Second Circuit in *United States v. Aiyer* explained that "[u]nder [the *per se*] rule, there is 'no need to study the reasonableness of an individual restraint in light of the *real market forces at work*.'" 33 F.4th 97, 115 (2d Cir. 2022) (quoting *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007)) (emphasis added). *Aiyer* is instructive in that it provides nothing to undermine the Court's conclusion in Footnote 6. Rather, this Second Circuit opinion actually

---

[4] The quote Plaintiffs rely on is found in the Court's rule of reason analysis. *Id.* at 460. And, the Court did not find that relevant market analysis is unnecessary. Rather, the Court, having defined the market ("two localities in the State of Indiana") held that detailed relevant market analysis is less needed in a rule of reason case where there is evidence of actual anticompetitive effects. *Id.* at 460-61. That analysis has nothing to do with Plaintiffs' *per se* claims here.

[5] The Supreme Court has held that even certain price-fixing agreements should be evaluated under the rule of reason. *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.* 441 U.S. 1, 19-20 (1979) (noting that in considering the *per se* rule, the inquiry must focus on "whether the practice facially appears to be one that would always or almost always tend to restrict competition and decrease output, and *in what portion of the market*") (cleaned up and emphasis added). This confirms that courts must evaluate each alleged *per se* claim on its own terms, and that the allegations of market allocation in this case require a clear definition of the market that has allegedly been allocated.

begins with a section titled "The Relevant Market," *id.* at 105, and goes on to analyze the price-fixing and bid-rigging claims, noting the product market (foreign currency exchange trading) and the geographic market (international), *id.* at 106. These markets were obvious and not in dispute.

Finally, Plaintiffs cite an Eighth Circuit opinion in support of their position that "[n]o proof of relevant market is required under section 1 where a per se violation is established." Mot. at 6 (citing *TV Signal Co. of Aberdeen v. Am. Tel. & Tel.*, 617 F.2d 1302, 1309 n.8 (8th Cir. 1980)). The court in *TV Signal* cited *Topco*, which as explained above, is easily distinguishable from this case. *Topco*, 405 U.S. at 604 (describing facts where there was no dispute regarding the market, and where the defendant "accepted as true most of the Government's allegations regarding territorial divisions"). The court in *TV Signal* also cites to *Radiant Burners, Inc. v. Peoples Gas Light & Coke Co.*, 364 U.S. 656 (1961), in support of this position, but that case did not affirmatively state that no proof of a relevant market is required and it too involved a geographic market that was not in dispute. Further, Plaintiffs' reliance on *TV Signal* disregards more recent and relevant Eighth Circuit precedent, *see Double D Spotting*, 136 F.3d at 554, and improperly focuses on dicta from an older and factually distinguishable case. (*See supra*, Section A.1.)

None of the cases Plaintiffs cite actually support their position that the Court committed error.

### c.     Plaintiffs' Remaining Arguments are Unpersuasive.

Plaintiffs further attempt to undermine the Court's ruling by citing Judge Bolden's opinion denying the defendants' motion to dismiss in the related criminal action. *See* Order on Mot. to Dismiss, *United States v. Patel*, No. 3:21-cr-00220-VAB (D. Conn. Dec. 2, 2022), ECF No. 257. Judge Bolden's opinion does not undermine the correctness of this Court's application of its relevant market analysis to Plaintiffs' potential civil *per se* claim. *Id.* at 21. In his opinion

denying the criminal defendants' motion to dismiss the Indictment, Judge Bolden, constrained to accept the Indictment's allegations as true, recognized that "not all no poach agreements are market allocations subject to per se treatment therefore, determining whether a no poach agreement is a market allocation is highly fact specific." *Id.* Without a defined market, an alleged no-poach agreement may not rise to the level of a *per se* market allocation. Judge Bolden's decision is entirely consistent with the concept—and legal requirement (*see supra* Section A.1)—that a factually-supported market is required to allege a market allocation claim.

Finally, Plaintiffs grasp for support of their argument by cherry-picking from the ABA's Model Jury Instructions in Civil Antitrust Cases for allocation of customer or product markets. Mot. at 6. Nothing in the model jury instructions negates the definition of a relevant market as a necessary requirement. Rather, each set of required elements incorporates a need to define the nature of the allocation alleged. *See, e.g.*, ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases, Ch. 2, Instruction 1 (2016) ("defendant and one or more other persons agreed that [*state nature of allocation alleged, e.g., one would not submit a lower bid in the county in which the other was located*]"). To "state [the] nature of [the] allocation alleged" here, requires a definition of a plausible relevant market, which requires both a plausible product market and a plausible geographic market. In fact, Instruction 3 cross-references another a jury instruction that supports the fact that a plaintiff, even in a *per se* case, must prove a relevant product market. *See id.*, Instruction 3 (cross-referencing "Relevant Product Market – Supply Substitutability, Chapter III.A.5"). Market definition is not limited to Section 2 cases as Plaintiffs suggest.

Curiously, Plaintiffs do not discuss the Modern Federal Jury Instructions for "Territorial Division of Markets," which provide the following instruction under the heading "Horizontal Market Allocation is *Per Se* Unlawful" and supports the Court's finding in

Footnote 6: "So, if you find that there was an agreement among the defendants, and if you also find that the defendants were competitors in the *relevant market*, then you must find that the agreement was an unreasonable restraint of trade." 4 Modern Fed. Jury Instructions 79-42 (emphasis added).[6]

In sum, Footnote 6 is an accurate statement of the law.

**B.**    **Plaintiffs' Motion is an Apparent End-Run Around the Mechanisms to Properly Amend Their Complaint to Try to Allege a Plausible Nationwide Geographic Market.**

Plaintiffs and their counsel would prefer to litigate this case with allegations of a national market allocation, because they want to expand the scope of discovery and the scope of damages available to the purported class. But *Twombly* requires that only plausibly pleaded claims survive a Rule 12 motion, precisely to avoid the burdensome discovery and exorbitant damages claims that Plaintiffs seek here. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007). In this case, the Court's Ruling found that Plaintiffs' Complaint plausibly alleged a violation of the antitrust laws—but only to the extent that the allegations applied to a labor market of Aerospace Workers geographically restricted to the State of Connecticut. Ruling at 25.

If Plaintiffs were not able to convince the Court in their pleadings—where all of the facts were construed as true and all inferences made in favor of Plaintiffs' case—that they have adequately alleged a claim that applies to a nationwide class of Aerospace Workers,

---

[6] In a criminal case that dealt with a *per se* market allocation claim, the court adopted jury instructions that described "a conspiracy to allocate or divide up radiation oncology and medical oncology services *in the alleged geographical market*," which the instructions further defined as "medical oncology treatments for cancer patients to Florida Cancer Specialists and radiation oncology treatments for cancer patients to 21st Century Oncology *in Southwest Florida.*" *United States v. Harwin*, No. 2:20-cr-115-VMC-KCD-1 (M.D. Fla. Sept. 23, 2022), ECF No. 302 at 19-20 (emphasis added); *see also id.* at 22.

they should not be able to move forward on that market in connection with their *per se* claim. The Court held that Plaintiffs did not sufficiently plead a nationwide aerospace labor market, explaining that "Plaintiffs cannot have their cake and eat it, too, by shifting the market at the center of this case as it suits their needs." Ruling at 24. Simply put, Plaintiffs failed to describe a plausible national labor market "in which competition could be impaired." *Id.*

By bringing this Motion and seeking to reverse the Court's clear rejection of their allegations of a national market, Plaintiffs essentially are seeking to amend their Complaint without moving for leave to do so, and without actually trying to allege a plausible nationwide geographic market. Instead, Plaintiffs ask this Court to impose *no* geographic limit to their *per se* market allocation claims. Mot. at 6. But that is not the law. (*See supra* section A.1.) Plaintiffs represented to the Court at oral argument that they have "put [their] best foot forward" with respect to pleading a relevant market, Mot. to Dismiss Hr'g Tr. at 115:18, and that was not sufficient, *see* Ruling at 23-24.

## C.     The Division's Statement of Interest is Not Entitled to Deference and Does Not Contradict Defendants' Arguments.

On February 13, 2023, the Division filed an SOI in this case with approval from the Court. ECF No. 595. The SOI re-states and expands on arguments already made by Plaintiffs, and fails to demonstrate that the Court committed clear error. The Division is entitled to no particular deference here, as it is an advocate and seeks to advance its enforcement agenda with a constricted view of the requirements for alleging and proving a *per se* antitrust case.

1.       **Deference to the Division's Position Here is Not Warranted.**

Defendants urge the Court to be skeptical of the Division's advocacy here, especially in light of the upcoming criminal trial. Courts recognize that attempts by the executive branch to influence a court to adopt the executive's preferred interpretation of the law may be improper. The court in *Deslandes v. McDonald's USA, LLC* denied the Division's motion for leave to file a SOI in that case, noting "Article III created an independent judiciary and commands that the independence of the judicial branch be jealously guarded." 1:17-cv-04857 (N.D. Ill. March 3, 2022), ECF No. 452 at 4-5; *cf. E.I. Du Pont De Nemours & Co. v. Smiley*, 138 S. Ct. 2563, 2564 (2018) (Gorsuch, J., respecting denial of *certiorari*) ("Don't serious equal protection concerns arise when an agency advances an interpretation only in litigation with full view of who would benefit and who would be harmed? . . . Should we be concerned that some agencies . . . have apparently become particularly aggressive in attempting to mold statutory interpretation and establish policy by filing 'friend of the court' briefs in private litigation?") (alterations omitted).

The Court does not owe deference to the Division's view of the law or its application to this case. *Republic of Austria v. Altmann*, 541 U.S. 677, 701 (2004) (noting that executive branch statements of interest regarding the interpretation of the law are entitled to no deference from the judiciary); *United States v. Salus Rehab*, No. 8:11-CV-1303-T-23TBM, 2017 WL 1495862, at *1 (M.D. Fla. Apr. 26, 2017) (28 U.S.C. § 517 does not provide the Department of Justice free reign to "appear and submit argument in any case in which the United States articulates a generic interest in the 'development' and 'correct application' of the law."); *Oscar Ins. Co. of Fla. v. Blue Cross Blue Shield of Fla., Inc.*, No. 6:18-cv-1944-Orl-40EJL, 2019 WL 5295091, at *1 n.1 (M.D. Fla. Sept. 20, 2019) (same).

The Division's apparent purpose in "urging the Court to reconsider its conclusion" is clear: the Division is seeking to influence the law that will be applied to the criminal

prosecutions of several individuals in *United States v. Patel*. Recently, in denying those defendants' motion to dismiss the Indictment, Judge Bolden found that the Indictment adequately alleged a *per se* market allocation claim, involving allocated employees "in a *properly defined labor market*." *United States v. Patel*, 3:21-cv-00220-VAB, ECF No. 257 at *22. At trial, the Division will be required to prove that Defendants entered into "a horizontal agreement to allocate employees *in a specific labor market*." *Id*. By filing its SOI in this case, the Division seeks to induce this Court to overturn itself, and thus create ambiguities or inconsistencies in the law that may lighten the government's burden at trial in *Patel*. The Court should reject the Division's efforts to improperly influence the Court's Ruling to its benefit in a separate, but related, ongoing criminal proceeding before a different Judge and different parties.

> **2.      The Division's SOI Provides No Unique or Unbiased Insight Into the Correct Application of the Law and is Instead Meant to Benefit Plaintiffs.**

The Division's SOI argues: (1) that *per se* claims do not require a determination into the reasonableness of the market at issue (citing *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 221, 224 n. 59 (1940)) and therefore "it follows" that market definition is not required to allege a *per se* case (citing *United States v. Koppers Co.*, 652 F.2d 290, 293 (2d Cir. 1981)); and (2) that *Bogan* is distinguishable as a group boycott case. SOI at 6.

Defendants do not dispute that when analyzing *per se* claims, the Court does not consider the reasonableness of the alleged conduct or whether the conduct's procompetitive benefits outweigh its anticompetitive effects. (*See supra*, Section 2.a.) That is indeed what the Second Circuit said in *Koppers*. But that is all it said. The court rejected the defendant's argument that the jury should have been instructed on "reasonableness" of the alleged bid rigging charge. The court, however, said nothing about defining a market in which that bid rigging occurred. Nor was there any need to, since the bid rigging was obviously associated with state contracts in

Connecticut. *Koppers* has nothing to do with the issue here—whether a plaintiff must allege a plausible market in which its alleged market allocation occurred. For all of the reasons addressed, the Court did not err in finding that Plaintiffs' *per se* market allocation claim requires Plaintiffs to plead a relevant market. (*See supra*, Section 2.a.)

The Division also attempts to distinguish *Bogan* as a group-boycott case. SOI at 6.[7] In *Bogan*, the court explained that not all group boycotts are *per se* illegal and held that the alleged agreement did not "fit the classic model of a group boycott" that is *per se* illegal. 166 F.3d at 515. This is precisely what Judge Bolden said about the case before him in *Patel*:

> [N]ot all no poach agreements are market allocations subject to *per se* treatment and therefore, determining whether a no poach agreement is a market allocation is highly fact specific. For example, in *Bogan*, the Second Circuit found that . . . the conduct did not fit squarely into any of the established *per se* categories.

*Patel*, 3:21-cv-00220-VAB, ECF No. 257 at *21. The Division may be dissatisfied with Judge Bolden's ruling, as being "highly fact specific" may complicate their efforts to prove the alleged no-poach "market allocation." Judge Bolden's analogy between the *per se* claim at issue in *Bogan* and the *per se* claim brought by the Division in *Patel* is strong. Both require a plausible allegation of the market impacted by the alleged conduct. Similarly, as this Court properly found, Plaintiffs failed to set forth plausible allegations in their Complaint with respect to nationwide and Florida markets. Ruling at 23-24.[8]

The Division's reliance on criminal cases like *Koppers* is even more off-base in this civil action, where under Section 4 of the Clayton Act, the Plaintiffs must meet the requirements of

---

[7] This argument is weak given the fact that Plaintiffs rely on a number of group-boycott cases themselves. *See, e.g.*, *Indiana Federation of Dentists*, 476 U.S. 447; *Sup. Ct. Trial Lawyers Ass'n*, 493 U.S. 411.

[8] The bright line the Division seeks between relevant market allegations in *per se* and rule of reason cases was rejected by at least one of the cases on which the Division seeks to rely. In *All Care Nursing Service*, the court found that: "In dealing with group boycott situations, market analysis has found its way into the determination of whether a given practice should be *per se* illegal. No longer is relevant market a factor only after it has been decided that the rule of reason applies." 135 F.3d 740, 748 (11th Cir. 1998).

antitrust standing. The Supreme Court has interpreted 15 U.S.C. § 15 to mean that plaintiffs must demonstrate antitrust injury; "[t]he injury should reflect the *anticompetitive effect* either of the violation or of anticompetitive acts made possible by the violation." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) (emphasis added). Demonstration of such an injury with respect to a market allocation claim implies that a plausible market in which that injury was sustained must be alleged.

Finally, the other cases the Division cites can be distinguished for a number of reasons. They are either price-fixing or bid-rigging cases (*Knevelbaard Dairies v. Kraft Foods, Inc.,* 232 F.3d 979 (9th Cir. 2000)); or do not explicitly hold that market definition is never required in a *per se* case (*Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008)); and, unlike *Bogan*, they are all non-binding decisions from outside the Second Circuit (*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010); *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111 (10th Cir. 2008); *TV Signal Co.*, 617 F.2d at 1302)).

The Division does not make any arguments that the Plaintiffs did not make themselves, and should not be afforded any deference. (*See supra* Section 3.a.) Rather, the SOI is seemingly an attempt to put a thumb on the scale in favor of a specific party to the litigation. *See Salus Rehab*, 2017 WL 1495862 at *1 (denying motion for leave to submit statement of interest where the statement appeared calculated to duplicate one party's arguments regarding the interpretation of relevant law). The Court should reject the Division's attempt to throw its weight behind a party with whom it is aligned in a separate case, especially when the Division's arguments have been considered and rejected in the original motion.

**3.      The Court Should Consider the Timing of the Division's Statement.**

Even apart from the concerns about separation of powers and improper interference in

this litigation, the Division's statement is untimely. *LSP Transmission Holdings, LLC v. Lange*, 329 F. Supp. 3d 695, 703-04 (D. Minn. 2018) (declining as a matter of discretion to consider DOJ Antitrust Division statement of interest filed two and a half months after briefing on motion to dismiss); *United States ex rel. Gudur v. Deloitte Consulting LLP*, 512 F. Supp. 2d 920, 927-28 (S.D. Tex. 2007), aff'd, No. 07-20414, 2008 WL 3244000 (5th Cir. Aug. 7, 2008) (citing same discretionary factors and granting motion to strike statement of interest filed five months after filing of motion for summary judgment). Briefing on Defendants' motions to dismiss closed on October 13, 2022, the Court held oral argument on November 16, 2022, and the Court issued its decision on January 20, 2023. The Division then waited two weeks after Plaintiffs filed their Motion for Reconsideration to file their SOI. When asked by Defendants, the Division provided no excuse for its delay. The only explanation available is that the Division would like the Court to change its mind and create an ambiguity of the law of this Court that may benefit its pending criminal matter, which is improper for all of the reasons described above.

## **CONCLUSION**

Footnote 6 of the Ruling was correct, and nothing Plaintiffs have argued previously or now argue again suggests otherwise. The Court should accordingly deny Plaintiffs' Motion.

Dated:  February 24, 2023

By: */s/ Chahira Solh*            
Chahira Solh (phv20470)
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614
Telephone:  (949) 263-8400
Facsimile:  (949) 263-8414
Email:  CSolh@crowell.com

Kent Gardiner (phv ct15260)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  (202) 624-2500
Facsimile:  (202) 628-5116
Email:  KGardiner@crowell.com

Sima Namiri-Kalantari (phv206721)
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone:  (213) 622-4750
Facsimile:  (213) 622-2690
Email:  SNamiri@crowell.com

John W Cerreta (ct28919)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Telephone:  (860) 275-0665
Facsimile:  (860) 881-2517
Email:  jcerreta@daypitney.com

*Counsel for Raytheon Technologies*
*Corporation, Pratt & Whitney Division*

By: */s/ Niall E. Lynch*            
Niall E. Lynch (phv206783)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile:  (415) 395-8095
Email: niall.lynch@lw.com

Elizabeth Prewitt (phv206784)
Anna M. Rathbun (phv10682)
Daniel J. Blackman (phv206785)
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile:  (202) 637-2201
Email: elizabeth.prewitt@lw.com
      anna.rathbun@lw.com
      daniel.blackman@lw.com

Thomas V. Daily (ct03467)
REID AND RIEGE, P.C.
One Financial Plaza
755 Main Street, 21st floor
Hartford, CT 06103-3185
Telephone:  (860) 240-1067
Facsimile:  (860) 240-1002
Email: tdaily@reidandriege.com

*Counsel for QuEST Global Services-NA, Inc.*

By: */s/ Catie Ventura*
Catie Ventura (phv20424)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone:  (202) 389-5907
Email: catie.ventura@kirkland.com

James H. Mutchnik (phv20423)
KIRKLAND & ELLIS LLP
300 N LaSalle
Chicago, IL 60654
Telephone:  (312) 862-2000
Email: jmutchnik@kirkland.com

Patrick A. Klingman (ct17813)
KLINGMAN LAW, LLC
280 Trumbull Street, Floor 21
Hartford, CT 06103-3514
Telephone:  (860) 256-6120
Email: pak@klingmanlaw.com

*Counsel for Belcan Engineering Group, LLC*


By: */s/ John J. Robinson*
John J. Robinson (ct14802)
Kelcie B. Reid
Mitchell L. Fishberg
GORDON REES SCULLY MANSUKHANI, LLP
95 Glastonbury Boulevard, Suite 206
Glastonbury, CT 06033
Telephone:  (860) 494-7505
Facsimile:   (860) 560-0185
Email: jjrobinson@grsm.com
         kreid@grsm.com
         mfishberg@grsm.com

*Counsel for Parametric Solutions, Inc.*


By: */s/ Leo Caseria*
Leo Caseria (phv20459)
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006
Telephone:  (202) 747-1900
Facsimile:   (202) 747-1901
Email: lcaseria@sheppardmullin.com

James M. Moriarty (ct21876)
ZEISLER & ZEISLER, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
Telephone:  (203) 368-4234
Facsimile:   (203) 549-0907
Email: jmoriarty@zeislaw.com

Robert S. Friedman (ct31256)
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
30 Rockefeller Plaza
New York, NY 10112
Telephone:  (212) 653-8700
Facsimile:   (212) 652-8701
Email: rfriedman@sheppardmullin.com

*Counsel for Cyient, Inc.*

**FILER ATTESTATION**

I, Chahira Solh, hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

*/s/ Chahira Solh*          
Chahira Solh
