**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| TARAH KYE BOROZNY, *et al*. individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RAYTHEON TECHNOLOGIES CORPORATION, PRATT & WHITNEY DIVISION, *et al.*,<br><br>Defendants. | No. 3:21-cv-01657 (SVN)<br><br>*Class Action*<br><br>June 27, 2023 |
|---|---|

**JOINT STATUS REPORT OF COUNSEL**

Plaintiffs by and through their counsel, and Defendants Raytheon Technologies Corporation, Pratt & Whitney Division ("Pratt & Whitney"), Belcan Engineering Group, LLC, QuEST Global Services-NA, Inc., Cyient, Inc., and Parametric Solutions, Inc. (collectively, "Defendants"), by and through their counsel, met and conferred, and submit this Joint Status Report of Counsel as directed by this Court's June 13, 2023 Order, ECF No. 673.

At this time,[1] the parties are at an impasse regarding the following issues concerning the scope of discovery in this case.

***1. Production of structured data in response to Plaintiffs' discovery requests.***

**Plaintiffs' position**: Since serving our requests for production on June 1, 2022, Plaintiffs have continually requested that Defendants[2] produce data "to the present" and without

[1] The parties continue to meet and confer regarding other discovery disputes.
[2] Defendant Agilis is not subject to Plaintiffs' motion (ECF No. 639); therefore, references to "Defendants" herein do not include Agilis.

geographic limits. As discussed with the Court at the June 13, 2023 conference and as further discussed by the Parties in a subsequent meet-and-confer on June 21, 2023, Plaintiffs offered to accept data from Defendants from December 13, 2021 through June 30, 2022, and limited to data responsive to Plaintiffs' Request for Production No. 15, subparts (a), (b), and (c), without geographic limits. Defendants refused Plaintiffs' offer unless the requested data was limited to employees who work (or worked) in the State of Connecticut. The parties are at impasse on this issue.

In addition to this discovery issue, documents and data described below have given Plaintiffs reason to supplement and enhance their allegations concerning the geographic markets affected by the conspiracy, and Plaintiffs will be filing a motion for leave to amend their complaint in the coming days.

Defendants' refusal to produce data for employees working outside of Connecticut is based on the Court's decision denying Defendants' motions to dismiss, where it found that Plaintiffs had only pleaded a relevant geographic market with respect to Connecticut. ECF No. 582, at 25. But Defendants position in untenable given the Court's subsequent ruling on Plaintiffs' motion for reconsideration, where the Court specifically noted that it "expresse[d] no opinion as to the scope of discovery[.]" ECF No. 647 at 7 n.3.

Importantly, since the Court's ruling on Defendants' motions to dismiss, discovery has yielded documents that suggest the scope of Defendants' conspiracy extends well beyond Connecticut. For example, emails show a Pratt & Whitney employee blocking a named Plaintiff from being hired by Pratt & Whitney from QuEST in a location outside Connecticut due to the alleged hiring freeze. Similarly, another document shows an employee at Pratt & Whitney blocking PSI from hiring several employees who were employed by other Defendants on

projects outside of Connecticut. These documents clearly demonstrate that the alleged conspiracy operated outside of Connecticut.

Defendants also produced documents and structured data showing numerous employees located in other states supporting Pratt & Whitney projects. For example:

- A Belcan document shows that Belcan had 659 employees supporting Pratt & Whitney, with 217 working in Connecticut and the other 442 spread across the following states: Arizona, California, Florida, Kentucky, Maine, Maryland, Nevada, Ohio, South Carolina, Texas, and Utah.
- QuEST's structured data production to the DOJ, which it reproduced to Plaintiffs here, shows that it had employees in the following states in addition to Connecticut: California, Arizona, Georgia, Michigan, New York, Ohio, and Texas. Another QuEST document shows that QuEST had over 624 employees supporting Pratt & Whitney, with 405 in Connecticut and 219 across at least the following states: Florida, Georgia, Indiana, Maine, Michigan, and Ohio.
- A Cyient document show that Cyient had 323 employees supporting Pratt & Whitney, with 127 in Connecticut and 196 across at least the following states: Florida, Georgia, and Maine.
- PSI's structured data shows that it had 339 employees supporting Pratt & Whitney, with 18 in Connecticut and 321 across the following states: Alabama, Arizona, California, Florida, Georgia, Illinois, Indiana, Louisiana, Massachusetts, Maryland, North Carolina, New Hampshire, New York, Ohio, Oklahoma, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, and Washington.

- An Agilis document shows that Agilis had 127 engineers supporting Pratt & Whitney in the following states: Florida, California, Oklahoma, and South Carolina.[3]

But even in the absence of these documents and data, the relevant case law does not support Defendants' position that data for employees outside of Connecticut is irrelevant. Courts have consistently found that antitrust cases require a particularly liberal construction of the discovery rules, including the geographic scope of discovery. *See, e.g.*, *SmithKline Beecham Corp. v. Apotex Corp*., 2006 WL 279073, at *3 (E.D. Pa. Jan. 31, 2006) (compelling discovery regarding foreign markets despite claims being limited to domestic market) ("Antitrust cases . . . call for broad discovery . . . to uncover evidence of invidious design, pattern, or intent. This concept applies equally to geographic scope[.]") (internal citations and quotation marks omitted); *In re Auto. Refinishing Paint Antitrust Litig*., 2004 WL 7200711, at *3 (E.D. Pa. Oct. 29, 2004) (compelling discovery regarding foreign markets, despite claims being limited to domestic market, given the "broad discovery" permitted in antitrust actions); *United States v. Dentsply Int'l, Inc.*, 2000 WL 654286, at *5 (D. Del. May 10, 2000) ("The fact that the United States is the relevant market in this case does not necessarily limit discovery to the United States."). Even where the relevant geographic market has already been defined, "the boundaries of that market do not set the geographic limits of discovery." *Kellam Energy, Inc. v. Duncan*, 616 F. Supp. 215, 219 (D. Del. 1985) (compelling defendant to produce documents beyond the three towns where plaintiff and defendant competed); *see also Natcontainer Corp. v. Cont'l Can Co.*, 362 F. Supp. 1094, 1102 (S.D.N.Y. 1973) (compelling defendant to respond to plaintiff's interrogatories to

[3] In addition, Agilis, which employs people outside of Connecticut, as the leniency applicant, has, in response to Plaintiffs' Consolidated Class Action Complaint, admitted "that it voluntarily participated in an agreement to 'allocate employees constituting a criminal violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, by restricting the hiring and recruiting restrictions of engineers and other skilled labor employees among outsource engineering services companies." Agilis Ans., ECF No. 631, at 1-2.

include information about defendant's operations beyond the three New York-metro locations where plaintiff competed with defendant; defendant admitted they operated 22 plants in the United States); *Prudential New York Theatres Co. v. Radio City Music Hall Corp.*, 271 F. Supp. 762, 763 (S.D.N.Y. 1967) (compelling discovery because "Courts have been hesitant to restrict plaintiff's inquiries to a limited geographical area."). To the contrary, courts generally "have allowed discovery to probe beyond the geographical area at issue." *Cobb Theatres III, LLC v. AMC Ent. Holdings, Inc.*, 2015 WL 10891939, at *2 (N.D. Ga. Nov. 6, 2015) (where plaintiff accused the defendant of "wielding its national market influence to limit competition in the local market at issue," court compelled discovery to allow discovery of defendant's "practices in other markets").

Data on employees outside of Connecticut will help determine which individuals were affected by the conspiracy and is therefore highly relevant to class certification. To the extent employees in certain locations were not affected, their data is relevant as a comparator to establish the impact on those who were.

Contrary to Defendants' assertion below that Plaintiffs "sat on their request for non-Connecticut employee data for ***months***," Plaintiffs consistently have requested, since originally serving our requests for production in June 2022, in both correspondence and in meet-and-confers, that Defendants provide data outside of Connecticut. It was Defendants' choice to not collect all of data Plaintiffs asked for. Indeed, Defendants Belcan, Cyient, and QuEST all represented in correspondence or in meet-and-confers that they would reconsider

their position if Plaintiffs' motion for reconsideration was granted.[4] On June 7, 2023, only eight days from the Court's ruling on the motion for reconsideration, Plaintiffs sent a letter asking Defendants to confirm their position. Defendants have now made clear that they are refusing to produce data from employees outside of Connecticut, despite Judge Nagala's footnote in her ruling on the motion to reconsider, and so this issue is ripe for consideration by the Court.

**Defendants' position**: As Defendants explained during the June 13 discovery conference, Defendants seek finality on this issue and an end to Plaintiffs' shifting requests for more data. As a compromise, Defendants offered to produce six months of additional data from December 13, 2021 through June 30, 2022, as long as Plaintiffs agreed that the data would be limited to the state of Connecticut.

This offer is more than fair. By their terms, Plaintiffs' discovery requests only sought production of data up to the date of service—June 1, 2022. *See, e.g.*, *Hnot v. Willis Group Holdings Ltd.*, No. 01 Civ. 6558(GEL), 2006 WL 2381869, *2 n.4 (S.D.N.Y. Aug. 17, 2006) ("[A] discovery request dated January 16, 2002, for documents extending 'to the present' only requires production of documents in existence on or before January 16, 2002"). Under Defendants' proposal, Plaintiffs would receive thirty days of additional data that their

---

[4] Feb. 28, 2023 letter from Catie Ventura, counsel for Belcan: "If Plaintiffs' request for reconsideration is granted, Belcan will consider whether to revisit its position accordingly at that time."

March 16, 2023 letter from Matthew Perez to counsel for Cyient, recounting the representation made on the March 10, 2023 meet and confer that "Cyient may reconsider its position in the event the Court grants Plaintiffs' pending motion for reconsideration."

Feb. 27, 2023 letter from Zack Zaharoff, counsel for QuEST: "If Plaintiffs' request for reconsideration is granted, QuEST will decide whether to revisit its position accordingly."

discovery requests do not even ask for.

The limitation to Connecticut is also appropriate,[5] and, indeed, necessary in light of Judge Nagala's Motion to Dismiss Order. *See Borozny v. Raytheon Techs. Corp.*, 2023 WL 348323 (D. Conn. Jan. 20, 2023). In her Order, Judge Nagala explained that "Plaintiffs set forth no allegations regarding the national labor market for Aerospace Workers," and thus "failed to show the national aerospace labor market is a plausible market in which competition could be impaired." *Id.* at *11. The Court "construe[d] the relevant geographic market as the state of Connecticut" and found the state of Connecticut to be the only plausible geographic market Plaintiffs alleged. *Id.* at *12. Judge Nagala further held that the Court's analysis with respect to relevant market "relates not only to the rule of reason claim, but to the *per se* allegations, as well." *Id.* at *10 n.6.

Plaintiffs moved for reconsideration of Judge Nagala's finding in footnote 6 of the Motion to Dismiss Order, and the Court denied Plaintiffs' motion on May 30, 2023. *See Borozny v. Raytheon Techs. Corp.*, No. 3:21-CV-1657-SVN, 2023 WL 3719649 (D. Conn. May 30, 2023). Once again, Judge Nagala explained that "Plaintiffs have plausibly alleged only that Defendants' scheme allocated the market for the labor of aerospace employees in the state of Connecticut." *Id.* at *4.

After the Court denied their motion for reconsideration, Plaintiffs sent a letter to

[5] QuEST notes that the outstanding dispute between it and Plaintiffs concerning data for employees who worked on non-Pratt & Whitney projects—which the parties also discussed at the June 13 conference—would likely be resolved if any additional data productions were limited to Connecticut. QuEST has offered to produce all payroll data for all "Aerospace Workers" (as QuEST understands that term as it is used in Plaintiffs' Complaint and RFPs) in the state of Connecticut, regardless of whether they worked on projects for Pratt & Whitney or not. As of the time of this filing, Plaintiffs have rejected that offer.

Defendants claiming that "documents produced by Defendants in this litigation show that the alleged no-poach, non-solicitation conspiracy was not limited only to employees working in Connecticut." Ltr. from Pls. (June 7, 2023). This is something Plaintiffs alleged in their Amended Complaint and argued with respect to Defendants' Motions to Dismiss as well. Am. Compl. ¶ 163 ("[T]he market restrained by Defendants' conduct is the market for the labor services of skilled Aerospace Workers in the United States[ ] . . ."). None of the documents Defendants produced, or the fact that Defendants have numerous employees located in other states that support Pratt & Whitney projects, undermines Judge Nagala's findings in the Court's Order on Defendants' Motion to Dismiss: Plaintiffs have failed to allege a plausible nationwide labor market "in which competition could be impaired." *Borozny*, 2023 WL 348323, at *11.

Plaintiffs essentially are seeking to amend their Complaint without moving for leave to do so,[6] and without actually trying to allege a plausible nationwide geographic market. Moreover, Plaintiffs have sat on their request for non-Connecticut employee data for ***months*** without raising this issue—apparently expecting that Judge Nagala would grant their motion for reconsideration—and with full knowledge that Defendants were limiting their data pulls to employees in Connecticut. Then, even after Judge Nagala made it clear that Plaintiffs had not alleged a relevant market outside of Connecticut, and after Defendants had collected and produced their data, Plaintiffs decided to reassert their request for data outside of Connecticut and expect Defendants to re-collect all of their data based on different parameters. The Court should only require Defendants to produce the additional six months' worth of

[6] The day before this status report was due, Plaintiffs informed Defendants of their plan to move for leave to file an amended complaint.

compensation-related data in the state of Connecticut, the only plausible geographic market that could be inferred from Plaintiffs' allegations.

***2. Plaintiffs' Employment and Job Search Outside of the Aerospace Industry.***

In an effort to avoid unnecessary motion practice, the parties met and conferred on June 21, 2023 regarding a separate, ongoing discovery dispute. Despite their attempts to resolve this issue, the parties are at an impasse over Defendants' request for information and documents concerning Plaintiffs' employment and job search outside of the aerospace industry.

**Plaintiffs' position:** Plaintiffs' Complaint alleges a conspiracy among the Defendants to restrict movement of class members *between and among* the Defendants, which resulted in reduced employment opportunities *among* the Defendants and reduced wages while class members were employed by Defendants. Complaint, ECF No. 385 at ¶ 3. In response to Defendants' request for production and interrogatories, Plaintiffs have provided Defendants with discovery that is broader than those claims, producing discovery relating to the Plaintiffs' employment within the aerospace industry and not just limited to employment by the Defendants. Plaintiffs have also produced documents, including resumes for the named Plaintiffs, which include employment history regardless of industry, and have represented to Defendants during a June 21, 2023 meet and confer that Plaintiffs will not prevent Defendants from asking questions about the Named Plaintiffs' employment during depositions.

Despite Plaintiffs' compromises, Defendants still insist that Plaintiffs "produce documents and provide information relating to their work and employment histories, including efforts to find other employment, throughout the period at issue in this case." But where the named Plaintiffs worked before and after their employment with one or more of the

Defendants is not relevant to the allegations in this case nor the impact and damages to the Class. And Defendants have made no effort to limit their request that discovery include any job or position the named Plaintiffs sought or held regardless of whether it was in any way connected to the type of work performed by the Plaintiffs during their employment with the Defendants.

**Defendants' position:** In their Complaint, Plaintiffs allege that the relevant product market consists of "Aerospace Workers," Am. Compl. ¶ 163, a vague term that Plaintiffs continue to refuse to clarify. The Complaint alleges that Aerospace Workers cannot "easily transition to work outside of aerospace engineering firms" after entering this segment of the labor market and gaining experience in the area. *Borozny*, 2023 WL 348323, at *12; *see also* Am. Compl. ¶¶ 22-30.

In an effort to explore these allegations, Defendants have requested that Plaintiffs produce documents and provide information relating to their work and employment histories, including efforts to find other employment, throughout the period at issue in this case. As Defendants have explained to Plaintiffs throughout their extensive meet-and-confer efforts, through these requests for documents and information not limited to employment in the aerospace industry, Defendants seek no more (and no less) than a fair opportunity to probe Plaintiffs' core allegations that they are unable to "easily transition" away from "aerospace engineering." *Borozny*, 2023 WL 348323, at *12. As research of publicly available information has revealed, many of the Named Plaintiffs appear to have been able to easily transition to roles outside of aerospace engineering. And as this Court has itself stated, "development of a full factual record" on this point is essential. *Id.*

Yet Plaintiffs have objected and have refused to turn over these materials. They have also refused to fully respond to Defendants' interrogatory requests on the same basis. The

nine Named Plaintiffs in this case are *uniquely* well-suited to review their own personal files and produce their own employment-related documents. Requiring them to do so is hardly disproportionate to the needs of this case. In just a few months, these particular Plaintiffs presumably will be seeking the Court's approval to serve as class representatives; if answering interrogatories and locating and producing their own employment documents is too burdensome for these Plaintiffs, they may need to reassess their role in this lawsuit.

Defendants respectfully request that the Court order Plaintiffs to respond in full to Defendants' requests for documents and interrogatories relating to their employment histories, to include the Named Plaintiffs' employment and job search outside of the aerospace industry. To the extent the Court would benefit from further briefing on this issue, Defendants are prepared to file a motion to compel in short order.

Dated: June 27, 2023

By: */s/ Robin A. van der Meulen*
Gregory S. Asciolla (phv02599)
Robin A. van der Meulen (phv09139)
Matthew J. Perez (phv06870)
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel.: (646) 933-1000
gasciolla@dicellolevitt.com
rvandermeulen@dicellolevitt.com
mperez@dicellolevitt.com

By: /s/ *Daniel L. Brockett*
Daniel L. Brockett (phv20450)
Manisha M. Sheth (phv01061)
Steig D. Olson (phv06391)
Thomas Lepri (phv20453)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel.: (212) 849-7000
danbrockett@quinnemanuel.com
manishasheth@quinnemanuel.com
steigolson@quinnemanuel.com
thomaslepri@quinnemanuel.com

Justin Reinheimer (phv20572)
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel.: (415) 875-6600
justinreinheimer@quinnemanuel.com

*Interim Co-Lead Counsel for the Class*

By: */s/ Erica O. Nolan*
David A. Slossberg (ct13116)
Erica O. Nolan (ct31097)
Timothy C. Cowan (ct30786)
Kyle A. Bechet (ct31299)
**HURWITZ SAGARIN SLOSSBERG & KNUFF, LLC**
147 North Broad Street
Milford, CT 06460
Tel.: (203) 877-8000
dslossberg@hssklaw.com
enolan@hssklaw.com
tcowan@hssklaw.com
kbechet@hssklaw.com

By: */s/ Joshua R. Goodbaum*
Joseph D. Garrison (ct04132)
Stephen J. Fitzgerald (ct22939)
Joshua R. Goodbaum (ct28834)
Amanda M. DeMatteis (ct29413)
**GARRISON, LEVIN-EPSTEIN, FITZGERALD & PIRROTTI, P.C.**
405 Orange Street
New Haven, CT 06511
Tel.: (203) 777-4425
jgarrison@garrisonlaw.com
sfitzgerald@garrisonlaw.com
jgoodbaum@garrisonlaw.com
adematteis@garrisonlaw.com

*Local Counsel for Plaintiffs*

By: */s/ Sima Namiri-Kalantari*
Sima Namiri-Kalantari (phv206721)
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: (213) 622-4750
Facsimile: (213) 622-2690
Email: SNamiri@crowell.com

Chahira Solh (phv20470)
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614
Telephone: (949) 263-8400
Facsimile: (949) 263-8414
Email: CSolh@crowell.com

Kent Gardiner (phv ct15260)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
Email: KGardiner@crowell.com

John W Cerreta (ct28919)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Telephone: (860) 275-0665
Facsimile: (860) 881-2517
Email: jcerreta@daypitney.com

*Counsel for Raytheon Technologies Corporation, Pratt & Whitney Division*

By: */s/ Niall Lynch*
Niall E. Lynch (phv206783)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: niall.lynch@lw.com

Elizabeth Prewitt (phv206784)
Anna M. Rathbun (phv10682)
Daniel J. Blackman (phv206785)
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: elizabeth.prewitt@lw.com
anna.rathbun@lw.com
daniel.blackman@lw.com

Thomas V. Daily (ct03467)
REID AND RIEGE, P.C.
One Financial Plaza
755 Main Street, 21st floor
Hartford, CT 06103-3185
Telephone: (860) 240-1067
Facsimile: (860) 240-1002
Email: tdaily@reidandriege.com

*Counsel for QuEST Global Services-NA, Inc.*

By: */s/ Catie Ventura*
Catie Ventura (phv20424)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 389-5907
Email: catie.ventura@kirkland.com

James H. Mutchnik (phv20423)
KIRKLAND & ELLIS LLP
300 N LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Email: jmutchnik@kirkland.com

Patrick A. Klingman (ct17813)
KLINGMAN LAW, LLC
280 Trumbull Street, Floor 21
Hartford, CT 06103-3514
Telephone: (860) 256-6120
Email: pak@klingmanlaw.com

*Counsel for Belcan Engineering Group, LLC*

By: */s/ John J. Robinson*
John J. Robinson (ct14802)
Kelcie B. Reid
Mitchell L. Fishberg
GORDON REES SCULLY MANSUKHANI, LLP
95 Glastonbury Boulevard, Suite 206
Glastonbury, CT 06033
Telephone: (860) 494-7505
Facsimile: (860) 560-0185
Email: jjrobinson@grsm.com
kreid@grsm.com
mfishberg@grsm.com

*Counsel for Parametric Solutions, Inc.*

By: */s/ Leo Caseria*
Leo Caseria (phv20459)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006
Telephone: (202) 747-1900
Facsimile: (202) 747-1901
Email: lcaseria@sheppardmullin.com

James M. Moriarty (ct21876)
ZEISLER & ZEISLER, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
Telephone: (203) 368-4234
Facsimile: (203) 549-0907
Email: jmoriarty@zeislaw.com

Robert S. Friedman (ct31256)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 653-8700
Facsimile: (212) 652-8701
Email: rfriedman@sheppardmullin.com

Sascha Henry (phv207155)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
333 South Hope Street
Forty-Third Floor
Los Angeles, CA 90071
Telephone: (213) 617-5562
Facsimile: (213) 620-1398
Email: shenry@sheppardmullin.com

*Counsel for Cyient, Inc.*

**FILER ATTESTATION**

I, Erica O. Nolan, hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

*/s/ Erica O. Nolan*
Erica O. Nolan