## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

TARAH KYE BOROZNY, et al., on behalf
of themselves and all others similarly
situated,

                     Plaintiffs,

    v.

RTX CORPORATION, PRATT &
WHITNEY DIVISION, et al.,

                    Defendants.

Case No. 3:21-cv-1657-SVN

Date:  December 18, 2024

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH RTX CORPORATION, PRATT & WHITNEY DIVISION

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

    A.  Plaintiffs' Claims and Procedural Background ........................................................ 2

        1.  Initial Complaints, Consolidation, and Defendants' Motions to Dismiss .............................................................................................................. 3

        2.  Discovery Efforts in This Litigation ............................................................... 4

        3.  Motion for Leave to Amend CAC ................................................................... 6

        4.  Motion for Class Certification ......................................................................... 6

    B.  Settlement Negotiations and the Proposed Settlement ............................................ 7

ARGUMENT ......................................................................................................................... 8

I.    THE REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS HAVE BEEN MET ........................................................................................................ 8

    A.  All Requirements of Rule 23(a) Are Satisfied for the Purposes of the Settlement ............................................................................................................. 10

        1.  The Class is Sufficiently Numerous ............................................................. 10

        2.  There Are Common Questions of Law and Fact ........................................... 10

        3.  Plaintiffs' Claims Are Typical of the Class .................................................. 11

        4.  Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class ...................................................................................................... 12

    B.  All Requirements of Rule 23(b)(3) Are Satisfied for Purposes of the Settlement ............................................................................................................. 12

        1.  Common Issues Predominate as to the Antitrust Violation ........................... 13

        2.  Common Issues Predominate as to Impact .................................................... 14

        3.  Common Issues Predominate as to Damages ................................................ 18

        4.  A Class Action is Superior to Other Methods of Adjudication ..................... 19

II.   THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL .............................................................................. 20

A. The Settlement Is Procedurally Fair ....................................................................... 21

B. The Settlement Is Substantively Fair .................................................................... 23

    1. Costs, Risks, and Delay of Trial and Appeal (*Grinnell* Factors #1, #4, #5, #6) ...................................................................................................... 24

    2. The Effectiveness of the Proposed Method of Distributing Relief to the Class ...................................................................................................... 26

    3. The Terms of Any Proposed Award of Attorneys' Fees ............................... 27

    4. Any Agreement Required to Be Identified Under Rule 23(e)(3) .................. 27

    5. Range of Reasonableness (*Grinnell* Factor #9) ......................................... 27

C. Other Relevant Factors Support Preliminary Approval ........................................... 28

    1. Stage of the Proceedings (*Grinnell* Factor #1) ......................................... 28

    2. Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor #7) ...................................................................................................... 29

D. The Proposed Form and Manner of Notice Are Appropriate and A.B. Data Is a Well-Qualified Notice and Claims Administrator ...................................................... 29

E. Huntington National Bank Is an Appropriate Escrow Agent ..................................... 31

F. The Proposed Schedule Is Fair ............................................................................. 32

CONCLUSION ............................................................................................................. 33

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) .................................................................................................... 9, 13

*Atwood v. Intercept Pharm., Inc.*,
  299 F.R.D. 414 (S.D.N.Y. 2014) ....................................................................................... 11

*Christine Asia Co., Ltd. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ..................................................................... 21

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ...................................................................................... passim

*Cordes & Co.. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007) ............................................................................................... 12

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ............................................................................................... 29

*Dial Corp. v. News Corp.*,
  314 F.R.D. 108 (S.D.N.Y. 2015) ....................................................................................... 11

*Edwards v. N. Am. Power & Gas, LLC*,
  2018 WL 1582509 (D. Conn. Mar. 30, 2018) ...................................................................... 9

*Fleisher v. Phoenix Life Ins. Co.*,
  2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) .................................................................... 25

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ...................................................................................... 27

*Hart v. Rick's Cabaret Int'l, Inc.*,
  60 F. Supp. 3d 447 (S.D.N.Y. 2014) .................................................................................. 19

*Hickory Secs. Ltd. v. Republic of Argentina*,
  493 F. App'x 156 (2d Cir. 2012) ....................................................................................... 18

*In re Aggrenox Antitrust Litig.*,
  2018 WL 1183734 (D. Conn. Mar. 6, 2018) ...................................................................... 30

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) ................................................................ 14, 28

*In re Am. Int'l Grp. Sec. Litig.*,
  689 F.3d 229 (2d Cir. 2012) ......................................................................................... 9, 13

*In re AOL Time Warner, Inc.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................................................. 29

*In re Broiler Chicken Antitrust Litig.*,
  2022 WL 1720468 (N.D. Ill. May 27, 2022) ...................................................... 15, 30

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
  2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020) ......................................................... 9

*In re Currency Conversion Fee Antitrust Litig.*,
  263 F.R.D. 110 (S.D.N.Y. 2009) ..................................................................... 25, 28

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992) ............................................................................. 12

*In re Elec. Books Antitrust Litig.* ("*E-Books*"),
  2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) ....................................................... 15

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
  256 F.R.D. 82 (D. Conn. 2009) ....................................................... 14, 15, 18, 20

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009) .............................................................................. 11

*In re Frontier Commc'ns Corp.*,
  2022 WL 4080324 (D. Conn. May 20, 2022) ................................................... 12, 25

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................... 25

*In re GSE Bonds Antitrust Litig.*,
  No. 19-cv-1704 (S.D.N.Y. Nov. 4, 2019) ........................................................... 30

*In re High-Tech Employee Antitrust Litig.*,
  985 F. Supp. 2d 1167 (N.D. Cal. 2013) ...................................................... 14, 16, 17

*In re IMAX Sec. Litig.*,
  2012 WL 2359653, (S.D.N.Y. June 20, 2012) ........................................................ 8

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  327 F.R.D. 483 (S.D.N.Y. 2018) ....................................................................... 31

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003) ................................................................. 25

*In re Namenda Indirect Purchaser Antitrust Litig.*,
  338 F.R.D. 527 (S.D.N.Y. 2021) ................................................................... 13, 18

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
169 F.R.D. 493 (S.D.N.Y. 1996) ........................................................................ 14

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y.1997) ........................................................................... 21

*In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998) ........................ 26

*In re Nat'l Football Lague Players' Concussion Inj. Litig.*,
307 F.R.D. 351 (E.D. Pa. 2015), *aff'd,* 821 F.3d 410 (3d Cir. 2016) ................................. 9, 13

*In re Novartis and Par Antitrust Litig.*,
No. 18-cv-4361 (S.D.N.Y. May 18, 2023) ........................................................... 32

*In re PaineWebber Ltd. Partnerships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd,* 117 F.3d 721 (2d Cir. 1997) ................................. 28

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
2012 WL 12929536 (E.D.N.Y. Nov. 27, 2012) .............................................. 9, 25, 31

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................... 27, 28

*In re Petrobras Sec. Litig.*,
317 F. Supp. 3d 858 (S.D.N.Y. 2018) ................................................................ 13

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) ...................................................................... 12

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
335 F.R.D. 1 (E.D.N.Y. 2020) ....................................................................... 18

*In re Scotts EZ Seed Litig.*,
304 F.R.D. 397 (S.D.N.Y. 2015) ..................................................................... 20

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
2012 WL 3589610 (D. Conn. Aug. 20, 2012) ......................................................... 8

*In re Traffic Executive Association–Eastern Railroads*,
627 F.2d 631 (2d Cir.1980) ......................................................................... 21

*In re U.S. Foodservice Inc. Pricing Litigation*,
729 F.3d 108 (2d Cir. 2013) ....................................................................... 9, 13

*In re Warner Chilcott Ltd. Sec. Litig.*,
2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ......................................................... 24

*Iowa Pub. Employees' Ret. Sys. v. Bank of Am. Corp.*,
2022 WL 2829880 (S.D.N.Y. June 30, 2022) ......................................................... 19

*Johnson v. Nextel Commc'ns Inc.*,
  780 F.3d 128 (2d Cir. 2015) ....................................................................... 10

*McReynolds v. Richards-Cantave*,
  588 F.3d 790 (2d Cir. 2009) ....................................................................... 22

*Menkes v. Stolt-Nielsen S.A.*,
  270 F.R.D. 80 (D. Conn. 2010) ............................................................ 21, 23

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002) ..................................................................... 13

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012) ........................................................ 27

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) .................................................................................... 29

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ....................................................................... 27

*Nichols v. Noom, Inc.*,
  2022 WL 2705354 (S.D.N.Y. July 12, 2022) ............................................. 20

*Nitsch v. DreamWorks Animation SKG Inc.*,
  315 F.R.D. 270 (N.D. Cal. 2016) ................................................... 11, 15, 17

*O'Connor v. AR Res., Inc.*,
  2010 WL 1279023 (D. Conn. Mar. 30, 2010) ............................................ 20

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) ....................................................................... 16

*Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*,
  772 F.3d 111 (2d Cir. 2014) ....................................................................... 10

*Phila. v. Bank of Am. Corp.*,
  2023 WL 6160534 (S.D.N.Y. Sept. 21, 2023) ............................................ 15

*Raymond v. Rowland*,
  220 F.R.D. 173 (D. Conn. 2004) ................................................................ 10

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
  237 F.R.D. 26 (E.D.N.Y. 2006) .................................................................. 23

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015) ....................................................................... 13

*Ruzhinskaya v. Healthport Techs., LLC*,
    311 F.R.D. 87 (S.D.N.Y. 2015) ............................................................... 20

*Simerlein v. Toyota Motor Corp.*,
    2019 WL 2417404 (D. Conn. June 10, 2019)................................. 21, 28, 29

*Spencer v. Hartford Fin. Servs. Grp., Inc.*,
    256 F.R.D. 284 (D. Conn. 2009) ........................................................... 12

*Tsereteli v. Residential Asset Securitization Tr. 2006-A8*,
    283 F.R.D. 199 (S.D.N.Y. 2012) ........................................................... 11

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)................................................................... 16, 18

*United States v. Patel*,
    2023 WL 3143911 (D. Conn. Apr. 28, 2023)............................................ 26

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)........................................................................... 10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) .................................................................. 22

*Wilson v. DirectBuy, Inc.*,
    2011 WL 2050537 (D. Conn. May 16, 2011).......................................... 22

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
    401 U.S. 321 (1971)........................................................................... 20

**Other Authorities**

Federal Rule of Civil Procedure 23 ................................................... passim

Joshua Davis & Rose Kohles Clark, *2022 Antitrust Annual Report: Class Actions
    in Federal Court* (September 28, 2023)................................................. 30

Manual for Complex Litigation (4th ed. 2023)......................................... 29

## INTRODUCTION

After nearly three years of hard-fought litigation, Plaintiffs have reached a settlement with RTX Corporation, Pratt & Whitney Division ("Pratt & Whitney"). The settlement agreement between Plaintiffs and Pratt & Whitney (the "Settlement Agreement") is attached as Exhibit 1 to the Joint Declaration of Daniel L. Brockett and Gregory S. Asciolla, filed herewith (the "Joint Decl."). Pratt & Whitney has agreed to pay $34,000,000 in exchange for dismissal of the litigation with prejudice and certain releases. The settlement will resolve all the claims of the proposed class, as defined below (the "Class" or "Settlement Class"), against Pratt & Whitney. The payment will be deposited into an escrow account (the "Settlement Fund") pending final approval of the settlement by the Court. Plaintiffs previously reached settlements with each of the five Outsourcing Defendants in this case for a total of $26.5 million (*see* ECF No. 953) and, together with this settlement, have now secured a total of $60,500,000 for the benefit of Class members.[1] Upon final approval of each of the settlements, all claims against all Defendants in this case will be resolved.

The Settlement Agreement is the result of arm's length negotiations by counsel experienced in antitrust class actions and provides substantial, immediate relief to the Class.

---

[1] On July 12, 2024, Plaintiffs filed a motion for Preliminary Approval of Proposed Settlements with Defendants Cyient, Inc. ("Cyient"), Agilis Engineering, Inc. ("Agilis"), Parametric Solutions, Inc. ("PSI"), Belcan Engineering Group LLC ("Belcan"), and QuEST Global Services N.A., Inc. ("QuEST"), and moved for entry of a [Proposed] Order Preliminarily Approving Settlements, which provided for: (i) preliminary approval of the Settlement Agreements with Outsourcing Defendants Cyient, Agilis, PSI, Belcan, and QuEST; (ii) conditional certification of the Settlement Class; (iii) appointment of DiCello Levitt LLP and Quinn Emanuel Urquhart & Sullivan LLP as Class Counsel; (iv) appointment of the Named Plaintiffs as Class Representatives; (v) preliminary approval of the Plan of Allocation; (vi) appointment of A.B. Data as the Settlement Administrator and approval of form and manner of notice to the Class; and (vii) appointment of Huntington Bank as the Escrow Agent. ECF Nos. 952, 953. Plaintiffs respectfully request that the Court consider the prior preliminary approval motion together with this one to promote efficiency for the Parties, the Court and Class, thus allowing for a single schedule for notice to the class; opt-out, exclusion and claims filing deadlines; briefing schedule for final approval and fee/expense application; and schedule for the fairness hearing.

Accordingly, Plaintiffs submit that the Settlement Agreement is fair, adequate, and reasonable. The Court should therefore enter an Order: (i) granting preliminary approval of the Settlement Agreement, (ii) conditionally certifying the Settlement Class, (iii) appointing DiCello Levitt LLP and Quinn Emanuel Urquhart & Sullivan, LLP as Class Counsel, (iv) appointing the Named Plaintiffs Tarah Kye Borozny, Anthony DeGennaro, Ryan Glogowski, Ellen McIsaac, Scott Prentiss, Alex Scales, Austin Wade-Jones, Nicholas Wilson, and Steven Zappulla as Class Representatives, (v) preliminarily approving the Plan of Allocation, (vi) appointing A.B. Data as Settlement Administrator and approving the form and manner of notice to the Class, and (vii) appointing Huntington Bank as Escrow Agent.[2]

## BACKGROUND

### A.    Plaintiffs' Claims and Procedural Background

Plaintiffs are current and former employees of Defendants who worked on projects for Pratt & Whitney. Pratt & Whitney manufactures jet engines for commercial and military aircraft. Agilis, Belcan, Cyient, QuEST, and PSI (collectively, the "Outsourcing Defendants") are suppliers of engineering services to Pratt & Whitney. Plaintiffs allege that Defendants are competitors in the market to hire and retain aerospace engineers and other skilled workers. Plaintiffs allege that Defendants conspired to restrict the recruitment and hiring (or "poaching") of each other's employees in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. *See* First Amended Consolidated Class Action Complaint, ECF No. 751 (the "FAC"), ¶¶ 184-207.

---

[2] The motion for preliminary approval of the prior settlements also requested the same Settlement Administrator be appointed (A.B. Data), the same Escrow Agent be appointed (Huntington Bank), and the same Plan of Allocation be approved. As such, we have re-submitted the same materials as part of this motion. *See* Joint Decl., Ex. 2 (Plan of Allocation), Ex. 3 (Declaration of A.B. Data). The form of notice to the class has also been re-submitted and revised to include details of the Pratt & Whitney settlement. *See* Ex. 3.

The allegations include (i) an agreement among the Outsourcing Defendants and Pratt & Whitney, primarily enforced by Pratt & Whitney, for the Outsourcing Defendants to refrain from recruiting or hiring each other's employees, *see id.* ¶¶ 75-98, (ii) an agreement between Pratt & Whitney and the Outsourcing Defendants that Pratt & Whitney would not recruit or hire employees from the Outsourcing Defendants without their prior written agreement (or "concurrence"), *see id.* ¶¶ 99-115, and (iii) additional bilateral agreements between Pratt & Whitney and certain of the Defendants that limited Pratt & Whitney's ability to recruit and hire employees of that Defendant. *See id.* Plaintiffs allege that the conspiracy restrained competition for aerospace workers, thereby suppressing employee compensation. *See id.* ¶¶ 116-32.

Pratt & Whitney disputed and continues to dispute these allegations.

### 1. Initial Complaints, Consolidation, and Defendants' Motions to Dismiss

This action was initiated on December 14, 2021. ECF No. 1. More than thirty cases were filed in the weeks that followed, alleging substantially the same facts. The cases were then consolidated with the first-filed action, and on March 11, 2022, the Court appointed DiCello Levitt LLP and Quinn Emanuel Urquhart & Sullivan LLP interim co-lead counsel for the putative class, along with local Connecticut counsel from Hurwitz Sagarin Slossberg & Knuff, LLC and Garrison, Levin-Epstein, Fitzgerald & Pirotti P.C. ECF No. 333; Joint Decl. ¶¶ 7-8. On May 9, 2022, Plaintiffs filed their Consolidated Class Action Complaint ("CAC"). ECF No. 385; Joint Decl. ¶ 9.

On July 8, 2022, the Outsourcing Defendants and Pratt & Whitney filed separate motions to dismiss, and QuEST filed a motion to compel arbitration. ECF Nos. 465, 466, and 467. Plaintiffs filed a consolidated opposition to Defendants' motions to dismiss and a partial opposition to QuEST's motion to compel arbitration. ECF Nos. 524 and 525. Defendants filed

their respective replies on October 3, 2022, ECF Nos. 540 and 541, and the Court held oral argument on November 16, 2022. ECF No. 569; Joint Decl. ¶ 12. On January 20, 2023, the Court denied Defendants' motions to dismiss, finding that Plaintiffs had pleaded a violation of the antitrust laws under both the *per se* and rule of reason standards. ECF No. 582; Joint Decl. ¶ 13. In addition, while the Court granted QuEST's motion to compel arbitration, it agreed with Plaintiffs that the question of whether the clauses at issue compelled non-class arbitration was a matter for the arbitrator. Accordingly, the Court denied QuEST's request to compel Plaintiffs to commence arbitration. ECF No. 583; Joint Decl. ¶ 13.

On January 27, 2023, Plaintiffs moved for reconsideration of footnote 6 in the Court's motion to dismiss order, which limited the relevant geographic market for Plaintiffs' *per se* and rule of reason claims to the State of Connecticut. ECF No. 584; Joint Decl. ¶ 14. The Court denied that motion, but ultimately held that its prior ruling was not intended to limit the geographic scope of discovery or the Class definition. ECF No. 647.

## 2. Discovery Efforts in This Litigation

Plaintiffs undertook extensive party and non-party discovery, serving their first set of document requests to Defendants on June 1, 2022. Joint Decl. ¶ 11. In response to those requests and subsequent meet and confers, Defendants produced over 400,000 documents. *Id.* In addition, Plaintiffs served two sets of interrogatories on Defendants, the first on February 3, 2023 and the second on July 17, 2023, to which Defendants responded. *Id.* Plaintiffs also served third-party discovery on EMSI/Burning Glass, CDI Corp., MTU Aero Engines North America, Inc., and RGBSI Aerospace & Defense LLC. *Id.* All totaled, Plaintiffs reviewed and analyzed thousands of documents produced by Defendants and third parties.

Defendants served their own document requests and interrogatories on Plaintiffs on October 6, 2022 and March 24, 2023, respectively. *Id*. Plaintiffs reviewed these requests and interrogatories with Named Plaintiffs and prepared responses and objections. Plaintiffs produced over 76,000 documents and provided over 85 pages of detailed responses to Defendants' interrogatories. *Id*.

When discovery disputes arose, Plaintiffs litigated those disputes for the benefit of the Class. For example, on May 12, 2023, Plaintiffs filed motions to compel against all Defendants concerning the geographic and temporal scope of their structured data productions and also filed a motion to compel against QuEST regarding its attempted use of arbitration clauses to block relevant discovery. ECF Nos. 636, 637, 638, 639, 640, 641. Defendants filed their oppositions on June 2, 2023. ECF Nos. 649, 650, 651, 652. On June 7, 2023, Defendants moved for a protective order seeking to stay indefinitely depositions noticed by Plaintiffs based on the pending Department of Justice criminal case against Defendants involving the same conduct. ECF No. 656. Defendants also requested a court order compelling Plaintiffs to provide additional information concerning their employment backgrounds. ECF No. 681.

The parties participated in two hearings before Judge Robert Spector regarding these discovery disputes, one on June 13, 2023 and another on August 4, 2023. ECF Nos. 673, 705. Plaintiffs were largely successful in obtaining substantial relief on their motions. During the June 13, 2023 hearing, Plaintiffs successfully argued that Defendants' request for a protective order was improper and that the noticed depositions (and additional to-be-noticed depositions) should proceed without further delay. ECF No. 673 (minute order). And on August 9, 2023, Judge

Spector largely granted Plaintiffs' motions and required Defendants to produce more structured data in response to Plaintiffs' discovery requests. ECF No. 705.[3]

Depositions in this matter began in late summer 2023. Over the summer and fall, Plaintiffs took 15 depositions of Defendants' current and former employees. Joint Decl. ¶ 22. In addition, Plaintiffs' counsel prepared and defended the depositions of each of the nine Named Plaintiffs. *Id.* These depositions were mostly in-person and occurred all over the United States. *Id.* On May 31, 2024, Plaintiffs noticed three additional fact depositions of Pratt & Whitney employees, the first of which took place on August 23, 2024. The other two depositions were cancelled after Plaintiffs and Pratt & Whitney reached an agreement in principle to settle the case.

### 3. Motion for Leave to Amend CAC

On June 30, 2023, Plaintiffs moved for leave to amend their complaint to include additional allegations of a broader geographic market encompassing all states where Defendants employ Aerospace Workers. ECF No. 684.[4] On August 4, 2023, Defendants opposed the motion (ECF No. 703), and on August 18, 2023, Plaintiffs filed their reply (ECF No. 718). On October 4, 2023, the Court held oral argument on Plaintiffs' motion to amend. ECF No. 735. On October 26, 2023, the Court granted Plaintiffs' motion (*see* ECF No. 748), and on November 2, 2023, Plaintiffs filed the First Amended Complaint ("FAC") (ECF No. 751).

### 4. Motion for Class Certification

On November 13, 2023, Plaintiffs filed their motion for class certification, along with the supporting Expert Report of Hal J. Singer, Ph.D. (the "Singer Rpt."). ECF Nos. 756, 757-1.

---

[3] Judge Spector granted in part Defendants' motion to compel but limited Defendants' relief to discovery of the Named Plaintiffs' employment history for the period from January 2011 to June 30, 2022.

[4] On August 4, 2023, PSI provided notice of its bankruptcy filing. ECF No. 701. The Court entered a stay of the claims against PSI shortly thereafter. ECF No. 712.

Plaintiffs prepared for and defended Dr. Singer's deposition on January 12, 2024. Defendants (excluding Cyient, which by this time had reached settlement terms with Plaintiffs) filed their opposition to the motion for class certification on January 29, along with rebuttal reports from experts Drs. Johnson and Snyder. Defendants (excluding Cyient) also filed a motion to preclude certain of Dr. Singer's opinions. ECF No. 877.

Plaintiffs deposed Dr. Johnson and Dr. Snyder on February 28, 2024 and March 14, 2024, respectively. On April 8, 2024, Plaintiffs filed their reply in support of class certification and opposition to Defendants' motion to preclude. ECF Nos. 896-1, 897. Pratt & Whitney took an additional deposition of Dr. Singer on May 8, 2024. On May 13, 2024, Pratt & Whitney filed its reply in support of Pratt & Whitney's motion to exclude certain opinions of Dr. Singer, along with a new motion to preclude portions of Plaintiffs' rebuttal expert report or, in the alternative, for leave to file a sur-reply and surrebuttal expert report. ECF Nos. 934-1, 934-3, 934-5. Plaintiffs filed their opposition to the motion to preclude testimony or for leave to file a sur-reply on June 3, 2024. On July 16, 2024, the Court denied Pratt & Whitney's motion to preclude Plaintiffs' rebuttal report but granted the motion to file a sur-reply to the class certification motion and surrebuttal expert report. ECF No. 956.

The Court held a hearing on the class certification motion on August 8, 2024.

**B.  Settlement Negotiations and the Proposed Settlement**

The Parties began settlement negotiations in May, 2024, and they continued for several months. Negotiations intensified following the class certification hearing. Negotiations between Plaintiffs and Pratt & Whitney were robust and conducted at arm's length. Interim Class Counsel relied on their substantial experience litigating antitrust class actions and took into account the substantial discovery taken to date, the pending class certification motion and expert reports, expected summary judgment motions, the relevant case law, and the opinions issued by this

Court. The Settlement Agreement secures substantial and immediate monetary relief for the Class and represents an excellent outcome considering the risks of proceeding to trial.

The parties reached an agreement in principle on August 28, 2024, and executed the final Settlement Agreement on December 5, 2024. Joint Decl. ¶ 33 & Ex. 1. In exchange for dismissal of the case with prejudice and the release of claims relating to same conduct (*see* Ex. 1 ¶ 52), Pratt & Whitney has agreed to pay $34,000,000.00 into a Settlement Fund for the benefit of the Class (Joint Decl. ¶ 35).

## ARGUMENT

Federal Rule of Civil Procedure 23(e) governs preliminary approval of class action settlements. If the parties can show that the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for the purposes of judgment on the proposal," Fed. R. Civ. P. 23(e)(1)(B), then preliminary approval is appropriate. Here, the proposed Settlement Agreement meets the requirements of Rule 23(e)(2), and the proposed Class satisfies Rules 23(a) and 23(b)(3). Accordingly, the Court should grant preliminary approval and order that notice of the settlement be provided to the Settlement Class.

## I.     THE REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS HAVE BEEN MET

"Certification of a settlement class has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, 2012 WL 3589610, at *9 (D. Conn. Aug. 20, 2012) (quoting *In re IMAX Sec. Litig.*, 2012 WL 2359653, at *6 (S.D.N.Y. June 20, 2012)). The requirements of Rule 23 are the same to certify a settlement class as they are to certify a class for litigation, but the standard is not, because courts "need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be

no trial." *In re Am. Int'l Grp. Sec. Litig.*, 689 F.3d 229, 239 (2d Cir. 2012) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). In particular, the predominance requirement is often "easier to satisfy in the settlement context," *Am. Int'l Grp.*, 689 F.3d at 240, because "settlement itself allows common issues to predominate." *In re Nat'l Football Lague Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 381 (E.D. Pa. 2015), *aff'd,* 821 F.3d 410 (3d Cir. 2016); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 56 (E.D.N.Y. 2019) ("Because predominance and manageability overlap, the existence of a settlement that eliminates manageability problems can alter the outcome of the predominance analysis.") (cleaned up).

Preliminary approval of a settlement class is appropriate where the Court is likely to certify the class for the purposes of settlement under Rules 23(a) and (b). "The Second Circuit has directed district courts to interpret Rule 23 liberally, to maximize the benefits to both private parties and to the public provided by class actions." *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2020 WL 1329354, at *2 (S.D.N.Y. Mar. 23, 2020). "Preliminary certification is appropriate [where, as here,] claims . . . would 'focus predominantly on common evidence.'" *Edwards v. N. Am. Power & Gas, LLC*, 2018 WL 1582509, at *5 n.2 (D. Conn. Mar. 30, 2018) (quoting *In re U.S. Foodservice Inc. Pricing Litigation*, 729 F.3d 108, 125 (2d Cir. 2013)).

Plaintiffs and Pratt & Whitney have agreed, subject to the Court's approval, to the certification of the following proposed Class for the purposes of settlement:

> All persons employed by Pratt & Whitney, Agilis, Belcan, Cyient, PSI, QuEST, or their wholly-owned subsidiaries as Aerospace Workers at any time from January 1, 2011 through the date the Court grants Preliminary Approval of the Settlement. "Aerospace Workers" are defined as aerospace engineers and other skilled workers in the jet propulsion systems industry. Excluded from the Class are Defendants and their affiliates, parents, subsidiaries, and co-conspirators, whether or not named in the Complaint, senior officers and directors, and human resources personnel of Defendants, and the United States government.

For the reasons set forth below, the proposed Class meets the requirements of Rule 23(a) and Rule 23(b)(3), and the Court should therefore preliminarily certify the proposed Class for the purposes of the Settlement.

## A.    All Requirements of Rule 23(a) Are Satisfied for the Purposes of the Settlement

Rule 23(a) permits an action to be maintained as a class action if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

### 1.    The Class is Sufficiently Numerous

In this Circuit, "[n]umerosity is presumed for classes larger than forty members." *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co*., 772 F.3d 111, 120 (2d Cir. 2014). This requirement is easily met here, as the proposed Class includes thousands of employees. *See, e.g.,* Singer Rpt. ¶¶ 118-19.

### 2.    There Are Common Questions of Law and Fact

Commonality "simply requires that there be issues whose resolution will affect all or a significant number of the putative class members." *Johnson v. Nextel Commc'ns Inc*., 780 F.3d 128, 137 (2d Cir. 2015). "The test for commonality is not demanding and is met so long as there is at least one issue common to the class." *Raymond v. Rowland*, 220 F.R.D. 173, 179 (D. Conn. 2004) (internal quotation marks and citations omitted); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("Even a single common question will do.") (cleaned up).

Here, Plaintiffs' claims present many common issues of law and fact, including:

- Did Defendants agree to restrict the recruitment and hiring of each other's employees?

- How long did the conspiracy last?

- Did Defendants' agreement suppress the wages paid to Class members?

- Did Defendants' conduct violate Section 1 of the Sherman Act?

- What are the appropriate measures of class-wide harm for Plaintiffs' claims?

Each of these questions satisfies Rule 23(a)'s commonality requirement. *See Nitsch v. DreamWorks Animation SKG Inc.*, 315 F.R.D. 270, 283 (N.D. Cal. 2016) (commonality satisfied in no-poach case where "the adjudication of Defendants' alleged antitrust violation will turn on overwhelmingly common legal and factual issues.") (cleaned up).

### 3. Plaintiffs' Claims Are Typical of the Class

The typicality requirement under Rule 23(a)(3) is "not demanding." *Tsereteli v. Residential Asset Securitization Tr. 2006-A8*, 283 F.R.D. 199, 208 (S.D.N.Y. 2012) (cleaned up; *Dial Corp. v. News Corp.*, 314 F.R.D. 108, 115 (S.D.N.Y. 2015) (similar). "The typicality threshold is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise." *Atwood v. Intercept Pharm., Inc.*, 299 F.R.D. 414, 416 (S.D.N.Y. 2014) (cleaned up). It requires only that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (cleaned up).

Here, typicality is satisfied because each Class member's claims arise from the same alleged conspiracy, which Plaintiffs allege suppressed wages for all Class members. The Named Plaintiffs' claims arise from the same alleged conspiracy, and they allege they suffered the same injury as other Class members.

### 4.     Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

The adequacy requirement addresses "whether (1) the plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Spencer v. Hartford Fin. Servs. Grp., Inc.,* 256 F.R.D. 284, 292 (D. Conn. 2009) (quoting *Cordes & Co. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)). Here, the Named Plaintiffs' interests are closely aligned with those of the Class: they all suffered the same injury (suppressed compensation) and they all have the same interest in maximizing recovery from Defendants. *See In re Frontier Commc'ns Corp.*, 2022 WL 4080324, at *8 (D. Conn. May 20, 2022) (plaintiffs' interests are aligned with the class where they "share[] a common goal" of "maximizing recovery") (citing *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.") (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

With respect to Interim Co-Lead Class Counsel, the Court has already found that they have the qualifications, experience, and ability to prosecute the claims. *See* ECF No. 333. Accordingly, adequacy is satisfied, and the Court should appoint the Named Plaintiffs as Class representatives, and Interim Co-Lead Interim Class Counsel as Class Counsel for purposes of the Settlement Agreement.

### B.     All Requirements of Rule 23(b)(3) Are Satisfied for Purposes of the Settlement

Once a court determines that the proposed class satisfies Rule 23(a), a class should be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance is satisfied where issues that can be proven by common evidence "are more substantial than the issues subject only to individualized proof.'" *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting *U.S. Foodservice*, 729 F.3d at 118). Predominance is a "test readily met" in antitrust cases, where one course of conduct caused the same type of harm to all class members. *Amchem*, 521 U.S. at 625.

Importantly, "the predominance requirement differs between trial and settlement" because "with a settlement class, the manageability concerns posed by numerous individual questions disappear." *In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 870 (S.D.N.Y. 2018), *aff'd*, 784 F. App'x 10 (2d Cir. 2019) (quoting *Am. Int'l Grp.*, 689 F.3d at 241) (cleaned up). The purpose of predominance requirement is to avoid "the need for a series of mini-trials" to resolve individualized issues. *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002). Because a settlement effectively resolves any such issues, "settlement itself allows common issues to predominate." *NFL Concussion Litig.*, 307 F.R.D. at 381.

Here, common issues predominate on each element of Plaintiffs' claims for the purpose of settlement, and a class action is the superior—and likely the only—way to fairly and efficiently adjudicate the controversy.

### 1.    Common Issues Predominate as to the Antitrust Violation

"Because it is primarily a determination that focuses on the defendants' conduct—*i.e.,* whether the conduct alleged would actually violate the antitrust laws—common evidence generally predominates over individualized evidence with regard to this element." *In re Namenda Indirect Purchaser Antitrust Litig.,* 338 F.R.D. 527, 551 (S.D.N.Y. 2021) (citation omitted). Here, the claims of Plaintiffs and all Class members depend on proving Defendants conspired to restrain competition for labor in the aerospace industry. Evidence of such a

conspiracy is therefore common to all Class members. *See In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.,* 256 F.R.D. 82, 87 (D. Conn. 2009) (whether defendants engaged in a conspiracy was an issue common to the class); *see also In re Air Cargo Shipping Servs. Antitrust Litig.,* 2014 WL 7882100, at *38 (E.D.N.Y. Oct. 15, 2014), *report and recommendation adopted*, 2015 WL 5093503 (E.D.N.Y. July 10, 2015) (evidence of a conspiracy was "indisputably common because it focuses on the allegedly unlawful actions of the defendants, not the actions of individual plaintiffs") (cleaned up).

### 2. Common Issues Predominate as to Impact

Plaintiffs must also show that "injury-in-fact, or impact, can be proven by evidence common to the class." *EPDM*, 256 F.R.D. at 88. "Even if it could be shown that some individual class members were not injured, class certification, nevertheless, is appropriate where the antitrust violation has caused widespread injury to the class." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 523 (S.D.N.Y. 1996). Here, Plaintiffs contend that impact can be proven by multiple sources of common evidence, including: (i) record evidence of the alleged conspiracy and its intent to suppress wages; (ii) Dr. Singer's regression models, which show that injury to the Class was widespread; (iii) economic principles, supported by documentary evidence, showing that Defendants relied on internal equity and standardized wage structures to set compensation; and (iv) economic literature regarding the effects of similar no-poach agreements.

Plaintiffs contend that Defendants' own documents and deposition testimony provide the first source of common evidence regarding impact. Courts in similar no-poach cases have found this type of impact evidence to be "among the most persuasive to a jury." *In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 1215 (N.D. Cal. 2013). *See also id.* ("[T]he

Court finds that Plaintiffs' documentary evidence provides substantial further support for Plaintiffs' method of proving impact. Indeed, at trial, the Court predicts that this evidence is likely to be among the most persuasive to a jury as it illustrates and confirms many of the actual dynamics at play within Defendants' firms."); *Nitsch*, 315 F.R.D. at 294 ("Plaintiffs have produced substantial classwide documentary evidence that . . . Defendants entered into anti-solicitation agreements," and this "evidence further support Plaintiffs' allegation that these anti-solicitation agreements in fact did stifle recruitment of passive candidates by Defendants.").

Next, Dr. Singer has constructed a series of multiple regression models to estimate the impact of the alleged conspiracy. These models compare employee wages during the alleged conspiracy period (2011-2019) with wages in the "clean" periods absent such agreement (before 2011 and after 2019), while controlling for various economic and employee-specific factors to isolate the degree to which the conspiracy impacted wages. Singer Rpt. ¶¶ 132-96. Known as the "before-and-after" methodology, this standard empirical approach is a widely accepted tool for analyzing antitrust impact, and courts have consistently relied on similar regression modeling to identify the effect of a conspiracy on wages (or prices) to support class certification.[5] Dr. Singer constructed regression models for each Defendant using the data and control variables most relevant to that Defendant. *Id*. ¶¶ 155-84. He also constructed a pooled regression that has the

---

[5] *See, e.g.*, *Phila. v. Bank of Am. Corp.*, 2023 WL 6160534, at *5 (S.D.N.Y. Sept. 21, 2023) ("In antitrust cases, regression models have been widely accepted as a generally reliable econometric technique to control for the effects of the differences among class members and isolate the impact of the alleged antitrust violations on the prices paid by class members.") (quoting *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 677 (9th Cir. 2022)); *In re Elec. Books Antitrust Litig.* ("*E-Books*"), 2014 WL 1282293, at *9 (S.D.N.Y. Mar. 28, 2014) (accepting model using the "widely-used 'before and after' approach"); *EPDM*, 256 F.R.D. at 97, 103 (in price-fixing case, certifying class where plaintiff showed impact could be demonstrated through model comparing class-period prices to "benchmark period" prices); *In re Broiler Chicken Antitrust Litig.*, 2022 WL 1720468, at *12 (N.D. Ill. May 27, 2022) ("Plugging in known prices and market factor data from the class period and running the regression equation to solve for the dummy variable allows the experts to calculate the portion of price not accounted for by the market factors").

advantage of leveraging data from all Defendants in a single econometric model. *Id.* ¶¶ 185-91. Plaintiffs contend that the models show that employee compensation was suppressed by economically and statistically significant amounts across all Defendants. *Id.* ¶¶ 155-191. Plaintiffs assert that Dr. Singer's wage regression models are sufficient to prove class-wide impact because each Class member could rely on them to prove impact in an individual case. *See, e.g.*, *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 679 (9th Cir. 2022) ("each class member [could rely] on the model to establish liability if he or she had brought an individual action") (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455 (2016)).

Plaintiffs contend the results of Dr. Singer's wage regressions are also consistent with documentary evidence showing that Defendants, like most firms, relied upon principles of internal equity to set wages. Singer Rpt. ¶¶ 206-31. Internal equity represents the idea that individuals with similar experience doing comparable work within a firm should receive similar compensation. Concern for internal equity, according to Plaintiffs, leads firms like some Defendants to implement uniform compensation structures. This result is that, when wages are suppressed broadly by a no-poach conspiracy, the effects are felt widely within the company. *See High-Tech Emp.*, 985 F. Supp. 2d at 1219 (expert's analyses "are consistent with the documentary evidence that suggests that Defendants maintained a formal wage structure and valued internal equity"). In this case, Plaintiffs contend that both the documents and data produced by Defendants confirm the existence of uniform wage structures that would cause wage suppression to spread quickly and impact all or nearly all Class members. Singer Rpt. ¶¶ 206-31.

In his Reply Report, Dr. Singer offers two more quantitative proofs of a rigid compensation structure—the "common factors" and "common shock" regressions—based on the methods the court relied on in *High-Tech Employees.* Reply Rpt. ¶ 40-41. In his common factors analysis, Dr. Singer omits the conduct coefficient and worker fixed effects, leaving only "common factors"—tenure, salaried status, year in job category, and the industry indices—while adding in indicator variables for job titles (another common factor); the common factor regressions continue to explain the majority of variation in Class member wages. *Id.* ¶¶ 40-41, Table 2. Plaintiffs contend that these results "explain an economically significant amount of the variation in wages at a Defendant within a year." *Id.* ¶ 41. *Cf. Nitsch*, 315 F.R.D. at 299 (majority of variation explained by common factors, including job title).

Dr. Singer's common shock analysis "test[s] whether changes in employee wages, or shocks, are broadly shared across Class Members." Reply Rpt. ¶ 42. Dr. Singer uses regressions where the dependent variable is set equal to an employee's yearly wages, and the independent variable is set equal to either: "(A) the average yearly wages paid to *all other workers* of that employee's job title or category in that year; or (B) the average yearly wage paid to *all other workers* of the employee's same type in the prior year." *Id.* ¶ 42. Plaintiffs contend that the results of these regressions show "compensation paid to other employees of the same type of occupation is positively and highly statistically significantly related to the compensation paid to an individual employee." *Id.* ¶ 41, Table 2. *Cf. Nitsch*, 315 F.R.D. at 299 ("The correlation analyses showed that, for the majority of job titles analyzed, compensation for each Defendant-specific job title tended to increase or decrease with overall compensation to class members at that Defendant."). These quantitative analyses provide additional class-wide evidence to support Dr. Singer's theory of widespread wage suppression.

Dr. Singer also explains how well-settled economic principles support the results of his econometric analysis. He cites numerous studies showing how no-poach agreements reduce worker mobility, disrupt information-gathering, increase search frictions, and ultimately suppress wages. *Id.* ¶¶ 46-50. He also explains how limited worker *movement* among the Defendants is not inconsistent with the restricted worker *mobility* and wage suppression caused by the conspiracy. *Id.* ¶¶ 68-79.

In short, Dr. Singer has provided a "workable methodology to demonstrate that antitrust injury can be proven on a class-wide basis," which is all that is required at the class certification stage. *Dial*, 314 F.R.D. at 115; *see also EPDM*, 256 F.R.D. at 100 (predominance on impact hinged on "whether the plaintiffs have established a *workable* multiple regression equation"); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.,* 335 F.R.D. 1, 18 (E.D.N.Y. 2020) (evaluating expert's impact methodology to determine whether "no reasonable juror could have believed" it) (quoting *Tyson Foods*, 577 U.S. at 459).

### 3.    Common Issues Predominate as to Damages

Plaintiffs contend that damages can also be calculated using class-wide evidence. Again, the burden here is modest. "Although courts must carefully evaluate estimates to ensure that the experts' 'methodology is a just and reasonable inference' and not speculative" at the class certification stage, "damages need not usually be demonstrated with precision." *Namenda*, 338 F.R.D. at 565 (quoting *Hickory Secs. Ltd. v. Republic of Argentina*, 493 F. App'x 156, 159 (2d Cir. 2012)). Where Plaintiffs have established "a *workable* multiple regression equation" to estimate class-wide damages, class certification is appropriate. *EPDM*, 256 F.R.D. at 100.

Dr. Singer explains that, to calculate the Class's damages on a class-wide basis, he can utilize either the pooled regression model he developed to estimate a "but-for" hourly wage for

each employee and each year or the Defendant-specific wage regression models discussed above. Singer Rpt. ¶ 238. Either of these formulaic approaches allow him to estimate what wages would have been paid absent (or "but for") the alleged conspiracy. Comparing that but-for rate to the employee's actual rate in a given year, Dr. Singer can estimate the overall damages he contends are owed to Class members in that year. *Id.* ¶¶ 238-46. This same methodology can be used to calculate damages for individual class members in the claims process in a manner that will be "simple and mechanical." *Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447, 472 (S.D.N.Y. 2014) ("individual damage calculations" that are "simple and mechanical" support predominance). Dr. Singer provides sample individualized damages computations in his report, demonstrating the viability of his approach. Singer Rpt. ¶¶ 244-45. Once again, the existence of these formulaic approaches for calculating damages supports certification of the settlement class here. *Iowa Pub. Employees' Ret. Sys. v. Bank of Am. Corp.*, 2022 WL 2829880, at *24 (S.D.N.Y. June 30, 2022) ("Having provided a reliable, formulaic damages model, Plaintiffs have established that common issues in this litigation will predominate over any individual ones.") (cleaned up).

### 4.    A Class Action is Superior to Other Methods of Adjudication

Under Rule 23(b)(3), a court assesses the superiority of the class action mechanism by weighing class members' interest in pursuing separate actions, the extent of any independent litigation already commenced by class members, the desirability of concentrating the litigation in a single forum, and the difficulties likely to be encountered in the management of the class action. Fed. R. Civ. 23(b)(3).

Here, Class members have no practical ability to proceed individually rather than collectively. Litigation costs, including the costs of hiring economic experts, would quickly

exceed any potential recovery on an individual basis. Thus, a class action is the most effective means to pursue relief. *See EPDM*, 256 F.R.D. at 104 ("Considering that a large number of class plaintiffs would have little or no financial incentive to prosecute the alleged antitrust violation individually, class certification is clearly a superior method of adjudication because it is most likely to promote fairness and efficiency."); *see also Ruzhinskaya v. Healthport Techs., LLC*, 311 F.R.D. 87, 108 (S.D.N.Y. 2015) (finding class action superior where "[n]o potential class member has displayed any interest in bringing an individual lawsuit" and "the costs of bringing this lawsuit would be prohibitive for any single class member or even a small group of them"); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 415 (S.D.N.Y. 2015) (where "proceeding individually would be prohibitive" the class action device is "frequently superior") (cleaned up).

Class certification is necessary for the private enforcement of the antitrust laws in this case, which cuts in favor of class certification. *See Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 336 (1971) ("private antitrust litigation is one of the surest weapons for effective enforcement of the antitrust laws"). Moreover, since the request for class certification is only for purposes of settlement, "the Court need not inquire as to whether the case, if tried, would present management problems." *Nichols v. Noom, Inc.*, 2022 WL 2705354, at *6 (S.D.N.Y. July 12, 2022).

## II.    THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL

"Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the reasonable range of approval, preliminary approval is granted." *O'Connor v. AR Res., Inc.,* 2010 WL 1279023, at *3 (D. Conn. Mar. 30, 2010) (quoting *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99,

102 (S.D.N.Y.1997)). Preliminary approval "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010) (quoting *In re Traffic Executive Association–Eastern Railroads*, 627 F.2d 631, 634 (2d Cir.1980)).

For preliminary approval, a court assesses whether it "will likely be able to approve the proposal Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). These factors are:

    (A)  the class representatives and class counsel have adequately represented the class;

    (B)  the proposal was negotiated at arm's length;

    (C)  the relief provided for the class is adequate, taking into account:

        (i)  the costs, risks, and delay of trial and appeal,

        (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims,

        (iii)  the terms of any proposed award of attorney's fees, including timing of payment, and

        (iv)  any agreement required to be identified under Rule 23(e)(3); and

    (D)  the proposal treats class members equitably relative to each other.

The first two factors focus on "procedural fairness," while the latter two factors (and associated subfactors) focus on "substantive fairness." *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *9-10 (S.D.N.Y. Oct. 16, 2019).

### A.    The Settlement Is Procedurally Fair

To determine whether a settlement is procedurally fair, courts look to the negotiating process leading up to the settlement. *See Simerlein v. Toyota Motor Corp.*, 2019 WL 2417404, at *17 (D. Conn. June 10, 2019). There is a presumption of fairness, reasonableness, and adequacy where the settlement is the result of "arm's-length negotiations between experienced, capable

counsel after meaningful discovery." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 116 (2d Cir. 2005)); *see also Wilson v. DirectBuy, Inc.*, 2011 WL 2050537, at *3 (D. Conn. May 16, 2011).

Here, the Settlement Agreement was negotiated at arm's length by highly experienced counsel after almost three years of hard-fought litigation. Document and data productions were substantially completed at the time the Settlement Agreement was negotiated. The parties have produced and reviewed hundreds of thousands of documents and extensive employee-specific compensation data. Twenty-six witnesses have been deposed, including all nine Named Plaintiffs and current and former employees of all Defendants (except PSI). The motion for class certification, together with expert reports, was fully briefed and a hearing held. Interim Class Counsel were well-informed about the facts and strengths of their claims during the extensive negotiation process. The Settlement Agreement is therefore entitled to a presumption of fairness, reasonableness, and adequacy.

The Named Plaintiffs and Interim Class Counsel are adequate representatives of the Class because there are no conflicts of interests between Named Plaintiffs and other Class members, and because Interim Class Counsel have the necessary qualifications and experience to effectively represent the interests of the Class. *See supra* § I.A.4. Additionally, the Named Plaintiffs have proven to be committed advocates by stepping forward to prosecute these claims, producing documents, answering interrogatories, and appearing for depositions. Interim Class Counsel have likewise been vigorous in their pursuit of the Class's claims, beginning with their initial investigations and continuing through settlement negotiations. Plaintiffs have successfully opposed two motions to dismiss, prevailed on discovery disputes, obtained leave to amend their complaint despite vigorous opposition by Defendants, retained a leading expert to perform

economic analysis regarding the effects of Defendants' conduct, and fully briefed their motion for class certification, which included the submission of expert reports and a hearing.

### B.    The Settlement Is Substantively Fair

Preliminary approval is appropriate "where the settlement appears to fall within the range of possible approval." *Menkes*, 270 F.R.D. at 101 (quoting *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 33 (E.D.N.Y. 2006)). "In terms of the overall fairness, adequacy, and reasonableness of the settlement, a full fairness analysis is unnecessary at this stage." *Reade-Alvarez*, 237 F.R.D. at 34. Preliminary approval "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *Menkes*, 270 F.R.D. at 101.

Before Rule 23(e)(2)(C)'s four-factor framework was codified in December 2018, courts in this Circuit employed the nine-factor framework set forth in *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 463 (2d Cir. 1974). There are: "(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."

After the 2018 amendments to Rule 23, courts consider four factors enumerated by Rule 23(e)(2)(C) to assess whether a proposed settlement falls within the range of possible approval: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii)

the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

As stated by the Advisory Committee Notes to the 2018 amendments, the amendment to Rule 23(e) "directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." Fed. R. Civ. P. 23, advisory committee notes to 2018 amendments. However, the Advisory Committee Notes also state that the "goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.*

Ultimately, the nine *Grinnell* factors overlap in large part with the four-factor framework, and in this Section, Plaintiffs address the Rule 23(e)(3) factors and their overlapping *Grinnell* factor counterparts. Where the Rule 23(e)(3) and *Grinnell* factors do not overlap, Plaintiffs address them separately in Section II.C, *infra*.[6]

### 1. Costs, Risks, and Delay of Trial and Appeal (*Grinnell* Factors #1, #4, #5, #6)

To decide whether a settlement falls within the range of reasonableness, courts must consider "the costs, risks, and delay of trial and appeal." Rule 23(e)(2)(C)(i). This inquiry overlaps with *Grinnell* factor one (the "complexity, expense, and likely duration of the litigation") and factors four, five, and six (the risks of establishing liability and damages and maintaining the class). *Grinnell,* 495 F.2d at 463. "In determining the risks of establishing liability and damages, courts need not 'adjudicate the disputed issues or decide unsettled

---

[6] The Court need not consider the second *Grinnell* factor—the "reaction of the class"—at this preliminary approval stage. *See, e.g.*, *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this factor is premature.").

questions; rather, [courts] need only assess the risks of litigation against the certainty of recovery under the proposed settlement.'" *Frontier Commc'ns*, 2022 WL 4080324, at *13 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004)). Courts recognize that "the complexity of Plaintiff's claims *ipso facto* creates uncertainty." *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009) (cleaned up).

"An antitrust class action is arguably the most complex action to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003) (cleaned up). Here, there is no shortage of complex economic and legal issues that will cause the litigation to be lengthy and expensive and the outcome of any trial to be highly uncertain. Many of these issues will be the subject of complicated and conflicting expert testimony, increasing costs, and uncertainty for all parties. *See Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *20 (S.D.N.Y. Sept. 9, 2015). Prior to executing the Settlement Agreement, the parties were in the middle of a battle over class certification, with the losing party likely to seek interlocutory review pursuant to Rule 23(f). This would further extend the timeline of the litigation. *See, e.g.*, *Interchange Fee*, 986 F. Supp. 2d at, 222 n.13 (E.D.N.Y. 2013) ("In the *Wal-Mart* case, twenty months elapsed between the order certifying the class and the Second Circuit's divided opinion affirming that decision.").

If the litigation class was certified, the parties would move to additional merits discovery, after which they would likely contest summary judgment on multiple issues, calling for additional expert testimony. If the case proceeded past summary judgment, trial here would be lengthy, and the losing party would likely appeal the verdict. While Plaintiffs believe their positions are strong, they would have to prevail on every contested issue, whereas Defendants need only prevail on a single defense. Indeed, to prevail at trial, Plaintiffs would need to

convince a jury that the alleged conduct here—a conspiracy to restrict competition for labor—is a violation of federal antitrust law, which is something no private litigant nor government enforcer has yet done. *See, e.g.*, *United States v. Patel*, 2023 WL 3143911 (D. Conn. Apr. 28, 2023) (granting motion for judgment of acquittal); Jury Verdict, *United States v. DaVita, Inc.*, No. 21-cr-229 (D. Co. Apr. 15, 2022) (acquitting defendants on all counts), Jury Verdict, *United States v. Manahe*, No. 22-cr-13 (D. Me. Mar. 22, 2022) (same). In sum, "[t]here can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998).

### 2.    The Effectiveness of the Proposed Method of Distributing Relief to the Class

The proposed method of distributing money to the class is described in detail in the proposed Plan of Allocation (Joint Decl. Ex. 2). Class members will receive payment based on their *pro rata* share of the Net Settlement Fund, calculated by dividing total compensation paid to an individual Class member while employed as an Aerospace Worker at one of the Defendants by the total of compensation paid to all Class members employed as Aerospace Workers during the Class Period who file valid claims. *Id.* The resulting fraction multiplied by the total Net Settlement Fund determines the amount of the Class member's payment. *Id*.

To receive payment, Class members will be required to submit a timely claim form to the Notice Administrator containing information about themselves and their employment at Defendants. Joint Decl. ¶ 38. The Notice Administrator will determine the Class member's total compensation and dates of employment from Defendants' data, which will not be subject to challenge by Class members. Joint Decl. Ex. 2.

### 3.  The Terms of Any Proposed Award of Attorneys' Fees

Under the Settlement Agreement, Class Counsel may apply to the Court for an award of attorneys' fees and expenses incurred on behalf of the Class. Class Counsel will submit full briefing supporting their request for attorneys' fees and expenses in time for Class members to consider it before the deadline for objections to the Settlement. Class Counsel will not receive any payment unless and until the Court grants their fee request.

### 4.    Any Agreement Required to Be Identified Under Rule 23(e)(3)

All the terms of the proposed Settlement are contained within the Settlement Agreement. Plaintiffs have not entered into any additional agreements with Pratt & Whitney in connection with this litigation.

### 5.    Range of Reasonableness (*Grinnell* Factor #9)

This Court must consider "the range of reasonableness of the settlement fund," both given the risks discussed above and "in light of the best possible recovery." *Grinnell*, 495 F.2d at 463. Determining whether a settlement amount falls within the range of reasonableness "does not involve the use of a mathematical equation yielding a particularized sum." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (internal quotation marks omitted). The appropriate range of reasonableness depends on the "uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). A settlement "amount[ing] to a hundredth or even a thousandth part of a single percent of the potential recovery" could, therefore, be reasonable under the circumstances of the case. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 49 (E.D.N.Y. 2019) (quoting *Grinnell,* 495 F.2d at 455 n.2). The recovery of $34 million represents about ten percent of Dr. Singer's estimation of Pratt &

Whitney's damages using his individual regression model and is well within the range of reasonableness given the uncertainties, risks, and costs of proceeding to trial.

Courts in this Circuit have routinely approved settlements that provided recoveries of similar or smaller percentages of Plaintiffs' damages estimate. *See, e.g., Interchange Fee,* 330 F.R.D. at 48 (preliminarily approving settlement amount equal to around five percent of plaintiffs' damages estimate); *Air Cargo*, 2009 WL 3077396, at *9 (approving settlement value that was 10.5% of total damages); *Currency Conversion*, 2006 WL 3247396, at *6 (approving settlement cash award that was 10-15% of total damages).

### C.    Other Relevant Factors Support Preliminary Approval

#### 1.    Stage of the Proceedings (*Grinnell* Factor #1)

Also relevant to preliminary approval inquiry is the "the stage of the proceedings and the amount of discovery completed." *Grinnell,* 495 F.2d at 463. This is helpful in evaluating the fairness of the Settlement because it bears on "the parties' knowledge of the strengths and weaknesses of the various claims in the case." *Simerlein,* 2019 WL 2417404, at *20 (quoting *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)). Fact discovery in this case is largely completed. At the time of the settlement, the parties had produced and reviewed hundreds of thousands of documents, analyzed an enormous amount of data, and conducted a total of 26 fact witness depositions, the last of which took place days before the settlement. Expert discovery was also underway, with Plaintiffs having submitted opening and reply reports of Dr. Singer, and Pratt & Whitney and Belcan having submitted rebuttal reports from their own experts. Class certification was fully briefed, and the Court held a hearing on the motion. The parties "have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the

adequacy of the settlement." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006).

### 2.    Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor #7)

Another factor courts may consider is "the ability of the defendants to withstand a greater judgment." *Grinnell*, 495 F.2d at 463. Even where defendants can withstand greater judgments, however, this factor, "'standing alone, does not suggest that the settlement is unfair,' especially where the 'other Grinnell factors weigh heavily in favor of settlement[.]'" *Simerlein*, 2019 WL 2417404, at *21 (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)). Here, all the other factors weigh heavily in favor of preliminary approval. Pratt & Whitney's ability to withstand a greater judgment, therefore, would not undermine the fairness of the Settlement Agreement. *See D'Amato*, 236 F.3d at 86.

### D.  The Proposed Form and Manner of Notice Are Appropriate and A.B. Data Is a Well-Qualified Notice and Claims Administrator

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." Manual for Complex Litigation § 21.312 (4th ed. 2023). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The notice must contain specific information in plain, easily understood language, including the nature of the action and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B).

After a competitive bidding process, Plaintiffs selected A.B. Data to oversee the administration of the Settlement, including disseminating notice to the Settlement Class,

calculating each Settlement Class member's *pro rata* share of the Settlement Fund, and distributing the funds. A.B. Data is an experienced settlement and claims administration firm with sophisticated technological capabilities and is staffed by personnel well-versed in antitrust issues and class action litigation. Consistently recognized as one of the nation's top claims administrators,[7] A.B. Data has handled numerous settlements in complex antitrust cases like this one. *See, e.g.*, *In re Aggrenox Antitrust Litig.,* 2018 WL 1183734, at *4 (D. Conn. Mar. 6, 2018) (appointing A.B. Data as settlement claims administrator); *In re GSE Bonds Antitrust Litig.,* No. 19-cv-1704 (S.D.N.Y. Nov. 4, 2019), Preliminary Approval Order at 3, ECF No. 296 (same).[8] The Court should appoint A.B. Data Claims Administrator for the Settlement.

As explained in the Declaration of Justin Parks of A.B. Data in Support of Plaintiffs' Proposed Notice Plan (Joint Decl., Ex. 3 ("Parks Decl.")), A.B. Data designed a proposed Notice Plan that will use direct mail and email notice to reach potential Class members, based largely on data to be provided by Defendants. *See* Parks Decl., ¶¶ 5-13. A.B. Data will also supplement direct notice with a coordinated digital media campaign. *See id*. at ¶¶ 14-15. Ads will appear across desktop, tablet, and mobile devices for 30 days on Google Display Network and YouTube, and will garner approximately 5 million impressions. *Id.*  The Notice Plan also provides for the implementation of a dedicated Settlement Website and a toll-free telephone line where Settlement Class members can learn more about their rights and options pursuant to the terms of the Settlement. *See id.*

---

[7] *See, e.g.,* Joshua Davis & Rose Kohles Clark, *2022 Antitrust Annual Report: Class Actions in Federal Court* (September 28, 2023), *available at* https://dx.doi.org/10.2139/ssrn.4586022.

[8] A.B. Data has also been appointed as Notice/Claims Administrator in the following antitrust and labor/employment cases: *In re Qualcomm Antitrust Litigation*, No. 5:17-md-02773 (N.D. Cal.); *In re Broiler Chicken Antitrust Litigation*, No. 1:16-cv-8637 (N.D. Ill.) and *Judy Jien, et al. v. Perdue Farms, Inc. et al.*, 1:19-cv-02521 (D. Md.).

Further, the proposed form of notice complies with Federal Rule of Civil Procedure 23(c). Consistent with Rule 23(c)(2)(B), the proposed notice describes "(i) the nature of the action; (ii) the definition of the [settlement] class certified; (iii) the class claims, issues, or defenses; (iv) [a directive] that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who [timely] requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members [of the settlement class] under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

Accordingly, the Court should approve A.B. Data as notice administrator and approve the form and plan of the proposed notice.

### E.    Huntington National Bank Is an Appropriate Escrow Agent

Huntington National Bank, which has been designated as the Escrow Agent for the purpose of administering the escrow account holding the Settlement Fund, is a highly respected bank with $194 billion in assets and provides consumers, corporations, and others with a broad range of financial services. Huntington National Bank has managed settlement funds in more than 5,500 cases totaling over $75 billion in settlement funds,[9] including some of the largest antitrust settlements in the country. *See, e.g.*, *Interchange Fee*, 2012 WL 12929536, at *1 (granting preliminary approval of settlement agreement naming Huntington National Bank as escrow agent); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 489, n.4 (S.D.N.Y. 2018) (appointing Huntington National Bank as escrow agent); *In re Novartis and Par*

---

[9] *See National Settlement Funds*, Huntington National Bank, https://www.huntington.com/Commercial/industries/settlement-funds-services (last visited Apr. 24, 2024).

*Antitrust Litig.*, No. 18-cv-4361 (S.D.N.Y. May 18, 2023), Preliminary Approval Order at 7, ECF No. 622 (same).

The Court should appoint Huntington National Bank as Escrow Agent for the Settlement Fund.

### F. The Proposed Schedule Is Fair

As set forth in the proposed order, Plaintiffs propose the following schedule for completing the Settlement approval process:[10]

| ACTION | DATE |
|---|---|
| Class administrator shall begin the process of providing notice to the Class in accordance with the Plan of Notice | No later than 60 days from the date that the Court enters the Preliminary Approval Order |
| Members of the Class may request exclusion from the Class | No later than 60 days from the date that the Notice is mailed to each member of the Class |
| Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Defendants shall serve notices as required under CAFA | Within 10 days from the date Plaintiffs file the Settlement Documents with the Court |
| The Court will hold a final Fairness Hearing | No earlier than 120 days of the Court's grant of preliminary approval and on a date and time as set by the Court |
| Class members who wish to: (a) object with respect to the proposed Settlement; and/or (b) wish to appear in person at the Fairness Hearing, must postmark an Objection and/or a Notice of Intention to Appear, along with a Summary Statement outlining the position(s) | No later than 60 days from the date that the Notice is mailed to each member of the Class |
| All briefs and materials in support of the final approval of the settlement and the entry of Final Judgment proposed by the parties to the Settlement Agreement shall be filed | No later than 30 days before the date of the Fairness Hearing |

---

[10] This is the same proposed schedule set forth in the motion for preliminary approval of the five prior settlements. Plaintiffs respectfully request that the same schedule be used for all the settlements, should the Court preliminarily approve them all.

| **ACTION** | **DATE** |
|---|---|
| All briefs and materials in support of the application for an award of attorneys' fees and reimbursement of expenses, and service awards for the Plaintiffs, shall be filed with the Court | No later than 21 days prior to the expiration of the opt-out and objection deadline for Class members |

This schedule is fair to Settlement Class members since it provides ample time for consideration of the Settlement and Class Counsel's request for fees, expenses, and incentive awards before the deadline for submitting objections. In addition, the schedule allows the full statutory period for Defendants to serve their Class Action Fairness Act notices pursuant to 28 U.S.C. § 1715, and for regulators to review the proposed settlement and, if they choose, advise the Court of their view.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order: (i) granting preliminary approval of the Settlement Agreement, (ii) preliminarily certifying the Settlement Class, (iii) preliminarily approving the Plan of Allocation; (iv) appointing DiCello Levitt LLP and Quinn Emanuel Urquhart & Sullivan, LLP as Class Counsel, (v) appointing the Named Plaintiffs as Class Representatives, (vi) approving the form and manner of notice to the Class, (vii) appointing A.B. Data as Settlement Administrator, and (viii) appointing Huntington Bank as Escrow Agent.

Dated: December 18, 2024

**QUINN EMANUEL URQUHART &**
    **SULLIVAN, LLP**

 */s/ Daniel L. Brockett*
Daniel L. Brockett (phv20450)
Manisha M. Sheth (phv01061)
Steig D. Olson (phv06391)
Thomas Lepri (phv20453)
Daniel F. Loud (phv206704)
295 5th Avenue
New York, New York 10016
Telephone:  (212) 849-7000
danbrockett@quinnemanuel.com
manishasheth@quinnemanuel.com
steigolson@quinnemanuel.com
thomaslepri@quinnemanuel.com
danielloud@quinnemanuel.com

Justin Reinheimer (phv20572)
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:  (415) 875-6600
justinreinheimer@quinnemanuel.com

*Interim Class Counsel*

**DICELLO LEVITT LLP**

 */s/ Gregory S. Asciolla*
Gregory S. Asciolla (phv02599)
John M. Shaw (phv207422)
485 Lexington Avenue, Suite 1001
New York, New York 10017
Telephone: (646) 933-1000
gasciolla@dicellolevitt.com
jshaw@dicellolevitt.com

**GARRISON, LEVIN-EPSTEIN,**
    **FITZGERALD & PIRROTTI, P.C.**

Joseph D. Garrison (ct04132)
Stephen J. Fitzgerald (ct22939)
Joshua R. Goodbaum (ct28834)
Amanda M. DeMatteis (ct29413)
405 Orange Street
New Haven, Connecticut 06511
Telephone:  (203) 777-4425
jgarrison@garrisonlaw.com
sfitzgerald@garrisonlaw.com
jgoodbaum@garrisonlaw.com
adematteis@garrisonlaw.com

*Local Connecticut Counsel*

**HURWITZ SAGARIN SLOSSBERG &**
    **KNUFF, LLC**

David A. Slossberg (ct13116)
Erica Oates Nolan (ct31097)
Timothy C. Cowan (ct30786)
135 Broad Street
Milford, Connecticut 06460
Telephone:  (203) 877-8000
DSlossberg@hssklaw.com
ENolan@hssklaw.com
TCowan@hssklaw.com