## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| TARAH KYE BOROZNY, et al., on behalf of themselves and all others similarly situated, | Case No. 3:21-cv-1657-SVN |
| Plaintiffs, | Date: April 7, 2025 |
| v. | |
| RTX CORPORATION, PRATT & WHITNEY DIVISION, et al., | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

    A. Plaintiffs' Claims and Procedural Background.......................................................... 2

        1. Initial Complaints, Consolidation, and Defendants' Motions to Dismiss............................................................................................................... 3

        2. Discovery Efforts in This Litigation ............................................................... 4

        3. Motion for Leave to Amend CAC ................................................................... 6

        4. Motion for Class Certification ......................................................................... 6

    B. Settlements and Preliminary Approval ....................................................................... 7

ARGUMENT ....................................................................................................................... 8

I.    THE PROPOSED SETTLEMENTS ARE FAIR, REASONABLE, AND ADEQUATE.................................................................................................................. 9

    A. The Class Representatives and Class Counsel Have Adequately Represented the Class ..................................................................................................................... 10

    B. The Settlement Agreements Were Negotiated at Arm's Length ................................ 11

    C. The Settlement Agreements Provide Adequate Relief to the Class........................... 12

        1. Costs, Risks, and Delay of Trial and Appeal (Rule 23(e)(2)(C)(i))................ 12

        2. The Effectiveness of the Proposed Method of Distributing Relief to the Class (Rule 23(e)(2)(C)(ii)) .......................................................................... 14

        3. The Terms of Any Proposed Award of Attorneys' Fees (Rule 23(e)(2)(iii)) .................................................................................................. 15

        4. Any Agreement Required to Be Identified Under Rule 23(e)(3) (Rule 23(e)(2)(iv)) .................................................................................................. 15

        5. Range of Reasonableness (*Grinnell* Factor #9) ............................................ 15

    D. The Settlements Treat Class Members Equally ........................................................ 17

    E. Other Relevant Factors Support Final Approval ...................................................... 17

        1. Stage of the Proceedings (Grinnell Factor #1)............................................... 17

2.   Reaction of the Class to the Settlement (*Grinnell* Factor #2) ......................... 18

3.   Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor #7) ............................................................................................................. 18

II.   THE REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS HAVE BEEN MET ................................................................................................... 19

A.   All Requirements of Rule 23(a) Are Satisfied for the Purposes of the Settlement ............................................................................................................. 20

1.   The Class is Sufficiently Numerous ................................................... 20

2.   There Are Common Questions of Law and Fact ............................ 20

3.   Plaintiffs' Claims Are Typical of the Class ..................................... 21

4.   Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class ............................................................................................. 22

B.   All Requirements of Rule 23(b)(3) Are Satisfied for Purposes of the Settlement ............................................................................................................. 23

1.   Common Issues Predominate as to the Alleged Antitrust Violation .............. 24

2.   Common Issues Predominate as to Impact ..................................... 24

3.   Common Issues Predominate as to Damages ................................. 28

4.   A Class Action is Superior to Other Methods of Adjudication ..................... 30

III.  CLASS NOTICE SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS .......................................................................................................................... 31

CONCLUSION .............................................................................................................................. 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) ..........................................................................24

*In re Am. Int'l Grp. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012) ...............................................................................................19, 23

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .....................................................................................................19, 23, 31

*In re Broiler Chicken Antitrust Litig.*,
2022 WL 1720468 (N.D. Ill. May 27, 2022) ........................................................................26

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020) .......................................................................19

*City of Detroit v. Grinnell Corporation*,
495 F.2d 448 (2d Cir. 1974) ................................................................................... *passim*

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007) ...................................................................................................22

*In re Currency Conversion Fee Antitrust Litig.*,
263 F.R.D. 110 (S.D.N.Y. 2009) ...........................................................................................13

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ...............................................................................................18, 19

*Dial Corp. v. News Corp.*,
314 F.R.D. 108 (S.D.N.Y. 2015) ......................................................................................21, 28

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992) .................................................................................................22

*Edwards v. N. Am. Power & Gas*,
2018 WL 3715273 (D. Conn. Aug. 3, 2018) ........................................................................18

*In re Elec. Books Antitrust Litig.*,
2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) ......................................................................26

*Esposito v. Nations Recovery Ctr., Inc.*,
2021 WL 2109077 (D. Conn. May 25, 2021) .......................................................................16

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
   256 F.R.D. 82 (D. Conn. 2009) .................................................................. *passim*

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009) .................................................................. 21

*Fleisher v. Phoenix Life Ins. Co.*,
   2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) .................................................................. 13

*In re Frontier Commc'ns Corp. Stockholders Litig.*,
   2022 WL 4080324 (D. Conn. May 20, 2022) .................................................................. 12, 16, 22

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................. 13

*Hart v. Rick's Cabaret Int'l, Inc.*,
   60 F. Supp. 3d 447 (S.D.N.Y. 2014) .................................................................. 29

*In re High-Tech Employee Antitrust Litig.*,
   985 F. Supp. 2d 1167 (N.D. Cal. 2013) .................................................................. 21, 25, 27

*In re Host Am. Corp. Sec. Litig.*,
   2007 WL 3048865 (D. Conn. Oct. 18, 2007) .................................................................. 31

*In re IMAX Sec. Litig.*,
   2012 WL 2359653 (S.D.N.Y. June 20, 2012) .................................................................. 19

*Iowa Pub. Employees' Ret. Sys. v. Bank of Am. Corp.*,
   2022 WL 2829880 (S.D.N.Y. June 30, 2022) .................................................................. 29

*Johnson v. Nextel Commc'ns Inc.*,
   780 F.3d 128 (2d Cir. 2015) .................................................................. 20

*In re Linerboard Antitrust Litig.*,
   292 F. Supp. 2d 631 (E.D. Pa. 2003) .................................................................. 13

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002) .................................................................. 23

*Moses v. New York Times Co.*,
   79 F.4th 235 (2d Cir. 2023) .................................................................. 8, 9, 10

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .................................................................. 31

*Mullen v. Treasure Chest Casino, LLC.*,
   186 F.3d 620 (5th Cir.1999) .................................................................. 21

iv

*In re Namenda Direct Purchaser Antitrust Litig.*,
    462 F. Supp. 3d 307, 316 (S.D.N.Y. 2020).................................................................17

*In re Namenda Indirect Purchaser Antitrust Litig.*,
    338 F.R.D. 527 (S.D.N.Y. 2021) ....................................................................24, 29

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996) ...........................................................................25

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ...........................................................................14

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
    307 F.R.D. 351 (E.D. Pa. 2015), *aff'd,* 821 F.3d 410 (3d Cir. 2016) ...............................19, 23

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)...................................................................................16

*Nitsch v. DreamWorks Animation SKG Inc.*,
    315 F.R.D. 270 (N.D. Cal. 2016)........................................................21, 25, 27, 28

*O'Connor v. AR Res., Inc.*,
    2012 WL 12743 (D. Conn. Jan. 4, 2012)...........................................................16, 18

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) ..................................................................................26

*In re PaineWebber Ltd. P'ships Litig.*,
    147 F.3d 132 (2d Cir.1998)......................................................................................8

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)....................................17

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig* ,
    986 F. Supp. 2d 207 (E.D.N.Y. 2013) ....................................................................13

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*
    330 F.R.D. 11 (E.D.N.Y. 2019)..........................................................................16, 19

*In re Petrobras Sec. Litig.*,
    317 F. Supp. 3d 858 (S.D.N.Y. 2018), *aff'd*, 784 F. App'x 10 (2d Cir. 2019) ........................23

*Phila. v. Bank of Am. Corp.*,
    2023 WL 6160534 (S.D.N.Y. Sept. 21, 2023)..........................................................26

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ..............................................................................22

*Raymond v. Rowland*,
  220 F.R.D. 173 (D. Conn. 2004) ...................................................................................21

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
  335 F.R.D. 1 (E.D.N.Y. 2020) .....................................................................................28

*Pa. Ret. Sys. v. Morgan Stanley & Co.*,
  772 F.3d 111 (2d Cir. 2014) .........................................................................................20

*Rincon-Marin v. Credit Control*, LLC,
  2018 WL 1035808 (D. Conn. 2018) .............................................................................21

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015) .........................................................................................23

*Ruzhinskaya v. Healthport Techs., LLC*,
  311 F.R.D. 87 (S.D.N.Y. 2015) ...................................................................................30

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) .................................................................................30

*Simerlein v. Toyota Motor Corp.*,
  2019 WL 2417404 (D. Conn. June 10, 2019) .................................................9, 17, 18

*Spencer v. Hartford Fin. Servs. Grp., Inc.*,
  256 F.R.D. 284 (D. Conn. 2009) ............................................................................22, 29

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
  2012 WL 3589610 (D. Conn. Aug. 20, 2012) ............................................................16, 19

*Tsereteli v. Residential Asset Securitization Tr. 2006-A8*,
  283 F.R.D. 199 (S.D.N.Y. 2012) .................................................................................21

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ................................................................................................26, 28

*In re U.S. Foodservice Inc. Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013) .........................................................................................23

*United States v. DaVita, Inc.*,
  No. 21-cr-229 (D. Colo. Apr. 15, 2022) ......................................................................14

*United States v. Manahe*,
  No. 22-cr-13 (D. Me. Mar. 22, 2023) ..........................................................................14

*United States v. Patel*,
  2023 WL 3143911 (D. Conn. Apr. 28, 2023) ..............................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................................21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ..................................................................................8, 18

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
  401 U.S. 321 (1971) ................................................................................................30

**Other Authorities**

Fed. R. Civ. P. 23 ............................................................................................. *passim*

4 Newberg on Class Action § 13:54 (5th ed.) ..............................................................18

Sherman Act Section 1, 15 U.S.C. § 1 ....................................................................2, 21

**INTRODUCTION**

After more than three years of hard-fought litigation, Plaintiffs have reached settlements with all the Defendants in this case. *See* ECF Nos. 953-1 (Cyient, Inc., "Cyient"), 953-2 (Parametric Solutions, Inc., "PSI"), 953-3 (Agilis Engineering, Inc., "Agilis"), 953-4 (QuEST Global Services N.A., Inc., "QuEST"), 953-5 (Belcan Engineering Group, "Belcan"), 976-1 (RTX Corp., Pratt & Whitney Division, "Pratt & Whitney") (collectively, the "Settlements" or "Settlement Agreements"). The Settlements provide for payments totaling $60,500,000, in exchange for dismissal of the litigation with prejudice and standard releases. The monies have been paid into a common fund (the "Settlement Fund") for the benefit of the proposed class as defined below (the "Class" or "Settlement Class").

If approved, the Settlements will resolve all claims against all Defendants, resulting in the termination of this litigation. On January 3, 2025, this Court preliminarily approved the Settlements, preliminarily approved the Plan of Allocation (subject to further consideration at the Final Fairness Hearing), provisionally certified the Settlement Class, appointed Named Plaintiffs as Class Representatives and their counsel as Class Counsel, approved the proposed Notice program and directed that Notice to be sent to Class Members in accordance with the Settlement Agreements. ECF No. 977.

Pursuant to the preliminary approval order, notice was disseminated to Class members on March 4, 2025 by A.B. Data, the court-appointed Settlement Administrator. *See* Declaration of Jack Sobczak of A.B. Data in Support of Plaintiffs' Motion for Final Approval of Proposed Settlements and Form and Manner of Notice to the Settlement Class (Joint Decl. Ex. 1 ("Sobczak Decl."), ¶ 3. Nearly 80,000 Notices were sent directly to potential Class members via email and regular mail. *Id.* ¶ 3(a). Direct notice was supplemented by a coordinated digital media campaign, with banner and search ads appearing across desktop, tablet, and mobile devices on

Google Display Network and YouTube. *Id.* ¶ 3(d). Notice also included a dedicated website, www.AerospaceAntitrustLitigation.com ("Settlement Website"), and a toll-free telephone line where Class members can learn more about their rights and options under the Settlements. *Id.* ¶¶ 3(b)-(c). Any Class member wishing to object to or exclude himself or herself from any of the Settlements has until May 3, 2025, to do so. To date, there have been no objections filed to any aspect of the Settlements, and only seven Class Members have excluded themselves from the Settlement.[1] *Id.* ¶4-5. Upon final approval, A.B. Data will begin the process of distributing the Settlement Fund to Class members according to the Plan of Allocation.

The Settlement Agreements are the result of arm's length negotiations by counsel experienced in antitrust class actions, and they provide substantial, immediate relief to the Class. They are fair, reasonable and adequate. Accordingly, Plaintiffs respectfully request that the Court finally approve the Settlements, certify the Settlement Class, and enter the proposed Judgment.

## BACKGROUND

### A.    Plaintiffs' Claims and Procedural Background

Plaintiffs are current and former employees of Defendants who worked on projects for Pratt & Whitney, a leading manufacturer of jet engines for commercial and military aircraft. Agilis, Belcan, Cyient, QuEST, and PSI (collectively, the "Outsourcing Defendants") are suppliers of engineering services to Pratt & Whitney. Plaintiffs allege that Defendants, who compete with each other for the services of aerospace engineers and other skilled workers, conspired to restrict the recruitment and hiring (or "poaching") of each other's employees in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. *See* First Amended Consolidated Class Action Complaint, ECF No. 751, ¶¶ 184-207.

---

[1] Plaintiffs intend to update the Court on any objections and exclusions, as well as claims filed, in their reply and submit a proposed Final Judgment no later than May 7, 2025. *See* ECF No. 983.

Plaintiffs allege that Defendants (i) entered into an agreement to refrain from recruiting or hiring each other's employees, *see id.* ¶¶ 75-98, (ii) entered into an agreement that Pratt & Whitney would not recruit or hire employees from the Outsourcing Defendants without their prior written consent (or "concurrence"), *see id.* ¶¶ 99-115, and (iii) made additional bilateral agreements that limited Pratt & Whitney's ability to recruit and hire employees of particular Defendants. *See id.* Plaintiffs further allege that the conspiracy restrained competition for Aerospace Workers, thereby suppressing employee compensation. *See id.* ¶¶ 116-32. Defendants dispute these allegations.

## 1.    Initial Complaints, Consolidation, and Defendants' Motions to Dismiss

This action was initiated on December 14, 2021. ECF No. 1. More than thirty cases were filed in the weeks that followed, alleging substantially the same facts and claims. The cases were then consolidated with the first-filed action. On March 11, 2022, the Court appointed DiCello Levitt LLP (formerly Labaton) and Quinn Emanuel Urquhart & Sullivan LLP interim co-lead counsel for the putative class, along with local Connecticut counsel Hurwitz Sagarin Slossberg & Knuff, LLC and Garrison, Levin-Epstein, Fitzgerald & Pirotti P.C. ECF No. 333; Joint Decl. ¶ 9.[2]  On May 9, 2022, Plaintiffs filed their Consolidated Class Action Complaint ("CAC"). ECF No. 385; Joint Decl. ¶ 10.

On July 8, 2022, the Outsourcing Defendants and Pratt & Whitney filed separate motions to dismiss, and QuEST filed a motion to compel arbitration. ECF Nos. 465, 466, and 467. Plaintiffs filed a consolidated opposition to Defendants' motions to dismiss and a partial opposition to QuEST's motion to compel arbitration. ECF Nos. 524 and 525. Defendants filed

---

[2] Citations to "Joint Declaration" or "Joint Decl." are to the Joint Declaration of Gregory S. Asciolla and Daniel L. Brockett in Support of Motion for Final Approval of Class Action Settlements.

their respective replies on October 3, 2022 (ECF Nos. 540 and 541), and the Court held oral argument on November 16, 2022. ECF No. 569; Joint Decl. ¶ 14. On January 20, 2023, the Court denied Defendants' motions to dismiss, finding that Plaintiffs had pleaded a violation of the antitrust laws under both the *per se* and rule of reason standards. ECF No. 582; Joint Decl. ¶ 15. While the Court granted QuEST's motion to compel arbitration, it agreed with Plaintiffs that the question of whether the clauses at issue compelled non-class arbitration was a matter for the arbitrator. Accordingly, the Court denied QuEST's request to compel Plaintiffs to commence arbitration. ECF No. 583; Joint Decl. ¶ 15.

On January 27, 2023, Plaintiffs moved for reconsideration of footnote 6 in the Court's motion to dismiss order, which limited the relevant geographic market to the State of Connecticut. ECF No. 584; Joint Decl. ¶ 16. The Court denied that motion but ultimately held that its prior ruling was not intended to limit the geographic scope of discovery or the Class definition. ECF No. 647.

### 2. Discovery Efforts in This Litigation

Plaintiffs undertook extensive party and non-party discovery, serving their first set of document requests to Defendants on June 1, 2022. Joint Decl. ¶ 11. In response to those requests and subsequent meet and confers, Defendants produced over 400,000 documents. *Id.* ¶ 13. In addition, Plaintiffs served two sets of interrogatories on Defendants, the first on February 3, 2023 and the second on July 17, 2023, to which Defendants responded. *Id.* ¶ 12. Plaintiffs also served third-party discovery on EMSI/Burning Glass, CDI Corp., MTU Aero Engines North America, Inc., and RGBSI Aerospace & Defense LLC. *Id.* ¶ 13. All totaled, Plaintiffs reviewed and analyzed hundreds of thousands of documents produced by Defendants and third parties. *Id.*

Defendants served their own document requests and interrogatories on Plaintiffs on October 6, 2022 and March 24, 2023, respectively. *Id.* ¶ 12. Class Counsel reviewed these with Named Plaintiffs and prepared responses and objections. Plaintiffs produced over 76,000 documents and provided over 85 pages of detailed responses to Defendants' interrogatories. *Id.* ¶ 13.

When discovery disputes arose, Plaintiffs litigated those disputes for the benefit of the Class. For example, on May 12, 2023, Plaintiffs filed motions to compel against all Defendants concerning the geographic and temporal scope of their structured data productions. Plaintiffs also filed a motion to compel against QuEST regarding its attempt to use arbitration clauses to block relevant discovery. ECF Nos. 636, 637, 638, 639, 640, 641. Defendants filed their oppositions on June 2, 2023. ECF Nos. 649, 650, 651, 652. On June 7, 2023, Defendants moved for a protective order seeking to stay indefinitely depositions noticed by Plaintiffs based on the witnesses' desire to evaluate whether to invoke their Fifth Amendment privileges. ECF No. 656. Defendants also requested an order compelling Plaintiffs to provide additional information concerning their employment backgrounds. ECF No. 681.

The parties participated in two hearings before Magistrate Judge Robert Spector regarding these discovery disputes, one on June 13, 2023 and another on August 4, 2023. ECF Nos. 673, 705. Plaintiffs were largely successful in obtaining substantial relief on their motions. During the June 13, 2023 hearing, Plaintiffs successfully argued that Defendants' request for a protective order was improper and that the noticed depositions (and additional to-be-noticed depositions) should proceed without further delay. ECF No. 673 (minute order). And on August

9, 2023, Judge Spector largely granted Plaintiffs' motions and required Defendants to produce more structured data in response to Plaintiffs' discovery requests. ECF No. 705.[3]

Depositions in this matter began in late summer 2023. Over the summer and fall, Plaintiffs took 15 depositions of Defendants' current and former employees. Joint Decl. ¶ 24. In addition, Plaintiffs' counsel prepared and defended the depositions of each of the nine Named Plaintiffs. *Id.* These depositions were mostly in-person and occurred all over the United States. *Id.* On May 31, 2024, Plaintiffs noticed three additional fact depositions of Pratt & Whitney employees, the first of which took place on August 23, 2024. The other two depositions were cancelled after Plaintiffs and Pratt & Whitney reached an agreement in principle to settle the case. *Id.*

### 3.    Motion for Leave to Amend CAC

On June 30, 2023, Plaintiffs moved for leave to amend their complaint to include additional allegations of a broader geographic market encompassing all states where Defendants employ Aerospace Workers. ECF No. 684.[4] On August 4, 2023, Defendants opposed the motion (ECF No. 703), and on August 18, 2023, Plaintiffs filed their reply (ECF No. 718). On October 4, 2023, the Court held oral argument on Plaintiffs' motion to amend. ECF No. 735. On October 26, 2023, the Court granted Plaintiffs' motion (*see* ECF No. 748), and on November 2, 2023, Plaintiffs filed the First Amended Complaint (ECF No. 751).

### 4.    Motion for Class Certification

On November 13, 2023, Plaintiffs filed their motion for class certification, along with the supporting Expert Report of Hal J. Singer, Ph.D. (the "Singer Rpt."). ECF Nos. 756, 757-1.

---

[3] Judge Spector granted in part Defendants' motion to compel but limited Defendants' relief to discovery of the Named Plaintiffs' employment history for the period from January 2011 to June 30, 2022.

[4] On August 4, 2023, PSI provided notice of its bankruptcy filing. ECF No. 701. The Court entered a stay of the claims against PSI shortly thereafter. ECF No. 712.

Plaintiffs prepared for and defended Dr. Singer's deposition on January 12, 2024. Defendants (excluding Cyient, which by this time had reached settlement terms with Plaintiffs) filed their opposition to the motion for class certification on January 29, 2024 along with rebuttal reports from experts Drs. Johnson and Snyder. Defendants (excluding Cyient) also filed a motion to preclude certain of Dr. Singer's opinions. ECF No. 877.

Plaintiffs deposed Dr. Johnson and Dr. Snyder on February 28, 2024 and March 14, 2024, respectively. On April 8, 2024, Plaintiffs filed their reply in support of class certification and opposition to Defendants' motion to preclude. ECF Nos. 896-1, 897. Pratt & Whitney took an additional deposition of Dr. Singer on May 8, 2024. On May 13, 2024, Pratt & Whitney filed its reply in support of its motion to exclude certain opinions of Dr. Singer. It also filed a new motion to preclude portions of Plaintiffs' rebuttal expert report or, in the alternative, for leave to file a sur-reply and surrebuttal expert report. ECF Nos. 934-1, 934-3, 934-5. Plaintiffs filed their opposition to these motions on June 3, 2024. On July 16, 2024, the Court denied Pratt & Whitney's motion to preclude Plaintiffs' rebuttal report but granted the motion to file a sur-reply to the class certification motion and surrebuttal expert report. ECF No. 956.

The Court held a hearing on the class certification motion on August 8, 2024.

### B. Settlements and Preliminary Approval

The Settlements are the culmination of months of hard-fought negotiations conducted at arm's length. Throughout the process, counsel for all parties relied on their substantial experience litigating and settling antitrust actions. Counsel considered, among other things, the risks of continued litigation, the substantial discovery taken to date, the pending class certification motion and expert reports, and the opinions issued by this Court.

The date of each Settlement Agreement and the associated cash payments are contained in Table 1, below. PSI, which was in bankruptcy at the time of the Settlement, agreed to provide

additional discovery and cooperation in support of Plaintiffs' claims against later-settling

Defendants.

**Table 1**

| Defendant | Settlement Date | Payment |
|---|---|---|
| Cyient | January 12, 2024 | $7,400,000 |
| Agilis | February 16, 2024 | $1,000,000 |
| QuEST | April 9, 2024 | $8,200,000 |
| PSI | May 15, 2024 | N/A |
| Belcan | May 31, 2024 | $9,900,000 |
| Pratt & Whitney | December 5, 2024 | $34,000,000 |
| | **Total:** | **$60,500,000** |

The Court granted preliminary approval of the Settlements on January 3, 2025, and made

a preliminary determination that the Settlement Class satisfies the requirements for certification.

ECF No. 977. The Settlement Agreements secure substantial and immediate monetary relief for

the Class and represent an excellent outcome in light of the considerable risks of proceeding

through class certification, summary judgment, and trial.

## ARGUMENT

Federal Rule of Civil Procedure 23(e) requires judicial approval of class action

settlements, which may be approved where the court finds the settlement to be "fair, reasonable,

and adequate." Fed. R. Civ. P. 23(e)(2); *see also Moses v. New York Times Co.,* 79 F.4th 235,

242 (2d Cir. 2023). The Second Circuit has recognized that public policy favors settlement,

particularly in class actions. See *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d

Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in

the class action context.'") (quoting *In re PaineWebber Ltd. P'ships Litig.,* 147 F.3d 132, 138

(2d Cir.1998)).

Whether a settlement merits final approval depends on both its procedural fairness (the

negotiating process leading to the settlement) and substantive fairness (the settlement's

substantive terms). *Id.*; *see also Simerlein v. Toyota Motor Corp.*, 2019 WL 2417404, at *12 (D. Conn. June 10, 2019).

## I.    THE PROPOSED SETTLEMENTS ARE FAIR, REASONABLE, AND ADEQUATE

To determine whether a proposed class action settlement is fair, reasonable, and adequate, Rule 23(e)(2) directs courts to consider whether:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

  (i)    the costs, risks, and delay of trial and appeal;

  (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

  (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

  (iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

The first two factors focus on "procedural fairness," while the latter two factors (and associated subfactors) focus on "substantive fairness." *See* Fed. R. Civ. P. 23(e)(2), Advisory Committee's note to 2018 Amendment; *Moses,* 79 F.4th 243 (2d Cir. 2023).

Before Rule 23(e)(2)(C)'s four-factor framework was codified in December 2018, courts in this Circuit employed the nine-factor framework set forth in *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 463 (2d Cir. 1974), to evaluate substantive fairness. *See Moses,* 79 F.4th at 244. These are:

(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of

> establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (internal citations and quotation marks omitted).

As stated by the Advisory Committee Notes to the 2018 amendments, Rule 23(e) "directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." Fed. R. Civ. P. 23, Advisory Committee Notes to 2018 amendments. However, the Advisory Committee Notes also state that the "goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.*

Ultimately, the nine *Grinnell* factors overlap in large part with the four-factor framework. *See Moses,* 79 F.4th at 244. Accordingly, as in the preliminary approval briefing, Plaintiffs address the Rule 23(e)(3) factors and their overlapping *Grinnell* factor counterparts together. Where the Rule 23(e)(3) and *Grinnell* factors do not overlap, Plaintiffs address them separately in Section I.E, *infra*. Judged by these standards, the Settlements are procedurally and substantively fair and should be granted final approval.

### A.     The Class Representatives and Class Counsel Have Adequately Represented the Class

In its preliminary approval order, this Court appointed Named Plaintiffs as Class Representatives and DiCello Levitt LLC and Quinn Emanuel Urquhart & Sullivan LLP as co-lead counsel pursuant to and Rule 23(g). ECF No. 977, ¶ 8. The Court also found that the Named Plaintiffs would adequately represent the interests of the Class, pursuant to Rule 23(a). *Id.*, ¶ 4.

Class members' interests are aligned with those of the Named Plaintiffs—both have suffered the same injuries in the form of suppressed compensation resulting from Defendants' agreements. The Named Plaintiffs have proven to be committed advocates by stepping forward to prosecute these claims, producing documents, answering interrogatories, and appearing for depositions.

Likewise, Class Counsel have vigorously pursued the Class's claims, beginning with their initial investigations. Class Counsel successfully opposed two motions to dismiss and engaged in extensive discovery for over a year—battling and prevailing on key discovery disputes, producing and reviewing hundreds of thousands of documents and extensive employee-specific compensation data, and taking or defending 26 depositions, including depositions of all nine Named Plaintiffs, current and former employees of all Defendants (except PSI), and the parties' experts. Plaintiffs also won leave to amend their complaint over Defendants' opposition, retained a leading expert to perform economic analysis regarding the effects of Defendants' conduct, and opposed a *Daubert* challenge to that analysis. Finally, Plaintiffs fully briefed a motion for class certification that included 70 pages of briefing, two expert reports, and a spirited oral argument.

Named Plaintiffs and Class Counsel have continued to zealously represent the interests of the Class throughout the settlement process.

**B.      The Settlement Agreements Were Negotiated at Arm's Length**

As the Court also found in its preliminary approval order, the Settlement Agreements "were reached by arm's-length negotiations between highly experienced counsel after years of litigation and extensive discovery." ECF No. 977, ¶ 10. Each of the six settlements was negotiated over a period of weeks to several months, and for some Defendants negotiations stalled and were re-started. Negotiations were conducted by experienced and knowledgeable counsel on both sides and were robust and conducted at arm's length. Class Counsel relied on

their substantial experience litigating antitrust class actions and took into account the substantial

discovery taken during the course of the litigation, the fully-briefed and pending class

certification motion and expert reports, as well as the expected summary judgment motions and

the opinions issued by the Court. Class Counsel were well-informed of the facts and the strength

of their claims during the extensive negotiation process. Accordingly, as the settlements were

reached through a sufficient adversarial process in which Class Counsel were fully informed

about the facts, risks and challenges of the Action, Class Counsel had an adequate basis upon

which to advise and recommend the Settlements to the Named Plaintiffs and Settlement Class.

### C.    The Settlement Agreements Provide Adequate Relief to the Class

Rule 23(e)(2)(C) requires the Court to determine whether "the relief provided for the

class is adequate" in light of:

> (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any
> proposed method of distributing relief to the class, including the method of
> processing class-member claims, (iii) the terms of any proposed award of attorney's
> fees, including timing of payment, and (iv) any agreement required to be identified
> under Rule 23(e)(3).

Fed. R. Civ. P 23(e)(2)(C). Plaintiffs address each of these considerations below.

### 1.    Costs, Risks, and Delay of Trial and Appeal (Rule 23(e)(2)(C)(i))

In evaluating whether a proposed settlement is adequate, courts first consider "the costs,

risks, and delay of trial and appeal." Rule 23(e)(2)(C)(i). This inquiry overlaps with *Grinnell*

factor one (the "complexity, expense, and likely duration of the litigation") and factors four, five,

and six (the risks of establishing liability and damages and maintaining the class). *Grinnell*, 495

F.2d at 463. "In determining the risks of establishing liability and damages, courts need not

'adjudicate the disputed issues or decide unsettled questions; rather, [courts] need only assess the

risks of litigation against the certainty of recovery under the proposed settlement.'" *In re*

*Frontier Commc'ns Corp. Stockholders Litig.*, 2022 WL 4080324, at *13 (D. Conn. May 20, 2022) (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004)). Courts recognize that "the complexity of Plaintiff's claims *ipso facto* creates uncertainty." *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009) (cleaned up).

There is no shortage of complex economic and legal issues in this case that, absent a settlement, could extend the litigation, compound its costs, and make the outcome of any trial highly uncertain. *See In re Linerboard Antitrust Litig*., 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003) ("An antitrust class action is arguably the most complex action to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome.") (internal citations and quotation marks omitted). Many of these issues would be the subject of complicated and conflicting expert testimony, increasing costs, and uncertainty for all parties. *See Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *20 (S.D.N.Y. Sept. 9, 2015).

Prior to executing the Settlement Agreements, the parties were locked in a fight over class certification, with the losing party likely to seek interlocutory review pursuant to Rule 23(f). This would further extend the timeline of the litigation and create additional risks and uncertainties. *See, e.g.*, *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig (Interchange Fee I)*, 986 F. Supp. 2d 207, 222 n.13 (E.D.N.Y. 2013) ("In the *Wal-Mart* case, twenty months elapsed between the order certifying the class and the Second Circuit's divided opinion affirming that decision."). If the litigation class were certified, the parties would likely contest summary judgment on multiple issues, calling for additional expert testimony. If the case proceeded past summary judgment, trial would be lengthy, and the losing party would likely appeal the verdict.

While Plaintiffs believe their positions are strong, they would have to prevail on every contested issue, whereas Defendants need prevail only on a single defense. Plaintiffs would need to convince a jury that the alleged conduct here—a conspiracy to restrict competition for labor— is a violation of federal antitrust law, which is something no private litigant nor government enforcer has yet done. Indeed, it merits emphasis that in the criminal trial of this very case, involving many of the same facts, the Court ruled the evidence was insufficient as a matter of law to prove the elements of the alleged crime. *See, e.g.*, *United States v. Patel*, 2023 WL 3143911 (D. Conn. Apr. 28, 2023) (granting motion for judgment of acquittal); *see also* Jury Verdict, *United States v. DaVita, Inc.*, No. 21-cr-229 (D. Colo. Apr. 15, 2022) (acquitting defendants on all counts), Jury Verdict, *United States v. Manahe*, No. 22-cr-13 (D. Me. Mar. 22, 2023) (same). In sum, "[t]here can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998).

      **2.**    **The Effectiveness of the Proposed Method of Distributing Relief to the Class (Rule 23(e)(2)(C)(ii))**

The Court has already preliminarily approved the proposed Plan of Allocation and found that it satisfies the requirements of Rule 23(e). ECF No. 977. Under the proposed Plan of Allocation, Class members receive payment based on their *pro rata* share of the Net Settlement Fund, calculated by dividing total compensation paid to an individual Class member while employed as an Aerospace Worker at one of the Defendants by the total of compensation paid to all Class members employed as Aerospace Workers during the Class Period who file valid claims. ECF No. 976-2. The resulting fraction multiplied by the total Net Settlement Fund determines the amount of the Class member's payment. *Id*. To receive payment, Class members are to submit a claim form to the Settlement Administrator containing information about their

employment and income no later than May 3, 2025. ECF No. 976-2. The Settlement

Administrator will determine the Class member's total compensation and dates of employment

from Defendants' data, which will not be subject to challenge by Class members. *Id.*

To date, 9,895 Class members have filed claim forms to recover their portion of the

Settlement Fund, none have objected, and only seven have excluded themselves from the Class.

Sobczak Decl. ¶¶ 4-6. This indicates Class members overwhelmingly approve of the proposed

distribution plan and trust that the process will be effective. The overwhelmingly positive

response from the Class is further reason why the Court should grant final approval.

### 3.    The Terms of Any Proposed Award of Attorneys' Fees (Rule 23(e)(2)(iii))

Under the Settlement Agreements, Class Counsel may apply to the Court for an award of

attorneys' fees and expenses incurred on behalf of the Class. Class Counsel will submit full

briefing supporting their request for attorneys' fees and expenses no later than April 12, 2025,

pursuant the Court's preliminary approval order. ECF No. 977. Class Counsel will not receive

any payment unless and until the Court grants their fee request.

### 4.    Any Agreement Required to Be Identified Under Rule 23(e)(3) (Rule 23(e)(2)(iv))

All the terms of the proposed Settlements are contained within the Settlement

Agreements. Plaintiffs have not entered into any additional agreements with the Defendants in

connection with this litigation.

### 5.    Range of Reasonableness (*Grinnell* Factor #9)

Courts also consider "the range of reasonableness of the settlement fund," both given the

risks discussed above and "in light of the best possible recovery." *Grinnell*, 495 F.2d at 463.

Determining whether a settlement amount falls within the range of reasonableness "does not

involve the use of a 'mathematical equation yielding a particularized sum.'" *O'Connor v. AR Res., Inc.,* 2012 WL 12743, at *6 (D. Conn. Jan. 4, 2012) (internal quotation marks omitted). Rather, the range of reasonableness depends on the "uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also In re Sturm, Ruger, & Co., Inc. Sec. Litig.,* 2012 WL 3589610, at *7 (D. Conn. Aug. 20, 2012). A settlement "amount[ing] to a hundredth or even a thousandth part of a single percent of the potential recovery" could, therefore, be reasonable under the circumstances of the case. *Esposito v. Nations Recovery Ctr., Inc.*, 2021 WL 2109077, at *5 (D. Conn. May 25, 2021) (quoting *Grinnell,* 495 F.2d at 455 n.2).

The recovery of $60,500,000 represents about 30% of Dr. Singer's aggregate damages estimate. Joint Decl. ¶ 57. This figure is well within the range of reasonableness given the uncertainties, risks, and costs of proceeding to trial. Indeed, it is on the higher side for antitrust cases of similar scope and complexity. Courts in this Circuit have approved settlements that provided recoveries of much smaller percentages of Plaintiffs' damages estimate. *See, e.g., Frontier,* 2022 WL 4080324, at *14 (settlement representing "7% of the estimated maximum recoverable damages, . . . [was] reasonable in light of the risks of litigation"); *Sturm,* 2012 WL 3589610, at *7 (settlement representing "approximately 3.5% of Lead Plaintiff's most aggressive estimate of maximum provable damages . . . [was] well within the range of reasonableness"); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig. (Interchange Fee II)* 330 F.R.D. 11, 48 (E.D.N.Y. 2019) (approving settlement representing around five percent of plaintiffs' damages estimate).

### D.    The Settlements Treat Class Members Equally

The court must also find that the proposed settlements "treats class members equitably relative to each other." Fed. R. Civ. P 23(e)(2)(D). All Class members have identical rights under the Settlement Agreements, and all grant identical releases of their claims against Defendants. Defendants' obligations are fixed, and Defendants have no responsibility for, or liability from, the Plan of Allocation. Additionally, the Plan of Allocation treats each Class Member equitably as it directs that the Net Settlement Fund will be distributed on a *pro rata* basis, which courts have regularly approved in the class settlement context. *See, e.g.*, *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 316 (S.D.N.Y. 2020) (finding courts uniformly approve plans of allocation distributing funds on a *pro rata* basis as equitable under Rule 23(e)(2)(D)).

### E.    Other Relevant Factors Support Final Approval

#### 1.    Stage of the Proceedings (*Grinnell* Factor #1)

Also relevant to the final approval inquiry is the "the stage of the proceedings and the amount of discovery completed." *Grinnell,* 495 F.2d at 463. This factor is helpful in evaluating the fairness of the Settlement because it bears on "the parties' knowledge of the strengths and weaknesses of the various claims in the case." *Simerlein,* 2019 WL 2417404, at *20 (quoting *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)).

Fact discovery in this case is largely completed. When the Settlements were reached, the parties had produced and reviewed hundreds of thousands of documents, analyzed voluminous data, and conducted 26 fact witness depositions, the last of which took place days before the final settlement (with Pratt & Whitney). Expert discovery was also nearly complete, with Plaintiffs having submitted opening and reply reports of Dr. Singer, Pratt & Whitney and Belcan having

submitted rebuttal reports from their own experts, and all experts having been deposed. Class certification was fully briefed, and the Court held a hearing on the motion.

At this stage of the proceedings, the parties have "gained a sufficient understanding of their case such that they have had an opportunity to evaluate the strengths and weaknesses of their claims as well as the adequacy of settlement." *Simerlein*, 2019 WL 2417404, at \*20; *see also O'Connor*, 2012 WL 12743, at \*4 (same).

### 2.    Reaction of the Class to the Settlement (*Grinnell* Factor #2)

Courts also consider the reaction of the absent class members, "specifically the quality and quantity of any objections and the quantity of class members who opt out." *Edwards v. N. Am. Power & Gas*, 2018 WL 3715273, at \*10 (D. Conn. Aug. 3, 2018) (quoting 4 Newberg on Class Actions § 13:54 (5th ed.)). "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Id.*, citing *Wal-Mart*, 396 F.3d at 118. Class members have until May 3, 2025, to object, exclude themselves, or file a claim to recover from the Settlements. As noted above, as of this filing, 9,895 Class members have filed claims, none has objected, and only seven have requested exclusion. The rate of claims being filed and the lack of objections or exclusions suggest that the Class largely approves of the Settlements and the Plan of Allocation. This factor supports final approval.

### 3.    Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor #7)

Courts also may consider "the ability of the defendants to withstand a greater judgment." *Grinnell*, 495 F.2d at 463. Even where defendants can withstand greater judgments, however, this factor, "'standing alone, does not suggest that the settlement is unfair,' especially where the 'other Grinnell factors weigh heavily in favor of settlement[.]'" *Simerlein*, 2019 WL 2417404, at \*21 (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)). Here, all the other

factors weigh heavily in favor of final approval. Any Defendant's ability to withstand a greater judgment, therefore, would not undermine the fairness of the Settlement Agreement. *See D'Amato*, 236 F.3d at 86.

## II.     THE REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS HAVE BEEN MET

"Certification of a settlement class has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, 2012 WL 3589610, at *9 (D. Conn. Aug. 20, 2012) (quoting *In re IMAX Sec. Litig.*, 2012 WL 2359653, at *6 (S.D.N.Y. June 20, 2012)). Although the requirements of Rule 23 are the same to certify a *settlement* class as they are to certify a class for *litigation*, the standard is not. When certifying a settlement class, courts "need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *In re Am. Int'l Grp. Sec. Litig.*, 689 F.3d 229, 239 (2d Cir. 2012) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). In addition, the predominance requirement is often "easier to satisfy in the settlement context," *Am. Int'l Grp.*, 689 F.3d at 240, because "settlement itself allows common issues to predominate." *In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 381 (E.D. Pa. 2015), *aff'd,* 821 F.3d 410 (3d Cir. 2016); *see also In re Interchange Fee II*, 330 F.R.D.  at 56 ("Because predominance and manageability overlap, the existence of a settlement that eliminates manageability problems can alter the outcome of the predominance analysis.") (cleaned up).

"The Second Circuit has directed district courts to interpret Rule 23 liberally, to maximize the benefits to both private parties and to the public provided by class actions."  *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2020 WL 1329354, at *2 (S.D.N.Y. Mar. 23, 2020).

Plaintiffs and Defendants have agreed, subject to the Court's approval, to the certification of the following proposed Class for the purposes of settlement:

> All persons employed by Pratt & Whitney, Agilis, Belcan, Cyient, PSI, QuEST, or their wholly-owned subsidiaries as Aerospace Workers at any time from January 1, 2011 through January 3, 2025. "Aerospace Workers" are defined as aerospace engineers and other skilled workers in the jet propulsion systems industry. Excluded from the Class are Defendants and their affiliates, parents, subsidiaries, and co-conspirators, whether or not named in the Complaint, senior officers and directors, and human resources personnel of Defendants, and the United States government.

For the reasons set forth below, and for the same reasons the Court preliminary certified the Settlement Class, the proposed Class meets the requirements of Rule 23(a) and Rule 23(b)(3), and the Court should certify the Settlement Class.

## A.      All Requirements of Rule 23(a) Are Satisfied for the Purposes of the Settlement

Rule 23(a) permits an action to be maintained as a class action if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

### 1.      The Class Is Sufficiently Numerous

In this Circuit, "[n]umerosity is presumed for classes larger than forty members." *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014). This requirement is easily met here, as the proposed Class includes thousands of employees. *See, e.g.,* Singer Rpt. ¶¶ 118-19.

### 2.      There Are Common Questions of Law and Fact

Commonality "simply requires that there be issues whose resolution will affect all or a significant number of the putative class members." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d

128, 137 (2d Cir. 2015). "'The test for commonality is not demanding' and is met so long as there is at least one issue common to the class." *Raymond v. Rowland*, 220 F.R.D. 173, 179 (D. Conn. 2004) (quoting *Mullen v. Treasure Chest Casino, LLC*., 186 F.3d 620, 625 (5th Cir.1999)); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("Even a single common question will do.") (cleaned up).

Here, Plaintiffs' claims present many common issues of law and fact, including (a) whether Defendants agreed to restrict the recruitment and hiring of each other's employees; (b) how long the conspiracy lasted; (c) whether Defendants' agreement suppressed Class members' wages; (d) whether Defendants' conduct violated Section 1 of the Sherman Act; and (e) what the appropriate measures of class-wide harm for Plaintiffs' claims are. Each of these questions satisfies Rule 23(a)'s commonality requirement. *See Nitsch v. DreamWorks Animation SKG Inc.*, 315 F.R.D. 270, 283 (N.D. Cal. 2016) (commonality satisfied in no-poach case where "the adjudication of Defendants' alleged antitrust violation will turn on overwhelmingly common legal and factual issues.") (quoting *High-Tech*, 985 F. Supp. 2d at 1175).

### 3.      Plaintiffs' Claims Are Typical of the Class

The typicality requirement under Rule 23(a)(3) is "not demanding." *Tsereteli v. Residential Asset Securitization Tr. 2006-A8*, 283 F.R.D. 199, 208 (S.D.N.Y. 2012); *see Dial Corp. v. News Corp.*, 314 F.R.D. 108, 115 (S.D.N.Y. 2015) (similar). Where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability," typicality is satisfied. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (cleaned up). *See also Rincon-Marin v. Credit Control*, *LLC,* 2018 WL 1035808, at *3 (D. Conn. 2018) ("When the same unlawful conduct was directed at both the named plaintiff and the class to be represented, the typicality

requirement is usually met irrespective of varying fact patterns which underlie individual claims.").

Here, typicality is satisfied because each Class member's claims arise from the same alleged conspiracy, which Plaintiffs allege suppressed wages for all Class members. The Named Plaintiffs' claims arise from the same alleged conspiracy, and they allege they suffered the same injury as other Class members.

### 4. Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

The adequacy requirement addresses "whether (1) the plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Spencer v. Hartford Fin. Servs. Grp., Inc.,* 256 F.R.D. 284, 292 (D. Conn. 2009) (quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)).

Here, the Named Plaintiffs' interests are closely aligned with those of the Class: they all suffered the same injury (suppressed compensation), and they all have the same interest in maximizing recovery from Defendants. *See Frontier*, 2022 WL 4080324, at *8 (plaintiffs' interests are aligned with the class where they "share[] a common goal" of "maximizing recovery") (citing *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.") (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992))).

With respect to Interim Co-Lead Class Counsel, the Court has already found that they have the qualifications, experience, and ability to prosecute the claims. *See* ECF No. 333. Accordingly, adequacy is satisfied, and the Court should appoint the Named Plaintiffs as Class

representatives, and Interim Co-Lead Interim Class Counsel as Class Counsel for purposes of the Settlement Agreement.

**B.    All Requirements of Rule 23(b)(3) Are Satisfied for Purposes of the Settlement**

Once a court determines that the proposed class satisfies Rule 23(a), a class should be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance is satisfied where issues that can be proven by common evidence "are more substantial than the issues subject only to individualized proof.'" *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting *In re U.S. Foodservice Inc. Pricing  Litig.*, 729 F.3d 108, 118 (2d Cir. 2013)). Predominance is a "test readily met" in antitrust cases, where one course of conduct caused the same type of harm to all class members. *Amchem*, 521 U.S. at 625.

Importantly, "the predominance requirement differs between trial and settlement" because "with a settlement class, the manageability concerns posed by numerous individual questions disappear." *In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 870 (S.D.N.Y. 2018), *aff'd*, 784 F. App'x 10 (2d Cir. 2019) (quoting *Am. Int'l Grp.*, 689 F.3d at 241) (cleaned up). The purpose of the predominance requirement is to avoid "the need for a series of mini-trials" to resolve individualized issues. *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002). Because a settlement effectively resolves any such issues, "settlement itself allows common issues to predominate." *In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. at 381.

Here, common issues predominate on each element of Plaintiffs' claims for the purpose of settlement, and a class action is the superior—and likely only—way to fairly and efficiently adjudicate the controversy.

### 1. Common Issues Predominate as to the Alleged Antitrust Violation

"Because it is primarily a determination that focuses on the defendants' conduct—i.e., whether the conduct alleged would actually violate the antitrust laws—common evidence generally predominates over individualized evidence with regard to this element." *In re Namenda Indirect Purchaser Antitrust Litig.,* 338 F.R.D. 527, 551 (S.D.N.Y. 2021); *see also In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.,* 256 F.R.D. 82, 87 (D. Conn. 2009) ("allegations of the existence of a price-fixing conspiracy are susceptible to common proof").

Here, the claims of Plaintiffs and all Class members depend on proving Defendants conspired to restrain competition for labor in the aerospace industry. Evidence of such a conspiracy is therefore common to all Class members. *See EPDM,* 256 F.R.D. at 87 (whether defendants engaged in a conspiracy was an issue common to the class); *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 WL 7882100, at *38 (E.D.N.Y. Oct. 15, 2014), *report and recommendation adopted*, 2015 WL 5093503 (E.D.N.Y. July 10, 2015) (evidence of a conspiracy was "indisputably common because it focuses on the allegedly unlawful actions of the defendants, not the actions of individual plaintiffs") (cleaned up).

### 2. Common Issues Predominate as to Impact

Plaintiffs must also show that "injury-in-fact, or impact, can be proven by evidence common to the class." *EPDM*, 256 F.R.D. at 88. "Even if it could be shown that some individual class members were not injured, class certification, nevertheless, is appropriate where the

antitrust violation has caused widespread injury to the class." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 523 (S.D.N.Y. 1996).

Here, Plaintiffs contend that impact can be proven by at least four sources of common evidence, including: (i) record evidence of the alleged conspiracy and its intent to suppress wages; (ii) Dr. Singer's regression models, which show that injury to the Class was widespread; (iii) economic principles, supported by documentary evidence, showing that Defendants relied on internal equity and standardized wage structures to set compensation; and (iv) economic literature regarding the effects of similar no-poach agreements.

*First*, Plaintiffs contend that Defendants' documents and deposition testimony are common evidence capable of proving class-wide impact. Courts in similar no-poach cases have found this type of impact evidence to be "among the most persuasive to a jury." *High-Tech Emp.,* 985 F. Supp. 2d at 1215. *See also id.* ("[T]he Court finds that Plaintiffs' documentary evidence provides substantial further support for Plaintiffs' method of proving impact. Indeed, at trial, the Court predicts that this evidence is likely to be among the most persuasive to a jury as it illustrates and confirms many of the actual dynamics at play within Defendants' firms."); *Nitsch,* 315 F.R.D. at 294 ("Plaintiffs have produced substantial classwide documentary evidence that . . . Defendants entered into anti-solicitation agreements," and this "evidence further support Plaintiffs' allegation that these anti-solicitation agreements in fact did stifle recruitment of passive candidates by Defendants.").

*Second*, Dr. Singer has constructed a series of multiple regression models to estimate the impact of the alleged conspiracy. These models compare employee wages during the alleged conspiracy period (2011-2019) with wages in the "clean" periods absent such agreement (before 2011 and after 2019), while controlling for various economic and employee-specific factors to

isolate the degree to which the conspiracy impacted wages. Singer Rpt. ¶¶ 132-96. Known as the "before-and-after" methodology, this standard empirical approach is a widely accepted tool for analyzing antitrust impact, and courts have consistently relied on similar regression modeling to identify the effect of a conspiracy on wages (or prices) to support class certification.[5] Dr. Singer constructed regression models for each Defendant using the data and control variables most relevant to that Defendant. *Id*. ¶¶ 155-84. He also constructed a pooled regression that has the advantage of leveraging data from all Defendants in a single econometric model. *Id*. ¶¶ 185-91. Plaintiffs contend that Dr. Singer's models show that employee compensation was suppressed by economically and statistically significant amounts across all Defendants. *Id.* ¶¶ 155-191. In sum, Dr. Singer's wage regression models are sufficient to prove class-wide impact because each Class member could rely on them to prove impact in an individual case. *See, e.g.*, *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 679 (9th Cir. 2022) ("each class member [could rely] on the model to establish liability if he or she had brought an individual action") (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455 (2016)).

    *Third*, the results of Dr. Singer's wage regressions are consistent with documentary evidence showing that Defendants, like most firms, relied upon principles of internal equity to set wages. Singer Rpt. ¶¶ 206-31. Internal equity represents the idea that individuals with similar

---

[5] *See, e.g.*, *Phila. v. Bank of Am. Corp.*, 2023 WL 6160534, at *5 (S.D.N.Y. Sept. 21, 2023) ("In antitrust cases, regression models have been widely accepted as a generally reliable econometric technique to control for the effects of the differences among class members and isolate the impact of the alleged antitrust violations on the prices paid by class members.") (quoting *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 677 (9th Cir. 2022)); *In re Elec. Books Antitrust Litig.* ("*E-Books*"), 2014 WL 1282293, at *9 (S.D.N.Y. Mar. 28, 2014) (accepting model using the "widely-used 'before and after' approach"); *EPDM*, 256 F.R.D. at 97, 103 (in price-fixing case, certifying class where plaintiff showed impact could be demonstrated through model comparing class-period prices to "benchmark period" prices); *In re Broiler Chicken Antitrust Litig.*, 2022 WL 1720468, at *12 (N.D. Ill. May 27, 2022) ("Plugging in known prices and market factor data from the class period and running the regression equation to solve for the dummy variable allows the experts to calculate the portion of price not accounted for by the market factors").

experience doing comparable work within a firm should receive similar compensation. Concern for internal equity, according to Plaintiffs, leads firms like some Defendants to implement uniform compensation structures. As a result, when wages are suppressed broadly by a no-poach conspiracy, the effects are felt widely within the company. *See High-Tech Emp.*, 985 F. Supp. 2d at 1219 (expert's analyses "are consistent with the documentary evidence that suggests that Defendants maintained a formal wage structure and valued internal equity"). In this case, Plaintiffs contend that both the documents and data produced by Defendants confirm the existence of uniform wage structures that would cause wage suppression to spread quickly and impact all or nearly all Class members. Singer Rpt. ¶¶ 206-31.

In his Reply Report, Dr. Singer offers two additional quantitative proofs of a rigid compensation structure—the "common factors" and "common shock" regressions—based on the methods the court relied on in *High-Tech Employees.* Reply Rpt. ¶ 40-41. In his common factors analysis, Dr. Singer omits the conduct coefficient and worker fixed effects, leaving only "common factors"—tenure, salaried status, year in job category, and the industry indices—while adding in indicator variables for job titles (another common factor). Plaintiffs contend that these common factor regressions "explain an economically significant amount of the variation in [Class member] wages at a Defendant within a year." *Id.* ¶¶ 40-41, Table 2. *Cf. Nitsch*, 315 F.R.D. at 299 (majority of variation explained by common factors, including job title).

Dr. Singer's common shock analysis "test[s] whether changes in employee wages, or shocks, are broadly shared across Class Members." Reply Rpt. ¶ 42. Dr. Singer uses regressions where the dependent variable is set equal to an employee's yearly wages, and the independent variable is set equal to either: "(A) the average yearly wages paid to *all other workers* of that employee's job title or category in that year; or (B) the average yearly wage paid to *all other*

*workers* of the employee's same type in the prior year." *Id.* ¶ 42. Plaintiffs contend that the results of these regressions show "compensation paid to other employees of the same type of occupation is positively and highly statistically significantly related to the compensation paid to an individual employee." *Id.* ¶ 41, Table 2. *Cf. Nitsch*, 315 F.R.D. at 299 ("The correlation analyses showed that, for the majority of job titles analyzed, compensation for each Defendant-specific job title tended to increase or decrease with overall compensation to class members at that Defendant."). These quantitative analyses provide additional class-wide evidence to support Dr. Singer's theory of widespread wage suppression.

*Fourth*, Dr. Singer also explains how well-settled economic principles support the results of his econometric analysis. He cites numerous studies showing how no-poach agreements reduce worker mobility, disrupt information-gathering, increase search frictions, and ultimately suppress wages. *Id.* ¶¶ 46-50. He also explains how limited worker *movement* among the Defendants is not inconsistent with the restricted worker *mobility* and wage suppression caused by the conspiracy. *Id.* ¶¶ 68-79.

In short, Dr. Singer has provided a "workable methodology to demonstrate that antitrust injury can be proven on a class-wide basis," which is all that is required at the class certification stage. *Dial Corp.*, 314 F.R.D. at 115; *see also EPDM*, 256 F.R.D. at 100 (predominance on impact hinged on "whether the plaintiffs have established a *workable* multiple regression equation"); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.,* 335 F.R.D. 1, 18 (E.D.N.Y. 2020) (evaluating expert's impact methodology to determine whether "no reasonable juror could have believed" it) (quoting *Tyson Foods*, 577 U.S. at 459).

### 3. Common Issues Predominate as to Damages

Plaintiffs contend that damages can also be calculated using class-wide evidence. Again, the burden here is modest. "The court's inquiry at the class certification stage is limited to

determining whether, if individual damages will vary, there is nevertheless a possible and reasonable means of computing damages on a class-wide basis, for example by using a formula or statistical analysis." *Spencer*, 256 F.R.D. at 305. "Although courts must carefully evaluate estimates to ensure that the experts' methodology is a just and reasonable inference and not speculative at the class certification stage, damages need not usually be demonstrated with precision." *Namenda*, 338 F.R.D. at 565 (internal citations and quotation marks omitted). Where Plaintiffs have established "a *workable* multiple regression equation" to estimate class-wide damages, class certification is appropriate. *EPDM*, 256 F.R.D. at 100.

Dr. Singer explains that, to calculate the Class's damages on a class-wide basis, he can utilize either the pooled regression model he developed to estimate a "but-for" hourly wage for each employee and each year or the Defendant-specific wage regression models discussed above. Singer Rpt. ¶ 238. Either of these formulaic approaches allow him to estimate what wages would have been paid absent (or "but for") the alleged conspiracy. Comparing that but-for rate to the employee's actual rate in a given year, Dr. Singer can estimate the overall damages he contends are owed to Class members in that year. *Id.* ¶¶ 238-46.

This same methodology can be used to calculate damages for individual class members in the claims process in a manner that will be "simple and mechanical." *Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447, 472 (S.D.N.Y. 2014). Dr. Singer provides sample individualized damages computations in his report, demonstrating the viability of his approach. Singer Rpt. ¶¶ 244-45. Once again, the existence of these formulaic approaches for calculating damages supports certification of the settlement class here. *See Spencer*, 256 F.R.D. at 306 (predominance satisfied where "damages will be susceptible of calculation by mathematical formula"); *see also Iowa Pub. Employees' Ret. Sys. v. Bank of Am. Corp.*, 2022 WL 2829880, at *24 (S.D.N.Y. June

30, 2022) ("Having provided a reliable, formulaic damages model, Plaintiffs have established that common issues in this litigation will predominate over any individual ones.") (cleaned up).

###### 4.    A Class Action Is Superior to Other Methods of Adjudication

Under Rule 23(b)(3), a court assesses the superiority of the class action mechanism by weighing class members' interest in pursuing separate actions, the extent of any independent litigation already commenced by class members, the desirability of concentrating the litigation in a single forum, and the difficulties likely to be encountered in the management of the class action. Fed. R. Civ. 23(b)(3).

Here, Class members have no practical ability to proceed individually rather than collectively. Litigation costs, including the costs of hiring economic experts, would quickly exceed any potential recovery on an individual basis. Thus, a class action is the most effective means to pursue relief. *See EPDM*, 256 F.R.D. at 104 ("Considering that a large number of class plaintiffs would have little or no financial incentive to prosecute the alleged antitrust violation individually, class certification is clearly a superior method of adjudication because it is most likely to promote fairness and efficiency."); *see also Ruzhinskaya v. Healthport Techs., LLC*, 311 F.R.D. 87, 108 (S.D.N.Y. 2015) (finding class action superior where "[n]o potential class member has displayed any interest in bringing an individual lawsuit" and "the costs of bringing this lawsuit would be prohibitive for any single class member or even a small group of them"); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 415 (S.D.N.Y. 2015) (where "proceeding individually would be prohibitive" the class action device is "frequently superior") (cleaned up).

Class certification is necessary for the private enforcement of the antitrust laws in this case, which cuts in favor of class certification. *See Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 336 (1971) ("private antitrust litigation is one of the surest weapons for effective

enforcement of the antitrust laws"). Moreover, since the request for class certification is only for purposes of settlement, the Court "need not inquire whether the case, if tried, would present intractable management problems." *In re Host Am. Corp. Sec. Litig.*, 2007 WL 3048865, at *1 (D. Conn. Oct. 18, 2007) (quoting *Amchem*, 521 U.S. at 620).

### III.    CLASS NOTICE SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

The notice provided to Class members is the best practicable under the circumstances and was reasonably calculated to reach all Class members who will be bound by the Settlements. *See* Rule 23(e)(1)(B); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

Pursuant to preliminary approval order, in which the Court preliminarily approved the Notice Plan, the Class Administrator implemented the Notice Plan beginning on March 4, 2025. *See* ECF No. 977, ¶¶ 11-12. Notice was disseminated primarily by email and regular mail, and the Settlement Administrator sent nearly 80,000 notices directly to potential Class members. Sobczak Decl. ¶ 3(a). Notice included the implementation of a dedicated Settlement Website, www.AerospaceAntitrustLitigation.com, and a toll-free telephone line where Settlement Class members can learn more about their rights and options pursuant to the terms of the Settlements. *Id.* ¶¶ 3(b)-(c). Notice is also being supplemented by an ongoing, targeted digital media campaign with banner and search ads appearing across desktop, tablet, and mobile devices on Google Display Network and YouTube. This campaign is designed to achieve five million impressions and directs potential Class members to the dedicated Settlement Website. *Id.* ¶ 3(d).

The long-form notice details, among other things: (1) the terms of the Settlement and a short discussion on the Plan of Allocation; (2) instructions on how to submit a claim form; that Class Counsel intended to seek attorneys' fees of up to 33-1/3%, reimbursement of expenses, and service awards of up to $20,000 for each Named Plaintiff; (3) the procedures and deadline for opting out of the Class or objecting to the Settlement and/or Class Counsel's motion for attorneys' fees, expenses and service awards; and (4) the location, date and time of the Court's final Fairness Hearing. The long-form notice contains information sufficient to fulfill all the requirements under Rule 23(c).

The Notice also explains that the full text of Settlements' releases, a copy of the Court's preliminary approval order, and other important documents are posted publicly on the Settlement Website. The email notice, which substantially summarizes the same information, contains a link where the recipient can view the long-form notice. All forms of notice reference the Settlement Website, which contains answers to frequently asked questions, important dates, information regarding the fairness hearing, downloadable PDFs of the long-form notice, relevant Court documents, and the Settlement Agreements, and the online claim form.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the Settlement Class for the Settlement Agreements, find the Settlements to be fair, reasonable, and adequate, grant final approval of the Settlements, and find that the Plan of Allocation proposed for the Settlement Agreements is reasonable and adequate.

Dated: April 7, 2025

**QUINN EMANUEL URQUHART &**
    **SULLIVAN, LLP**

 */s/ Daniel L. Brockett*
Daniel L. Brockett (phv20450)
Manisha M. Sheth (phv01061)
Steig D. Olson (phv06391)
Thomas Lepri (phv20453)
Daniel F. Loud (phv206704)
295 5th Avenue
New York, New York 10016
Telephone: (212) 849-7000
danbrockett@quinnemanuel.com
manishasheth@quinnemanuel.com
steigolson@quinnemanuel.com
thomaslepri@quinnemanuel.com
danielloud@quinnemanuel.com

Justin Reinheimer (phv20572)
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
justinreinheimer@quinnemanuel.com

*Interim Class Counsel*

**DICELLO LEVITT LLP**

 */s/ Gregory S. Asciolla*
Gregory S. Asciolla (phv02599)
John M. Shaw (phv207422)
485 Lexington Avenue, Suite 1001
New York, New York 10017
Telephone: (646) 933-1000
gasciolla@dicellolevitt.com
jshaw@dicellolevitt.com

**GARRISON, LEVIN-EPSTEIN,**
    **FITZGERALD & PIRROTTI, P.C.**

Joseph D. Garrison (ct04132)
Stephen J. Fitzgerald (ct22939)
Joshua R. Goodbaum (ct28834)
Amanda M. DeMatteis (ct29413)
405 Orange Street
New Haven, Connecticut 06511
Telephone: (203) 777-4425
jgarrison@garrisonlaw.com
sfitzgerald@garrisonlaw.com
jgoodbaum@garrisonlaw.com
adematteis@garrisonlaw.com

*Local Connecticut Counsel*

**HURWITZ SAGARIN SLOSSBERG &**
    **KNUFF, LLC**

David A. Slossberg (ct13116)
Erica Oates Nolan (ct31097)
Timothy C. Cowan (ct30786)
135 Broad Street
Milford, Connecticut 06460
Telephone: (203) 877-8000
DSlossberg@hssklaw.com
ENolan@hssklaw.com
TCowan@hssklaw.com